# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 69 C 2145 | **DATE** | 9/27/2001 |
| **CASE TITLE** | Michael L. Shakman vs. Democratic Organization et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter MEMORANDUM, OPINION AND ORDER: We grant the plaintiffs' motion for summary judgment [105-1] on the issue of the city's liability for a violation of the Consent Judgment. We order plaintiff to file a rule to show cause on or before 10/10/2001. The City may file a response to the rule on or before 10/23/2001. Plaintiffs shall reply on or before 10/30/2001. The court will set this matter for hearing on 11/8/2001 at 10:00 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

|   | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | SEP 2 8 2001 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TSA | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL L. SHAKMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 69 C 2145 |
| | ) |
| DEMOCRATIC ORGANIZATION OF | ) Wayne R. Andersen |
| COOK COUNTY, et al., | ) District Court Judge |
| | ) |
| Defendants. | ) |

## MEMORANDUM, OPINION AND ORDER

DOCKETED SEP 28 2001

Plaintiffs, Michael L. Shakman and Paul M. Lurie on behalf of themselves and the classes of independent candidates ("plaintiffs"), have filed a motion for summary judgment. They contend that defendant City of Chicago ("the City") has violated the 1983 Consent Judgment entered in this case which prohibits defendant (and other governmental agencies) from hiring on the basis of political patronage. Specifically, plaintiffs charge that the City's use of "personal service contracts" violates procedures set forth in the Consent Judgment that the City must follow before it hires new employees. The City denies that it violated the Consent Judgment and opposes plaintiffs' motion. For the reasons stated below, we grant the plaintiffs' motion for summary judgment and find the City has violated the Consent Judgment.

## BACKGROUND

I.  Procedural History

This case is part of the on-going litigation against the City and other governmental entities under the <u>Shakman</u> Consent Judgments. The litigation began in 1969, when Michael L. Shakman and Paul M. Lurie brought claims on behalf of themselves and classes of independent

candidates, voters and taxpayers in Cook County against a number of defendants, including the City of Chicago and its Mayor. In essence, the Complaint charged that the City conditioned employment on the applicant's support of the Cook County Regular Democratic Organization in violation of the plaintiffs' constitutional rights.

The case traveled a tortuous path through the district court and appellate courts, with some defendants choosing to settle and others preferring to litigate the matter. In 1972, most of the defendants, including the City, entered into a Consent Judgment which prohibited them from conditioning, basing or affecting any term or aspect of employment upon political factors once an individual obtained public employment. The Consent Judgment reserved the issues of whether politically conditioned hiring is unconstitutional and which jobs should be exempt from the Consent Judgment.

In 1979, the district court granted summary judgment as to defendants' liability on the hiring issue. After holding several evidentiary hearings on the matter and rejecting an interlocutory appeal, the court entered an Order in 1983 prohibiting politically motivated hiring and ordering defendants to prepare plans of compliance and reporting procedures. As a result of this order, most of the defendants, including the City, entered into Consent Judgments in 1983 prohibiting political hiring and exempting certain positions from the Judgment. These Judgments state that they are entered to enforce the 1972 Consent Judgment and to remedy unconstitutional hiring practices. Both the 1972 and the 1983 Consent Judgments remain in full force and effect.

Those defendants who declined to enter into Consent Judgments in 1983 appealed the district court's order to the Seventh Circuit. They won--but it was a pyrrhic victory. In a

separate, but similar, case involving patronage hiring by the Republican party in Illinois, the Supreme Court held that patronage hiring practices were constitutionally forbidden. Rutan v. Republican Party of Illinois, 110 S.Ct. 2729 (1990). As a result of the Supreme Court's decision in Rutan, the defendants, including the City, entered into Compliance Plans consistent with the district court's 1983 order and resulting Consent Judgment.

