IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL L. SHAKMAN and PAUL M. LURIE, et al., | ) ) ) |
| Plaintiffs, | ) ) ) No. 69 C 2145 |
| v. | ) ) Wayne R. Andersen |
| THE DEMOCRATIC ORGANIZATION OF COOK COUNTY, et al., | ) District Judge ) ) ) |
| Defendants. | ) |

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on the following motions by the City of Chicago and its Mayor (collectively hereinafter referred to as the "City") and Michael L. Shakman and Paul M. Lurie (collectively hereinafter referred to as the "Plaintiffs"):

(1) The City's motion to stay;

(2) The Plaintiffs' motion for Entry of a Rule to Show Cause Why the City Should Not Be Held in Civil Contempt and request for injunctive relief;

(3) The Plaintiffs' motion for Entry of a Revised Plan of Compliance; and

(4) The Plaintiffs' motion for Attorney Fees.

The Court denies the City's motion to stay, the Plaintiffs' motion for Entry of A Rule to Show Cause, and the Plaintiff's motion for Entry of A Revised Plan of Compliance. The Court grants the Plaintiffs' request for an injunction to bar the City's use of personal services contract, temporary agency workers, or other similar mechanisms without adhering to the terms of the

Consent Decree. Finally, the Court reserves ruling on the Plaintiffs' motion for Attorney Fees to a later date.

## BACKGROUND

This case's enduring history stretches as far back as 1969 and encompasses many judicial opinions by the district court and the Seventh Circuit. These include, *inter alia*, Judge Bua's opinion in *Shakman v. Democratic Org. of Cook County*, 569 F. Supp. 177 (N.D. Ill. 1983) (hereinafter referred to as the "Consent Decree"), Judge Williams' opinion in *Shakman v. Democratic Org. of Cook*, No. 69 C 2145, 1997 U.S. Dist. LEXIS 6029 (N.D. Ill. Apr. 30, 1997), and this Court's opinion in *Shakman v. Democratic Org. of Cook*, No. 69 C 2145, 2001 U.S. Dist. LEXIS 15459 (N.D. Ill. Sept. 28, 2001). We will briefly recount only the procedural history pertinent to the motions now before this Court.

In 1994, Plaintiffs intervened in an action commenced by certain individuals that challenged the City's hiring of a large number of employees without following the terms of the agreed Consent Decree. Although the original petition was dismissed, an amended application to enjoin the City's use of personal services contracts and temporary agencies was filed on February 10, 1995. Plaintiffs sought to prohibit the City from hiring a person under a personal services contract as an independent contractor without adhering to the terms of the Consent Decree. The Plaintiffs also sought to prohibit the City from using workers from a temporary agency with whom the City has contracted for services without following the terms of the Consent Decree. The latter class of workers did not have privity of contract with the City and were actually compensated and employed by the temporary agency.

2

On October 3, 1995, the City terminated its use of these challenged employment mechanisms, and discovery was stayed on the Plaintiffs' application for an injunction from that point until 1996 while the parties attempted to settle the matter. After settlement discussions failed to resolve the dispute, Plaintiffs motioned the court to determine the threshold matter of whether workers retained through personal services contracts and temporary agencies were within the Consent Decree's scope. In 1997, Judge Williams held that the Consent Decree covered any worker who, under common law, would be considered an "employee" rather than an independent contractor. *See Shakman*, 1997 U.S. Dist. LEXIS 6029, at *14-15. Judge Williams also reopened discovery to determine whether City workers retained through the challenged mechanisms were in fact common law City employees whose employment was subject to the Consent Decree. Before ruling on the issue, Judge Williams was appointed to the Seventh Circuit and the case was transferred to the current presiding Judge.

Subsequently, this Court determined that the challenged workers were indeed common law City employees and found the City in violation of the Consent Decree for failing to follow its terms in hiring them. *See Shakman*, 2001 U.S. Dist. LEXIS 15459, at *18. This Court also directed Plaintiffs to file a motion for Entry of A Rule to Show Cause Why the City Should Not Be Held in Civil Contempt. *Id.* at *18-19.

