

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MICHAEL L. SHAKMAN, PAUL M. LURIE, )
KENNETH AYERS, ANN M. KING, )
INDEPENDENT VOTERS OF ILLINOIS- )
INDEPENDENT PRECINCT ORGANIZATION, )
MICHAEL SULLIVAN, DARRYN JONES, )
STUART MAJERCZYK, RICHARD )
GRAMAROSSA and CONNIE GRAMAROSSA, )
et al., )
 )
        Plaintiffs, )
 )
 )  Case Number:  69 C 2145
        v. )  Judge Andersen
 )  Magistrate Judge Schenkier
DEMOCRATIC ORGANIZATION OF COOK )
COUNTY, THE CITY OF CHICAGO, RICHARD )
M. DALEY, INDIVIDUALLY AND AS MAYOR )
OF THE CITY OF CHICAGO, REPUBLICAN )
STATE CENTRAL COMMITTEE OF ILLINOIS, )
REPUBLICAN COUNTY CENTRAL )
COMMITTEE OF COOK COUNTY, et al., )
 )
 )
        Defendants. )

## SUPPLEMENTAL RELIEF ORDER FOR COOK COUNTY

## TABLE OF CONTENTS

1. Rule 23 Approval ........................................................... 1
2. Conditions for Final Approval of SRO ......................................... 2
3. SRO Has No Effect On Other Parties To The Shakman Litigation ................... 2
4. Consent Decrees ............................................................ 3

**I. SHAKMAN COMPLIANCE ADMINISTRATOR** .............................................. 3

   A. CA Powers ............................................................. 3
   B. Initial Report ......................................................... 3
   C. Compensation of CA ................................................... 4
   D. Ex Parte Communications .............................................. 4
   E. County's Cooperation ................................................. 4
   F. Review Hiring Practices and Recommend Changes .......................... 4
   G. Training ............................................................. 5

**II. NEW HIRING PLAN.** ............................................................ 5

   A. Review of Current Hiring Practices. .................................... 5
   B. New Plan Development ................................................. 6
   C. Application Tracking System ........................................... 6
   D. Exemptions .......................................................... 6
   E. Impasse Resolution ................................................... 6

**III. MONITORING AND ENFORCEMENT.** ................................................ 7

   A. Covered Employees .................................................... 7
   B. Continued Jurisdiction of the Court ................................... 8
   C. CA Reports .......................................................... 8
   D. Post-SRO Monitoring and Enforcement. ................................. 8

      1. Continued CA Monitoring .......................................... 8
      2. Monitoring by Plaintiffs .......................................... 8

   E. Sunset Procedures. ................................................... 9

      1. Motion to Dissolve ............................................... 9
      2. Certification of Substantial Compliance ............................ 9
      3. CA's Opinion .................................................... 9
      4. Plaintiffs' Response ............................................. 9
      5. Conditions to Termination of the 1994 Consent Decree and the SRO .... 10
      6. Effective Date of Termination; Pending Arbitration Demands .......... 10
      7. Reinitiating Substantial Completion Process ........................ 10
      8. Substantial Compliance Definition ................................. 11

   F. Post-SRO Relief and Defenses. ......................................... 12

      1. SRO Claims and Other Relief ....................................... 12

2. Waiver of Challenge to 1994 Consent Decree and SRO Validity and Class Member Standing; Preservation of Other Defenses ........................................................................12

IV. CLAIMS PROCEDURE FOR ALLEGED PRE-SRO VIOLATIONS ...........................................12

A. Notice ........................................................................................................................13
B. Opt-Out Rights ..........................................................................................................13
C. Claim Forms ..............................................................................................................13

1. Contents .................................................................................................................13
2. Limitations Period .................................................................................................14
3. Interpretation .........................................................................................................14
4. Cooperation of County and Claimants ..................................................................14
5. Availability of Claim Forms .................................................................................15

D. Claim Determination .................................................................................................15

1. Timing ....................................................................................................................15
2. Matters to Be Considered ......................................................................................15
3. Notice of CA Decision ..........................................................................................16

E. Disbursement of Awards ...........................................................................................16
F. Release .......................................................................................................................16

1. Released Claimants ................................................................................................17
2. Released Parties .....................................................................................................17
3. Final Settlement of Claims ....................................................................................17
4. Effect of Release ...................................................................................................18

V. PROCEDURE FOR ALLEGED VIOLATIONS OCCURRING AFTER THE ENTRY OF THE SRO .....18

A. Complaints to the Inspector General's Office ...........................................................19

1. Making a Complaint ..............................................................................................19
2. IGO Investigation ..................................................................................................19
3. Distribution of Complaints ....................................................................................19
4. Cooperation with IGO ...........................................................................................19
5. IGO Resources .......................................................................................................20
6. Timing of IGO Investigation .................................................................................20
7. IGO Report ............................................................................................................21
8. Quarterly Reports ..................................................................................................21
9. Complaint Form Contents ......................................................................................22
10. Request for Additional Information .......................................................................23
11. Settlement Conference ...........................................................................................23
12. Arbitration Request Form ......................................................................................23

