IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL L. SHAKMAN et al., )
                                       )     No. 69 C 2145
              Plaintiffs, )
    v. )
                                       )     Wayne R. Andersen
CITY OF CHICAGO et al., )    District Judge
                                       )
           Defendants. )

**MEMORANDUM OPINION ADOPTING THE CITY OF CHICAGO'S
PROPOSED HIRING PLAN SUBJECT TO CERTAIN CONDITIONS**

This case is before the Court on the submissions of Plaintiffs, Monitor Noelle Brennan, Inspector General David Hoffman, the City of Chicago, and Mayor Richard M. Daley regarding the City of Chicago's Proposed Hiring Plan ("the Plan"). For the reasons stated below, the Court will adopt the City's Plan subject to certain conditions.

**BACKGROUND**

On August 16, 2007, the City of Chicago filed the Plan as required by the Agreed Settlement Order and Accord ("Accord"). The Accord placed the responsibility for developing a New Hiring Plan on the City, while giving Noelle Brennan, the Court appointed Monitor, and the Plaintiffs the right to participate in the development process and to file objections to the City's proposal in the event they disagreed with the City's Plan. The Accord provides that the Court has the responsibility to resolve disputes between the parties.

The City, the Plaintiffs and the Monitor agree on virtually all aspects of the City's Plan. However, they disagree on two issues: 1) where the newly created Hiring Process Compliance Manager ("HPCM") and the compliance and auditing staff should be housed and to whom the

HPCM should report; and 2) whether all contacts by Aldermen, the Mayor's Office or any other elected officials regarding the employment of a particular job seeker or employee must be reported and logged. We will examine each of these issues in turn.

### DISCUSSION

I. <u>Hiring Process Compliance Manager</u>

The Plan calls for creation of an independent Office of Compliance which is responsible for overseeing compliance with the governance system set up by the Plan. To insure independence, the Executive Director of the Office of Compliance has a fixed four-year term of office and cannot be removed except for cause. The City has appointed Tony Boswell to fill the position of Executive Director of the Office of Compliance. Mr. Boswell has no prior connection to the City of Chicago, has never been an employee of the City and has had no involvement in Chicago politics.

Under the Plan, the newly-created office of the HPCM would report to Mr. Boswell, the Executive Director of the Office of Compliance. The Plan states that the HPCM "shall have career service protection," and the City will "make every effort to fill the position of HPCM with an individual who is not a current or former employee." (Plan at 13). Under the Plan, the HPCM and his or her staff will have primary responsibility for monitoring and auditing compliance with the key processes that have been set up to ensure that employment decisions will be made based on permissible criteria.

Plaintiffs and the Monitor agree that there should be an HPCM, and that the HPCM should be responsible for carrying out the oversight responsibilities assigned to that position by the Plan. The dispute is over where the HPCM's office should be located and to whom the

HPCM should report. Plaintiffs and the Monitor contend that the HPCM should report to the Inspector General and that the HPCM's staff should be part of the Inspector General's Office. The City asserts that compliance and investigatory functions should not be concentrated in a single office and that the HPCM should instead be part of the newly created Office of Compliance. The Inspector General who appears to be doing an excellent job, has advised the Court that his office is capable of handling this function; the Court concurs.

We have considered the extensive briefs submitted by the City, the City Council, the Mayor's Office, the Monitor and the Plaintiffs setting forth their respective arguments on this issue. For the reasons set forth below, we adopt the City's proposal to locate the HPCM in the Office of Compliance.

All of the parties (and non-parties) have expressed cogent arguments about their preferred choice of the location and reporting structure for the HPCM. However, we are unpersuaded that there is any "best practice" that augers in favor of placing the HPCM in either the Office of Compliance or the Inspector General's Office. So long as there are appropriate safeguards to ensure the independence of the HPCM, transparency in its operations, and commitment by high level City officials to making a non-political employment process work, we are convinced that the HPCM can serve an important function irrespective of the office in which it is housed.

The Plan provides important safeguards to ensure the independence of the HPCM. The HPCM will have career service protection, and will report to an individual – Mr. Boswell – who can be removed only for cause and who has no prior connection to Chicago politics. This structure provides important insulation for the HPCM, and gives him/her latitude to make decisions and recommendations with no less independence than this person would have if he or

she were located in the Inspector General's Office. The City also proposes that it would attempt to hire as HPCM a person who is not a current or former City employee, as it did in hiring Mr. Boswell. We agree that this would provide further separation – and thus independence – between the HPCM and the City employment process that he/she would be monitoring and auditing. Moreover, the City's success in recruiting an Executive Director for the Office of Compliance who had no prior connection to the City demonstrates that it is entirely feasible to do likewise with the HPCM. Thus, as a condition of approving the Plan, we will require that it be amended to provide that the City must hire an HPCM who is not a current or former employee of the City and that that person be selected by Mr. Boswell.

