IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL L. SHAKMAN and PAUL M. LURIE, et al. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 69 C 2145 |
| THE CITY OF CHICAGO, et al., | ) ) ) | Wayne R. Andersen District Judge |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court to resolve the six petitions for attorneys' fees and costs filed by Plaintiffs in this action to be paid by the City of Chicago. For the following reasons, we grant in part and deny in part Plaintiffs' petitions for attorneys' fees and costs. We conclude that Plaintiffs are entitled to an award of attorneys' fees, including interest, in the amount of $3,600,000.00 and $84,150.40 as reimbursement for costs. This attorneys' fee is equal to 30 percent of the $12,000,000.00 settlement fund agreed to by the City.

## BACKGROUND

This case is part of the on-going litigation against the City and other governmental entities under the *Shakman* Consent Decrees. The litigation began in 1969 when Michael L. Shakman and Paul M. Lurie brought claims on behalf of themselves and classes of independent candidates, voters and taxpayers in Cook County against a number of defendants, including the City of Chicago and its Mayor. In essence, the Complaint charged that the City conditioned

employment on the applicant's support of the Cook County Regular Democratic Organization in violation of the Plaintiffs' constitutional rights. Over the years, a number of different matters have arisen regarding various Defendants' compliance with the Consent Decrees and resulting Compliance Plans. This case's enduring history encompasses many judicial opinions by the District Court and the Seventh Circuit which are too comprehensive and detailed to be recounted here.

## **DISCUSSION**

Plaintiffs' fee petitions seek to recover attorneys' fees and costs incurred for legal work in the proceedings covering the period from January 1, 1998 through May 31, 2007. Plaintiffs seek to recover attorneys' fees incurred in monitoring and enforcing the 1972 and 1983 Consent Decrees entered in this case, intervening in the Pennick proceeding, opposing the City's motion to vacate the 1983 Consent Decree, seeking to hold the City and Mayor Daley in contempt for allegedly violating the Consent Decrees, and obtaining the relief provided for in the Agreed Settlement order and Accord (the "Accord"). Plaintiffs request attorneys' fees and costs in the amount of $5,243,401.24, consisting of:

| | |
|---|---|
| $3,238,308.20 | attorneys' fees |
| 619,158.47 | interest on the attorneys' fees |
| 84,150.40 | costs |
| 17,241.11 | interest on the costs |
| 1,284,543.06 | fee enhancement |

In calculating the fees requested, Plaintiffs apply the "Lodestar" method, which allows for compensation of fees representing the product of (a) the reasonable historical hourly rates and (b) number of hours worked as determined by the Court. Plaintiffs also request to be awarded a success multiplier equivalent to 33% of the attorneys' fees in order to account for what the

Plaintiffs characterize as the "important societal benefits" and "the extraordinary results achieved" in the case. Finally, Plaintiffs request interest on the attorneys' fees and costs.

The City objects to the Plaintiffs' petitions on several grounds. First, the City argues that the Plaintiffs are not a "prevailing" party entitled to an award of attorneys' fees and expenses. Second, the City disputes the amount of the attorneys' fees requested for a variety of reasons such as the reasonableness of the work, the hours worked, and the rates charged. The City also argues that a success multiplier should not be awarded because such award would effectively provide the Plaintiffs with a windfall not permitted under the fee-shifting statute.

The parties' contentions raise two distinct questions to resolve: (1) Are Plaintiffs the "prevailing" party within the meaning of 42 U.S.C. § 1988 and thus entitled to recovery of attorney fees?; and (2) if so, what is the reasonable amount of fees that the Plaintiffs are entitled to? We will address each of these questions separately below.

