**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL L. SHAKMAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case Number: 69 C 2145 |
| v. | ) | Judge Andersen |
| | ) | Magistrate Judge Schenkier |
| SHERIFF OF COOK COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST REPORT OF THE SHAKMAN COMPLIANCE ADMINISTRATOR
FOR THE SHERIFF OF COOK COUNTY**

Clifford L. Meacham, Shakman Compliance Administrator for the Sheriff of Cook

County, by and through his attorney, Peter Monahan, submits his First Report pursuant to the

Order of the Court entered October 30, 2008, having undertaken the assignment on November

17, 2008.

**Introduction**

On October 30, 2008, with the agreement of the parties, this Court entered a

Supplemental Relief Order ("SRO"), which contemplated the appointment of a Compliance

Administrator to ensure that the Office of the Sheriff of Cook County ("Sheriff") complies with

the consent decrees entered in 1980 and 1984 (collectively, the "Shakman Decrees"). The 1980

Consent Decree prohibits the Sheriff from "conditioning, basing or affecting any term or aspect

of governmental employment (with respect to persons once hired) upon or because of any

1

political reason or factor." The 1984 Consent Decree extended these prohibitions to the Sheriff's hiring practices.

On November 17, 2008, pursuant to the SRO, the Honorable Clifford L. Meacham (ret.) commenced performing duties of the Shakman Compliance Administrator for the Sheriff of Cook County ("SSCA"). The SRO charges the SSCA with studying and investigating the Sheriff's current employment practices and procedures for nonpolitical hiring, promotion, transfer, discipline and discharge and ensuring the Sheriff's compliance with the Shakman Decrees. Among other things, the SSCA's duties include (1) assisting in establishing a new hiring plan; (2) reviewing current hiring practices including monitoring actual hiring sequences; (3) working with the Sheriff's employees to observe current hiring practices, answer questions and provide guidance as necessary; (4) aiding in establishing a "train the trainer program" to educate and train supervisors and employees on nonpolitical hiring practices; (5) overseeing the analysis of the feasibility of creating a web based Application Tracking System, and if feasible, overseeing the establishment of the Application Tracking System; (6) obtaining a new list of Shakman exempt positions and making recommendations to the Court as to how to resolve issues regarding Shakman exempt positions; (7) making recommendations to the Sheriff to ensure future compliance with the Shakman Decrees; (8) negotiating and adjudicating claims to ensure victims of past violations are compensated and assisting with settlement and administration of pre-SRO complaints; (9) overseeing the handling of post-SRO complaints by the Sheriff and conducting its own investigation of those complaints; and (10) filing periodic reports.

The SRO contemplates an eighteen month plan by which the Sheriff, if found to be in compliance by Judge Andersen, will be dismissed from the lawsuit.

2

## Preliminary Statement

Since accepting appointment as the Compliance Administrator for the Sheriff of Cook County, the SSCA has established an office at 69 West Washington Blvd., Suite 1416, Chicago, Illinois 60602, interviewed and hired staff, set up a website (www.sheriffshakman.com), conducted numerous interviews, collected and read through thousands of pages of documents, met with counsel for the litigants, other Compliance Administrators and their counsel, Sheriff Dart, several key staffers, personnel from the Sheriff's Merit Board, and a prominent employment lawyer. The SSCA has developed a plan of action to ensure compliance with all aspects of the Shakman SRO, including the prompt processing of all claims via an administrative hearing process.

Broadly speaking, the major components of the SRO are to assist in the development and implementation of policies and procedures to eliminate political considerations in hiring, promotion, transfer, discipline and discharge of non-Shakman exempt employees, to adjudicate claims of political discrimination, to perform Shakman training and monitor hiring practices and to contribute to the development of a comprehensive hiring plan.

These charges necessarily involve an analysis of all aspects of Personnel functions as currently practiced by the Sheriff. The SSCA has been in contact with other paramilitary organizations which in many instances perform similar duties of the Sheriff. As the SSCA works his way through the policies and procedures with personnel from the Sheriff, sharing what has been successfully implemented in other parallel organizations, it is anticipated that there will eventually be a modification in what has been a long standing culture marked by political influence. This process is well underway. The SSCA has begun investigating the current

employment practices of the Sheriff, is developing Shakman training for personnel and will be initiating the monitoring process.

