# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL L. SHAKMAN, *et al.* ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. 69 C 2145 |
| v. ) | Wayne R. Andersen |
| ) | District Judge |
| DEMOCRATIC ORGANIZATION OF ) | |
| COOK COUNTY, THE CITY OF ) | |
| CHICAGO, RICHARD M. DALEY, ) | |
| INDIVIDUALLY AND AS MAYOR OF ) | |
| THE CITY OF CHICAGO, ) | |
| REPUBLICAN STATE CENTRAL ) | |
| COMMITTEE OF ILLINOIS, ) | |
| REPUBLICAN COUNTY CENTRAL ) | |
| COMMITTEE OF COOK COUNTY, ) | |
| *et al.,* ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Michael E. Sullivan moves this court to hold the City of Chicago and Department of Streets and Sanitation Assistant General Superintendent Patrick Cusack and General Foreman of Linemen James Kirby in civil contempt for violating court orders arising from the *Shakman* case. Mr. Sullivan seeks relief in the form of economic and disciplinary sanctions, injunctions, and damages. On September 22, 2008, this Court held a hearing on the contempt motion. After taking all of the evidence presented at this hearing into consideration, this court denies Mr. Sullivan's motion.

## BACKGROUND

The evidence presented at the hearing revealed the following facts. Before June 7, 2007, Sullivan, an employee of the City of Chicago, was a class member in the *Shakman* proceedings. He was included as a named plaintiff in Shakman's Second Amended Complaint, which was filed in this Court on January 11, 2006. In 2007, as a result of the Accord, Sullivan received a payment of $25,000 from the pool set aside to pay all *Shakman* claims under the Accord. Sullivan's supervisor, John Kirby, was aware of Sullivan's participation in the *Shakman* case and settlement.

On June 7, 2007, Sullivan worked as part of a maintenance crew for the Bureau of Electricity in the Department of Streets and Sanitation (the "Bureau"). These crews are referred to as "Small Gangs" within the Bureau. The Small Gangs maintain light posts and traffic signals in the City of Chicago. There are nine Small Gangs, each typically composed of five employees: one foreman, two linemen, one laborer, and one motor truck driver. Sullivan worked as a laborer.

The Bureau has two different rubrics under which an employee could receive overtime pay for his work. The first, called "extended day," occurs when a laborer works beyond the end of his typical shift in order to finish a project that began during the shift. Shifts end at either 3:30 p.m., for laborers who begin at 7:00 a.m., or at 4:30 p.m., for those laborers like Sullivan who begin at 8:00 a.m. When working an extended day, a crew typically remains at the location until the job is finished, returning to the Bureau's compound ("the Yard") to unload the work truck before leaving for the day. Crews who work an extended day receive overtime pay for the time they work beyond their regularly scheduled work day.

Under the second rubric, referred to here as "after-hours" overtime, a laborer is called in to work after normal business hours or on the weekend. To ensure fairness in offering these

overtime opportunities, laborers are placed on a rotating "call list." In a typical situation, the supervisor on call receives notice from the Bureau's dispatch that a laborer is needed. The supervisor will then telephone the first person on the list with the offer to work overtime hours. If that laborer is unavailable, the official will contact the second name and so on, calling down the list until someone accepts the job.

On June 7, 2007, Sullivan was at the top of the call list. In the late afternoon of that day, his crew returned to the Yard to unload the truck and "wash up." Meanwhile, Sullivan's superiors were positioning themselves to deal with the afternoon's inclement weather; temperatures had soared into the 90s and a windstorm had blown in. Anticipating crews might be needed that evening to handle emergencies likely to arise, Mr. Cusack called Mr. Kirby early that afternoon and ordered him to create two crews to stay and be prepared to handle anything that might develop that evening. Because it was at the end of the work day, some laborers had already gone home, leaving partial crews that were missing certain team members.

Both of the emergency crews needed laborers. It was up to Mr. Kirby to complete these makeshift crews. Sullivan and two other laborers, George Karabatsos and Calvin Spurlock, were willing to work overtime that day and were on the premises. Sullivan, however, was not selected by Mr. Kirby. In court, Mr. Kirby testified that he selected Mr. Karabatsos and Mr. Spurlock to work on the emergency crews because they were closest nearby when he made his decision, and that Sullivan's involvement in the *Shakman* litigation played no part in the decision. Neither Mr. Karabatsos nor Mr. Spurlock had reported *Shakman* violations, nor were they parties to the litigation. The emergency crews earned nearly eight hours of overtime pay that evening.

In his current motion for contempt, Mr. Sullivan claims that respondents violated the Accord by wrongfully denying him the opportunity to work for overtime pay on June 7, 2007.

