**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL L. SHAKMAN and ) | |
| PAUL M. LURIE, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 69 C 2145 |
| ) | |
| THE CITY OF CHICAGO, ) | Wayne R. Andersen |
| et al., ) | District Judge |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on Plaintiffs' Fee Petition with Respect to the City of Chicago for the period of June 1, 2007 through July 31, 2008 [1381]. For the following reasons, we grant in part and deny in part Plaintiffs' petition for attorneys' fees and costs. We conclude that Plaintiffs are entitled to an award of attorneys' fees in the amount of $356,124.70 and $14,710.38 as reimbursement for costs.

**BACKGROUND**

The Background section from the Court's previous opinion dated March 18, 2008 is repeated here. This case is part of the on-going litigation against the City and other governmental entities under the *Shakman* Consent Decrees. The litigation began in 1969 when Michael L. Shakman and Paul M. Lurie brought claims on behalf of themselves and classes of independent candidates, voters and taxpayers in Cook County against a number of defendants, including the City of Chicago and its Mayor. In essence, the Complaint charged that the City conditioned employment on the applicants' support of the Cook County Regular Democratic

Organization in violation of the Plaintiffs' constitutional rights. Over the years, a number of different matters have arisen regarding various Defendants' compliance with the Consent Decrees and resulting Compliance Plans. This case's enduring history encompasses many judicial opinions by the District Court and the Seventh Circuit which are too comprehensive and detailed to be recounted here.

On March 21, 2007, the parties filed an Agreed Settlement Order and Accord ("Accord"), which superseded and replaced the 1983 Consent Judgment. (Accord at 3-4.) The 1972 Consent Judgment remains in full force and effect. (Accord at 4.) Pursuant to the Accord, Plaintiffs are entitled to conduct ongoing review of the City's performance under the Accord and petition the Court for costs and attorneys' fees associated with such review. (Accord at 8.)

## DISCUSSION

Plaintiffs' fee petition seeks to recover attorneys' fees and costs incurred for the legal work in the proceedings covering the period from June 1, 2007 through July 31, 2008. Plaintiffs seek to recover attorneys' fees incurred for the following categories of activities:

- Implementing the pre-accord claim procedure,
- Speaking with City employees about potential violations of the Accord and 1972 Decree,
- Negotiating, drafting and implementing the new hiring plan and Accord,
- Presenting matters to the Court,
- Defending the consent decrees from attacks by the City in other litigation, and
- Preparing fee petitions.

Furthermore, Plaintiffs seek compensation for the delay in payment of their fees in one of two ways: either (1) attorneys' fees based on 2007 and 2008 rates plus interest, or (2) attorneys' fees based on 2009 rates. Plaintiffs proposed the following sums under each method:

|  | Method #1<br>(Historical Fees + Interest) | Method #2<br>(Fees Using 2009 Rates) |
|---|---|---|
| Fees | $396,946.80 | $445,429.53 |
| Costs | 14,710.38 | 14,710.38 |
| Interest | 38,585.48 | N/A |
| Total | $450,242.66 | $460,139.91 |

Plaintiffs ask the Court to use the 2009 rates "primarily so both parties can avoid spending additional time (and the City's money) determining interest rates and applying them to 2007 and 2008 hours." (Pls.' Reply at 11.)

The City objects to the Plaintiffs' petition on several grounds. First, the City argues that Plaintiffs' fee requests go beyond time authorized by the Accord. Second, the City argues Plaintiffs' fee request for time spent on the September 5, 2007 fee petition is grossly excessive, especially compared to time sought in other fee petitions. Third, the City argues that Plaintiffs should be compensated at their historical rates. Finally, the City asserts that Plaintiffs' costs are excessive.

