# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MICHAEL L. SHAKMAN, PAUL M. LURIE, )
KENNETH AYERS, ANN M. KING, )
INDEPENDENT VOTERS OF ILLINOIS- )
INDEPENDENT PRECINCT ORGANIZATION, )
MICHAEL SULLIVAN, DARRYN JONES, )
STUART MAJERCZYK, RICHARD )
GRAMAROSSA and CONNIE GRAMAROSSA, )
et al., )
                                                                      )
             Plaintiffs, )
                                                                       ) Case Number: 69 C 2145
             v. ) Hon. Sidney I. Schenkier
                                                                      )
DEMOCRATIC ORGANIZATION OF COOK )
COUNTY, THE CITY OF CHICAGO, RICHARD )
M. DALEY, INDIVIDUALLY AND AS MAYOR )
OF THE CITY OF CHICAGO, REPUBLICAN )
STATE CENTRAL COMMITTEE OF ILLINOIS, )
REPUBLICAN COUNTY CENTRAL )
COMMITTEE OF COOK COUNTY, et al., )
                                                                      )
             Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff, Tinka Vassileva, seeks to vacate an arbitration award denying her political discrimination claim against the City of Chicago. Pursuant to the Illinois Uniform Arbitration Act ("Arbitration Act"), 710 ILCS § 5/1 *et seq.*, Ms. Vassileva timely filed a "Motion to Vacate (modify or correct) the Arbitration Award" (doc. # 1699), followed by an amended motion entitled "Motion to Appeal" (doc. # 1711) (hereinafter "Amended Motion"). Ms. Vassileva argues that the award should be vacated based on either: (1) procedural deficiencies in the City's response to her Accord Arbitration Demand Form, or (2) the arbitrator's "[failure] to address legal theories presented at the [arbitration] hearing" (Pl.'s Am. Mot. at 2). In turn, the City has filed a motion (doc. # 1725) asking

this Court to deny Ms. Vassileva's Amended Motion and to confirm the Arbitration award. Thereafter, Ms. Vassileva filed a document entitled "Motion to Vacate, Modify, or Correct the Arbitrator's Award" (doc. # 1799). After careful review of the parties' submissions, we deny Ms. Vassileva's motions and confirm the arbitration award.

## I.

We begin with a brief overview of the "*Shakman* Accord," then provide a summary of both Ms. Vassileva's *Shakman* claim and the arbitration opinion and award.

### A.

Under the *Shakman* decree, the City of Chicago is barred (except for certain positions not at issue here) from "conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time already a government employee, upon or because of any political reason or factor." *Shakman v. Democratic Org. of Cook County*, 481 F. Supp. 1315, 1358 (N.D. Ill. 1979), *vacated sub nom.*, *Shakman v. Dunne*, 829 F.2d 1387, 1398 (7th Cir. 1987), *cert. denied*, 108 S. Ct. 1026 (1988). To sustain a *Shakman* claim, a plaintiff must show that employment decision makers were aware of an affected employee's political affiliation (or lack thereof), and made their employment decision based on that consideration. *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996); *Everett v. Cook County*, No. 07 C 5440, 2010 WL 1325681, at *8 (N.D. Ill. Mar. 30, 2010). Once a plaintiff makes this showing, the burden shifts to the defendant to show it would have made the same employment decision notwithstanding the political reason or factor. *Shanahan v. City of Chicago*, 82 F.3d 776, 780 (7th

Cir. 1996); *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1997).

As part of the *Shakman* proceedings, this Court approved an Agreed Settlement Order and Accord ("Accord"), which became effective on May 31, 2007. *See* Agreed Settlement Order and Accord in *Michael Shakman et al v. Democratic Organization of Cook County et al.*, Case No. 69 C 2145 (doc. # 601). In addition to describing the political patronage activities that are prohibited, the Accord provides review and enforcement procedures for alleged violations occurring after the entry of the Accord (*See id.*, Section IV). These procedures allow complainants the option of filing a complaint with the Inspector General's Office, electing to go to arbitration, or filing a complaint in federal court (*Id.*). An individual who elects to go to arbitration under the Accord is barred from filing a complaint in federal court (*Id.*). After filing a complaint with the Inspector General on March 19, 2008, Ms. Vassileva chose to pursue arbitration under the Accord.