Over the years, there have been a number of different matters which have arisen regarding various defendants' compliance with the Consent Judgments and resulting Compliance Plans. Because most of these matters are irrelevant to the issues presently before the court, we will not discuss them further. However, in 1994, certain individuals challenged the City's hiring a large number of employees without following the notice and other provisions provided in the Consent Judgment and Compliance Plan on file with the court. Because the challenge involved more than 2,000 employees, plaintiffs intervened in the matter in an effort to correct what they deemed to be a blatant violation of the Consent Judgment. Although the original petition was dismissed, an "Amended Application to Prohibit the City of Chicago from Employing City Employees Through the Devices of Personal Service Contracts and Temporary Agency Contracts" was filed on February 10, 1995. In addition to the challenge to the personal service contracts, this application also challenged the City's hiring of "temporary" employees using temporary agency contracts.

The City terminated its use of these devices on October 3, 1995. Discovery was stayed from that point until 1996 while plaintiffs and the City unsuccessfully attempted to settle the matter. Plaintiffs then filed a motion before the court asking it to rule on the threshold issue of whether the 1983 Consent Judgment could apply to personal service contract workers and

3

temporary agency workers holding positions for which there was no budgeted line item appropriation. The City argued that workers who were not budgeted for on a line item basis did not hold "positions" as that term is used in the Consent Judgment.

On April 27, 1997, the court rejected the City's position. It held that the Consent Judgment covered any worker who, under the common law, would be considered an "employee" and not an independent contractor. Because there was no evidence presented concerning whether the workers were employees or not, the court could not resolve that issue On October 9, 1997, the court reopened discovery, which had been stayed pending the resolution of this issue, and ordered the parties to investigate whether personal service and temporary agency contract workers are city employees under the common law definition of that term. The parties agreed to conduct discovery on a random sample from the group of over 2,000 employees to determine the employment status of these workers.

The present motion was triggered in part by the submission of the plaintiffs' petition for fees incurred while litigating the question of whether the City is violating the Consent Judgment and Compliance Plan. The City objected to any award of fees concerning this matter and argued that the plaintiffs had not yet prevailed on this issue. The fee petition was pending at the time the plaintiffs filed this motion. A resolution in plaintiffs' favor obviously eliminates the City's key objection to the award of fees.

II.  Factual History of this Dispute

The Consent Judgment in this case provides that the City would not hire any person for "non-exempt" jobs unless prior public notice of the opportunity to apply for and be hired for the job has been given. (Consent Judgment ¶ G.) There is no dispute between the parties that the

jobs at issue here are not exempt from the Consent Judgment. Paragraph G of the Consent Judgment contains a number of notice provisions with which the City must comply prior to hiring employees. These include providing notice to potential applicants at least fourteen days before the last date for which applications can be submitted for consideration for the job. That notice must include a description of the job, any qualifications necessary for the job, the pay and how and where to apply for the job. The notices must be posted at the Department of Personnel of the City at least eight additional facilities or mailed as part of a list of available jobs to every organization or person who has requested such a list.

Paragraph F of the Consent Judgment requires the City to file with the court a Plan that sets forth the details concerning how it intended to comply with the Consent Judgment. The City is required to comply with this Plan, which included additional notice provisions with which the City must comply before hiring, as well as advertising and posting procedures which the City must follow before hiring anyone for a City job.

Part II of the Plan requires all departments to submit a written "request for hire" to the Department of Personnel before hiring anyone. Part IV of the Plan describes the procedures for handling applications and screening applicants that must be followed. Part V outlines the criteria the City must consider in making any hiring decisions. The intent of the Plan is to facilitate hiring decisions which are not based on political affiliations, but are instead provide equal opportunity to prospective applicants. The Plan accomplishes this by requiring the City to give broad and effective notice of job opportunities with the City to the general public.

In 1992, the City began to hire individuals pursuant to mechanisms which it admits did not comply with the Consent Judgment and Compliance Plan. These included voucher service

agreements, personal service contracts, letter agreements, letters of understanding and one independent contract agreement. We will refer to these hiring devices collectively as "personal service contracts." These practices were challenged in 1994, culminating in the court's unequivocal ruling in 1997. This ruling flatly states that the Consent Judgment and notice provisions applied to <u>all common law employees</u>. The court refused to differentiate between workers who were hired through personal services contracts and other employees for purposes of determining the scope of the Consent Judgment. Regardless of what the City called these workers, or the mechanism used to hire them, the court held that if these workers are in fact common law employees, they are covered by the Consent Judgment.