Afterwards, the City filed a motion to vacate the Consent Decree. The City argued that, based on the Seventh Circuit's decision in *Shakman v. Dunne*, 829 F.2d 1387 (7th Cir. 1987), Plaintiffs did not have standing in their original suit to challenge the City's employment practices. The City contended that the Consent Decree was invalid because this Court lacked jurisdiction to both enter and enforce it. This Court rejected the City's argument for three

reasons. First, the City's motion was time-barred. Second, the City's agreement to the Consent Decree vitiated its ability to collaterally attack it almost two decades later on jurisdictional grounds. Third, the principles in *Dunne* did not apply to the Consent Decree because the Consent Decree encompassed a comprehensive employment plan, as discussed in this Court's opinion of *Shakman v. Democratic Org. of Cook*, No. 69 C 2145, 2004 U.S. Dist. LEXIS 5149 (N.D. Ill. Mar. 30, 2004). Because of this broad scope, Plaintiffs' rights were implicated by the City's challenged practices thereby giving the Plaintiffs sufficient standing to bring their suit. Consequently, this Court denied the City's motion to vacate the Consent Decree, and the City appealed. That appeal is still pending before the Seventh Circuit.

## DISCUSSION

With this background in mind, we now turn to the City's motion to stay and the Plaintiffs' motions for Entry of a Rule To Show Cause and for Entry of A Revised Plan of Compliance.

### I. The City's Motion to Stay

The City argues that, if the Seventh Circuit reverses this Court's ruling and vacates the Consent Decree, Plaintiffs' motions now before this Court would be baseless. The City contends that delaying consideration of Plaintiffs' motions until the Seventh Circuit disposes of the City's appeal would conserve judicial resources.

The power to stay proceedings is inherent in the power of a court "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The factors regulating the issuance of a stay are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed [in his appeal] on the merits; (2) whether the applicant will be irreparably injured

4

absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Desktop Images v. Ames*, 930 F. Supp. 1450 (D.Co. 1996) (denying the defendant's motion to stay the proceedings while the defendant's appeal of the court's prior denial of the defendant's motion to dismiss the case was pending). In particular, irreparable harm must be more than "[m]ere injuries, however substantial, in terms of money, time and energy" that would be necessarily expended in the absence of a stay. *VA Petroleum Jobbers Ass'n. v. Fed. Power Comm'n.*, 259 F.2d 921, 925 (D.C. Cir. 1958). Furthermore, since these traditional factors contemplate individualized consideration in each case, other factors may be considered by a court if the facts and circumstances of the case warrant it. *See Hilton*, 481 U.S. at 777.

Applying the *Hilton* factors to this case, we find that the City's argument falls short of meeting the City's burden in support of its motion. This Court neither believes that the City's appeal is likely to succeed on the merits nor that the City would suffer any harm, much less irreparable harm, if the proceedings are not stayed. At the same time, Plaintiffs note, and this Court agrees, that consideration of their motions now is necessary to preserve their rights and to enforce a valid court order. Thus, equity favors that these proceedings should continue regardless of the City's appeal unless and until the Seventh Circuit orders otherwise. Moreover, by ruling now, the parties would have the opportunity to appeal these rulings if they so desire so that the Seventh Circuit can hear all matters simultaneously. There is also a strong public interest in ensuring that the City fulfills the objectives of the Consent Decree, which include, *inter alia*,

limitation of political patronage in the City's employment policies. Accordingly, the City's motion to stay is denied.

## II. Plaintiffs' Motion For Entry of a Rule to Show Cause Why the City Should Not Be Held in Civil Contempt

The Plaintiffs' first motion is actually a bifurcated request for (i) Entry of a Rule to Show Cause Why the City Should Not Be Held in Civil Contempt and (ii) an injunction to prohibit the City's retention of workers using personal services contracts, temporary agencies, or other similar mechanisms without adhering to the terms of the Consent Decree. We address each part of the motion separately below.

### A. Entry of a Rule to Show Cause Why the City Should Not Be Held in Civil Contempt

Plaintiffs contend that the City has a long history of violating the Consent Decree culminating in this Court's finding of a violation. *See Shakman*, 2001 U.S. Dist. LEXIS 15459, at *18. Plaintiffs further contend that the City continued this violation by not taking any action to conform its use of personal services contracts and temporary agencies to the terms of the Consent Decree even after Judge Williams' ruling in *Shakman*, 1997 U.S. Dist. LEXIS 6029, at *15 (finding that the Consent Decree covers all common law employees of the City). As a result, Plaintiffs argue that the City should be found in contempt.