B. Arbitration Procedure ................................................................................................24

1. Written Arbitration Request; Due Date ...........................................................24
2. Arbitrator's Fees; Representatives of Complainant ........................................24
3. Selection of Arbitrator .....................................................................................25
4. Timing for Arbitration .....................................................................................25
5. Governing Rules ..............................................................................................25
6. Arbitrator's Decision .......................................................................................25
7. Finality of Decision .........................................................................................26

8. Waiver...............................................................................................................26
9. Audit Documentation ......................................................................................27

VI. NO RETALIATION. ....................................................................................................27

VII. COMPLIANCE REPORTS TO COURT. ......................................................................27

VIII. ATTORNEYS' FEES. ................................................................................................27

IX. TERMINATION OF THE SRO. ...................................................................................27
A. Effect of Non-Approval ....................................................................................27
B. Effect of Termination .......................................................................................28

X. ENTIRE AGREEMENT. ..............................................................................................28

In 1972, Defendant Cook County ("County") entered into a Consent Decree ("1972 Consent Decree") which, among other things, prohibited the County from "conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time already a governmental employee, upon or because of any political reason or factor." On January 7, 1994, the County entered into a Consent Decree which incorporated the 1972 Consent Decree's prohibitions and extended those prohibitions to include the County's hiring practices, with certain exclusions. The 1972 and 1994 Consent Decrees are collectively referred to as the "Consent Decrees." On August 28, 2006, the Plaintiffs filed an Application to Hold Cook County and Certain Individuals in Civil Contempt for alleged past violations of the County 1972 and 1994 Consent Decrees. On October 6, 2006, the County filed a Motion seeking to vacate the 1994 Consent Decree.

This Supplemental Relief Order for Cook County is entered upon the consent of the Plaintiffs on behalf of classes of past, present, and future (i) candidates, (ii) voters, (iii) applicants for employment with the County, and (iv) employees of the County (the "Class Members") and defendant Cook County.

NOW, THEREFORE, it is Ordered as follows:

1.      Rule 23 Approval.  For the reasons stated on the record in open court and as set forth herein, the SRO is approved. The Plaintiffs' Motion to hold the County in civil contempt and the County's motion to vacate the 1994 Consent Decree are hereby denied as moot. The Court finds that the Notice of Public Hearing has been given as required under the Preliminary Approval Order and that such notice constitutes the best notice practicable under the circumstances and is due and sufficient notice of the Settlement and proposed SRO to all persons

affected by and/or entitled to participate in the Settlement. The Court finds that extensive and substantial newspaper, television and radio publicity has been given to this case and the SRO. No objections to the SRO were filed with the Court. The Court finds that the SRO is fair reasonable and adequate.

    2.    Conditions for Final Approval of SRO. The Court finds that the conditions precedent for final approval of the SRO have been met:

    A.    The Cook County Board of Commissioners ("County Board") has enacted an Ordinance forbidding unlawful political discrimination in all aspects of employment with the County, except with respect to positions that are exempt under the Consent Decrees as modified from time to time, and endorsing the SRO.

    B.    The County Board has enacted an Ordinance making it a condition of employment that any employee of the County who learns of any unlawful political discrimination in connection with any aspect of government employment with the County, or who believes that such unlawful political discrimination has occurred or is occurring, must report this information to the Cook County Inspector General's Office ("IGO") directly and without undue delay. No person shall be compelled to report unlawful political discrimination in violation of her or his constitutional rights.

    C.    The County Board has approved the terms of the SRO.

    3.    SRO Has No Effect on Other Parties to the Shakman Litigation. This SRO shall have no effect on any parties to other judgments or orders, or persons who opt out of the SRO as

2

provided herein (collectively, "Other Parties").

4.      Consent Decrees.  The remaining applicable sections of the 1972 and 1994 Consent Decrees (collectively, the "Consent Decrees") remain in full force and effect after the Court's approval of the SRO.  However, the remedy provided in the SRO shall be the exclusive remedy for Class Members seeking remedies for claims under the Consent Decrees based on events occurring prior to the entry of the SRO who fail to opt out.

## I.      SHAKMAN COMPLIANCE ADMINISTRATOR

The Court hereby reaffirms the appointment of Julia M. Nowicki as the Shakman Compliance Administrator ("CA") to ensure future compliance with the Consent Decrees.

A.      CA Powers.  The CA shall be an agent of the Court and shall have only the duties, responsibilities and authority conferred herein by the Court and by subsequent Court Orders regarding such duties.  The CA, subject to the supervision and orders of the Court, shall study the County's existing employment practices, policies and procedures for nonpolitical hiring, promotion, transfer, discipline and discharge.  For purposes of her appointment, the CA and her counsel and staff shall possess the same immunity from suit as the Court.