As for transparency, we believe that there must be open communication between the HPCM, the Monitor and the Inspector General. The functions to be served by each of those offices are complementary, not contradictory. There is no reason that the monitoring and auditing work of the HPCM should not be available to the Monitor and Inspector General. To ensure that this transparency occurs, as a condition of approving the Plan we will require that the HPCM and the Executive Director of the Office of Compliance regularly provide to the Monitor and to the Inspector General whatever information they reasonably request.

Finally, we turn to the commitment by the City to achieve the goals of the Accord. We are mindful of the skepticism that the Monitor and the Plaintiffs have expressed about the depth of the City's commitment. They express the concern that, if housed in the Office of Compliance, the HPCM may be more subject to political pressure (subtle or otherwise) to equivocate in discharging the auditing and monitoring function. The safeguards set forth above promoting independence and transparency address that concern.

Allowing the Plan to be implemented as proposed, this Court will have ample time to determine whether the structure the City has proposed will meet the requirements of the Accord while the Court and the Monitor still have oversight roles. The Accord provides that the Monitor will continue her work at least until the end of 2008. The Accord will not terminate until this Court finds that the City is in substantial compliance with its obligations. Should problems occur which show that the City's Plan and its implementation of it fail to meet its stated purpose or constitutional standards, the Court will have the opportunity to make any needed adjustments. In short, the City will be given an opportunity to show that the skepticism is ill-founded, and that it will attain the substantial compliance standard under the Accord. The Accord will not terminate and Court oversight will continue until the City is in substantial compliance.

Moreover, if the Court were to require that the HPCM report directly to the Inspector General (and the Court suspects that such a reporting requirement would enhance compliance while it lasted), and the City came into substantial compliance, the Court would not be able to determine that the City would remain in compliance after termination of the Accord. Compliance during the Accord with a reporting pattern favored by the City would create a much higher degree of confidence that compliance would continue after termination of the Accord. Before agreeing to termination of the Accord, the Court would like to get the best look possible at how the City is likely to function if and after the Accord is terminated.

For these reasons, we will permit the City's Plan to go forward provided the following conditions are met: First, the HPCM must be a person who is not a current or former City employee and who has no connection to Chicago politics and must be selected by Mr. Boswell;

second, the HPCM and the Executive Director of the Office of Compliance must provide both the Monitor and the Inspector General with any information they reasonable request.

## II. Recording Of Contacts By Elected Officials

The next issue for the Court to resolve centers around the "logging" of contacts by elected or appointed officials. The parties agree that attempts by Aldermen, the Mayor's Office or elected or appointed officials to influence hiring on the basis of political factors should be documented (referred to as a "patronage log"). The parties also agree that recommendations from public officials that are based on their personal knowledge of the person's work skill, work experience, or other job-related qualifications are permitted and can be considered just as any other recommendations are considered.. The parties differ on what type of contacts should be monitored and recorded to ensure that political reasons or factors are not being considered.

The City's Plan requires only that a report be made to the HPCM when an improper contact based on political reasons or factors from any elected official, including from Aldermen or the Mayor's Office, occurs. The City's proposal requires that each individual within the hiring department or the Department of Human Resources who receives an inquiry determine whether the inquiry was improperly "based on political reasons or factors." (Plan § II.10). This provision requires various individuals within different departments to determine independently what constitutes an improper contact based on political reasons or factors. Thus, the City would place the responsibility for deciding what constitutes an impermissible political contact on the person receiving the call.

We agree with the Monitor and Plaintiffs that the only effective way to monitor attempts to influence hiring on the basis of political reasons is to require that all contacts by Aldermen, the

6

Mayor's Office or other elected officials with the hiring departments or the Department of Human Resources regarding the employment of a particular job seeker or employee be reported to the HPCM. Currently, the Monitor receives reports of all contacts regarding all employment actions regarding particular individuals, regardless of whether such reports are deemed "improper" or not. Notably, the provision proposed by the Monitor does not require City employees to record **all** contacts with elected officials in the patronage log, as the City Council incorrectly contends. Instead, only contacts attempting to affect any **employment** decisions must be recorded.

We believe that the only effective way to monitor attempts to influence hiring on the basis of political reasons or factors is to require that all contacts by, or on behalf of, elected or appointed officials attempting to influence employment decisions be included in the patronage log and reported to the HPCM. This will enable the Monitor, the Court, and other interested parties to review the contacts to see patterns and to identify potential unlawful discrimination. Therefore, we adopt the Monitor's proposed patronage log provision and reject the corresponding provision in the Plan.

## **CONCLUSION**

For the foregoing reasons, we accept in part and reject in part the City of Chicago's 2007 Hiring Plan. We will permit the Hiring Process Compliance Manager to be housed in the Office of Compliance if the Hiring Process Compliance Manager is not a current or former City employee and who when appointed has no ties to Chicago politics and so long as the Hiring Process Compliance Manager is selected by the Executive Director of the Office of Compliance. We strike from the City's Plan the provision regarding the logging of contacts by elected or

appointed officials and direct that the log of contacts be maintained to the satisfaction and requirements of the Monitor.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated:   January 18, 2008