**I.     Plaintiffs' Prevailing Party Status**

Plaintiffs seek to recover their attorneys' fees incurred in monitoring and enforcing the Consent Decrees entered in this case and in obtaining the following relief from the Court: 1) summary judgment on the question of the City's liability for violating the 1983 Consent Decree when hiring employees through personal service contracts and temporary agencies (the Pennick enforcement proceeding); 2) proceedings involving the City's motion to vacate the 1983 Consent Decree; 3) proceedings involving the Plaintiffs' application to hold the City in contempt; and 4) negotiation of the Agreed Settlement Order and Accord.

Section 1988 provides that in an action or proceeding to enforce provisions of 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee

as part of the costs" awarded. 42 U.S.C. 1988. "To qualify as a prevailing party, a plaintiff must succeed on a significant issue in litigation, which achieves some of the benefit he sought in bringing suit." *Cady v. City of Chicago,* 43 F.3d 326, 328 (7th Cir. 1994). The inquiry into the extent of success achieved in litigation is limited to the determination of the size of the attorneys' fees to award and not to the eligibility of the award at all. *Balark v. City of Chicago,* 81 F.3d 658, 664 (7th Cir. 1996).

The City concedes that Plaintiffs are the prevailing parties for bringing the Second Amended Complaint, negotiating the new Hiring Plan (including the Inspector General Hiring Plan), and negotiating the Accord. The City does, however, challenge the Plaintiffs' prevailing party status for the remaining work performed by Plaintiffs. We will examine each of the City's arguments.

A. **General Implementation**

When a consent decree includes provisions providing for on-going monitoring by the plaintiffs, plaintiffs are entitled to recover their attorneys' fees incurred in performing their obligations under the consent decree. *Alliance to End Repression v. Chicago*, 356 F.3d 767, 772-73 (7th Cir. 2004).

In this case, the 1972 and 1983 Consent Decrees envisioned an on-going process of monitoring and adjusting the Consent Decrees and Plan of Compliance. Plaintiffs' counsel performed general administrative and monitoring work including such actions as: reviewing and negotiating proposed amendments to the list of exempt positions; reviewing affidavits and reports filed by the City; and interviewing potential complainants about allegations of political discrimination. We find all of the monitoring activities by Plaintiffs' counsel to be compensable

because they were fulfilling their obligations under the Decrees.

### B. The Pennick Proceeding

The next question before us is whether Plaintiffs are entitled to fees for their work on the "Pennick proceeding." In 1994, a group of City employees filed an enforcement action seeking declaratory and injunctive relief prohibiting the City from hiring common law employees through the use of personal service contracts without complying with the 1983 Consent Decree and Plan of Compliance. This is referred to as the "Pennick proceeding." Class counsel intervened because they felt that the use of personal service contracts was a subterfuge for avoiding the 1983 Consent Decree and was a systemic violation. This Court granted summary judgment in favor of the Plaintiffs, but that decision was vacated by the Seventh Circuit on November 17, 2005.

The City claims that no fees should be awarded for Plaintiffs' attorneys' work on the Pennick proceeding because Plaintiffs were unsuccessful on this issue since the decision was reversed by the Seventh Circuit. Plaintiffs claim that they are entitled to fees for work associated with the Pennick proceeding because the Accord provides relief for the claims asserted in the Pennick matter. We agree with Plaintiffs on this point. The Accord retains the injunctive relief provided in the 1972 and 1983 Decrees and includes new language clarifying that the injunction applies to all common law employment with the City. This clarification of the scope of the injunctive relief was the very relief sought by Plaintiffs in the Pennick proceeding. Any losses that the Plaintiffs suffered on appeal have been recouped fully in the Accord. Moreover, it was the Plaintiffs' persistence on the Pennick issue and the preservation of the Consent Decrees that were vital to the negotiation of the Accord, and the City concedes that Plaintiffs are the

prevailing party for negotiating the Accord.