Another major component of the SRO is the claims adjudication system. The present date for submission of claims expires on February 27, 2009. The SSCA acknowledges and is grateful for the cooperation of students at The University of Chicago School of Law, Mandel Legal Clinic, for their pro bono assistance in helping claimants with the preparation of claims. This effort has been directed by Randall Schmidt, who has advised the SSCA that student assistance will also be available to assist those having post-SRO claims, including claims of retaliation. The SSCA has advised Mr. Schmidt that if he receives consent from both parties to a given administrative hearing, he will consider inviting students who have assisted in claims preparation to attend hearing(s). To date, the SSCA has received claims and opt-out requests, and has developed the framework for adjudicating claims, including a procedure to docket, track, adjudicate and dispose of Shakman claims.

There is a separate post-SRO claims procedure that will be administered by the Sheriff's Office of Professional Review, with input from the SSCA. The SSCA will play a role in this procedure as well.

### Objectives and Processes

The SSCA's primary objective is to ensure that the Sheriff engages in nonpolitical hiring, promotion, transfer, discipline and discharge for Shakman covered positions. There are positions in every County office, including the Sheriff, where political factors may be considered in employment. Examples include policy making positions and confidential assistants. The parties are negotiating a list of Shakman exempt positions.

To date, Sheriff Dart and his staff have been cooperative and have expressed a commitment and desire to comply with the Shakman Decrees. The SSCA appreciates this cooperation and anticipates that the attitudes of Sheriff Dart and his staff will be communicated to all personnel, which will be invaluable in changing the political culture of the Office of the Sheriff.

As stated above, the SSCA has reviewed numerous documents and has met with a wide variety of individuals. Through his preliminary investigation, the SSCA has developed a general understanding of the many functions of the Office of the Sheriff and believes it is important to note certain facts unique to the hiring and other employment processes of the Sheriff.

The staff of the Sheriff consists of approximately seven thousand employees whose duties include, but are not limited to, staffing correctional facilities in the Department of Corrections, running a Boot Camp program for non-violent offenders, administering programs for inmates outside the Department of Corrections (such as electronic monitoring through its Department of Community Supervision and Intervention), providing courtroom and building security for courts located throughout Cook County via its Court Services Department and administering these duties. Budget constraints have resulted in the reduction of funds available to perform all statutory duties[1]

---

[1] Budget issues have posed a challenge for all branches of County Government. As one who has been involved in the justice system for well over thirty years, twenty as a judge, the SSCA believes this is particularly true of the Sheriff, who has significant statutory duties that are compromised by not having funding adequate to discharge fully those duties. For example, courtroom deputies are not available to staff every operating courtroom. This puts clerks' personnel, judges, attorneys and the public at risk. The Sheriff has attempted to prioritize assignments, but chronic short staffing, including numerous employees on Family and Medical Leave, leaves many courtrooms at risk during a period of economic downturn which has resulted in substantial numbers of litigants facing serious financial and legal issues. Sheriff Dart is mindful of this situation and is in the process of exploring options to deal with it. One such option is to increase revenue that could be generated by the County as a result of the Sheriff's activities. In

The hiring process that attends employment for Shakman covered personnel in the Sheriff is multi-faceted. There are two primary categories of employees, sworn and unsworn personnel. Sworn personnel consist of Correctional Officers, Sheriff's Deputies, and Sheriff's Police. Unsworn personnel make up the balance of the Sheriff's employee pool.

For sworn personnel, hiring (and certain other functions described below) is administered through a two step process. The Sheriff's Merit Board, created by legislation enacted in 1990, is charged with the responsibility of creating a certified list of those eligible for hire. Creation of this list necessarily involves procedures for soliciting, testing, interviewing, and screening prospective hires. The eventual outcome of this process is a list of candidates certified eligible for hire. From this list, which is good for a period of two years, the Personnel Department conducts an internal hiring procedure, after which successful applicants are hired subject to successfully completing training at the Sheriff's Training Academy. During this period, candidates are designated as conditional hires. Details of Merit Board operations are being