3

Sullivan maintains that this decision was politically motivated, and that he was denied overtime in retaliation for reporting *Shakman* patronage abuses to various authorities.

## DISCUSSION

A court's "civil contempt power rests in its inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." *United States v. Dowell,* 257 F.3d 694, 699 (7th Cir. 2001). To be held in civil contempt, a person must have violated an order or decree that sets forth in specific detail an unequivocal command. *Id.* at 699.

It is not necessary to a finding of contempt that a violation was "willful." Rather, it is sufficient that a party "has not been reasonably diligent and energetic in attempting to accomplish what was ordered." *Goluba v. School Dist. of Ripon,* 45 F.3d 1035, 1037 (7th Cir. 1995). Finally, the party asserting a violation of a judicial order has the burden of proof by clear and convincing evidence. *Maynard v. Nygren,* 332 F.3d 462, 469 (7th Cir. 2003).

At issue in this case is whether Sullivan was wrongfully denied the opportunity to work overtime and, if so, whether that opportunity was foreclosed by respondents in retaliation for Sullivan's prior reports of patronage abuses within the Bureau of Electricity.

As part of the *Shakman* proceedings, this Court approved an Agreed Settlement Order and Accord which became effective on May 31, 2007. This thirty-page document describes with reasonable specificity prohibited political patronage activities, along with the continued jurisdiction of this court, and post-Accord review and enforcement procedure. Neither of the parties to this action question the specificity of the agreement, and the Court finds it valid. Accordingly, we turn now to the question of whether respondents violated the terms of the Accord by choosing laborers other than Sullivan to work overtime on June 7, 2007.

Sullivan claims that respondents retaliated against him on June 7, 2007 by assigning two laborers, other than himself, to work overtime on the emergency crews. Sullivan maintains that he was entitled to one of these spots because his name was at the top of the call list. However, while the windstorm on June 7, 2007 created the need for two emergency crews, this need came at a time of day when neither the extended day nor after-hours overtime rubrics applied. No small gang was working at the situs of emergencies when they occurred. Thus the emergency jobs were not technically "extended day" overtime situations because the small gangs had already returned to the Yard to conclude their shifts. Only after they had returned to unload were the emergency crews assembled and dispatched.

Furthermore, the laborer positions on these emergency crews were not decided by the call list. The call list is used for after-hours overtime, but the work day had not yet drawn to a close when the emergency crews were assembled. The call list gives the order in which each employee is offered overtime work after normal business hours or on the weekends. It is not used during the workday to assign overtime work. Had the emergencies occurred at 8:00 in the evening, for example, Sullivan should have been the first laborer called.

While the parties' testimony conflicted on certain points, both sides stated during the hearing that the circumstances on June 7, 2007 gave rise to a rather rare situation; namely, a severe weather created emergency that needed to be addressed at a time of day when the small gangs were finishing up their shifts and dispersing. Mr. Calece, not Mr. Kirby, used the call list to assign overtime for laborers, but only after-hours. Since Mr. Kirby was under no direction to assemble emergency crews by using the laborer call list, Sullivan failed to show that respondents violated any procedural standard. Based on the testimony given, Sullivan failed to prove by clear and convincing evidence that he was wrongfully denied overtime.

Although Sullivan failed to prove the first prong of the test, that he was wrongfully denied the overtime work, we also note that no evidence was presented to indicate that respondents acted in retaliation for Sullivan's prior reports of patronage abuses. Although we believe that both Cusack and Kirby knew that Sullivan had conspicuously asserted his Shakman rights prior to the incident, the Court believes that Kirby did not consider that fact when selecting the two laborers that afternoon. We believe Kirby's testimony that he simply picked the two closest laborers. We note that he never handled the call-in assignments and was, therefore, not trained to assemble crew from the call-in lists. Therefore, Sullivan's motion to hold respondents in contempt of court is denied.

## **CONCLUSION**

Although the June 7, 2007 situation was an uncommon one, the Bureau of Electricity may nevertheless face a set of similar circumstances in the future. To ensure that overtime assignments are offered to Small Gangs employees in the fairest way possible, and to reassure employees of the Bureau's compliance with the *Shakman* agreement, this Court suggests that the Bureau use the laborer call sheet when the Bureau requires workers in situations that constitute neither extended day nor after-hours overtime.

For the foregoing reasons, Petitioner Michael Sullivan's motion to hold the City of Chicago and Department of Streets and Sanitation Assistant General Superintendent Patrick Cusack and General Foreman of Linemen James Kirby in contempt of the *Shakman* orders [# 687] is denied.

It is so ordered.

_____
Wayne R. Andersen
U.S. District Judge

Date: March 30, 2009