## I. Compensable Activities

As we stated in the March 18, 2008 opinion on this topic, "When a consent decree includes provisions providing for on-going monitoring by the plaintiffs, plaintiffs are entitled to recover their attorneys' fees incurred in performing their obligations under the consent decree." *Shakman v. City of Chicago*, 2008 WL 754124, at *2 (citing *Alliance to End Repression v. Chicago*, 356 F.3d 767, 772-73 (7th Cir. 2004)). In this case, the scope of relief provided in the 1983 Decree was expanded by the Accord. *Shakman*, 2008 WL 754124, at *4. Section I.E(1) of the Accord provides as follows:

> Plaintiffs shall be entitled to review the City's performance under the Accord and the new hiring and promotion plan described in Sections II.A-C (the "New Plan") through counsel of their choice, may present matters to the Court, including but not limited to, suggestions or objections to any proposal or motion for termination

3

or modification to the Accord or the New Plan, and may petition the Court for costs and attorneys' fees incurred as part of their reasonable and appropriate review hereunder.

Plaintiffs argue that the expenditure of time for which they seek fees and expenses all fall within the ordinary meaning of "review" as stated in the Accord. The City argues for a more narrow reading of the term "review," and asserts that many of the activities for which Plaintiffs seek compensation are not covered by the Accord.

As stated above, the types of activities for which Plaintiffs seek compensation include the following: implementing the pre-accord claim procedure; speaking with City employees about potential violations of the Accord and 1972 Decree; negotiating, drafting and implementing the new hiring plan and Accord; presenting matters to the Court; and defending the consent decrees from attacks by the City in other litigation.

The Court has reviewed the time entries and affidavits of Plaintiffs' counsel, and we find all of the activities by Plaintiffs' counsel to be compensable as part of their ongoing obligation to continue to monitor and review the City's performance, as contemplated by the Decrees and the Accord. Furthermore, despite the City's argument that some of counsels' time entries are "vague" and/or constitute "block billing," we conclude that, taken as a whole, the entries are understandable, even if some are individually unclear, and that the entries represent types of activities for which Plaintiffs' counsel are entitled to compensation.

## II.     Fee Petition

The City does not dispute that time spent pursuing fee petitions is compensable, but rather argues that the *amount* of fees sought in connection with the previous and current fee petitions is excessive. In support of its argument, the City compares the fee petitions with respect to the City to the fee petitions related to other defendants in the case, such as the Cook County and the Sheriff of Cook County. However, as Plaintiffs note, those other defendants

were able to reach agreements with the Plaintiffs regarding fee awards, thus avoiding the extra expense associated with extensive litigation on the issue.  Accordingly, such a comparison is not helpful.

Plaintiffs state that of the approximately $127,000 identified by the City as fees spent on fee petitions, approximately $116,000 was attributable to time spent litigating the prior fee petition, and approximately $11,000 was spent researching and attempting to negotiate the instant fee petition.  (Pls.' Reply at 10.)  The prior fee petition covered nine years and resulted in an award of $3.6 million in attorneys' fees.  The current fee petition covers roughly one year, and is seeking roughly $450,000.  We conclude that the fees spent pursuing each of these petitions are reasonable, in light of the time covered and issues addressed in each petition.

**III.    Delay**

The next question to address is whether Plaintiffs should receive any compensation for the delay in payment of their fees.  Plaintiffs argue that they are entitled to compensation for the delay in payment by either (1) calculating the fees based on current rates, or (2) calculating historical fees and adding interest.  The City argues that no award for delay is justified, or, in the alternative, that any award for delay should be based on historical billing rates plus interest.

As outlined in the City's response, and not disputed in Plaintiffs' reply, Plaintiffs' counsel originally submitted a proposed fee petition to City Corporation Counsel in October 2008.  The City sent a formal response to Plaintiffs' counsel on April 15, 2009, in which the City contends that it classified Plaintiff counsels' time entries into five categories, including a category for non-compensable activities, and resolved all reasonable doubts in Plaintiffs' favor.  (Def.'s Resp. at 5-6.)  Plaintiffs responded on May 29, 2009, agreeing to cut certain items from the petition, and also proposing an across-the-board 3% reduction in their demand.  (Def.'s Resp.

5

at 7.) The City responded to Plaintiffs' correspondence on July 7, 2009, but apparently no additional agreements or compromises were reached. Plaintiffs then filed the instant fee petition on October 14, 2009.