### B.

On March 3, 2010, Ms. Vassileva, who was represented by counsel, participated in an arbitration hearing with the City to determine: (1) whether the City's promotion of Ms. Vassileva's co-worker, Dr. Andrea Putz, to the position of Water Research Specialist ("WRS") violated the Accord; (2) whether Ms. Vassileva met her burden of showing political discrimination under *Mt. Healthy City v. Doyle*, 429 U.S. 274 (1997); and (3) what remedy should be granted, if a violation had in fact occurred. Both parties filed post-hearing briefs.

In her post-hearing brief, Ms. Vassileva alleged that the City's Department of Water Management ("DWM") violated *Shakman* by promoting Dr. Putz for political reasons to WRS, a

3

*Shakman*-covered position. Ms. Vassileva argued that political favoritism could be inferred from the DWM's alleged preferential treatment of Dr. Putz and the DWM's failure to disclose relevant information to the Accord Monitor ("Monitor") who was present during the interview process.

Among other things, Ms. Vassileva pointed to the fact that, when seeking the position of Filtration Engineer II ("FE II") in 2007, Dr. Putz was allowed to participate in an interview by telephone whereas Ms. Vassileva and others were required to interview in person (Def.'s Ex. 3 at 4). Ms. Vassileva also relied on the fact that, as an FE II, Dr. Putz was given her own office space at the Bureau Desk (*Id.* at 5). Ms. Vassileva further alleged that Dr. Putz enjoyed more favorable hours and a different job description than that of other FE IIs, like Ms. Vassileva, who worked in the control room (*id.* at 5-6); that Dr. Putz's function as liaison to the Mayor's Office was not in the FE II job description, (*id.* at 6); and that Dr. Putz was permitted to "act up" without a Class "A" water license, in contravention of DWM policy (*Id.*).

With respect to the WRS position, Ms. Vassileva noted that it had not appeared in the 2007 budget (Def.'s Ex. 3 at 3). Further, while the job posting for the position required an online application, Ms. Vassileva alleged that Dr. Putz was permitted to submit paper materials (*Id.* at 7). Ms. Vassileva further alleged that DWM suppressed evidence by failing to provide her with a copy of Dr. Putz's application (*Id.*). Ms. Vassileva argued that the WRS interview process, in which she, Dr. Putz, and three other candidates participated, was tainted by DWM's failure to notify the Monitor that Dr. Putz not only worked directly for all three interviewers but was also a liaison to the Mayor's Office (*Id.* at 7-9).

4

C.

On May 18, 2010, Arbitrator Martin H. Malin issued an eight-page written opinion in which he denied Ms. Vassileva's claim. Arbitrator Malin observed that "'speculation of general political motivation . . . cannot sustain a *Shakman* claim'" (Opinion and Award, Pl's Ex. 1 at 6) (quoting *Kozlowski v. Fry*, 238 F. Supp. 2d 996, 1022 (N.D. Ill. 2002)). Arbitrator Malin found that "the record contains absolutely no direct evidence that political reasons or factors entered into the decision to award the [WRS] position to [Dr.] Putz" (*Id.* at 5). Arbitrator Malin based his finding on the fact that the interviewers "each denied having any knowledge of Dr. Putz's political affiliation," which was found to be "particularly credible given Dr. Putz has no political affiliation for them to be aware of" (*Id.*). He found that Dr. Putz's role as liaison to the Mayor's office was "purely technical;" he found "nothing political about the liaison position" (*Id.* at 7).

Arbitrator Malin also found that the interviewers' testimony was specific as to why they preferred Dr. Putz to the other candidates (*Id.* at 2). The evidence in the record was "unrefuted" that Ms. Vassileva had interviewed poorly (*Id.*). As to other issues Ms. Vassileva raised, Arbitrator Malin noted that "[t]he only evidence that Dr. Putz applied other than online is the absence of a receipt for her online application" and found Dr. Putz's testimony that she usually submitted documents online to be credible (*Id.* at 7). He found that it was necessary for the DWM to use the "Director of Water Research and Development" line item in the 2007 budget for the WRS position, while indicating that it would be paid as a WRS (*Id.* at 2). Arbitrator Malin found that all of the alleged favored treatment of Dr. Putz was a consequence of her assignment to the Bureau of Water Supply Office, rather than the control room, and "[t]here is no evidence that the assignment was

5

anything less than legitimate" (*Id.* at 6).