As we stated above, the discovery taken between the time of this court order and the filing of plaintiffs' motion was directed at the issue of whether the employees hired through personal services contracts are employees or independent contractors. In 1999, the City provided plaintiffs with 2,034 contracts for people who were hired through personal service contracts. These contracts pertained to jobs with the City's Department of Aging, Cultural Affairs, Health and Revenue.

The plaintiffs initially directed discovery requests at all of these contracts. The parties agreed that the City could respond to a representative sampling from this group of contracts. The plaintiffs chose the number 406 based on their expert's finding that an accurate picture of the population with 95% accuracy of plus or minus 5% would require this many individuals. The 406 names were selected at random.

When the City was asked to admit whether these individuals were common law employees, it admitted that 226 were common law employees, denied that 13 were common law

employees and, remarkably, claimed to have insufficient knowledge concerning whether the remaining 160 workers were common law employees. (Apparently, the City did not make any response concerning five workers.) (City's Responses to Request for Admissions dated May 3, 2000; May 15, 2000; June 6, 2000 and August 21, 2000.)

Taking the 241 workers for whom the City actually made a response concerning their employment status, the plaintiffs have extrapolated that 1,791 common law employees were hired through the use of personal service contracts. The City, in its Response to Plaintiffs' Statement of Material Facts, disagreed with this number, but admitted that 228 of the 406 for whom records were produced were, in fact, common law employees. Further, the City extrapolated this number to 1,143 by dividing 228 into 406 and multiplying that number by 2,034. The City does not explain to the Court how it reached that methodology or how it is supported by statistics. The City also admits that the notice and consent procedures set forth in the Consent Judgment were not followed with respect to these employees.

The City's Response to the plaintiffs' Statement of Undisputed Facts is, in most respects, non-responsive. The City admits that over 2,000 employees "provided services" through the use of personal services and other contractual methods, but denied it hired them, asserting instead that they are employees of the agencies, not the City. However, as we already have stated, it admits that at least 228 of those for whom records were produced were common law employees and, therefore, covered under the Consent Judgment. The City consistently denies that it legally violated the Judgment, but at the same time admits that it did not comply with it with respect to at least this number of employees. It offers no evidence about the employment status of the remaining employees, other than the thirteen that it specifically denied were common law

7

employees,. It offers nothing to rebut plaintiffs' statistical extrapolation about the remaining employees other than to state that it disagrees with it. In short, the City denies it violated that Consent Judgment, but offers little in the way of evidence to support its contention.

DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c); Cox v. Acme Health Serv., Inc., 55 F.3d 1304, 1308 (7th Cir. 1995). A genuine issue of material fact exists for trial purposes when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Rule 56 (c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A scintilla of evidence in support of the non-moving part's position is not sufficient to oppose successfully a motion for summary judgment. There must be evidence on which the jury could reasonably find for the non-moving party. Anderson, 477 U.S. at 250.

The City first makes a half-hearted attempt to attack plaintiffs' standing. Clearly, the City thinks little of this argument because it relegates it to a footnote in its response to plaintiffs' motion for summary judgment. We share the City's assessment of this argument. As plaintiffs point out, as parties to the Consent Judgment, they have standing to enforce the decree. Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 750 (1975); United States v. Amoco Chemical

Co., 212 F.3d 274, 275 (5th Cir. 2000) ("a consent decree is enforceable by those who are parties to it."). None of the cases that the City cites in support of its argument suggest otherwise. In at least one, Shakman v. Dunne, 829 F.2d 1387, 1399 n. 15 (7th Cir. 1987), the court stated that the district court retained jurisdiction with respect to any claims to enforce the consent judgment that had already been entered against the defendant.