The court's ability to impose sanctions to punish disobedience to judicial orders is considered essential to ensuring the judiciary's ability to vindicate its own judgments without complete reliance on other branches of government. *Commodity Futures Trading Comm'n v. Nickolaou*, No. 99 C 6425, 2000 U.S. Dist. LEXIS 11561, *25 (N.D. Ill. July 26, 2000). The court has broad discretion to fashion a remedy specific to the nature of harm resulting from

disobeying a court order and to take into consideration the effects of alternative remedies. *United States v. Cont'l Chemiste Corp.*, No. 87 C 10214, 1994 U.S. LEXIS 7594, *5 (N.D. Ill. June 6, 1994). However, this remedial power is not unlimited. *Spallone v. United States*, 493 U.S. 265, 276 (1990). In devising an appropriate remedy, courts must take into account the interests of state and local authorities in managing their own affairs consistent with the Constitution. *Id.* As such, courts are obliged to use "the least possible power adequate to the end proposed." *Id.*

In this regard, the sanctions imposed can be either civil or criminal in nature. *Id.* Civil sanctions for contempt are designed to compel or coerce obedience to a court order or to "compensate the parties for losses resulting from the contemnors' non-compliance with a court order." *Commodity Futures*, 2000 U.S. Dist. LEXIS 11561, *25 (quoting *Grove Fresh Distrib., Inc. v. John Labatt Ltd.*, 888 F. Supp. 1427, 1435 (N.D. Ill. 1995)); *see also Cont'l Chemiste*, 1994 U.S. LEXIS 7594, at *5. In contrast, criminal sanctions are primarily punitive and are designed to vindicate the court's authority. *Commodity Futures*, 2000 U.S. Dist. LEXIS 11561, at *25.

To prevail on a motion for civil contempt, the moving party must prove by clear and convincing evidence that the opposing party violated a court order. *Goluba v. The Sch. Dist. of Ripon*, 45 F.3d 1035, 1037 (7th Cir. 1995). The court must also find that the violated order sets forth clear and unequivocal commands which the party in contempt violated. *Id.*

In the case at bar, there is no question that Plaintiffs met their burden for proving that the City violated the Consent Decree. This Court has already determined as much in its September 28, 2001 Opinion. The remaining issues to be resolved now are: (1) whether finding the City in civil contempt would be application of the least possible power to compel its continued

compliance with the Consent Decree; and (2) whether the Consent Decree sets forth clear and unequivocal commands that the City should be held accountable for violating. For the reasons stated below, we answer these questions in the negative.

First, imposition of civil contempt would be inappropriate in this case because there is insufficient evidence to indicate that the City's violation of the Consent Decree is either on-going or willful. There is no indication that the City's violation continued after 2001, and, therefore, there is little justification for invoking the coercive function of civil contempt to compel the City's compliance. In addition, there is no evidence that the City's violation of the Consent Decree was willful. Even though a finding of willful violation of a court order is not required to find a party in civil contempt, the absence of such willfulness is an indication that civil contempt may be inappropriate to enforce the order. Furthermore, while the City's prior violations are a matter of serious concern to this Court, finding the City in contempt for such past violations would be too punitive in nature.

Second, the Consent Decree did not clearly and unambiguously define its scope to include workers retained through the challenged mechanisms. The Consent Decree, by its terms, covers employment "(whether full-time or part-time, permanent or temporary and regardless of whether the employment is paid for by Federal funds) by or for the City of Chicago, or any other non-federal governmental office or entity under the direction and control of the City of Chicago." *Shakman*, 569 F. Supp. at 179. In *Shakman*, 1997 U.S. Dist. LEXIS 6029, at *14-15, Judge Williams resorted to the common law definition of "employment" to determine in essence that the Consent Decree covers the City's independent contractors that fit within the common law definition of "employee." Judge Williams pursued this approach because the Consent Decree

itself did not clearly indicate how independent contractors should be classified. While this Court agrees with Judge Williams' approach and finds her conclusion to be wholly consistent with the objectives of the Consent Decree, the fact remains that the Consent Decree did not clearly and unequivocally set out this definition. Furthermore, it was not until this Court held in our September 28, 2001 Opinion, that independent contractors hired pursuant to personal services contracts and temporary agency workers were covered by the Consent Decree that the scope of the Consent Decree became clear and unequivocal as to that point. Accordingly, we find that the City's position was reasonable and there is insufficient evidence to hold the City in civil contempt.