B.      Initial Report.  Within 30 days of being appointed, the CA filed a report with the Court recommending powers the CA should be given to ensure compliance, necessary staffing needs, and recommending mechanisms for ensuring employment actions are in compliance with existing court orders.

3

C.    Compensation of CA. The County shall compensate the CA and her counsel and

staff at their reasonable and customary hourly rates which the Court has set

initially at $250 per hour for the CA and her counsel and which may periodically

be adjusted with Court approval or with agreement by the County. The County

shall pay any and all reasonable costs necessary to fulfill the work of the CA.

D.    Ex Parte Communications. The CA and her counsel and staff shall be permitted

to conduct *ex parte* communications with the Court and with the Parties and their

counsel.

E.    County's Cooperation. The County shall cooperate with the CA in connection

with her efforts to oversee and ensure implementation of the remaining portions of

the Consent Decrees and the SRO, including providing reasonable access to all

relevant non-privileged documents and to current employees at all levels. The CA

shall make her best efforts to minimize the disruption to the workplace during the

course of her evaluation. Given the need of the CA to review confidential

business information maintained by the County, the CA, and anyone working in

conjunction with her, will sign a confidentiality agreement.

F.    Review Hiring Practices and Recommend Changes. The CA shall review the

County's hiring practices including observing actual hiring sequences to

determine whether the County is complying with the Consent Decrees and hiring

plan. The CA will make recommendations for change, if warranted. The CA will

4

work with the County's employees to observe current hiring practices and answer questions and provide guidance as requested.

G.   Training.  The CA will assist in establishing a "train the trainer" program empowering supervisors to educate and train employees on appropriate politics-free hiring practices.

## II.   NEW HIRING PLAN.

A.   Review of Current Hiring Practices.

1.   The County and the CA will review the County's hiring practices for non-exempt employees and shall make recommendations for change as warranted.

2.   The County and the CA shall define appropriate and inappropriate hiring practices.

3.   The County and the CA shall train County's employees in order to effectuate a culture free of political consideration in all non-exempt aspects of governmental employment, including but not limited to, hiring, promotion, and discharge, overtime and transfers of the County's employees.

4.   The County shall provide notification to applicants regarding the County's hiring practices and prohibitions as well as notifications of where to report allegations of non-compliance.

5

B.    New Plan Development.  After the CA has had at least six (6) months monitoring

experience of County employment practices, the Parties shall negotiate, in good

faith, a new hiring plan (the "New Plan").  This negotiation obligation may be met

by preparation of a proposed plan by the County and the CA, so long as Plaintiffs

have a meaningful opportunity for input before the plan is presented to the Court.

When adopted and approved by the Court, the New Plan will be fully incorporated

by reference into the 1994 Consent Decree.

C.    Application Tracking System.  The County, with the input of the CA, shall

conduct a good faith analysis of the feasibility of creating an application tracking

system that is user friendly and available to applicants, to determine their current

status in the hiring process in order to enhance transparency in the hiring process.

If feasible and fiscally acceptable to the County, an application tracking system

will be established as soon as practical.

D.    Exemptions.  The New Plan will include a new list of Exempt Positions.  The

County shall develop a new list of Exempt Positions consistent with United States

Supreme Court guidance thereon.  The County shall present the new list of

Exempt Positions to Plaintiffs' Class Counsel for comment and discussion in a

good faith effort to reach agreement on the list.  Any disagreements shall be

resolved as provided in Section II.E.

E.    Impasse Resolution.  If, at any time prior to the adoption of the New Plan, the

Parties reach an impasse regarding any component of the New Plan, including

6

Exempt Positions, the CA will report to the Court the nature of the unresolved issue(s) and may make a written recommendation as how to resolve such issue(s) for the Court's determination. The Parties will have the right to be heard and make submissions concerning the resolution of any unresolved issue(s), and the Court shall then rule on the unresolved issue(s). Provisions directed by the Court pursuant to such ruling(s) will become part of the New Plan.

III.    **MONITORING AND ENFORCEMENT.**

A.    <u>Covered Employees</u>. The prohibitions of the Consent Decrees shall cover all employment by or for the County, or by or for any person or entity under the direction and control of the County, except for Exempt Positions. For this purpose "employment" means the relationship that constitutes employment at common law by the County or by or for any person or entity under the direction and control of the County except for Exempt Positions and includes probationary, temporary, part time and permanent employment, whether pursuant to a written contract or otherwise. The prohibitions do not apply to the retention of independent contractors by the County or employment by the following governmental entities: Cook County Assessor, Cook County Clerk, Cook County Sheriff, Clerk of the Circuit Court of Cook County, Cook County Treasurer, Cook County Recorder of Deeds, Cook County State's Attorney or the Forest Preserve District of Cook County. Many of these offices are subject to separate consent decrees. Nothing herein shall have any effect on any other consent decree.