In sum, we believe that Plaintiffs are entitled to recover their attorneys' fees and costs incurred to obtain the result they achieved with regard to the Pennick proceeding–that the injunction applies to all common law employment with the City. The fact that the clarifying language of the March 2005 injunctive order was vacated by the Seventh Circuit before becoming part of the final judgment in the Accord does not deprive Plaintiffs of their prevailing party status. *See, e.g., People Who Care v. Rockford Bd. Of Educ.*, 90 F.3d 1307, 1314 (7th Cir. 1996); *Dougherty v. Barry,* 820 F. Supp. 20, 25 (D.D.C. 1993). Therefore, we will award Plaintiffs attorneys' fees and costs for their work on the Pennick proceeding.

### C. **City's Motion To Vacate**

The City next claims that Plaintiffs are not the prevailing party on the City's 2002 motion to vacate the 1983 Consent Decree or the related appeals. This Court denied the City's motion to vacate on March 30, 2004, and the City appealed that decision to the Seventh Circuit. The Seventh Circuit reversed and remanded the matter for further consideration. On remand, the motion to vacate was denied as moot as part of the Accord. The City claims that it prevailed on all issues raised in the motion to vacate, as evidenced by the Seventh Circuit's opinion and award of costs to the City. *See Shakman v. City of Chicago*, 426 F.3d 925 (7th Cir. 2005).

We find that Plaintiffs are entitled to fees and costs relating to their work on the motion to vacate the 1983 Consent Decree. Not only was the 1983 Decree not vacated by the Accord, but the Accord actually expands the scope of relief provided in the 1983 Decree. The modifications to the 1983 Decree contained in the Accord work to Plaintiffs' advantage. The City's success in getting this Court's original order denying the motion to vacate reversed and remanded for

further consideration does not change Plaintiffs' right to recover their fees and costs incurred on the road to victory. Any losses Plaintiffs suffered on appeal were recouped in the Accord, and the City concedes that Plaintiffs are the prevailing party for negotiating the Accord. Therefore, the time spent by Plaintiffs defending the Decree to get to the Accord are compensable, and we deny the City's objection on this point.

### D. Negotiating A New Plan Of Compliance

The City next argues that the negotiations for changes in the Detailed Hiring Provisions that took place between 2003-2005 are not compensable. The City claims that it desired to make changes to the Detailed Hiring Provisions because they were outdated and did not meet the City's hiring needs. The City argues that Plaintiffs' attorneys should not be compensated for work during the negotiations because the new plan was undertaken voluntarily by the City.

We find that Plaintiffs are entitled to recover their fees and costs associated with the negotiations of the Detailed Hiring Provisions which resulted in a new Plan of Compliance. At the City's request, the parties began a process of evaluating the existing Plan of Compliance and negotiating a potential new Plan that would give the City the flexibility the City claimed to need while still protecting the constitutional rights of employees, job applicants, candidates and voters. The negotiations took place over a two and one-half year period from 2003 through 2005 and included more than 19 negotiating sessions. Although the work performed by Plaintiffs' counsel was done at the request of the City, these negotiations provided a foundation for negotiating the Accord and the New Hiring Plan in 2006-2007. Therefore, the fees and costs related to this work are compensable.

### E. Plaintiffs' Motion To Hold The City In Contempt

The City next argues that Plaintiffs are not entitled to fees and costs regarding the 2005 contempt motion because the Court did not actually hold the City or Mayor in contempt. We find that Plaintiffs are entitled to be compensated for their work in this regard.

In their contempt motion, Plaintiffs asked the Court to appoint a special master, authorize Plaintiffs to continue to monitor and bring enforcement actions, and to impose fines on the responsible individuals. This Court did appoint the Monitor to oversee the City's employment practices, and the 2005 contempt motion was settled as part of the Accord. The Accord provides, among other relief, for the Monitor to continue her work, authorizes Plaintiffs to continue to monitor and bring enforcement actions, and creates a procedure for on-going enforcement by the Inspector General and court-appointed arbitrators. Therefore, Plaintiffs are entitled to fees and costs relating to their 2005 contempt motion.