---

recent years, mortgage foreclosures have dramatically increased, resulting in approximately 47,000 filings in 2008. The filing fees for this number of foreclosures, exclusive of appearance and other fees, approach fifteen million ($15,000,000) dollars. Currently, private firms serve complaints and summonses in foreclosure cases. In addition, private selling officers conduct the majority of foreclosure sales. These two areas represent untapped revenue streams that are lost to the County. Sheriff Dart, as of this writing does not have the resources to perform the services that would enable these funds to be captured by the County. It is the understanding of the SSCA that there is a "Foreclosure Sales Revenue Enhancement Initiative" that has or will be presented to the County Board. It may be worthwhile for the Board to explore the possibility of earmarking some portion of these funds for use by the Sheriff, or permitting the Sheriff to access some portion of these funds to allow for the development of these initiatives. Were the Sheriff able to conduct a significant number of sales at regularly scheduled times, there exists a strong probability that more buyers would participate in the auction process, generating higher prices for properties. The Sheriff cannot absorb these functions with current resources, and additional staff and equipment are necessary to discharge successfully these duties. While the SSCA has no opinion of how such a change might be accomplished, the possibility of recovering this revenue merits consideration.

studied. Sworn personnel are all unionized, and have, as a part of their collective bargaining agreements, established contractual grievance procedures.

The Merit Board conducts the initial screening process, performs testing, conducts background checks of applicants, and assembles lists of those certified for employment. The Sheriff hires from those certified lists. While the Merit Board hiring process is separate and apart from the direct involvement of the Sheriff, the law prohibiting political discrimination applies to the operations of the Merit Board as well. As a part of the monitoring function, the SSCA will monitor the protocol of both the Sheriff and the Merit Board to confirm that Shakman compliance has been achieved and is consistently met in the Merit Board's operations. Another important function of the Merit Board consists of reviewing certain discipline administered by the Sheriff. Disciplinary review must also be free of political discrimination. The SSCA will be monitoring these activities of the Merit Board as well.

For non-sworn personnel, many of whom, but not all, are unionized, the path to employment is different. The Sheriff has instituted procedures to recruit, post vacancies, screen, test, interview, and hire applicants. While there are some similarities in these two processes, they are distinct, and involve different functions insofar as the SSCA is concerned. Another complicating factor is the fact that while not all employees are unionized (the vast majority are), the SSCA is informed there are twenty-one different unions representing discrete bargaining groups. At present, the Collective Bargaining Agreements of unionized employees are in the process of being negotiated by the Sheriff. Different agreements necessarily involve the application of different considerations. A Blue Ribbon Panel appointed by then Sheriff Michael Sheehan contained among its recommendations that the Sheriff attempt to make uniform and/or consolidate the disparate bargaining groups. Achieving such a result cannot involve unilateral

7

action, but serious consideration should be given to an attempt to achieve consistency among the contracts of these several categories of unionized employees. The SSCA has been in communication with Sheriff's personnel regarding this narrow issue, and is assured that there is a commitment to make progress. At some point, union officials will need to be brought into the dialogue.

### Hiring Plan Outlook

The SRO provides that the SSCA and the parties negotiate the Hiring Plan after the SSCA has had 6 months of monitoring experience. The SSCA anticipates working with the Sheriff during the monitoring period in order to shorten the time for approval of a comprehensive hiring plan. In furtherance of that goal, the SSCA and his staff has met with Sheriff Thomas Dart, Peter Kramer, the Sheriff's General Counsel, Rosemarie Nolan, Director of Personnel and Edward Wodnicki, the Executive Director of the Merit Board. The SSCA has also met with Sherrie Travis, an employment attorney who has been invaluable in assisting the Cook County Compliance Administrator with her duties. The SSCA has reviewed various documents including organizational charts and (some) job descriptions from the Personnel Department, Merit Board Procedures, and Shakman training materials from the City of Chicago, the County of Cook and the Sheriff. There are a number of documents which are or will be sought including but not limited to:

       a.   The current list of Shakman exempt positions (currently being negotiated);

       b.   The prior list of Shakman exempt positions (currently being negotiated);

       c.   A complete list of current job descriptions;

       d.   Current collective bargaining agreements;

       e.   Prior collective bargaining agreements;

f.   Ten Years of Progress Report (received);

g.   No Politics in the Workplace Report;

h.   No Retaliation in the Workplace Report;

i.   Personnel files for all claimants;

j.   Merit Board documentation; and

k.   Postings, applications, and all related materials for sworn and non-sworn
     positions, either Sheriff's Personnel Office or Merit Board.