The Supreme Court has explained that "compensation received several years after the services were rendered – as it frequently is in complex civil rights litigation – is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings." *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989). As such, adjustment for the delay in payment of attorney's fees may be appropriate under 42 U.S.C. § 1988. *Id* at 284. *See also Smith v. Village of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994). Meanwhile, the Seventh Circuit has also stated, "while we are concerned with the delays that counsel . . . face when litigating fee awards, we are bound by the statutory presumption that interest on money judgments 'shall be calculated from the date of the entry of the judgment.'" *In re Burlington Northern, Inc., Employment Practices Litigation*, 810 F.2d 601, 609 (7th Cir. 1986) (quoting 28 U.S.C. § 1961(a)). The Court went on to say, "While this statute does not preclude prejudgment interest, the award of such interest is committed to the discretion of the district court and is to be based on equitable considerations." *Burlington Northern, Inc.*, 810 F.2d at 609 (citing *Michaels v. Michaels*, 767 F.2d 1185, 1204 (7th Cir. 1985)).

With respect to the instant fee petition, we are not looking at a situation of a delay of "several years." Plaintiffs submitted the request for payment in October 2008. Since that time, the parties appeared to have been engaged in discussions to attempt to resolve their disagreements regarding the petition, which resulted in the filing of the instant petition in October of 2009. As the "delay" in this case is approximately one year, and there is no evidence

6

that the delay was the result of bad faith stalling by either party, the Court concludes that additional compensation for "delay" is not necessary in this circumstance.

## IV. Amounts of Attorneys' Fees and Costs Compensable

Having determined that the activities set forth in Plaintiffs' fee petition are compensable activities under the Accord, we next consider the method and manner by which to calculate the amount of fees and costs to award. As explained in this Court's prior opinion on this matter, attorneys' fees typically are awarded based on the "Lodestar" amount calculated by "multiplying the number of hours an attorney reasonably expended on the litigation times a reasonable rate." *Mathur v. Bd. of Trustees of So. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003). Once this amount is calculated, the Court has discretion to increase or decrease it to account for twelve factors in the particular litigation. *Id.* These factors are: (1) the time and labor required; (2) the novelty and difficulty of the case; (3) the requisite skill to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Spellan v. Bd. of Educ. of Dist. 111,* 59 F.3d 642, 645 (7th Cir. 1995); *but see Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983) (noting that many of the twelve factors are usually subsumed within the Lodestar calculation). Ultimately, the amount awarded should only be as large as necessary to attract competent counsel without producing a windfall to the attorneys. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 483 U.S. 711, 731 (1987); *see also* S. Rep. No. 1011, 94th Cong., 2d Sess. 6 (1976).

### A. Hours

With respect to the quantity of hours, the Court reviewed the time records and supporting materials submitted by Plaintiffs' counsel, and determined that the quantity of hours listed for each activity is reasonable and credible. The Court's observations throughout this case support Plaintiffs' assertion that the case is primarily handled by a core team of lawyers who are deeply immersed in the cases and who have developed substantial institutional knowledge on the subject, which minimizes the time needed for lawyers to get up to speed on the complexities of this case. We previously stated and will reiterate here that the quality of the work of Plaintiffs' counsel, as observed by this Court during the past many years of litigation, has been exemplary, and Plaintiffs' counsel have adequately demonstrated to the Court that they made significant and successful efforts to manage this litigation in an efficient, cost-effective manner, and have avoided unnecessary duplication of efforts.

### B. Rates

With respect to the hourly rates supporting the petition, Plaintiffs outlined the historical rates applicable to each of their attorneys in Exhibit A to their reply. While these rates represent the standard rates charged by each individual for regular billable work, the Court notes that this is a public service work, and the City has faced substantial budget problems since 2008. Moreover, the Shakman Decree Monitor ("SDM"), who has a prominent role in monitoring the City's compliance, has received a rate of $250 per hour for her entire tenure in this position, without any raises. Accordingly, the Court determines that the following rates should apply:

- An hourly rate of $400 should apply to R. Fross and M. Shakman, and a rate of $350 should apply to B. Hays and E. Feldman, based on the significant expertise that these individuals have developed as well as the valuable contributions they have made and continue to make in this litigation.