**II.**

The Accord provides that arbitration decisions will be reviewed solely and exclusively by this Court, and only according to the procedures and standards set forth in Sections 5/11-5/15 of the Arbitration Act, 710 ILCS 5/11-515 (Accord, Section IV.B.8). The Arbitration Act delineates a specific, narrow set of circumstances under which a court may disturb an arbitration award. The Act provides that a court "shall vacate an award" where:

> (1) The award was procured by corruption, fraud or other undue means;
>
> (2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party;
>
> (3) The arbitrators exceeded their powers;
>
> (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of Section 5, as to prejudice substantially the rights of a party; or
>
> (5) There was no arbitration agreement and the issue was not adversely determined in proceedings under Section 2 and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by the circuit court is not ground for vacating or refusing to confirm the award.

710 ILCS 5/12(a)(1)-(5). The Act provides that a court "shall modify or correct the award" where:

> (1) There was an evident miscalculation of figures or an evident mistake in the descriptionof any person, thing or property referred to in the award;
>
> (2) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or
>
> (3) The award is imperfect in a matter of form, not affecting the merits of the controversy.

710 ILCS 5/13(a)(1)-(3).

Review of arbitration awards is extremely limited. *Laatz v. Intergovernmental Risk Management Agency*, 336 Ill. App. 3d 863, 866 (2d Dist. 2003). The purpose of arbitration is to "achieve a final disposition of differences between [the] parties" that is "easier, more expeditious and less expensive" than litigation. *Pillot v. Allstate Insurance Co.*, 48 Ill. App. 3d 1043, 1046-47 (3d Dist. 1977). Accordingly, Illinois courts will construe arbitration awards so as to uphold their validity "wherever possible." *Salitz v. Kreiss*, 198 Ill.2d 1, 13 (Ill. 2001). A party challenging an arbitration award bears the burden of demonstrating why the award should be vacated or modified, and a court will grant every reasonable inference in favor of the award's finality and validity. *Laatz*, 336 Ill. App. 3d at 866.

### III.

In her moving papers, Ms. Vassileva challenges the arbitration decision on the following grounds: (1) Ms. Vassileva argues that the arbitrator refused to consider evidence, and (2) Ms. Vassileva argues that the arbitrator lacked the power to decide the issues, based on the City's failure to observe the pre-arbitration settlement time line set forth in the Accord (*See* Pl.'s Am. Mot. at 2). We address each of those arguments in turn.

### A.

Ms. Vassileva argues that Arbitrator Malin "failed to address legal theories presented at the hearing" and "refused to hear evidence material to the contrary" (Pl.'s Am. Mot. at 2). While Section 5/12(a)(4) of the Arbitration Act requires that an arbitration award be vacated when the

arbitrator "refuse[s] to hear evidence material to the controversy," 710 ILCS 5/12(a)(4), Ms. Vassileva has failed to show that Arbitrator Malin ignored any material evidence.

Ms. Vassileva first argues that Arbitrator Malin failed to consider evidence that the position of FE II did not exist in the Commissioner's Office until 2004, when Dr. Putz was hired (Pl.'s Am. Mot. at 2). However, Arbitrator Malin considered this evidence and found all instances of perceived favorable treatment to result from Dr. Putz's assignment to the Bureau Office, which was not shown to be illegitimate (*See* Def.'s Ex. 2 at 6) ("[t]here is no evidence that there was anything other than a need for one FE II to work in the Bureau Office; someone had to receive that assignment . . .").

Second, Ms. Vassileva argues that the arbitrator failed to consider evidence that the City's use of the "Director of Water Research and Development" line item in the 2007 budget to pay the salary of the WRS position violated the City's collective bargaining agreement (Pl.'s Am. Mot. at 2-3). During arbitration and post-hearing briefs, however, Ms. Vassileva never submitted any evidence to question the way that the salary for the WRS was paid, including the collective bargaining agreement. Thus, the argument is waived. *See First Health Group Corp. v. Ruddick*, 393 Ill. App. 3d 40, 49 (1st Dist. 2009) (failure to raise an issue during arbitration constitutes a waiver).