We now turn to the merits. The City's chief position is that it did not violate the Consent Judgment because it acted under a good faith interpretation of the Judgment. To this end, the City's Statement of Additional Facts in Dispute focuses on the City's historical interpretation of the Judgment to exclude those workers who were not holding "positions" which were classified by the Commissioner of Personnel, approved by the Budget Director, appropriated by the City Council and appointed by a city department head. In addition, the City points to the fact that it had hired individuals pursuant to contracts since at least 1983. The City also states that plaintiffs did not raise the status of these workers during the negotiations of the Shakman decree and asserts that they were not covered by the Consent Judgment.

Of course, the City had the ability at any time to request the Court to modify the judgment to address any existing operational difficulties which may have led to the hiring of contract workers. This option certainly should have been considered by the City once the court unequivocally ruled that the Consent Judgment covers all workers who would be considered employees under common law principles regardless of how the City chose to classify them. Instead of coming back to the court with a request to modify the Judgment, the City made a decision to ignore the import of the court's order.

Once the court ruled on this issue, the only question left to decide was whether these

workers were common law employees or not. As the court previously ruled in this case, there are five factors which govern whether a worker is an independent contractor or an employee, including (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work; (2) the kind of occupational and nature of the skill required, including whether skills are obtained in the workplace; (3) responsibility for costs of operations, such as equipment, licenses, fees, supplies and the like; (4) method and form of payment and benefits; and (5) length of job commitment and/or expectations. Alexander v. Rush North Shore Medical Ctr., 101 F.3d 487, 492 (7th Cir. 1996).

The City has failed to present any evidence addressing these issues. Thus, the only evidence on this issue before the court proves that the Consent Judgment should have applied to these workers. The City has admitted that over 200 of the workers are employees and that it did not follow the procedures set forth in Judgment when these people were hired. This presents a clear violation of the Judgment. The plaintiffs next present statistical evidence that a sample of 241 out of a population produces a picture of the total population that is 95% accurate with a margin of error of plus or minus 6.5%. Put another way, the City has admitted, in plaintiffs' view, that 94.6% (plus or minus 6.5%) of the 2,034 individuals hired were common law employees. Although the City disputes this, they offer absolutely no evidence to the contrary even though the evidence is particularly within their control.

Because the only evidence before the court is that the City did not comply with the Consent Judgment with respect to the workers hired through personal services contracts, we find that the City violated the Judgment. The City contends any violation was made in good faith. We are dubious about this assertion. For one thing, the court made plain to the city that the

Judgment applied to common law employees in 1997. So, if the City originally "misunderstood" the Judgment, that misunderstanding was cleared up with that ruling. Instead of making a good faith effort to determine which of the personal service contract workers were in fact employees, the City instead refused to answer discovery requests aimed at learning precisely that, falling back instead on a legal objection which missed the point entirely. Then the City objected to the plaintiffs' request for attorneys' fees for work performed to bring this matter to resolution and enforce the Judgment on the basis that plaintiffs had not yet prevailed on this issue. This is the factual context which surrounds the present motion.

We note that, in any event, a finding that the City is in contempt of the Consent Order will not turn on the City's good faith. The law is clear that this does not excuse non-compliance with a court order. Commodity Futures Trading Commission v. Premex, 655 F.2d 779,782 (7th Cir.1981). However, the issue of whether the City is in contempt is not properly before the Court. Plaintiffs have not filed a rule to show cause why the City should not be held in contempt and requesting specific relief, but, rather, a motion requesting the Court to rule whether City has violated the Consent Judgment. We rule today only that the undisputed evidence proves that the City has violated the Consent Judgment. We direct plaintiffs to file a rule to show cause why the Court should not find the City in contempt of the Consent Judgment which plainly sets forth the ameliorative relief, in addition to attorneys' fees and costs, that should be granted.

## CONCLUSION

For all the forgoing reasons, we grant the plaintiffs' motion for summary judgment on the issue of the City's liability for a violation of the Consent Judgment. We order plaintiffs to file a rule to show cause on or before October 10, 2001. The City may file a response to the rule on or

11

before October 23, 2001. Plaintiffs shall reply on or before October 30, 2001. The court will set this matter for hearing on November 8, 2001.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: September 27, 2001