B.  Request for Injunctive Relief

Next, we consider Plaintiffs' argument that, because of the City's prior violation of the Consent Decree, the City should be enjoined from hiring workers through personal services contracts, temporary agencies, and other such mechanisms without adhering to the terms of the Consent Decree.

While this Court will not dictate to the City the manner or methods the City should use to manage its own affairs, the City's past violation of the Consent Decree cannot be ignored. Thus, consistent with this Court's remedial power to fashion a remedy specific to the circumstances of violations of Court orders, Plaintiffs' motion for an injunction is hereby granted. It is, THEREFORE, ordered, adjudged and decreed as follows:

> The City of Chicago; the Mayor of the City of Chicago; his successors as Mayor; the present and future officers, agents, servants, employees and attorneys of the City of Chicago, and others named or referred to in this paragraph; and all others in active concert or participation with the City of Chicago, its Mayor or others named or referred to in this paragraph who receive actual notice of this paragraph, by personal

9

service or otherwise, are permanently enjoined from directly or indirectly, in whole or in part:

    (1)    Employing persons (i) pursuant to personal service contracts or similar mechanisms, or (ii) by or through temporary personnel agencies or other organizations except in full compliance with the terms of the Consent Decree and the Plan of Compliance as amended from time to time; and

    (2)    Inducing; aiding, abetting, participating in, or cooperating with the commission of any act which is proscribed by this paragraph, or threatening to commit any act proscribed by this paragraph.

To be clear, this Court's objective is not to bar the City from the use of personal services contracts, temporary agency services, or other employment mechanisms but to ensure the City's compliance with the Consent Decree.

### III. Plaintiffs' Motion For Entry of A Revised Plan of Compliance

Finally, Plaintiffs contend that the current Plan of Compliance based on the Consent Decree must be revised to reflect the City's experience in implementing it and to build on the Plaintiffs' experience with similar plans of compliance for other parties in this case. Plaintiffs' proposed amendments include appointment of an auditor with the Plaintiffs' consent to review the City's on-going compliance. Plaintiffs also seek to institute documentation, complaint procedures, and reviews of the City's employment decisions on an on-going basis. Plaintiffs ask this Court to preliminarily approve these proposed amendments and order public hearings in which members of the Plaintiff class may appear and be heard with respect to such approval.

The City objects to these amendments on the grounds that the original Consent Decree required the City alone to produce the Plan of Compliance and gave the City discretion over the employment methods applied so long as they complied with the Consent Decree. *See* Consent

Decree ¶ F. The City also notes that the Consent Decree gave Plaintiffs the authority to petition the Court only to enforce its terms if the Plan of Compliance was inadequate or if the City was not in compliance. *See id.* (noting also that Plaintiffs can petition the court to direct changes in the Plan of Compliance to bring the City in conformity with the Consent Decree).

Given the status of the case and the issue on appeal before the Seventh Circuit, we find no need to revise the Plan of Compliance at this point absent an agreement between the parties. The parties may renew negotiations to reach mutually acceptable amendments to the Plan or await the Seventh Circuit's decision with respect to the City's pending appeal. Therefore, Plaintiffs' motion to revise the Plan of Compliance is hereby denied without prejudice.

## CONCLUSION

For the foregoing reasons, the City's motion to stay these proceedings is denied. Plaintiffs' motion for Entry of a Rule to Show Cause Why the City Should Not be Held in Civil Contempt is denied, and request for injunctive relief is granted. (149, 237, 238). The Plaintiffs' motion for Entry of a Revised Plan of Compliance is denied without prejudice. (##237, 238). The Court reserves judgment on the Plaintiffs' motion for Attorney Fees to a later date.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: March 24, 2005