7

B.    Continued Jurisdiction of the Court.  The Court retains jurisdiction for purposes

of enforcement and ongoing monitoring of the County compliance with the

Consent Decrees and the SRO, including monitoring by the CA and the CA's

counsel and staff, until such time as the Consent Decrees and the SRO shall

terminate.

C.    CA Reports.  The CA will prepare and file semi-annual reports with the Court,

and copies will be provided to counsel for the Parties.   The Parties may provide

input to the Court regarding information contained in the CA's reports.

D.    Post-SRO Monitoring and Enforcement.

1.    Continued CA Monitoring.  The CA, with her counsel and staff, shall

continue to actively monitor the County's compliance with the 1994

Consent Decree, SRO, and the New Plan until their termination as

provided for herein.

2.    Monitoring by Plaintiffs.  Plaintiffs will monitor the County's performance

under the 1994 Consent Decree, this SRO, and the New Plan through

counsel of their choice, may present matters to the Court including

enforcement actions, and may petition the Court for costs and attorneys'

fees incurred as part of their reasonable, appropriate, non-duplicative

monitoring and enforcement.

8

E.    Sunset Procedures.

  1.    Motion to Dissolve. On or after December 31, 2008, the County may file
        a Motion to Dissolve the 1994 Consent Decree and this SRO effective
        March 1, 2009. The County has the burden of showing that it is in
        Substantial Compliance (as defined below).

  2.    Certification of Substantial Compliance. As a condition precedent to
        filing of a Motion to Dissolve, the Cook County Board President
        ("President") and the County Chief of Human Resources must certify in
        writing, that, after appropriate review and inquiry, they believe that the
        County is in Substantial Compliance with the 1994 Consent Decree and
        this SRO (together, the "Certifications of Substantial Compliance"). The
        Certifications of Substantial Compliance must be attached as exhibits to
        the Motion to Dissolve.

  3.    CA's Opinion. Within 30 days after the receipt of the Motion to Dissolve,
        the CA will advise the Court whether, in the opinion of the CA ("CA's
        Opinion"), the County is or is not in Substantial Compliance with the 1994
        Consent Decree and this SRO. The County and Plaintiffs' Counsel have
        the right to challenge the CA's Opinion and to request a hearing from the
        Court.

  4.    Plaintiffs' Response. Within 30 days of receiving the CA's Opinion, the
        Plaintiffs may file a response to the Motion to Dissolve.

9

5.     Conditions to Termination of the 1994 Consent Decree and the SRO.  The

1994 Consent Decree and the SRO shall terminate on March 1, 2009 if (i)

the Certifications of Substantial Compliance have certified that the County

is in Substantial Compliance, (ii) the CA has filed with the Court the CA's

Opinion finding that the County is in Substantial Compliance, and (iii) the

Court has determined, after such procedures the Court deems appropriate,

that the County is in Substantial Compliance.

6.     Effective Date of Termination; Pending Arbitration Demands.  The

effective date of termination shall be the date upon which all judicial

proceedings, and expiration of rights to appeal, have concluded following

a final judicial decision that Substantial Compliance has been achieved.

Termination of the 1994 Consent Decree and the SRO shall have no effect

on any claim, complaint or written demand for arbitration filed under the

terms of the 1994 Consent Decree or the SRO filed within one hundred

twenty (120) days of the date the SRO and 1994 Consent Decree are

terminated if based on alleged conduct occurring prior to termination.

7.     Reinitiating Substantial Completion Process.  If the 1994 Consent Decree

and SRO are not terminated after the filing of a Motion to Dissolve by the

County, they shall remain in effect.  In its order denying the Motion to

Dissolve, the Court, with the input of the Parties, shall set a new date after

10

which the County may, by written request to the Court, reinitiate the above Substantial Compliance certification and CA Opinion process.

8.    Substantial Compliance Definition.  Substantial Compliance means:

(1)    the County has implemented the New Plan, including procedures to ensure compliance with the New Plan and identify instances of non-compliance;

(2)    the County has acted in good faith to remedy instances of non-compliance that have been identified, and prevent a recurrence;

(3)    the County does not have a policy, custom or practice of making employment decisions based on political factors except for Exempt Positions;

(4)    the absence of material noncompliance which frustrates the 1994 Consent Decree and the SRO's essential purpose.  The CA and the Court may consider the number of post-SRO complaints that the IGO found to be valid.  However, technical violations or isolated incidents of noncompliance shall not be a basis for a finding that the County is not in substantial compliance; and

(5)    the County has implemented procedures that will effect long-term prevention of the use of impermissible political considerations in connection with employment with the County.

11

F.      Post-SRO Relief and Defenses.

    1.      SRO Claims and Other Relief.  Class Members may file for post-SRO claim relief under the post-SRO claim procedure, or may seek relief as otherwise provided by law.