In sum, Plaintiffs have succeeded on a number of issues in this litigation and have obtained meaningful relief. Accordingly, Plaintiffs are prevailing parties within the meaning of § 1988 and are entitled to recover reasonable attorneys' fees for their work in monitoring the City's compliance with the Consent Decrees, the Pennick enforcement matter, opposing the City's motion to vacate the 1983 Consent Decree, seeking to hold the City in contempt, and for obtaining the relief provided for in the Accord.

## II.     Amount Of Attorneys' Fees And Costs Compensable

### A. Attorneys' Fees And Costs

Now that we have established that Plaintiffs are the prevailing party for all relevant fees and costs issues , we next consider the method and manner by which to calculate the amount of fees and costs to award. Attorneys' fees typically are awarded based on a "Lodestar" amount

8

calculated by "multiplying the number of hours an attorney reasonably expended on the litigation times a reasonable rate." *Mathur v. Bd. of Trustees of So. Ill. Univ.,* 317 F.3d 738, 742 (7th Cir. 2003). Once this amount is calculated, the Court has discretion to increase or decrease it to account for twelve factors in the particular litigation. *Id.* These factors are: (1) the time and labor required; (2) the novelty and difficulty of the case; (3) the requisite skill to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Spellan v. Bd. of Educ. of Dist. 111,* 59 F.3d 642, 645 (7th Cir. 1995); *but see Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983) (noting that many of the twelve factors are usually subsumed within the Lodestar calculation). Ultimately, the amount awarded should only be as large as necessary to attract competent counsel without producing a windfall to the attorneys. *See Pa. v. Del. Valley Citizens' Council For Clean Air,* 483 U.S. 711, 731 (1987); *see also* S. Rep. No. 1011, 94th Cong., 2d Sess. 6 (1976).

The hourly rate awarded should be the current market rate charged by attorneys of similar skill and experience doing substantially similar, non-civil rights litigation. *See Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1986). Courts have specifically and consistently recognized that delay in payment is a legitimate basis for adjustment of the Lodestar calculation. *See Pennsylvania v. Delaware Valley Citizens' Council for Clear Air,* 483 U.S. 711, 716 (1987); *Smith v. Village of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994).

In this case, Plaintiffs' attorneys have calculated their fees using their historical rates and applying interest to that amount to compensate for the delay in payment. The Court has reviewed the time records, rates, and affidavits of Plaintiffs' counsel and finds that they are reasonable and credible. Plaintiffs' counsel have adequately demonstrated to the Court that they made significant and successful efforts to manage this litigation in an efficient, cost-effective manner, and have avoided unnecessary duplication of efforts.

Considering the record in the context of the relevant factors, this Court finds that a fee award, including interest, of 30 percent of the $12,000,000.00 Settlement provided for in the Accord, which equals a fee of $3,600,000.00, is reasonable. Indeed, because attorneys' fees are generally paid from the settlement fund and included in it, this award may be characterized as payment of 23 percent of the total of the settlement fund and the award of attorneys' fees. $3,600,000.00 is approximately 23 percent of $15,600,000.00 which is the sum of the $12,000,000.00 settlement and the $3,600,000.00 fee.

If we were to award Plaintiffs their requested attorneys' fees of $3,238,308.20 plus the requested interest amount of $619,158.47, the total attorneys' fee award would be $3,857,466.67. We feel that a total award, encompassing both attorneys' fees and interest, of $3,600,000.00 is fair and reasonable compensation and eliminates prolonged battles over the calculation of the interest over the many years of litigation.