The Sheriff has agreed to provide the SSCA with dates to perform Shakman training
sessions. The SSCA is developing Shakman training unique to the Sheriff, after consulting with
other Compliance Administrators and the Sheriff, and having reviewed their training materials.
It is anticipated that Shakman training will commence in the near future (no later than February)
and will be performed at all the Sheriff's facilities throughout Cook County.

The SSCA will also begin conducting Desk Audits of personnel working within the
Sheriff's Personnel Department the week of January 19, 2009. Audit questionnaires have been
developed and forwarded to employees and the Sheriff is cooperating with the scheduling of the
audits.

The SSCA has requested that the Sheriff and its Personnel Department notify the SSCA
of all scheduled interviews in order to begin monitoring the interviews. The Merit Board has
also been asked to notify the SSCA of any dates for written tests, physical agility tests, other
certification tests and/or interview sessions. The Executive Director of the Merit Board is
scheduled to meet with the SSCA's monitor the week of January 19, 2008. The Director,
Edward Wodnicki, has previously met with the SSCA.

9

### Other Employment Actions

In addition to working with the Sheriff to develop a compliant hiring plan, the SSCA is also charged with insuring that the Sheriff is not making promotion, transfer, discipline or discharge decisions based on political considerations. To that end, the following documentation has been or will be sought from both the Sheriff and the Merit Board:

    a.  Any internal proposals for changing hiring, transferring, promotion, discharge, discipline procedures;

    b.  Any and all information on "hiring up" into a Shakman exempt position or a Shakman covered position, with a subsequent reclassification to a non-exempt position;

    c.  Any and all information on employees being "paid as" a different position;

    d.  Any and all information on non-exempt employees doing the work of exempt employees;

    e.  Any and all records of discharges from June 1, 2006 to the present;

    f.  Any and all records regarding transfers, promotions and demotions from June 1, 2006 to the present;

    g.  Any and all records regarding discipline, including all hearings conducted by the Merit Board from June 1, 2006 to the present;

    h.  Any and all records regarding promotions from June 1, 2006 to the present; and

    i.  Any and all personnel files concerning individuals who either have or will file Shakman, post-SRO, and/or Retaliation claims from June 1, 2006 to the present.

### Adjudication of Claims

The SRO outlines two classes of potential claimants; namely, (1) those claiming the Sheriff discriminated against them between June 1, 2006 and October 30, 2008 (the "SRO claimants") and (2) those claiming the Sheriff discriminated against them after October 30, 2008

(the "Post-SRO claimants"). The Post-SRO claimants include any individual who claims the Sheriff has retaliated against him or her for either filing a claim or reporting political discrimination.

### Notice of SRO Claims Procedure

The SSCA has been working with the Sheriff and attorneys for the parties to ensure that proper notice has been given to all potential claimants under the SRO. The SSCA is mindful of providing notice regarding not only of the new SRO claims process, but also of the upcoming February 27, 2009 deadline. Sheriff Dart is considering the SSCA's requests to include a supplemental notice of the claims deadline in employee paychecks, and providing notice to employees separated from his Office during the claims period.

Prior to the SSCA's appointment, the Sheriff forwarded the Notice of Hearing on Approval of Supplemental Relief Order for the Sheriff of Cook County, the SRO Claim Procedures, the SRO Form, the Opt-Out Procedures and the Opt-Out Form to all current employees through the payroll envelopes. The Sheriff also published a Notice in the Chicago Tribune and the Sun Times advising potential claimants of the SRO procedure. The SSCA has launched its website which details the claims and opt out processes (www.sheriffshakman.com). Sheriff Dart also issued a press release to make potential claimants aware of the February 27, 2009 claims deadline and the Post-SRO claims procedure. It is expected that all open notice issues will be resolved in the very near future.

### Claims Process

To date, the SSCA has received claims and opt-out requests. The SRO claims are in the process of being reviewed for completeness, accuracy, timeliness and eligibility for relief. Once eligible claims are as complete as practicable, the Sheriff will be advised of the identity of the

11

claimant and will be offered the opportunity for input. Hearings on claims will be conducted by attorney staff members when necessary. If eligible claims are not settled, they will be referred to the SSCA for final adjudication.