- Hourly rates used in 2007 should apply to all other individuals, unless those rates exceed $250, in which case the rates are reduced to $250.

A revised fee calculation based on these adjusted rates is as follows:

| Last Name | Firm | 2007 Hours | 2008 Hours | Total Hours | Adjusted Rates | Total Fees |
|---|---|---|---|---|---|---|
| Hays | LLBL | 358.6 | 85.8 | 444.4 | $ 350 | $ 155,540.00 |
| Fross | LLBL | 94.8 | 146.3 | 241.1 | $ 400 | $ 96,440.00 |
| Berquam | LLBL | 10.5 | 34.1 | 44.6 | $ 236 | $ 10,525.60 |
| Shag | LLBL | 14.0 | 29.2 | 43.2 | $ 236 | $ 10,195.20 |
| Rojakovick | LLBL | 36.2 | 0.0 | 36.2 | $ 237 | $ 8,579.40 |
| Slade | LLBL | 0.0 | 51.8 | 51.8 | $ 227 | $ 11,758.60 |
| Harris | LLBL | 16.6 | 0.0 | 16.6 | $ 250 | $ 4,150.00 |
| Rhee | LLBL | 0.0 | 8.3 | 8.3 | $ 240 | $ 1,992.00 |
| Nash | LLBL | 3.9 | 0.0 | 3.9 | $ 239 | $ 932.10 |
| Petrovic | LLBL | 58.7 | 0.0 | 58.7 | $ 170 | $ 9,979.00 |
| Charania | LLBL | 6.0 | 0.0 | 6.0 | $ 140 | $ 840.00 |
| Donehoo | LLBL | 52.6 | 0.0 | 52.6 | $ 160 | $ 8,416.00 |
| Fowler | LLBL | 0.8 | 0.0 | 0.8 | $ 71 | $ 56.80 |
| Feldman | MSB | 11.3 | 4.8 | 16.1 | $ 350 | $ 5,635.00 |
| Vars | MSB | 21.6 | 13.1 | 34.7 | $ 250 | $ 8,675.00 |
| Cohen | MSB | 53.6 | 0.0 | 53.6 | $ 150 | $ 8,040.00 |
| Noroozi | MSB | 0.2 | 0.0 | 0.2 | $ 150 | $ 30.00 |
| Padilla | MSB | 0.2 | 5.3 | 5.5 | $ 150 | $ 825.00 |
| Shakman | MSB | 19.4 | 4.7 | 24.1 | $ 400 | $ 9,640.00 |
| Perlstadt | MSB | 8.3 | 7.2 | 15.5 | $ 250 | $ 3,875.00 |
|  |  | **767.3** | **390.6** | **1,157.9** |  | **$ 356,124.70** |

Accordingly, Plaintiffs are entitled to recover $356,124.70 in fees for the period of June 1 2007 through July 31, 2008.

**C.     Costs**

The Court further finds that reimbursement of costs in the amount of $14,710.38 is reasonable. The Court finds that such costs were legitimately incurred by Plaintiffs' counsel during the course of this litigation and that Plaintiffs' counsel has submitted valid documentation sufficient to itemize the costs incurred. Therefore, Plaintiffs' counsel shall be reimbursed for their reasonable costs and expenses incurred during this litigation in the amount of $14,710.38.

The attorneys' fees and expenses award shall be disbursed to Roger Fross, of Locke, Lord, Bissell & Liddell LLP for allocation among the various counsel to Plaintiffs that have participated in this litigation.

## CONCLUSION

For the foregoing reasons, we grant in part and deny in part Plaintiffs' Fee Petition with Respect to the City of Chicago for the period of June 1, 2007 through July 31, 2008 [1381]. We award Plaintiffs attorneys' fees in the amount of $356,124.70 and costs in the amount of $14,710.38, for a combined total of $370,835.08. Plaintiffs are not awarded separate pre-judgment interest on either sum, but interest will begin to run on the award on April 1, 2010 until the date of payment.

The attorneys' fees and expenses award shall be disbursed to Roger Fross, of Locke, Lord, Bissell & Liddell LLP for allocation among the various counsel to Plaintiffs that have participated in this litigation.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: February 4, 2010