Third, Ms. Vassileva argues that Arbitrator Malin failed to consider that the Inspector General did not find "anything to investigate about" in her Accord Complaint (Pl.'s Am. Mot. at 3). However, during the arbitration hearing, Ms. Vassileva acknowledged that the Inspector General's Office investigated and filed a report indicating "they found no evidence that politics were taken into account" (Hearing Transcript, Def.'s Ex 1 at 47).

Fourth, Ms. Vassileva argues that Arbitrator Malin ignored evidence that Dr. Putz submitted her application on paper, rather than online (Pl.'s Am. Mot. at 3). However, Arbitrator Malin considered and dismissed this argument, stating: "Dr. Putz testified that she did not recall whether she applied online but that she does most things online" and "[t]he only evidence offered by [Ms. Vassileva] that Dr. Putz applied other than online is the absence of a receipt for her application . . . [t]his is too slender a reed to support the weight of the proposition for which [Ms. Vassileva] offers it" (Def.'s Ex. 2 at 7).

Fifth, Ms. Vassileva argues that Arbitrator Malin ignored evidence that the City violated its "acting up" policies by allowing Dr. Putz to act up to an FE V without a Class "A" water license (Pl.'s Am. Mot. at 3). However, contrary to Ms. Vassileva's assertion, the evidence shows that such a license was not required to act up. During the arbitration hearing, Commissioner Spatz testified that a Class "A" license was preferred for FE V workers, but was not required (Def's Ex. 1 at 128-129). Thus, the fact that Dr. Putz acted up without the license was irrelevant and Arbitrator Malin did not have to address the issue in his opinion. *See Canteen Corp. v. Former Foods, Inc.*, 238 Ill.App.3d 167, 178 (1 Dist. 1992) (allegations that an arbitrator refused to hear evidence need not be addressed by a court of review where "the record shows that the evidence the [arbitrator] declined to consider [is] immaterial to a resolution of the dispute").

Sixth, Ms. Vassileva argues that Arbitrator Malin ignored evidence that the City failed to comply with the Accord's pre-arbitration settlement time line (Pl.'s Am. Mot. at 2). However, during arbitration, Ms. Vassileva's attorney merely noted the City's failure to follow the Accord's pre-arbitration settlement time line (*see* Def.'s Ex 1 at 45). As we discuss below, his statement was

not sufficient to preserve the issue for appeal or material to the resolution of Ms. Vassileva's dispute. Therefore, Arbitrator Malin was not required to address the issue in his opinion. *See Canteen*, 238 Ill.App.3d at 178.

For the above reasons, we conclude that the factual and legal issues raised by Ms. Vassileva were sufficiently addressed and disposed of by Arbitrator Malin.

**B.**

We now turn to Ms. Vassileva's argument that the arbitrator exceeded his powers, which is based on the contention that the arbitrator lacked jurisdiction because of the City's failure to offer or decline settlement within 28 days, or to provide copies of the Arbitration Demand Form to the required recipients. The Accord states that "the Law Department will have twenty-eight (28) days from the receipt of a Demand for Arbitration to make a written settlement offer to the Accord Complainant or to notify the Accord Complainant in writing that the City declines to make an offer" (Accord, Section IV.B.2). After that, "the City's Law Department shall provide a copy of any written Arbitration Demand Form for claims where no settlement was reached to the [Monitor] and Plaintiff's Class Counsel within seven (7) days of the expiration of the settlement period" (*Id.*). In this case, it is undisputed that on August 30, 2008, Ms. Vassileva sent an Accord Arbitration Demand Form to the City's Law Department (*See* Pl.'s Am. Mot. at 1). It likewise is undisputed that the City took no action until July 6, 2009, more than ten months later (*See id.* at 2). At that point, the City did not make a settlement proposal to Ms. Vassileva (*Id.*). Instead, the City sent a letter asking Ms. Vassileva for a settlement demand by July 20, 2009 (*Id.*). On July 17, 2009, Ms. Vassileva sent a settlement demand to the City (*Id.*). On August 28, 2009, the City responded that

it would make no counteroffer and would instead proceed to arbitration (*Id.*).