    2.      Waiver of Challenge to 1994 Consent Decree and SRO Validity and Class Member Standing; Preservation of Other Defenses.  The County shall not seek to vacate, appeal or otherwise challenge the validity of the 1994 Consent Decree or this SRO and the County stipulates and agrees that the Court has continuing jurisdiction and authority to enforce the 1994 Consent Decree and this SRO.  The County expressly waives, covenants and agrees not to assert any argument or claim that any Class Member who seeks relief under the pre or post-SRO claim procedure lacks standing to enforce the 1994 Consent Decree or this SRO or to seek relief under the 1994 Consent Decree or this SRO.  However, the County is not precluded from defending a claim brought under the Consent Decrees or this SRO on the basis that the individual is not entitled to relief on grounds other than standing.  If any individual opts out of this SRO to pursue her or his claims, the County reserves the right to raise any and all defenses to such claims, including standing.

**IV.      CLAIMS PROCEDURE FOR ALLEGED PRE-SRO VIOLATIONS**

A.     Notice. The County shall provide to Class Members a Notice of the Claims Procedure and Notice of Opt-Out Rights, in a form and manner approved by the Court. The County shall also provide Notice to all County employees with their paychecks and shall include a Claim Form and an Opt-Out Request form.

B.     Opt-Out Rights. Any Class Member who alleges a violation of the Consent Decrees arising prior to the final approval date of the SRO may elect not to participate in the Claims Procedure by submitting an Opt-Out Request to the CA. The Opt-Out Request must be received by the CA by the date specified in the Notice which shall be approximately one hundred twenty (120) days after the final approval of the SRO (the "Opt-Out Date"). Class Members who opt out would be free to file suit to pursue any claim.

C.     Claim Forms. Class Members who wish to file a claim against the County must submit a Claim Form to the CA. All Claim Forms must be received by the CA by the date specified in the Notice which shall be approximately one hundred twenty (120) days after the final approval of the SRO (the "Claim Deadline").

     1.     Contents. The Claim Form shall consist of sworn statements setting forth individual claims including: the date of the alleged violation; a narrative description of the alleged violation; a description of alleged damages; identifying information including the Claimant's full name, address and telephone number; and a release of certain claims as defined below. Claimants must attach any supporting documentation to the Claim Form.

13

2.  Limitations Period. A Class Member may allege claims based on violations of the Consent Decrees arising on or after August 28, 2004, and the County waives any limitations or laches defenses with respect to such claims. Any Class Member who alleges a violation of the Consent Decrees arising prior to August 28, 2004 must set forth facts in her or his Claim Form showing why the Class Member could not have discovered her or his claim before August 28, 2004 or facts that would support a claim for fraudulent concealment or equitable tolling. The CA may consider to allow any pre-August 28, 2004 claims if she determines they could not reasonably have been discovered by the Claimant prior to August 28, 2004, were not discovered by the Claimant due to fraudulent concealment, and/or should be equitably tolled.

3.  Interpretation. The CA shall interpret the Claim Forms in a liberal, non-technical manner, and may request amplification or clarification of claims to facilitate identifying valid claims and eliminating those that are not. Subsequent amplification and clarification shall be deemed part of the Claim Form as of the date filed.

4.  Cooperation of County and Claimants. During the claims review process the County and/or the Claimant will provide any and all information and documents reasonably requested by the CA. No person shall be compelled

14

to provide privileged information or information in violation of her or his constitutional rights.

5.    <u>Availability of Claim Forms</u>.  Claim Forms shall be available from the CA, the County, the State's Attorney's Office ("SAO") – Civil Actions Bureau, and Plaintiffs' Counsel. Claim Forms shall also be available for printing from a website created by the CA and from the County's website. Copies of all Claim Forms and supporting documentation filed with the CA shall be made available to the Parties for review and copying.

D.    <u>Claim Determination</u>.

1.    <u>Timing</u>.  Within ninety (90) days of the Claim Deadline, the CA, in her sole discretion and after consideration of all of the evidence, shall determine whether the Claimant is eligible for recovery and, if so, shall assign a monetary award to the Claimant based on the relevant information presented to the CA or otherwise in her possession.

2.    <u>Matters to Be Considered</u>.  In determining the assigned award amount for any claim, the CA may consider all relevant factors and evidence regarding the claim, including but not limited to the following, to the extent applicable: (a) the ratio of applicants to the actual number of positions filled; (b) the facts presented regarding the alleged violation; (c) the salary of the position sought or held; (d) the economic benefit of the action at issue and the number of eligible recipients; and (e) the strength of

15

the evidence presented.  In the event additional time is required by the CA to assess a claim, the CA shall so inform the Claimant and the County within such ninety (90) day period, and the time shall be extended for the period so specified.

3.    Notice of CA Decision.  The CA shall inform the Claimant and the Parties of her decision by sending a Notice of Determination to the Claimant, the SAO – Civil Actions Bureau and Plaintiffs' Counsel.  The CA's decision shall be final, unless the Claimant or County files an objection to the Notice of Determination with this Court on or before thirty (30) days after the CA's decision is rendered.  The CA's decision shall be affirmed absent a finding that the CA abused her discretion.