While attorneys' fees in a typical case are usually awarded at a rate of 20-25 percent of the total settlement amount, Plaintiffs' attorneys in this case achieved much more success for their clients over the years than is reflected in the ultimate Settlement contained in the Accord. This case consumed years of litigation, and there were many Plaintiffs' victories along the way,

the value of which is immeasurable to the Plaintiffs.  We find that Plaintiffs' attorneys have expended significant time and expense in the pursuit of this case.  Plaintiffs' attorneys had to obtain and digest thousands of documents and devote an enormous amount of time to this extremely complex litigation which has spanned decades.  Plaintiffs' attorneys were required to gather evidence, attend to discovery, prepare numerous briefs, motions and appeals, analyze contracts and the City's employee data base, attend Court hearings, and negotiate the Accord amongst many other obligations.  Although Plaintiffs' attorneys devoted an enormous amount of time to these matters, the complexity and scope of the case demanded it. Despite the complexity of the issues involved, and the tenacity and skill of the City's highly qualified counsel, Plaintiffs' counsel have obtained significant benefits for the Plaintiffs.  Therefore, we feel that an award of attorneys' fees in the amount of $3,600,000.00 including interest is fair and reasonable under the circumstances.

The quality of the work of Plaintiffs' counsel, as witnessed by this Court during the past many years of litigation, has been exemplary.  Without the expertise and efforts of Plaintiffs' counsel, the Plaintiffs likely would not have achieved any recovery, much less the significant recovery produced in this litigation.  Moreover, the many thousands of hours Plaintiffs' counsel spent on this case necessarily precluded them from working on other matters, and thus imposed substantial and significant opportunity costs.

The Court also finds that reimbursement of costs in the amount of $84,150.40 is reasonable.  The Court finds that such costs were legitimately incurred by Plaintiffs' counsel during the course of this litigation and that Plaintiffs' counsel has submitted valid documentation sufficient to itemize the costs incurred.   Therefore, Plaintiffs' counsel shall be reimbursed for

their reasonable costs and expenses incurred during this litigation in the amount of $84,150.40, plus interest.

The attorneys' fees and expenses award shall be disbursed to Roger Fross, of Locke, Lord, Bissell & Liddell LLP for allocation among the various counsel to Plaintiffs that have participated in this litigation.

### B. <u>Success Multiplier</u>

Plaintiffs also request a fee enhancement of $1,284,543.06 to their fees to compensate for the extraordinary level of success they claim they have achieved in negotiating the Accord. However, the Seventh Circuit has questioned whether an "enhancement for exceptional success is *ever* appropriate" in fee-shifting cases. *In re Burlington N., Inc., Employment Practices Litig.*, 810 F.2d 601, 607-08 (7th Cir. 1986) (emphasis in original), *cert. denied sub nom. Sprenger, Olson & Shutes, P.A. v. Burlington N. Ry. Co.*, 484 U.S. 821 (1987). This is because "'[t]he lodestar figure includes most, *if not all*, of the relevant factors comprising a 'reasonable' attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance.'" *Burlington*, 810 F.2d at 608 (emphasis in original) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566 (1986)).

In this case, we find that Plaintiffs are not entitled to a success multiplier. Although Plaintiffs have achieved great success in this case, we do not find a reason to justify an enhancement for exceptional success. We believe that the Lodestar computations adequately compensate Plaintiffs for their efforts. Plaintiffs simply have not achieved the extraordinary level of success necessary to justify such an enhancement. Therefore, we reject Plaintiffs'

request for a fee enhancement of $1,284,543.06.

**CONCLUSION**

For the foregoing reasons, we grant in part and deny in part Plaintiffs' six petitions for attorneys' fees and costs (#630). We award Plaintiffs attorneys' fees in the amount of $3,600,000.00. Plaintiffs are not awarded separate pre-judgment interest on the attorneys' fee award, but interest will begin to run on the award on April 1, 2008 until the date of payment. Plaintiffs are awarded costs in the amount of $84,150.40 plus interest on the costs.

The attorneys' fees and costs award shall be disbursed by the City of Chicago to Roger Fross of Locke, Lord, Bissell & Liddell LLP for allocation among the various counsel to Plaintiffs that have participated in this litigation.

It is so ordered.

_Wayne Andersen_
Wayne R. Andersen
United States District Judge

Dated: March 18, 2008