### Staffing

The SSCA is charged with recommending staff. Thus far, the SSCA has engaged the following individuals (see resumes at Exhibit A):

- Helen M. Burke, BA, JD, PhD. Ms. Burke graduated from St. Mary's College in 1990, from State University of New York at Buffalo Law School in 1994, served as a judicial law clerk between 1997 and 1999, received her PhD in Political Science in 1998, and was formerly a partner at the law firm of Michael, Best and Friedrich LLP. Ms. Burke will be engaged on a part time basis. She has been engaged by the SSCA since December 1, 2008.

- Sandra D. Wagman, BA, JD. Ms. Wagman graduated from Indiana University in 1976, and Loyola University School of Law in 1979. She worked at CNA for 19 years and was Assistant General Counsel in the Law Department there. Prior to that service, Ms. Wagman was the Chief Hearing Officer for the Office of the Attorney General, Consumer Fraud Division. While serving in that position, Ms. Wagman conducted more than a thousand administrative hearings and supervised and trained a cadre of hearing officers. Ms. Wagman will be engaged on a part time basis. She has been engaged by the SSCA since December 1, 2008.

- Elizabeth Kaplan Meyers, BS, JD. Ms. Meyers graduated from the University of Illinois in 1984 and from Chicago-Kent College of Law in 1987. Ms. Meyers was the Managing Attorney for Fisher and Fisher, Attorneys at Law, P.C. (now known as Fisher and

12

Shapiro) for almost 17 years and has extensive experience with both practice and management of law. In addition to managing and supervising both staff and attorneys, Ms. Meyers oversaw the development of the firm from 15 to 150+ people, and has substantial knowledge and experience in human resources, personnel, and training. Prior to that service, Ms. Meyers worked at a boutique litigation firm. Ms. Meyers will be engaged on a part time basis. She has been engaged by the SSCA since December 1, 2008

- William Rimkus. Mr. Rimkus attended the University of Illinois for two years and has substantial managerial and personnel experience. He has served as a Shakman Monitor for Noelle Brennan, Shakman Compliance Administrator for the City of Chicago, since 2005. Mr. Rimkus has monitored over 5,000 interviews in every Department of the City of Chicago. He will be engaged on a part time basis. He has not performed services for the SSCA as of this writing.

- Darlene L. Meacham, BA Rosary College. Mrs. Meacham received her BA in history. Mrs. Meacham has 28 years of experience as a legal secretary, was the office manager for the Law Offices of Sandra K. Burns, Ltd. for 13 years and recently worked for the Frank Lloyd Wright Foundation. Mrs. Meacham will serve on an uncompensated volunteer basis.

- Adrene Silva. Ms. Silva is a student at Triton College, and will serve as a receptionist/secretary to both the SSCA and the Compliance Administrator for the County of Cook. She will be engaged on a part time basis. She has not performed services for the SSCA as of this writing.

13

Ms. Burke, Ms. Wagman, and Ms. Meyers will be billed at seventy-five dollars ($75.00) per hour. Mr. Rimkus will be billed at the same rate as has been approved by the City. Ms. Silva will be billed at twenty-two dollars ($22.00) per hour.

In addition to the above, the SSCA has engaged Peter Monahan as counsel. Mr. Monahan graduated from Knox College in 1976 and DePaul University College of Law in 1981. He has, in addition to some 28 years of experience in the private practice of law, represented the Hon. Julia Nowicki (ret.), Compliance Administrator for the County of Cook, since December 2007. Mr. Monahan served as a judicial law clerk, worked for Hinshaw and Culbertson between 1983 and 1989, and practiced in his own firm through 2006. The selection of Mr. Monahan was made both based upon his substantial experience in the County Shakman matter, and the representations by the parties in the instant matter that they would commit to a process that would involve as little judicial intervention as possible.

Other consultants and or/personnel may be needed as the assignment unfolds. The SSCA has agreed to advise General Counsel for the Sheriff, Peter Kramer, when additional resources are required.