Ms. Vassileva argues that the arbitration award should be vacated based on the City's failure to offer or decline settlement within 28 days, and its failure to provide copies of the Arbitration Demand Form to relevant parties within seven days thereafter (*Id.*). We find this argument to be without merit.

The City raises a number of arguments in response (*see* Def.'s Resp. at 7), but we focus on the one that is dispositive: waiver. The record shows that, despite the City's failure to comply with the time lines set forth in the Accord, Ms. Vassileva engaged in settlement discussions with the City and then proceeded through arbitration with no objection, either before the hearing or in her post-hearing brief. Although Ms. Vassileva's attorney noted during arbitration that the City had failed to comply with settlement procedures (*see* Def.'s Ex 1 at 45), this was not sufficient to preserve the issue for the appeal. As a result, we conclude that Ms. Vassileva has waived any objection to procedural delays. *See First Health Group*, 393 Ill. App. 3d at 49 (failure to raise an issue during arbitration constitutes a waiver).

We also note that, even if the argument had not been waived, it would not provide a basis to vacate the arbitral decision. To begin with, we do not consider compliance with the 28-day time line for engaging in settlement discussion to be jurisdictional, such that non-compliance divests the arbitrator of the power to hear and decide the complaint. On a related point, the Accord expressly provides that failure to complete an arbitration within the 120 day period "shall not affect the validity of the arbitrator's award" (Accord, Section IV.B.3). Likewise, we do not consider the failure to exhaust the pre-arbitration settlement process within the allotted time period to rob the arbitrator of

11

the power to act.

While we agree that the City's failure to follow the Accord's deadlines for completing the pre-arbitration settlement process does not affect the outcome of this case, we do not accept the City's suggestion that compliance with those deadlines is merely discretionary (Def.'s Resp. at 7). To be sure, the Accord does not requires the City to make a settlement offer within 28 days – or ever. The City retains the discretion to decide whether to pursue settlement of any post-Accord claim, or instead to take the matter to arbitration. But, the Accord plainly requires the City to make that decision within 28 days after it receives a demand for arbitration.

Compliance with that deadline is central to the Accord's purpose of providing expeditious resolution of post-Accord claims, whether by arbitration or settlement. In this case, had the City complied with that time line, Ms. Vassileva would have known by September 27, 2008 whether the City would settle her claim or whether it would proceed to arbitration. Instead, the City's disregard of that time line resulted in Ms. Vassileva's arbitration demand being held in suspension for an additional eleven months, until August 28, 2009, when the City informed Ms. Vassileva that it would not settle the claim. In this case, that delay has no effect on the validity of the arbitral award. But, we reserve the question of whether that would be true in the event a complainant were able to demonstrate prejudice as a result of the delay, a showing that Ms. Vassileva has not made here.

## C.

After the City's July 13, 2010, response to the Amended Motion, Ms. Vassileva filed a document labeled "Motion to Vacate, Modify, or Correct the Arbitrator's Award" on August 18,

2010. In this document, Ms. Vassileva not only restates her original arguments, but also seeks to raise new arguments that were not previously presented. Perhaps Ms. Vassileva, who is now proceeding *pro se*, intended this document as a reply in support of her original motion. To that extent, we note that it is improper to raise arguments for the first time in a reply because this deprives the other party of an opportunity to respond. *Marie O. v. Edgar*, 131 F.3d 610, 614 n.7 (7th Cir. 1997) (matters raised for the first time in a reply are waived). However, even had Ms. Vassileva's arguments been timely raised, our review persuades us that they would be without merit.

## CONCLUSION

For the reasons set forth above, the Court denies Ms. Vassileva's various motions (doc. ## 1699, 1711, and 1799) and grants the City's motion to confirm the arbitration award (doc. # 1725). We therefore confirm the arbitration award dated May 18, 2010, denying Ms. Vassileva's claim.

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATED: October 5, 2010**