E.    Disbursement of Awards.  Within thirty (30) days following the CA's determination on all claims, the CA shall provide the SAO – Civil Actions Bureau with a list of Claimants eligible for an award, the Claimants' last known mailing address, social security numbers of any non-employee, and the amount of each award.  Within sixty (60) days of receipt of the CA's list of Claimants and awards, the County shall mail a check in the amount of the award to each Claimant who has received an award at her or his last known mailing address.  The SAO – Civil Actions Bureau shall provide the CA and Plaintiffs' Counsel with a complete list of all amounts paid, the recipients and the dates of payment.

F.    Release.

16

1. <u>Released Claimants</u>.  As used herein, the term "Released Claims" means any and all claims, causes of action, rights, actions, suits, obligations, debts, demands, judgments, agreements, promises, liabilities, controversies, costs, expenses or attorneys' fees, of every nature and description whatsoever that have been or could have been asserted in this Action and whether now known or unknown, suspected or unsuspected, arising out of employment decisions of any kind (including, but not limited to, hiring, promotion, termination, assignments, disciplinary decisions, overtime and the like) made by the County with respect to Class Members prior to the final approval of the SRO by the Court and based on the claim that those employment decisions were impermissibly motivated by political considerations.

2. <u>Released Parties.</u>  As used herein, the term "Released Parties" means: the County, the President, the Board, and all of the County's employees, agents, advisors, and attorneys, and their heirs, executors, administrators, personal or legal representatives, successors, transferees and assigns.

3. <u>Final Settlement of Claims</u>.  The obligations incurred by the County pursuant to this SRO, shall be in full and final disposition and settlement of all claims, actions, suits, causes of action, and liabilities relating to any of the facts, transactions, events, occurrences, acts or omissions which

17

have been asserted or could have been asserted by the Classes against the Released Parties in the Action.

4.    Effect of Release.  Once the SRO has been finally approved by the Court, the time for appeal has run or all appeals have been finally exhausted and the SRO has not been modified or affected by any such appeal, and the County has made the payments required by the SRO, all Released Claims that have been or could have been asserted by any member of the Classes against the Released Parties or any of them shall be forever extinguished and released, regardless of whether any claim has been filed  pursuant to the Claims provisions of the SRO.

## V.    PROCEDURE FOR ALLEGED VIOLATIONS OCCURRING AFTER THE ENTRY OF THE SRO.

Any individual who alleges that she or he is a victim of unlawful political discrimination in connection with any aspect of government employment with the County in violation of the Consent Decrees or the SRO at any time after the final approval of this SRO may seek relief through the claim and arbitration procedure established by this SRO or may pursue his or her claim under applicable law.  Subject to the tolling provision below, a Complainant who wishes to seek to recover damages suffered as a result of unlawful political discrimination must make a complaint with the IGO[1] or file suit within one hundred twenty (120) days after the date on which the Complainant

---

1 Should plaintiffs object to the individual serving as the IGO, the plaintiffs may suggest another individual or entity designated to administer post-SRO complaint procedures.  If an agreement cannot be reached, this issue may be presented to the court to facilitate resolution by agreement, failing which the Court may designate an individual to perform the duties of the IGO under this SRO and such individual is to be paid by the County either at rates to be

learned or should have learned of the unlawful conduct.  If the Complainant chooses to file suit, the limitations period of applicable law shall govern.

A.     Complaints to the Inspector General's Office.

      1.     Making a Complaint.  Any individual may make a complaint to the IGO alleging unlawful political discrimination in connection with any aspect of government employment with the County.  The IGO may receive such complaints in any manner established by the IGO.

      2.     IGO Investigation.  The IGO shall be responsible for conducting or directing the investigation of the complaint.

      3.     Distribution of Complaints.  Within fourteen (14) days of receiving a complaint, the IGO shall provide a copy of the complaint to the CA, Plaintiffs' Counsel, and the SAO – Civil Actions Bureau.  The complaint to the IGO shall otherwise remain confidential and shall not be disclosed to anyone outside the IGO except as provided for in the IGO Ordinance. The CA, Plaintiffs' Counsel, the SAO, and their agents shall not disclose the contents or existence of the complaint to anyone other than the Court until the IGO completes its investigation or the Complainant files a Complaint Form with the SAO.

      4.     Cooperation with IGO.  The County, its employees, and related entities, and the CA and her agents, shall fully cooperate with the IGO's

agreed upon or at their reasonable and customary hourly rates as determined by the Court.

investigation of the complaint, by, among other things, promptly providing any and all requested documents and information to the IGO, and providing the IGO with access to all requested documents and records in a manner that will preserve the confidentiality of the IGO investigation. No person shall be compelled to respond to any request for information in violation of her or his constitutional rights.

5.    IGO Resources. The County shall provide the IGO with reasonable and fair additional resources to independently, effectively and expeditiously investigate such complaints and shall maintain such resources until the IGO has completed its duties hereunder.