### Preliminary Recommendations

Again, the SSCA appreciates the cooperation he has received from the Sheriff. Given this cooperation, the SSCA anticipates that the Sheriff, with the assistance of the SSCA, will develop a new hiring plan within the next six months. In order to achieve this goal, the SSCA has asked both the Personnel Department and the Merit Board to notify the SSCA of all interviews, job postings and hiring decisions in sufficient time to permit the SSCA to monitor the hiring sequence and oversee the development of the Application Tracking System. Similarly, the SSCA requests he receive sufficient advance notice of any promotion, transfer, discipline and /or

discharge actions so that he can review the contemplated actions and make suggestions, recommendations or objections as necessary. In addition, the SSCA requests that the Sheriff and the Merit Board provide all outstanding requested documentation, including a final negotiated version of the new Shakman Exempt List to facilitate the SSCA's evaluation and investigation. The SSCA also recommended, and counsel for all the parties have agreed, to conduct weekly meetings to commence Friday, January 23, 2009 to ensure that any issues that may arise be addressed in a timely manner. The SSCA is pleased to report that the Sheriff has agreed with his recommendation that the scheduling of the Shakman training sessions occur in the very near future.

The SRO invites the SSCA to recommend additional powers that might be given to the SSCA. At this point, given the degree of cooperation demonstrated by the parties, the SSCA does not feel the need to seek additional powers. This determination is based on the current legal and factual posture of the case, and the SSCA reserves the right to seek other and/or additional powers should circumstances warrant.

### Special Acknowledgements

The SSCA notes the exceptional service and cooperation of the following individuals:

- Noelle Brennan, Shakman Compliance Administrator for the City of Chicago, and her staff. Ms. Brennan has been most generous with her time, and has provided insights that only one with her experience and background could provide.

- Hon. Julia Nowicki (ret.), Shakman Compliance Administrator for the County of Cook, and her staff. Like Ms. Brennan, Judge Nowicki and her staff have generously contributed their time and expertise, and have assisted greatly in the development of the function of this office.

15

- Laura Lechowicz, General Counsel of the County of Cook, and the staff at 69 West Washington Management Company, L.L.C. Ms. Lechowicz coordinated the effort to provide space and furniture for this office; the staff at 69 West Washington performed remarkably in the build out and supply of necessary office equipment, and acted as a resource to assist the SSCA in making necessary contacts.

- Sherrie Travis. Ms. Travis has donated her time and exceptional talents as an expert in employment law to assist the SSCA in the formulation of plans to conduct desk audits, develop an employment plan, and analyze human resource issues.

- Randall Schmidt and student volunteers from the Mandel Clinic of The University of Chicago Law School. The assistance rendered in not only helping with claimant completion of claims, but also volunteering to assist in post SRO Retaliation Claims, is deeply appreciated.

- Dan Barton. Mr. Barton contributed to the procurement, installation, and operation of the equipment necessary to commence operations, and assisted in the development and implementation of the SSCA's website.

- Darlene Meacham. Ms. Meacham has donated her time and services as an unpaid volunteer since the appointment of the SSCA. Her contributions to date are substantial.

In addition, counsel for the litigants have been cooperative, completely professional and very helpful in devoting time and producing documentation necessary for the performance of the SSCA's duties. Finally, Sheriff Thomas Dart has made a commitment to the SSCA that he and his staff will cooperate fully with the SSCA. He has recited a determination to operate an office fully compliant with all aspects of Court ordered obligations, and has stated that he will ensure

the SSCA has "every tool at his disposal to properly investigate and adjudicate any claims that may arise". Communication of this policy to all personnel is suggested.

## Conclusion

In the period between November 17, 2008 and the present, the SSCA has opened and staffed an office, retained competent and experienced counsel, created a claims adjudication procedure, initiated a plan to conduct necessary audits of employment practices and Shakman training, and established a positive working relationship with the litigants and counsel. This has been done consistent with the SSCA's commitment to perform all assigned duties thoroughly, fairly, promptly, and reasonably. Finally, the SSCA wishes to thank each member of his staff for their time, talents, and contributions to what has, and will continue to be, an effort that will hopefully yield great benefit to the citizens of Cook County.

Respectfully submitted,

Clifford L. Meacham
Compliance Administrator
For the Sheriff of Cook County
69 West Washington, Suite 1416
Chicago, IL 60602

Peter A. Monahan
Counsel to the Compliance
Administrator
69 West Washington, Suite 1416
Chicago, IL 60602

17

EXHIBIT A

# HELEN BURKE

**EXPERIENCE**

**REGENT TITLE INSURANCE AGENCY LLC** *(July 2005 - present)*
*General Counsel*

Represent title agency's interests relating to commercial and residential real estate transactions, underwriting, construction escrow, employment matters, contract negotiation and policy claims. Manage settlement of multi-state commercial loans for franchisees and franchise lenders. Counsel owners on risk assessment and risk transfer. Draft and revise Employee Handbook, Policies and Procedures. Provide legal advice, strategies, solutions and guidance to senior management on implications of existing title examination, closing procedures and related policies. Design and deliver training to department managers. Supervise litigation, including contract, tort, employment and criminal matters.