6.    Timing of IGO Investigation. The IGO shall investigate such complaints expeditiously. The IGO shall complete its investigation within one hundred eighty (180) days of receipt of the complaint. If the IGO is not able to complete its investigation within the time allotted, the IGO shall notify the SAO, the Complainant (if the Complainant has alleged that she or he has been harmed by the unlawful political discrimination), the CA, and Plaintiffs' Counsel of the reasons for the failure to complete the investigation with the allotted time. The IGO notice of failure to complete the investigation within one hundred eighty (180) days will be accompanied by a Notice of Rights. The Notice of Rights will inform Complainants that if he or she wishes to seek relief for alleged unlawful

20

political discrimination in connection with any aspect of government employment with the County, the Complainant must either wait for the IGO to complete its investigation to pursue a claim under the Consent Decrees or the SRO or may pursue his or her claim under applicable law by filing suit within forty-five (45) days. The limitations period applicable to any individual's claims against the County or any other person will be tolled from the date a complaint is filed with the IGO until the date the IGO issues its report.

7.     IGO Report. At the conclusion of its investigation, the IGO shall report in writing the results of its investigation to the Complainant (if the Complainant has alleged that she or he has been harmed by the unlawful political discrimination), the CA, Plaintiffs' Counsel, the President, and the SAO. If the IGO finds at the conclusion of its investigation that impermissible political factors were considered in an employment decision, the IGO's report shall include the names of all individuals who, according to its investigation, were victims of unlawful political discrimination in connection with any aspect of government employment with the County and the individuals responsible for such discrimination.

8.     Quarterly Reports. No later than the fifteenth day of January, April, July, and October of each year, the IGO will provide the CA, Plaintiffs' Counsel, and the SAO – Civil Actions Bureau with a report, accurate as of

21

the last day of the preceding month, indicating: the number of complaints received since the date of the last report; the number of investigations initiated since the date of the last report; the number of investigations concluded since the last report broken down by sustained and non-sustained cases; and the number of investigations pending as of the reporting date.

9.   Complaint Form Contents.  An individual who elects to seek relief for alleged unlawful political discrimination in connection with any aspect of government employment with a County under the SRO must file a Complaint Form with the SAO – Civil Actions Bureau within forty-five (45) days of the IGO's report or notice.  The Complaint Form shall include a sworn statement setting forth the Complainant's claims, including:

(1)   the date or dates of the alleged violation;

(2)   a narrative description of the alleged violation;

(3)   a description of the alleged damages;

(4)   identifying information including the claimant's name, address, telephone number, and social security number;

(5)   copies of the appropriate supporting documentation, if in the possession of the Complainant; and

22

(6)     a statement of the relief requested by the Complainant including

the amount of any damages the Complaint seeks to recover or

injunctive relief.

10.     Request for Additional Information.  Upon receiving a Complaint Form, if

the SAO determines that it requires additional information from the IGO

in order to assess the merits of the Claim, the SAO shall request such

information from the IGO within seven (7) days from receipt of the

Complaint Form.  The IGO shall provide such information to the SAO

with a copy to the Complainant within seven (7) days of the SAO's request

for information.

11.     Settlement Conference.  Within twenty-eight (28) days from the date upon

which the SAO receives a Complaint Form, the SAO and the Complainant

shall hold an in person settlement conference for settlement purposes only

and the statements made and the positions taken shall not be disclosed if

arbitration is sought.  Settlement offers may include, but are not limited to,

monetary damages, reinstatement or other equitable relief.  If accepted by

a Complainant, copies of executed settlement agreements shall be

provided to the CA and Plaintiffs' Counsel.

12.     Arbitration Request Form.  At the conclusion of the settlement conference,

if the parties have not reach an agreement, the SAO shall provide the

Complainant with an Arbitration Request Form.

23

B.      Arbitration Procedure.

        1.      Written Arbitration Request; Due Date.  Any requests for arbitration must

                be received by the SAO within thirty (30) days after the SAO either makes

                a written settlement offer or notifies the Complainant in writing that no

                offer will be made.  The Complainant and the County can agree in writing

                to an extension of this date.  The Complainant must submit a written

                request for arbitration on the Arbitration Request Form provided by the

                County.  The Request for Arbitration must state with reasonable specificity

                sufficient to put the County on notice of the actions that are alleged to

                violate the Consent Decrees or this SRO and the relief sought.  The

                Complainant shall pay a $100 filing fee at the time of the Request for

                Arbitration.  If the Complainant is the prevailing party, the arbitrator shall

                award the Complainant the $100 filing fee along with any other relief.

                The SAO shall provide a copy of any written Request for Arbitration to

                Plaintiffs' Counsel and the CA within fourteen (14) days of its receipt.

        2.      Arbitrator's Fees; Representatives of Complainant.  The arbitrator's fees

                and any costs of administration shall be paid by the County.  The

                proceedings shall be electronically recorded.  Either party may order a

                transcript of the proceedings at their own expense.  A Complainant may

                appear on his or her own behalf, be represented by an attorney, or be

                represented by any other representative of his or her choice.