**MICHAEL BEST AND FRIEDRICH LLP**
*Partner* *(July 2003 - July 2005)*
*Associate* *(November 2000 - July 2003)*

Responsible for all aspects of client representation in construction defect, mechanic's lien, product liability, employment discrimination and general commercial litigation, including drafting pleadings, contested motion practice, discovery, trials and trial preparation and appellate practice. Represented governmental departments and title agencies in class action matters. Managed mechanic's lien litigation for general contractors ranging from $50,000 to $50 million. Supervised Litigation and Construction Practice Group Associates. Handled transactional construction and real estate matters. Reported to partnership on litigation matters, marketing, billing and collections.

**SMITH AND HERZOG** *(November 1999 - November 2000)*
*Associate*

Represented construction litigation clients, including drafting pleadings, motion practice, discovery and trial preparation. Analyzed and prepared multi-million dollar mechanic's lien claims for general contractors and subcontractors. Argued and defended dispositive motions. Responsible for billing and collections.

**THE HONORABLE CLIFFORD L. MEACHAM** *(November 1997 - November 1999)*
**CIRCUIT COURT OF COOK COUNTY- MECHANIC'S LIEN SECTION**
*Law Clerk*

Analyzed legal issues relating to the Illinois Mechanic's Lien Act, contract law and tort law. Drafted Memoranda, Opinions and Orders relating to construction litigation. Monitored and attended hearings and trials. Managed court calendar.

**EDUCATION**

**STATE UNIVERSITY OF NEW YORK AT BUFFALO**
Doctorate of Philosophy, American Politics 1998
Juris Doctor, *cum laude* 1994
Master of Arts in American Politics, *magna cum laude* 1994

**ST. MARY'S COLLEGE**, South Bend, Indiana
Bachelor of Arts in Political Science, *cum laude* 1990

**LICENSES**

**State Bars of Illinois and Florida**
**State Bar of Michigan –** *pending via reciprocity*

# SANDRA D. WAGMAN

## SUMMARY

Versatile business transactional attorney with strong contract drafting and negotiating skills. Superb people skills; extremely adept at mediation and dispute resolution. Adviser to variety of business units in a major corporation on legal risks associated with commercial transactions. Understands how legal solutions must be responsive to a competitive business environment.

## PRACTICE AREAS AND EXPERTISE

| | | |
|---|---|---|
| Commercial Lending | Human Resources | Mediation & Dispute Resolution |
| Consumer Law | Leasing | Not-for-Profit Organizations |
| Contracts | Litigation Management | Real Estate |
| Corporate Law | Loan Restructuring/Workouts | Surety |

## PROFESSIONAL EXPERIENCE

**CNA,** Chicago, IL                                                                                          **1988 – 2007**
**Assistant Vice President and Assistant General Counsel**

### *Counselor to business units*
- Advise business units such as Finance, Human Resources, Treasury, Facility Management, Reinsurance, Corporate Real Estate, Corporate Communications and Surety on legal risks attendant to various business transactions, as well as providing legal advice on contractual matters.
- Negotiate, draft and review various types of contracts, including consulting agreements, engagement letters, vendor contracts, commutation agreements, service agreements, confidentiality agreements, construction contracts, brokerage agreements and property management contracts.

### *Commercial Real Estate Acquisitions and Divestitures/Property Management*
- Negotiated and documented purchase and sale of office buildings, apartment complexes and vacant land for development in excess of $300 million.
- Managed multitude of issues ranging from environmental testing and cleanup to employee communications as a result of an asbestos disturbance by a contractor.

### *Leasing*
- Negotiated and drafted leases across the U.S. for CNA's REO and leased property portfolio containing up to 200 locations.
- Negotiated and documented a settlement of a dispute over excessive operating expense charges with a prominent NY real estate developer which resulted in more than a $2 million refund over the term of an office lease, after negotiations had stalled for 3 years with predecessors.