                                            24

3.    Selection of Arbitrator.  The Court will establish a panel of six arbitrators.
       The arbitrators must be on a list of arbitrators approved by the American
       Arbitration Association.  The Parties may object to the selection of an
       arbitrator.  The Court will rule on any objection(s) prior to the final
       approval of the panel of arbitrators by the Court.  The approved arbitrators
       will serve on a rotating basis.

4.    Timing for Arbitration.  The SAO shall inform the arbitrator of her or his
       selection within fourteen (14) days of receipt of the Arbitration Request
       Form by sending the Arbitrator a copy of the Arbitration Request Form
       and accompanying documents.  The arbitrator shall provide the
       Complainant, the SAO, and Plaintiffs' Counsel notice of her or his
       selection along with a proposed schedule that provides for pre-hearing
       production of documents and information and for completion of the
       arbitration within one hundred twenty (120) days of the selection of the
       arbitrator.  Failure to complete the arbitration within such period, however,
       shall not affect the validity of the arbitrator's award.

5.    Governing Rules.  The arbitration shall be governed by the National Rules
       for Employment Disputes of the American Arbitration Association.

6.    Arbitrator's Decision.  The arbitrator must issue a written award, including
       written findings of fact, within thirty (30) days of the completion of the
       arbitration hearing.  Copies of the decision shall be provided to the

25

Complainant, the SAO, the CA and Plaintiffs' Counsel.  The award shall determine (i) whether the Consent Decrees or the SRO have been violated; (ii) whether the Complainant has met the burden of proof which is a preponderance of the evidence standard as set forth in applicable law; and (iii) the appropriate remedy.  Prevailing Complainants shall be entitled to reasonable attorneys' fees and costs as set forth in the resolution for the appointment of Special State's Attorneys.  Complainants may petition the Court for additional attorneys' fees in special circumstances, such as where the issues presented were complex justifying compensating the Complainant's attorneys at a higher rate.

7.    Finality of Decision.  The Arbitrator's award shall be final and binding upon all parties.  The award may be reviewed and enforced, and judgment entered in conformity therewith, solely and exclusively by and in this Court, which shall apply the procedures and standards set forth in Sections 5/11-5/15 of the Illinois Uniform Arbitration Act, 710 ILCS 5/11-5/15, inclusive, and applicable court decisions under those provisions of that Act.

8.    Waiver.  Any Complainant who proceeds under the Arbitration Process waives any and all rights she or he may otherwise have arising from the alleged violations of the Consent Decrees or the SRO set forth in his or her written Arbitration Request Form.

26

9.     <u>Audit Documentation</u>. The County shall maintain all documentation related to complaints, investigations, and arbitrations arising under Section IV until two years after the Consent Decrees and this SRO have terminated.

## VI.   NO RETALIATION.

No person shall take any unlawful retaliatory action against any individual who exercises any rights provided by, or who reports violations of, the Consent Decrees or the SRO. Any individual who believes retaliation has occurred may seek relief under the post-SRO process.

## VII.   COMPLIANCE REPORTS TO COURT.

The CA shall report periodically, and at a minimum every six months, on the status of compliance with the Consent Decrees and the SRO while they are in effect.

## VIII.   ATTORNEYS' FEES.

The Parties represent that they have not agreed to or discussed the amount of attorneys' fees awardable to Plaintiffs' Counsel or costs prior to entry of this SRO, but will attempt to reach agreement as to such amount within forty-five (45) days of entry of this SRO for presentation to the Court for its review and approval. If the Parties are unable to reach agreement, the Plaintiffs' Counsel shall be entitled to petition for an award of fees and the County shall be entitled to assert objections thereto.

## IX.   TERMINATION OF THE SRO.

A.     <u>Effect of Non-Approval</u>. If, for any reason, the SRO does not become final (that is, is finally approved and the time for appeal expires with no appeal being filed or

27

all appellate review has been exhausted and the SRO remains intact), the Parties shall revert to their respective positions immediately prior to the execution of the SRO.

B.     Effect of Termination. If the SRO is terminated as provided for in section IX.A. above, this SRO shall have no further force and effect. All negotiations, proceedings and statements made in connection herewith shall be without prejudice to any person or party hereto, shall not be deemed or construed to be an admission by any Party of any act, matter or proposition, and shall not be used in any manner or for any purpose in any subsequent proceeding in the Action or in any other action or proceeding.

## X.    ENTIRE AGREEMENT.

All prior negotiations and agreements between the parties hereto, with respect to this SRO, are superseded by this agreement and there are no representation, warranties, understandings, or agreements of the parties relating to the subject matter hereof, other than those expressly set forth in this agreement and order.

**ENTER:** *February 2, 2007*

Hon. Wayne R. Andersen
United States District Judge

28