### *Workouts*
- Chief legal counsel in overseeing foreclosures from nationally known developers of approximately 40 defaulted real estate projects throughout the U.S.
- Decision maker and legal counsel responsible for monetizing certain rights in a multi family property portfolio resulting in an excess of an $11 million settlement to CNA, without it suffering any losses from its credit enhancement exposure.

Sandra D. Wagman                                                              Page 2

*Not for profit organizations*
- Chief legal counsel to CNA Foundation, CNA's charitable giving arm. Counseled Foundation staff and board of directors in meeting legal requirements for new programs implemented such as international grant making.
- Researched legal issues to overcome IRS obstacles and facilitated implementation of program to give charitable grants to CNA employees impacted by Hurricane Katrina. Distributed $3000 grants to 54 employees within 14 days of the hurricane. Won company award.

*Corporate*
- Vice President and Secretary of CNA Foundation
- Incorporated subsidiary companies and drafted by-laws

*Litigation Management*
- Managed defense of suit against CNA in connection with its foreclosure and sale of the Whitehall Hotel by plaintiff union pension fund for health and welfare contributions. Damages of $210,000 sought; settled by paying less than $10,000.
- Directed filing of lawsuit against reinsurers for payment of contributions toward losses in a surety bond backed portfolio; resulted in judgment for CNA in excess of the $2 million damages originally sought.

**SEMAR HOME BUILDERS, INC.**, Mt. Prospect, IL                              1987-1988
**General Counsel**

**LAW OFFICES OF ANDREW MAXWELL,** Chicago, IL                              1984-1986
**Attorney** – specialized in bankruptcy issues

**ATTORNEY GENERAL OF ILLINOIS** – Consumer Protection Division, Chicago, IL   1979-1984
**Assistant Attorney General**
   *Litigation Attorney*
   - Handled litigation to enforce various state consumer protection statutes
   *Chief Hearing Officer*
   - Conducted hundreds of hearings from 1979-1983 concerning violations of various consumer protection statutes resulting in substantial monetary recoveries to complainants, or dismissal of charges, if warranted

## EDUCATION

Juris Doctor, 1979                    **Loyola University School of Law**, Chicago, IL
Bachelor of Arts, Jan. 1976           Phi Beta Kappa, **Indiana University**, Bloomington, IN

## BAR AND COURT ADMISSIONS

State of Illinois
United States District Court, Northern District of Illinois

Elizabeth Kaplan Meyers

## PROFILE

Having been both a litigator and Managing Attorney at a large Chicago law firm for almost 17 years, I have extensive experience with both the practice and management of law. During my career, I appeared before Federal and Chancery Court judges throughout Illinois, managing and litigating thousands of cases. I also managed hundreds of staff and attorneys, developing substantial knowledge of, and experience with, Human Resources and related administrative issues. I have also completed the Circuit Court Arbitrator Training Program (1990) and have served as an Arbitrator for Cook County.

## EXPERIENCE

**Fisher and Fisher, Attorneys at Law, P.C. (now Fisher and Shapiro), Chicago, IL — 1989-2006**

Managing Attorney for 150-person law firm focusing primarily on mortgage foreclosures, creditor bankruptcies, real estate closings, and collections. Management responsibilities included: (1) supervising attorney caseloads; (2) supervising Human Resources functions; (3) hiring, firing, promoting, training, and supervising attorneys and staff; (4) developing and implementing administrative policies and procedures; and (5) managing client relations. Legal responsibilities included managing extensive court call; preparing complaints, answers, counterclaims and related pleadings; drafting and arguing motions; conducting evidentiary hearings and trials; drafting appellate briefs; and managing appeals.

**Sullivan & Associates, Chicago, IL — 1988-1989**

Associate attorney focusing on transportation law, real estate closings, commercial litigation, and product liability. Extensive responsibility for all aspects of civil litigation and residential real estate closings.

## EDUCATION

Chicago-Kent College of Law — J.D., 1987
University of Illinois, Urbana-Champaign — B.S. in Psychology, 1984

## BAR MEMBERSHIPS AND AFFILIATIONS

Illinois
Northern District of Illinois
Seventh Circuit Court of Appeals
Chicago Bar Association

## SKILLS

Law Firm Management
Case Management
Human Resources
Civil Litigation