11/23/2010

# SHERIFF OF COOK COUNTY
# EMPLOYMENT PLAN

I.    Introduction

This is the new Employment Plan (the "Employment Plan") submitted by the Sheriff of Cook County (the "Sheriff" or "Sheriff's Office") and prepared with the assistance of the Shakman Compliance Administrator for the Sheriff (the "SSCA"), as required by the SRO. This Employment Plan sets forth the general principles that will govern the Sheriff's Office's employment policies and procedures. The Employment Plan applies to all Applicants and Candidates, as defined below, of the Sheriff's Office. The Employment Plan does not apply to any Employment Action directed at exempt employees or Exempt Positions or as otherwise specifically provided in this Employment Plan.

The Sheriff's Office reserves the right to modify, supplement, and/or rescind any provision, item or procedure included in this Employment Plan. This Employment Plan is not a contract and nothing in this Employment Plan shall be construed as providing any contractual right.

II.   Definitions

See Glossary.

III.  General Principles and Commitments Applicable to Employment

The Sheriff will adhere to the following general employment-related policies, practices and procedures:

A.    <u>Commitment</u>. The Sheriff will implement proactive and transparent employment-related policies, practices and procedures that will prevent and remedy the effects of Unlawful Political Contacts and Unlawful Political Discrimination as required by the Sheriff's Order and will comply with the Constitution of the United States, the Consent Decrees, the SRO (while in effect), and Ordinances.

B.    <u>Non-discrimination Based on Political Reasons or Factors</u>. No individual applying for or holding a Non-exempt Position will be subject to any Unlawful Political Contact or Unlawful Political Discrimination, and the decision in any Employment Action will not be influenced by any Political Reason or Factor.

C.    <u>Notice of Exemption</u>. An employee holding a Non-exempt Position that is to become an Exempt Position will be given advance notice of such change and will be given the opportunity to transfer to any available Non-exempt Position

1

11/23/2010

for which he or she may be qualified in lieu of remaining in his or her position and becoming an Exempt Employee.

D.    <u>Mandatory Reporting</u>. Any employee of the Sheriff who knows of or has a reasonable belief that a Political Contact or Unlawful Political Discrimination has occurred or is occurring, is required to report such information to the Compliance Officer directly and without delay. All employees of the Sheriff are required to cooperate fully in any investigation conducted by the Compliance Officer and/or OPR. Any employee who fails to report and/or cooperate as required will be subject to disciplinary action, up to and including termination.

E.    <u>Equal Employment Opportunity</u>. The Sheriff is committed to diversity and equal employment opportunities regardless of race, sex, sexual orientation, age, religion, national origin, disability or any other legally protected status.

F.    <u>No Retaliation</u>. The Sheriff will continue to prohibit retaliation, punishment or penalty for initiating a complaint in good faith related to any alleged Unlawful Political Contact or Unlawful Political Discrimination, or cooperating with or assisting the Compliance Officer, the SSCA, while acting, Personnel, OPR or any other person or authority in the investigation of any such complaint.

G.    <u>Supervisor Training</u>. The Sheriff will establish formal, regular and ongoing training sessions for all Supervisors and other employees who provide input into decisions regarding any Employment Action taken as to other Sheriff employees.

H.    <u>Personnel Staffing</u>. The Sheriff will commit to provide and/or utilize personnel and resources necessary to ensure Personnel is able to maintain a staff of experienced and knowledgeable professionals who is able to fulfill its obligations under this Employment Plan.

I.    <u>Union Relations</u>. The Sheriff respects its relationships with its employees' legally recognized collective bargaining representatives and the provisions of the CBAs it has negotiated with such representatives. Those relationships are governed by the Illinois Public Labor Relations Act, 5 ILCS 315, et seq., as amended, and the Employment Plan and the Sheriff's Employment Action Manual (SEAM) will be construed and administered consistent with that Act to the extent that the construction or administration does not conflict with the United States Constitution or federal civil rights laws. With respect to Shakman Non-exempt Employees, if a CBA is in conflict with the language in the Employment Plan or SEAM, the language in the CBA governs provided it does not permit or involve the use of Political Reasons or Factors. If any provision in a CBA allows for management discretion involving any Employment Action, such management discretion must be exercised subject to the Sheriff's Order regarding Unlawful Political Factors and Reasons, Reporting and Retaliation, and to procedures contained in the Sheriff's Employment Plan and SEAM. If the CBA does not contain a specific procedure or is otherwise silent, the relevant procedure in the Employment Plan or SEAM must be followed.

2

11/23/2010

J.    <u>No Political Consideration Certification (NPCC)</u>.  Consistent with the provisions of this Employment Plan and SEAM, certain Sheriff's employees and other individuals will be required to sign, in hard copy or electronically, as applicable, a No Political Consideration Certification as to certain Employment Actions in which they have input, which may be incorporated into the forms and computer systems used by the Sheriff's Office as described in this Employment Plan and SEAM.

K.    <u>Placement of Exempt Employees</u>.  The Director of Personnel/Designee will take steps to verify that each individual who is placed in an Exempt Position possesses the Minimum Qualifications of the position as contained in the Job Description.

L.    <u>Changes to the Exempt List.</u>  The Sheriff's Office may from time to time add positions to, delete positions from, or amend title of positions contained on the Exempt List, provided that, prior to the termination of the SRO, such changes must be approved in writing by the Plaintiffs' counsel in the Shakman Case and the Court overseeing the Shakman Case prior to taking any Employment Action for the position.  Such changes will be made as follows:

1.    The Executive Office/Designee will direct that written notice of the proposed addition to, deletion from, or title amendment on the Exempt List to the Compliance Officer, the Director of Personnel, the Director of OPR, or their acting Designee(s) along with supporting documentation including but not limited to (a) the identity and job code of the Exempt Position (including a copy of the current Job Description for the position) and (b) a description of the basis on which the position should be designated as an Exempt Position, or (c) a description of the basis on which the title of the Exempt Position should be amended.  The Compliance Officer, the Director of Personnel, the Director of OPR, or their acting Designee(s) will respond with their respective approval or denial (including the reasons for the denial or approval) within 10 days. The Compliance Officer shall maintain copies of all approvals and denials of approval provided by the Director of Personnel, the Compliance Officer, and Director of OPR, or their acting Designee(s).

2.    The Executive Office/Designee shall take into account:  (a) the opinions of the Compliance Officer, the Director of Personnel, the Director of OPR, or their Designee(s) and (b) applicable case law and make the determination about whether a position should be considered an Exempt Position.  The Compliance Officer, the Director of Personnel, the Director of OPR, or their Designee(s) may appeal the Executive Office/Designee's decision to the Sheriff for final determination.

3.    Until such date as the SRO is terminated, in addition to the procedures in paragraphs 1 and 2 above, notice of any proposed addition to, deletion from, or title amendment on the Exempt List, along with supporting documentation, including but not limited to (a) the identity and job code of the Exempt Position (including a copy of the current Job

130032447v1  0861523  51151

11/23/2010

Description for the position); and (b) a description of the basis for the addition, deletion and/or amendment, must be sent by e-mail to the Plaintiffs' counsel in the Shakman Case, who will respond with his/her written notice of approval or denial of approval (including the reasons for the denial of approval) within 10 days.  A copy of such notice will also be sent to the SSCA, while acting.  If the Plaintiffs' counsel in the Shakman Case approves the request, the position will be added to, deleted from, or amended on the Exempt List, and such revision will be included on the next quarterly posting of the Exempt List.  If the Plaintiffs' counsel in the Shakman Case does not approve the request, the Sheriff may file a motion with the court having jurisdiction in the Shakman Case for final resolution.  The position will not be added to, deleted from or amended on the Exempt List until final resolution by the court.

M.   Posting of Exempt List.  The most recent Exempt List shall be posted semi-annual on the Sheriff's website without names of the incumbents and in the Department of Personnel, in an area available to public viewing, with the names of the incumbents.

N.   Recommendations. The following will apply to the submission and consideration of certain recommendations regarding individuals being considered or applying for any Non-exempt Position:

1.   Nothing in this Employment Plan should be construed to limit the right of any citizen, including any Public Official/Agent or Political Organization, from submitting a written recommendation on behalf of any individual applying for any Non-exempt Position where such recommendation is based solely on the citizen's, Public Official/Agent's or Political Organization's personal knowledge of the Applicant's or potential Applicant's work, skill, work experience or other job-related qualifications, provided such written recommendation must be included in the Applicant's application materials and  personnel record, if the recommendation relates to the applicable Employment Action.

2.   No Sheriff's Office employee, including, but not limited to, a Department Head, and no Public Official/Agent or Political Organization may contact any Sheriff's Office employee involved in any Employment Action with the intent or for the purpose of lobbying or advocating for or against, or otherwise influencing, any Employment Action related to any individual being considered or applying for a Non-exempt Position, except for appropriate personnel who are authorized participants in an Employment Action. No Sheriff's Office employee, including, but not limited to, a Department Head and no Public Official/Agent or Political Organization may contact any Sheriff's Office employee involved in any Employment Action to request that an individual be added to or deleted from an Eligibility List or Interview List for a Non-exempt Position unless such contact is in writing and is based solely on the recommender's personal knowledge of the

4

11/23/2010

individual's work history, skills and abilities, except for appropriate personnel who are authorized participants in a particular Employment Action and are actively engaged in determining whether Applicants are eligible in such sequence.

3.    All recommendations regarding individuals being considered for any Non-exempt Position shall be in writing. Copies of any written recommendations for Non-exempt Positions must be submitted immediately to the Compliance Officer and recorded on the Contact Log, and available at the Sheriff's Personnel Office upon request.

4.    Names of recommenders and the Positions involved will be included on the Contact Log and available in the Sheriff's Personnel Office. Names of such recommenders need not be posted on the Sheriff's website.

5.    Any violation of the prohibitions in this Section must be reported to the Compliance Officer who will notify OPR of the violation. OPR will investigate and resolve the violation in accordance with this Employment Plan, the Sheriff's Order and any other applicable laws or Ordinances.

O.    <u>Interpretation of the Employment Plan</u>. All portions and provisions of this Employment Plan will be interpreted so as to be in furtherance of the fulfillment of the above principles and commitments, as well as the Sheriff's Orders and General Orders.

IV.    General Principles and Responsibilities Related to Personnel

Personnel is responsible for initiating, directing, coordinating and monitoring the human resources processes, policies and procedures of the Sheriff relating to Employment Actions. The following will apply to all personnel and activities of Personnel:

A.    <u>Personnel Rules</u>. Personnel will draft and maintain as current Personnel Rules, located in Article U of SEAM that are consistent and in compliance with and effectuate the provisions of this Employment Plan and SEAM. Personnel will revise and update the Personnel Rules in the future on an ongoing basis as required and will post the current Employment Plan and SEAM on the Sheriff's website. Article U may be amended from time to time consistent with this provision.

B.    <u>Semi-Annual Reports</u>. Personnel will post semi-annual reports at the Personnel Office and on the Sheriff's website listing the total number of hires, Transfers, Details, Terminations, Reclassifications and Promotions occurring in the various Departments of the Sheriff's Office during the preceding six (6) month period, including: (1) the dates of hire, Transfers, Details, Reclassifications, Terminations and Promotions; (2) the names of those hired, Transferred, Detailed, reclassified, terminated or promoted (which will be posted at the

11/23/2010

Personnel office only and not on the Sheriff's website); (3) the positions into which they were hired, Transferred, Detailed, reclassified, terminated or promoted; (4) the Department to which they were assigned; (5) in the case of Transfer, Detail, Termination, Reclassification, or Promotion, the Department from which they were transferred, detailed, terminated, reclassified or promoted; and (6) the residential zip code of the employee hired, transferred, detailed, free moved or promoted, with a copy to the Compliance Officer. For Reclassifications negotiated pursuant to a Collective Bargaining Agreement, Personnel will include the reclassified titles and the name of the union but will not be required to include the names of all employees reclassified pursuant to the Collective Bargaining Agreement. Prior to termination of the SRO, the above described reports shall be made quarterly and shall cover the preceding three (3) month period.

C.     <u>Personnel Training</u>. The Sheriff's Office, in conjunction with the Compliance Officer, will provide comprehensive mandatory training programs for all staff within Personnel to ensure they are aware of and knowledgeable about the Employment Plan and SEAM and will be able to administer various aspects of this Employment Plan and SEAM and answer questions they may receive. Such training will be conducted no less frequently than once a year and no later than three (3) months after any individual becomes an employee in Personnel.

D.     <u>Supervisor Training</u>. The Sheriff's Office, in conjunction with the Compliance Officer, will conduct comprehensive training of all Supervisors and any other individuals with the authority to make decisions affecting an Employment Action to ensure they are aware of and knowledgeable about the Employment Plan and SEAM. Such training will be conducted no less frequently than once a year for all Supervisors and no later than three months after any individual becomes a Supervisor.

E.     <u>Interviewer Training</u>. The Sheriff's Office, in conjunction with the Compliance Officer, will conduct training of all Sheriff's Office employees who are eligible to interview Candidates for any Non-exempt Position as to proper interviewing conduct, techniques and requirements and the definitions of Political Reasons or Factors, Unlawful Political Contacts and Unlawful Political Discrimination.

F.     <u>Merit Board Training</u>. The Sheriff's Office, in conjunction with the Compliance Officer, will provide periodic training for all members of the Merit Board regarding Political Reasons or Factors, Unlawful Political Contacts and Unlawful Political Discrimination regarding their obligations including, but not limited to, proper interviewing and Applicant screening procedures, and the requirements of this Employment Plan and SEAM.

G.     <u>Review of Job Descriptions</u>. In order to adequately perform its functions and promote transparency, all Job Descriptions must include a list of all Minimum Qualifications and testing protocols, and they must be accurate and readily available to the public. Therefore, Personnel, in conjunction with the Compliance Officer and outside consultants, as needed, shall: (1) periodically analyze existing Job Descriptions to ensure they accurately describe all

130032447v1 0861523 51151

11/23/2010

Minimum Qualifications and testing protocols; (2) post Job Descriptions for each job title on the Sheriff's publicly available website for the public to review; and (3) update the information contained on Job Descriptions whenever a RTH or MRTH is received and whenever a material change is made in any Minimum Qualifications, testing protocol, screening criteria or hiring criteria of the job.

H.   <u>Cooperation with OPR and the Compliance Officer</u>.  All staff of Personnel will cooperate fully and at all times with OPR and the Compliance Officer by immediately reporting any Political Contacts (including Unlawful Political Contacts) to the Compliance Officer and Unlawful Political Discrimination to OPR, providing documents and information regarding any allegation or investigation and assisting in any investigation, except as prohibited by applicable law.

I.   <u>Complaint Line</u>.  The Compliance Officer's "complaint line" shall facilitate the receipt of complaints of Political Contacts (including Unlawful Political Contacts) and Unlawful Political Discrimination, including provisions for the following:

  1.   The complaint line will allow individuals to call and leave a message on an anonymous or credited basis, to register complaints regarding their good faith belief of the occurrence of Unlawful Political Contacts or Unlawful Political Discrimination.

  2.   Notice of the existence and number of the complaint line shall be posted at all places where individuals make application for employment with the Sheriff, all Departments, OPR, and Personnel, and on the Sheriff's website.

  3.   All recorded calls will be reviewed by the Compliance Officer.  In its discretion and to facilitate communication, the Compliance Officer may refer matters alleging Unlawful Political Contacts or Unlawful Political Discrimination or Consent Decrees while in effect, or matters alleging violations of the SRO, Sheriff's Order or Ordinances while in effect to OPR.

J.   <u>Complaint Process</u>.  The following will apply in the event any Sheriff's employee has reason to believe conduct in violation of this Employment Plan, Sheriff's Order, Ordinances, or the SRO and Consent Decrees (while in effect) has or is occurring during the course of any Employment Action:

  1.   Upon receipt of a complaint involving a pending or proposed Employment Action, the Compliance Officer shall provide written notice to OPR and the SSCA, while acting, of the complaint, which will include an indication of who referred the complaint and to whom.

  2.   The Compliance Officer shall advise the Director of Personnel of all complaints.  The Director of Personnel shall take appropriate action to

130032447v1  0861523  51151

11/23/2010

temporarily suspend the proposed or pending Employment Action while the complaint is investigated. During any investigation by the Compliance Officer or OPR, the Director of Personnel may (a) continue the temporary suspension of the Employment Action until the investigation is completed or (b) release the suspension and allow the process to proceed. In the event the Director of Personnel elects to release the suspension, however, he or she will file a written report with OPR setting forth the reason for the release.

3. <u>Political Contacts.</u> Any employee who knows of or has a reasonable belief of any Political Contact with respect to any Employment Action is required to report that Political Contact to the Compliance Officer.

a. The Compliance Officer will record the Political Contact on the Contact Log and will review the reported Political Contact.

b. If the Compliance Officer determines the Political Contact was lawful, he or she will document the reasons for the determination and will close the investigation.

c. If the Compliance Officer cannot make a determination that the Political Contact was lawful, the Compliance Officer will refer the Political Contact to OPR for investigation. The Compliance Officer will include such Political Contact on the Resolution Log.

d. OPR shall investigate all Political Contacts referred by the Compliance Officer. Upon conclusion of an investigation, OPR shall issue a written report. The report shall be filed with the Sheriff, Undersheriff, and the Compliance Officer, and may be filed with the head of each Department affected by or involved in the investigation. The report shall include the following:

i. A description of any complaints or other information received by OPR pertinent to the investigation;

ii. A description of any Unlawful Political Discrimination, Unlawful Political Contacts, or non-compliance with this Employment Plan observed or discovered in the course of the investigation;

iii. Recommendations for correction of any unlawful conduct or non-compliance described in the report; and

iv. Such other information as OPR may deem relevant to the investigation or resulting recommendations.

e. The Recommendation section of an OPR Report shall be provided to individuals upon written request either in person or

8

11/23/2010

via email if so requested.  The Recommendation section shall include:

    i.    A summary of the complaint;

    ii.    A summary and description of the nature and scope of the investigation and any findings;

    iii.    A recommendation either that no action be taken or that a specific action be taken; and

    iv.    An explanation for the recommendation that either no action be taken or for the specific action recommended.

f.    The Compliance Officer shall review OPR Reports and if the Compliance Officer does not agree with OPR's determination, he or she may append a written objection to the Report which objection shall be included as part of the Report and the Recommendation section.

4.    <u>Unlawful Political Discrimination.</u>  Any employee who knows or has a reasonable belief of the existence of any Unlawful Political Discrimination or receives a complaint of any Unlawful Political Discrimination with respect to any Employment Action or of any violation of this Employment Plan, the Personnel Rules or General Orders is required to report that complaint to the Compliance Officer immediately.

a.    The Compliance Officer shall advise OPR of all complaints. OPR shall investigate all complaints involving allegations of Unlawful Political Discrimination.  Upon conclusion of an investigation, OPR shall issue a written report.  The report shall be filed with the Sheriff, Undersheriff, Chief of Staff, Executive Director of Office of Policy and Accountability, and Compliance Officer, and may be filed with the head of each Department affected by or involved in the investigation.  The report shall include the following:

    i.    A description of any complaints or other information received by OPR pertinent to the investigation;

    ii.    A description of any Unlawful Political Discrimination, Unlawful Political Contacts, or non-compliance with this Employment Plan observed or discovered in the course of the investigation;

    iii.    Recommendations for correction of any unlawful conduct or non-compliance described in the report; and

11/23/2010

iv.      Such other information as OPR may deem relevant to the investigation or resulting recommendations.

b.      The Recommendation section of an OPR Report shall be provided to individuals upon written request either in person or via email if so requested. The Recommendation section shall include:

i.      A summary of the complaint;

ii.      A summary and description of the nature and scope of the investigation and any findings;

iii.      A recommendation either that no action be taken or that a specific action be taken; and

iv.      An explanation for the recommendation that either no action be taken or for the specific action recommended.

c.      The Compliance Officer shall review OPR Reports and if the Compliance Officer does not agree with OPR's determination, he or she may append a written objection to the Report which objection shall be included as part of the Report and the Recommendation section.

5.      **Arbitration Procedure for Complaints Alleging Unlawful Political Discrimination.**

a.      <u>Patronage Complaint</u>. Any Sheriff's employee or applicant for employment with the Sheriff's Office who believes that he or she is a victim of unlawful political discrimination in connection with any term or aspect of governmental employment with the Sheriff may file a complaint with the Compliance Officer on a Patronage Complaint Form ("Patronage Complaint"). In order to elect to go to Arbitration under the this Plan, the individual must first file a Patronage Complaint with the Sheriff's Compliance Officer. If an applicant or employee elects to go to Arbitration under this Plan, that individual is barred from also filing a complaint in court. If an individual files a complaint in court, that individual cannot elect to go to Arbitration under this Plan. The Compliance Officer shall forward the Patronage Complaint Form to the Office of Professional Review for investigation. At the conclusion of the investigation, the Office of Professional Review will provide a copy of the complete report to the Patronage Complainant ("Case Report").

b.      <u>Written Arbitration Request Due Date</u>. Any written demands for arbitration from an applicant or employee of the Sheriff must be received by the Sheriff's General Counsel by the end of the

130032447v1  0861523  51151

11/23/2010

thirtieth (30th) day after the Sheriff's Office of Professional
Review issues its Case Report. The Patronage Complainant
seeking to invoke arbitration must submit a written demand for
arbitration on the Patronage Arbitration Request Form. The
Arbitration Request shall describe in plain terms the actions
alleged to violate this Plan and the relief sought, but detailed
pleadings shall not be required and any claim may be amended if
permitted by the Arbitrator; the right to amend shall be liberally
construed. The Arbitration Request must also include a copy of
the Patronage Complaint Form submitted to the Sheriff's Office
of Professional Review and the Sheriff's Office of Professional
Review's Case Report. The Sheriff's General Counsel shall
provide a copy of any written Arbitration Request Form to the
SCA and the Cook County State's Attorney's Office within
seven (7) days of its receipt.

c. <u>Settlement Conference</u>. Within twenty-eight (28) days from the
date upon which the Sheriff's General Counsel receives an
Arbitration Request Form, the Sheriff's General Counsel's
Office, the Cook County State's Attorney's Office, and the
Patronage Complainant shall hold an in person settlement
conference at the offices of the Sheriff's General Counsel for
settlement purposes only and the statements made and the
positions taken shall not be disclosed if arbitration is sought.
The Patronage Complainant and the Sheriff can agree in writing
to an extension of this date. The Patronage Complainant may be
represented at the settlement conference by counsel or any other
representative of her or his choice. Settlement offers will be
made at the discretion of the Sheriff and the Cook County State's
Attorney and will be paid for by the County. Settlement offers
may include, but are not limited to, monetary damages,
reinstatement or other equitable relief.

d. <u>Timing for Arbitration</u>. If the Sheriff and the Patronage
Complainant are not able to reach a settlement, the Sheriff shall
inform the Arbitrator of her or his selection by sending the
Arbitrator a copy of the Arbitration Request Form and
accompanying documents, within seven (7) days of the end of
the settlement conference process. Within ten (10) days of being
notified of her or his selection, the Arbitrator shall provide the
Patronage Complainant, the Sheriff's General Counsel, and the
Cook County State's Attorney's Office notice of her or his
selection and a proposed arbitration schedule. The proposed
schedule shall provide for a pre-hearing conference at which
other steps may be scheduled, including the production of
documents and information, any depositions, and a schedule for
a hearing to be completed within 120 days. Failure to complete

11/23/2010

the arbitration within such period, however, shall not affect the validity of the Arbitrator's award.

e.  Arbitrator's Fees; Representatives of Complainant.  The Arbitrator's fees and any costs of administration shall be paid by the County.  The proceedings shall be electronically recorded.  Either party may order a copy of the transcripts at its own expense.  Each party is responsible for the costs of compensating its own witnesses and the costs of any transcript, if desired.  A Patronage Complainant may appear on his or her own behalf, be represented by an attorney, or be represented by any other representative of his or her choice.

f.  Selection of Arbitrator.  The Sheriff will establish a panel of six (6) arbitrators. The arbitrators must be members of the National Academy of Arbitrators or be on a list of arbitrators approved by the American Arbitration Association.  The approved arbitrators will serve on a rotating basis.

g.  Governing Rules.  Except as modified herein, the arbitration shall be governed by the National Rules for Employment Disputes of the American Arbitration Association. Except as expressly provided otherwise herein, the arbitration shall be conducted in accordance with the Illinois Arbitration Act, 710 ILCS 5/l, et seq., and the Arbitrator shall have all powers conferred by that Act.

h.  Arbitrator's Decision.  The Arbitrator must issue a written award, including written findings of fact, within thirty (30) days of the completion of the arbitration hearing. Copies of the decision shall be provided to the Patronage Complainant, the Sheriff's General Counsel, and the Cook County State's Attorney's Office.  The award shall determine whether the Patronage Complainant was discriminated against on the basis of unlawful political discrimination and the appropriate remedy.  Prevailing Patronage Complainants shall be entitled to reasonable attorneys' fees and costs as determined by the Arbitrator.  These attorneys' fees, costs and monetary awards will be paid for by the County.  The Arbitrator will have no authority to modify any provision of the Plan.

i.  Finality of Decision.  The Arbitrator's award may be appealed by either party to any court of competent jurisdiction. The award may be reviewed and enforced, and judgment entered in conformity therewith, as provided for in the procedures and standards set forth in Sections 5/11-5/15 of the Illinois Uniform Arbitration Act, 710 ILCS 5/11-5/15, inclusive, and applicable court decisions under those provisions of that Act.

11/23/2010

j.  Waiver.  Any Patronage Complainant who proceeds under the Sheriff's Arbitration Process described herein, shall waive any and all rights she or he may otherwise have arising from the alleged political discrimination set forth in his or her written Arbitration Request Form.

k.  Tolling During Investigation by Sheriff's Office of Professional Review. The filing of a Patronage Complaint shall toll an individual's statute of limitations for political discrimination claims in federal court until thirty (30) days after the date on which he or she receives the Sheriff's Office of Professional Review's Case Report.  An individual shall have thirty (30) days after he or she receives the Sheriff's Office of Professional Review's Case Report to file a complaint in court.  If an individual elects to file a political discrimination claim in federal court, that individual cannot elect to participate in the Arbitration Procedure provided herein. If an individual elects to file an Arbitration Demand, he or she must do so within thirty (30) days after receipt of the Sheriff's Office of Professional Review's Case Report.

6.  Violations of the Employment Plan.

a.  If the Compliance Officer receives a complaint that involves allegations of a breach of policy or process or violation of this Employment Plan in connection with an Employment Action other than Unlawful Political Contacts or Unlawful Political Discrimination, the Compliance Officer shall investigate the complaint.  OPR shall provide the Compliance Officer with any requested personnel and resources necessary to conduct such investigation.  The Compliance Officer's investigation shall include, but not be limited to, an investigation of all relevant documents and interviews with witnesses.  If at any time during an investigation, the Compliance Officer determines that there is reason to believe an Unlawful Political Contact or Unlawful Political Discrimination is involved, he or she shall immediately refer the matter in writing to OPR for investigation pursuant to Article IV, Section J.3. or Article IV, Section J.4. above, as applicable.

b.  Upon conclusion of an investigation, the Compliance Officer shall issue a written report setting forth his or her findings and recommendations for corrective action.  The report shall include the following:

i.  A description of any complaints or other information received by the Compliance Officer pertinent to the investigation;

130032447v1 0861523 51151

11/23/2010

    ii.     A description of any violation of any process or procedure or other non-compliance with this Employment Plan observed or discovered in the course of the investigation;

    iii.    Recommendations for correction of any breach of policy, process, unlawful conduct or non-compliance described in the report; and

    iv.    Such other information as the Compliance Officer may deem relevant to the investigation or resulting recommendations.

    v.     A summary of the report will be included on the Resolution Log.

c.    The Recommendation section of the Compliance Officer's Report shall be provided to individuals upon written request either in person or via email if so requested. The Recommendation section shall include:

    i.     A description of any alleged violation or other information received by the Compliance Officer pertinent to the investigation;

    ii.    A summary and description of the nature and scope of the investigation and any findings;

    iii.    A recommendation either that no action be taken or that a specific action be taken; and

    iv.    An explanation for the recommendation that either no action be taken or for the specific action recommended.

7.    <u>Reports</u>.

a.    The reports setting forth the written findings and recommendations of the Compliance Officer and OPR shall be given to the Director of Personnel. OPR Reports and Compliance Officer Reports shall not mention the name of any informant, complainant, witness or person investigated, except where the copy of the report given to the head of any Department recommends disciplinary action against an employee. OPR shall redact the names of non-party witnesses and may redact personal identifying information or other information if such personal or other information may reveal or undermine an ongoing investigation.

b.    The Director of Personnel shall review the findings and recommendations with the Department Head of the Department involved in the complaint. The Director of Personnel shall act

14

11/23/2010

on such recommendations within 30 days. The Director may also terminate the hiring process (if applicable) and impose other remedial actions. If the recommendations of the Compliance Officer or OPR are not followed, the Director of Personnel must send a written report to the Executive Director of OPR and the SSCA, while acting, describing the reasons for not following such recommendations and what action, if any, the Director of Personnel has taken in response to the complaint.

130032447v1  0861523  51151

11/23/2010

    8.    <u>Resolution Log</u>.  The Compliance Officer shall provide up-to-date copies of the Resolution Log to OPR, the Director of Personnel, and the SSCA, while acting, by the 15th day of each month.

K.    <u>Recordkeeping</u>.  Personnel will keep records relating to all Notices of Job Opportunities of Non-exempt positions, including, but not limited to, applications, Screening Spreadsheets, Eligibility Lists, Interview Lists, Interview Evaluation Forms and signed No Political Consideration Certifications and Applicant Certifications, for a minimum of two (2) years following the date of posting or as otherwise required under the Local Records Retention Act.

L.    <u>Access to Information Regarding Applicants</u>.  Pending implementation of Taleo, the Director of Personnel will designate an employee or employees of Personnel who will be authorized to provide information regarding the status of any Applicant or Notice of Job Opportunity to individuals outside Personnel, including, but not limited to, Applicants and Department Heads.  The designated employees will limit the information provided to the dates of Notice of Job Opportunity, the status of the Notice of Job Opportunity, and whether an Applicant has been deemed ineligible or eligible.  No additional information regarding Applicants and Notices of Job Opportunity will be provided to outside parties by Personnel.

M.    <u>Reviews and Audits of Employment Action Data</u>.  The Compliance Officer shall monitor, perform quarterly reviews and audits, and prepare reports as follows:

    1.    Each quarter the Compliance Officer shall conduct the following reviews:

        a.    <u>Department Employment Action Data Intervention</u>.  Review of all reported or discovered instances where Hiring Departments contacted Personnel to lobby  for or advocate on behalf of actual or potential applicants or bidders for Non-exempt Positions or to request that specific individuals be added to any referral or eligibility list except as permitted in this Employment Plan;

        b.    <u>Exemptions</u>.  Review of adherence to exemption requirements and Exempt Lists and instances and propriety of Exempt List modifications;

        c.    <u>Senior Manager Employment Action Process</u>.  Review adherence to the Senior Manager Hiring Process and instances and propriety of any modifications;

        d.    <u>Justifications for Hire</u>.  Review of any Justifications for Hire explaining the hiring rationale when no Consensus selection was reached during a Consensus Meeting.

11/23/2010

    e.    <u>Use of Taleo</u>.  Review of access to and use of Taleo by Sheriff's employees.

    2.    Each quarter the Compliance Officer shall conduct audits of the following matters to ensure compliance with the Employment Action process:

        a.    Modifications to Job Descriptions, Minimum Qualifications and Screening and Hiring Criteria;

        b.    Candidate/Bidder Lists;

        c.    Testing.  Test administration and scoring; and

        d.    No Political Consideration Certifications.  The required certifications attesting that no Political Reasons or Factors were considered in the applicable employment action.

N.    <u>Monitoring of Employment Plan</u>.  The Compliance Officer shall monitor the Employment Processes on an ongoing basis as follows:

    1.    <u>Observance of On-going Processes</u>.  The Compliance Officer and his or her Designee(s) shall participate in random, in-person monitoring of screenings, testing, interviews, and Consensus Meetings.  To facilitate such monitoring, the scheduled time and locations of all such activities shall be provided to the Compliance Officer at least 48 hours in advance of the activity unless otherwise provided for by this Employment Plan.

    2.    <u>Initiation of Complaint Process</u>.  If during the course of monitoring or conducting an audit or review pursuant to Article IV, Section N, the Compliance Officer finds reason to believe that there has been or may be any violation of this Employment Plan, he or she will investigate and prepare a written report on the findings.  In addition, the Compliance Officer may refer the matter to OPR for investigation and reporting.  If during the course of monitoring or conducting an audit or review pursuant to Article IV, Section N, the Compliance Officer finds reason to believe that any Unlawful Political Contact or Unlawful Political Discrimination has taken or may be taking place with respect to any Employment Action, the Compliance Officer shall report such matters to OPR for investigation and reporting.

    3.    <u>Reports</u>.  All information gathered by the Compliance Officer pursuant to the duties described above shall be reported as follows:

        a.    All reports and audits shall be available to the SSCA, while acting, the Sheriff, the Director of Personnel/Designee, OPR and the Sheriff's Chief Legal Counsel.

        b.    The Compliance Officer shall send written reports to the SSCA, while acting, the Director of Personnel, the Executive Director of

11/23/2010

OPR and the Sheriff's General Counsel concerning all audits and reviews. All reports shall also be sent to Plaintiffs' Counsel in the Shakman Case until the SRO is terminated.

c. After investigation of all complaints during any employment process and resolution of such matters, the Compliance Officer shall send a written report to the Director of Personnel, OPR and the Sheriff's General Counsel on issues identified, the Compliance Officer's review of those issues, and the proposed or actual resolutions of those matters.

4. <u>Recommendations</u>. If the Compliance Officer has additional recommendations for corrective actions, the following procedures will apply:

a. To the extent that problems are otherwise identified by the Compliance Officer, the Compliance Officer may make recommendation for corrective action to the Director of Personnel and the SSCA, while acting, and/or any affected Department Head.

b. If the Compliance Officer believes that there is non-compliance with applicable hiring rules, policies, or procedures, the Compliance Officer shall promptly notify the Director of Personnel, his or her Designee, the Sheriff's General Counsel, and the Director of OPR if appropriate, of the relevant facts and conclusions, and make recommendations for appropriate corrective actions.

O. General Principles and Responsibilities Related to Taleo

The Sheriff's Office is currently in the process of implementing Taleo, which may replace many of the current hiring procedures described in this Employment Plan, including, but not limited to, the distribution, submission and collection of applications and the initial ranking of applicants for suitability for employment. The following will apply to the Sheriff's implementation and application of Taleo:

1. <u>In General</u>. The following general principles will apply to Taleo:

a. The implementation and use of Taleo by the Sheriff's Office will be in compliance with the Sheriff's commitments and obligations under this Employment Plan, as well as the Sheriff's Orders, General Orders, Ordinances, the Consent Decrees and the SRO, while in effect.

b. All use of Taleo by Sheriff's employees will be in compliance with the established and published procedures for the use of

11/23/2010

Taleo, as well as the Sheriff's commitments and obligations under this Employment Plan, the Sheriff's Orders, General Orders, Ordinances, Consent Decrees and the SRO, while in effect.

2.  <u>Ongoing Implementation and Application</u>.  Notwithstanding any Taleo system limitation, the Sheriff's Office will use best efforts to follow the following procedures in Taleo implementation:

a.  Personnel will continue to work with the SSCA, (prior to the dissolution of the SRO), Taleo representatives and Cook County Bureau of Human Resources  personnel to expand the use of Taleo to the hiring of all employees of the Sheriff, including Civilian and Sworn Exempt Positions and Non-exempt Sworn Positions as soon as feasible.  Any future changes to the Taleo system that effect the Sheriff's Office must be approved by the Sheriff's Office.

b.  Personnel will develop a written training program and provide on-site training for Hiring Department Managers/Designees and all other personnel who will have access to and use Taleo and will provide expertise to respond to questions as needed.

c.  Staff of Personnel who will be authorized to use and access Taleo will receive training on Taleo, including Shakman training.

d.  Upon selection of Exempt employees, the Sheriff's Office will enter the Job Description of that position on Taleo, provided such Exempt Employees will not be subject to any other employment procedure and their employment information may be immediately transferred from Taleo into the Sheriff's computer software program for employees.

e.  The Sheriff's Office will consult with the newly hired HR Consultant as to the feasibility of entering the applications of selected Exempt employees into Taleo, provided such -Exempt Employees will not be subject to any other employment procedure and their employment information may be immediately transferred from Taleo into the Sheriff's computer software program for employees.

f.  All employees of the Sheriff who have access to and/or use Taleo will be required to execute an electronic NPCC (a.k.a. Shakman Certification in Taleo) when taking any Employment Action using Taleo.

g.  The Compliance Officer and OPR will have full access to review all hiring activities of Sheriff's employees using Taleo in order

130032447v1  0861523  51151

11/23/2010

to assure policies and procedures are being followed and to assist in any investigation of violations.

h.    The Sheriff's Office will consult with newly hired HR Consultant as to the feasibility of the appointment of a Content Librarian who will be a Non-exempt employee whose duties will include creating and revising templates for Jobs Descriptions entered into Taleo in order to assure that Job Descriptions accurately reflect the duties of the positions.

V.    General Employment Process Applicable to Non-exempt Civilian Positions

The specific elements of the General Employment Process for Non-exempt Civilian Positions are described in detail below. The following procedures shall apply unless and until there are specific alternate procedures implemented using Taleo as described in Section IV.O. above:

A.    <u>Recruitment</u>.    Personnel will take steps to ensure that all recruitment efforts related to Non-exempt Civilian Positions are conducted in a manner that will maximize the pool of Applicants and avoid any Unlawful Political Contacts and Unlawful Political Discrimination, including, but not limited to, the following:

1.    All Non-exempt Civilian Positions which the Sheriff is seeking to fill will be posted at Personnel, on the Sheriff's website and at locations where employees of the Sheriff's Office work. Non-exempt Civilian Positions may also be posted at additional locations consistent with the Sheriff's policies and practices, including locations required by any CBA.

2.    All Supervisors will receive training in proper recruitment practices that comply with this Employment Plan within one (1) month of their employment as a Supervisor. Such training will be certified in writing by the Director of Personnel and included in their personnel records.

3.    Sheriff's employees involved in recruiting may attend and participate in a variety of recruiting events, including, but not limited to, job fairs, school sponsored campus recruitment events and community based employment programs. Sheriff's employees engaging in recruiting activities shall not engage in any Unlawful Political Contacts or Unlawful Political Discrimination for or on behalf of any Public Official/Agent or Political Organization.

B.    <u>Requests to Hire (RTH)/Fill Vacant Civilian Non-exempt Positions</u>.

1.    The Hiring Department Head/Designee and the Director of Personnel/Designee shall consult the Chief of Staff/Designee, Undersheriff and the Chief Financial Officer to determine if a Vacancy(s) exists and if the Vacancy(s) will be filled pursuant to SEAM, Article A.

20

11/23/2010

2.  The Hiring Department Head/Designee shall submit an RTH to the Director of Personnel. The Department Head/Designee or Director of Personnel/Designee must obtain an approval signature from the Chief of Staff/Designee (either on the RTH or request memorandum including the position and number of vacancies to be filled) to proceed with the hiring process for Civilian Non-exempt positions. Upon approval by the Chief of Staff/Designee, the Director of Personnel/Designee will forward a copy of written request to the Compliance Officer and the Undersheriff.

3.  The RTH must be accompanied by a copy of the current Job Description for the Non-exempt Civilian Position. If no Job Description exists or the current Job Description is not accurate with respect to the Minimum Qualifications of the position, the Hiring Department Head/Designee will request a creation of a new Job Description or revision of an existing Job Description by submitting a new or revised Job Description to the Director of Personnel/Designee. The request, as outlined in Article XIII, Section A below, will be reviewed by the Director of Personnel/Designee who will determine, upon consultation with the Department Head/Designee, whether the changes consist of minor alterations which have no substantive effect or, if the changes are substantive, and whether they are justified and supported by objective, business-related reasons. A new job description for a new position will always constitute a substantive change. If the Director of Personnel/Designee determines the changes are minor or adequately supported by objective, business-related reasons and concludes the new or revised Job Description is accurate and reflective of the actual duties of the position, she or he, as well as the Hiring Department Head/Designee, will document the reasons for the change(s) and send a copy of such documentation, along with a copy of the revised Job Description, to the Compliance Officer for review and will notify the SSCA, while acting. If the Director of Personnel/Designee determines the changes are significant or not supported by objective, business-related reasons, a Desk Audit will be conducted as outlined in Article XIII, Section C below.

4.  If applicable, the RTH may include any additional Preferred Qualifications relating to the Non-exempt Civilian Position that the Hiring Department Head/Designee feels are appropriate to consider as part of the selection process, provided the Compliance Officer confirms that such Preferred Qualifications are, in fact, substantially related to the Non-exempt Civilian Position's requirements. If appropriate, the Job Description will be revised to include current Preferred Qualifications.

5.  The RTH will include the No Political Consideration Certification language.

C.  <u>Straight Seniority Bid Transfer.</u> For entry-level or non-entry level civilian

21

11/23/2010

Vacancies, a Straight Seniority Bid Transfer process may occur before the Notice of Job Opportunity pursuant to SEAM, Article K in order to determine the location, shift and day-off group of the Vacant position(s). The RTH shall indicate if the hiring Department Head/Designee will be conducting a Straight Seniority Bid Transfer process.

D.   Posting Determination of the Notice of Job Opportunity for Non-Exempt Civilian Positions. The following steps will be taken to determine the Notice of Job Opportunity posting sequence for Non-exempt Civilian positions:

   1.   Non-Exempt Civilian Entry-Level and Non-Entry Level Union Positions.

        a.   All Notice of Job Opportunity postings for entry-level or non-entry level Non-exempt Civilian positions that involve a Promotion or lateral Transfer to be filled by a Sheriff's employee in the bargaining unit identified in a CBA will be open to Internal Applicants first, pursuant to the applicable CBA. The Notice of Job Opportunity shall be posted internally for a minimum of 10 business days.

        b.   If no Internal Applicant for an entry-level or non-entry level union Non-exempt Civilian position is deemed eligible, as determined in the procedures documented in Articles E–O below, the Notice of Job Opportunity will be re-posted to both Internal and External Applicants for a minimum of 10 business days.

   2.   Non-Exempt Civilian Entry-Level and Non-Entry Level Non-Union Positions. All Notices of Job Opportunity postings for non-union, entry-level and non-entry level Non-exempt Civilian positions will be open to both Internal and External Applicants and will be posted for a minimum of 10 business days.

E.   Preparation of Notice of Job Opportunity for Non-Exempt Civilian Positions. Personnel will prepare the Notice of Job Opportunity in accordance with the following:

   1.   Personnel will complete a Notice of Job Opportunity to be posted for all Non-exempt Civilian Positions based on information contained in the RTH and the current Job Description.

   2.   The Notice of Job Opportunity will include (a) the job title, (b) the Job Description (which includes the job function and Minimum Qualifications and any Preferred Qualifications being sought) (c) the rate of pay, (d) required licenses and certifications (if applicable); (e) directions on how and where to apply, (f) if the posting is open to Internal Applicants only, (g) the union name (if applicable), (h) the time period during which applications will be accepted, (i) a non-

22

11/23/2010

discrimination clause and (j) a non-political hiring statement.

3.  The Notice of Job Opportunity will also include a list of all additional documents that the individual must produce, such as a valid driver's license, diploma, proof of vehicle insurance, etc. and the time by which they must be produced in order to be considered eligible for the position.

4.  If applicable, the Notice of Job Opportunity will contain a description of any tests that will be administered in order to be considered eligible for the position.

5.  In the case of a Job Description which includes Preferred Qualifications relating to the Non-exempt Civilian Position that will be considered in the selection process, Personnel shall first take steps to ensure that any additional skill, experience or ability listed is relevant given the actual requirements of the position and the needs of the Department in which the Non-exempt Civilian Position is located, and that any additional skill, experience or ability listed is not an attempt to evade the requirements of this Employment Plan or the Sheriff's Order SOGO 09-3. The Job Description (included with the Notice of Job Opportunity) will clearly differentiate between Minimum Qualifications and Preferred Qualifications, and Applicants will not be considered ineligible solely because they do not possess any Preferred Qualification.

6.  The Director of Personnel/Designee and the Department Head/Designee will document approval and confirmation of accuracy by allowing the placing of their names, titles and Department on the Notice of Job Opportunity before it is posted and by completing No Political Consideration Certifications.

F.  Posting of Notices of Job Opportunity. All Notices of Job Opportunity will be posted in compliance with the following:

1.  All Notices of Job Opportunity will be posted at each place where individuals may make application for employment with the Sheriff's Office and on the Sheriff's website. Notices of Job Opportunity will also be provided (at no cost) to each individual who requests a copy. Notices of Job Opportunity may also be posted or otherwise distributed to schools, professional organizations, labor organizations and other appropriate groups in order to generate the largest possible pool of qualified applicants. All such efforts must be documented by Personnel.

2.  All Notices of Job Opportunity will include the date the Notice is posted, the application submittal closing date and, if applicable, the documentation submittal closing date. All Notices will be posted for a minimum of 10 business days.

23

11/23/2010

G. <u>Submission of Applications</u>. The following will apply to the submission of applications in response to any Notice of Job Opportunity:

1. The application form will include (a) a non-discrimination clause and (b) a non-political hiring provision relating to Non-exempt Civilian Positions.

2. All applications for any Non-exempt Civilian Position submitted to Personnel prior to the posted closing date will be accepted and logged in by Personnel. Applications may be submitted to Personnel in person at the Personnel Office, by inter-office mail, by certified mail or overnight courier, return receipt required. All applications, including those sent by inter-office mail, certified mail or overnight courier, must be received in hand by Personnel no later than the close of business on the date of closing of the posting.

3. Applications shall be considered active for a period of 12 months from the closing date of the Notice of Job Opportunity, unless otherwise required by any applicable CBA. Applicants who submitted applications within the previous 12 month period and were deemed eligible pursuant to Section H below may be considered for subsequent Non-exempt Civilian Positions for which Notices of Job Descriptions are posted, as long as the Job Descriptions and Notices are identical.

H. <u>Eligibility Screening.</u> Upon the expiration of the posting period, Personnel will review all timely-submitted applications for each Non-exempt Civilian Position, determine the eligibility of each Applicant and prepare the Screening Spreadsheet/Eligibility List and Interview List in accordance with the following:

1. All Personnel staff members assigned to perform eligibility screening of applications will receive substantive formal and on-the-job training on the appropriate method for performing eligibility screening prior to reviewing any application and determining eligibility status of any Applicant. Such training may be administered by the Compliance Officer and the Director of Personnel/Designee and will be documented in the screener's personnel file.

2. In cases of Promotion or lateral Transfer for union entry-level or union Non-exempt non-entry level Civilian positions, all union, Internal Applicants will be screened prior to any non-union Internal Applicants and will have first preference in order of his/her Department Seniority, provided the employee has the ability and qualifications to perform the required work, pursuant to any applicable CBA.

3. In cases of Promotion or lateral transfer for non-union entry-level or non-entry level Non-exempt Civilian positions, all Internal

11/23/2010

Applicants will be screened prior to any External Applicant and will have first preference, provided the employee has the ability and qualifications to perform the required work.

4.      Pending implementation of Taleo, a minimum of two (2) trained Personnel staff members will review each of the applications for each Non-exempt Civilian Position and determine whether: (a) the application is complete and has been submitted in a timely manner, (b) the application indicates the Applicant possesses all of the Minimum Qualifications stated in the Notice of Job Opportunity, (c) all supporting documentation listed on the Notice of Job Opportunity has been provided by the Applicant, (d) if applicable, whether the Applicant is Internal, (e) if applicable, whether the Applicant is a member of a union and (f) based on (a), (b), (c), (d) and (e), if the Applicant should be considered eligible or not eligible. Personnel staff members will complete the Screening Spreadsheet/Eligibility List, which shall list the names of all Applicants whose applications the screener has reviewed for the particular hiring sequence and shall include all of the information contained in (a), (b), (c), (d), (e) and (f) above.  A copy of the Screening Spreadsheet/Eligibility List, which may be amended from time to time, is attached as Exhibit 11.

5.      Any Applicant who has not submitted a copy of a transcript, diploma, certification, license or other required document within the applicable posting period, if required by the Notice of Job Opportunity, or at the time of interview, as applicable, will not be considered eligible, and his or her name will be marked as not eligible on the Screening Spreadsheet/Eligibility List, provided that this will not apply to posted Non-exempt Civilian Positions that indicate such documentation may be submitted at the time of interview.

6.      Each Personnel screener will complete his or her own Screening Spreadsheet/Eligibility List for the particular hiring sequence.  The Personnel screener will review each application in conjunction with completing the Screening Spreadsheet/Eligibility List.  The last column of the Screening Spreadsheet/Eligibility List shall provide for the screener's initials, indicating the screener for each application.  Each Personnel staff member will also sign a No Political Consideration Certification for each Notice of Job Opportunity for which he or she has reviewed applications.

7.      Any Applicant who has submitted an incomplete application form for a Non-exempt Civilian Position will not be considered eligible, and his or her name will be marked as not eligible on the Screening Spreadsheet/Eligibility List.  Minor omissions that do not impact the screeners' review of employment qualifications, such as the failure to list the phone number for a past employer, however, will not be considered in the determination of whether the application is incomplete.

11/23/2010

8.    Any Applicant whose application or other submitted information indicates he or she does not possess all of the Minimum Qualifications listed on the Job Description will not be considered eligible, and his or her name will be marked as not eligible on the Screening Spreadsheet/Eligibility List.

9.    Pursuant and subject to any applicable CBA, any Internal Applicant who has been subject to Discipline consisting of (a) three written warnings, (b) a disciplinary Demotion or (c) a suspension during the 18-month period prior to his or her application for Promotion or Transfer to a Non-exempt Civilian Position will not be considered eligible and his or her name will be marked as not eligible on the Screening Spreadsheet/Eligibility List.

10.   The Director of Personnel/Designee shall thoroughly review each Internal Applicant's timecards from the previous 18 months to determine if the Internal Applicant has incurred one (1) or more of the Unpaid Unauthorized Activities identified in this Section V.H.10.a-j, three (3) or more instances of Tardiness identified in this Section V.H.10.k, or six (6) or more instances of an Attendance Pattern identified in this Section V.H.10.l, which are not associated with any Mitigating Circumstances:

    a.    No Sick Time (NST/0)

    b.    Absent Late Call (ALC/0)

    c.    Absent No Call (ANC/0)

    d.    No Vacation Time (NVT/0)

    e.    No Personal Time (NPT/0)

    f.    No Compensatory Time (NCET/0)

    g.    No Holiday Time (H/0)

    h.    Unauthorized FMLA (0/FMLA Unauthorized)

    i.    Unauthorized IOD (IOD/Unauthorized)

    j.    Proof Status (0/Proof)

    k.    Tardiness Docked Time (O)

    l.    Attendance Pattern

130032447v1  0861523  51151

11/23/2010

11.     If the Director of Personnel/Designee determines that the Internal Applicant has incurred one (1) or more of the Unpaid Unauthorized Activities identified in this Section V.H.10.a-j, three (3) or more instances of Tardiness identified in this Section V.H.10.k, or six (6) or more instances of an Attendance Pattern identified in this Section V.H.10.l without any mitigating circumstances, the Internal Applicant shall be marked not eligible on the Screening Spreadsheet/Eligibility List.

12.     If the Personnel staff members screening an application disagree as to the eligibility of any Applicant, the Director of Personnel/Designee will review the application and documents, discuss the reasoning for their determinations and disagreement with the Personnel staff members, and make the final determination regarding eligibility.  The Director of Personnel/Designee will document on all Screening Spreadsheets/Eligibility Lists used in the particular hiring sequence the basis of his or her decision regarding whether the Applicant shall be considered eligible or not eligible and the final decision will be marked on the Screening Spreadsheet/Eligibility List.

13.     All completed Screening Spreadsheets/Eligibility Lists and applications will be forwarded to the Director of Personnel/Designee for final review.  In the event the Director of Personnel/Designee disagrees with the decision of the screeners as to any Applicant's eligibility, he or she will document his or her disagreement and refer the matter to the Compliance Officer, who will make the final determination and record that determination on the Screening Spreadsheet/Eligibility List.

14.     All Personnel staff members substantively involved in the screening sequence, the Director of Personnel/Designee and the Compliance Officer (if involved) will also sign the No Political Consideration Certification.

15.     If more than 25 applications are received for any particular Notice of Job Opportunity, the Personnel Director/Designee may randomly select 25 applications for each opening covered by the Notice of Job Opportunity to screen.  If, after screening those 25 applications, there are fewer than 10 eligible Applicants for each opening, the Personnel Director/Designee will randomly select an additional 25 applications to screen, and will continue to do so until a minimum of 10 eligible Applicants have been identified for each opening.  Alternatively, the Director of Personnel/Designee may elect to screen all applications submitted.  The Compliance Officer may oversee the process.

16.     Applications shall remain active for 12 months from the date of the Notice of Job Opportunity, unless otherwise required by any applicable CBA.  Applicants who submitted applications within the previous 12-month period and were deemed eligible pursuant to this Article V may be considered for subsequent Non-exempt Civilian Positions for which

27

11/23/2010

Notices of Job Opportunities are posted, as long as the Job Descriptions and Notices are identical.

I.    Pre-Employment Testing. Personnel or the Hiring Department will conduct all required pre-employment testing, and it will take steps to ensure that such testing is done in accordance with the following:

1.    All Applicants for Non-exempt Civilian Positions that require the ability to type as a Minimum Qualification will be required to pass a typing test administered and scored by Personnel. Such tests will be given after the preparation of the Screening Spreadsheet/Eligibility List, and Applicants who do not meet the established minimum words-per-minute speed and the typing accuracy requirement will no longer be considered eligible and will be marked as not eligible on the Screening Spreadsheet/Eligibility List. In some instances, pre-employment testing may be conducted by the Hiring Department. In such cases, Personnel will take steps to ensure that such tests are administered in accordance with this Employment Plan.

2.    All Applicants for Non-exempt Civilian Positions that require the ability to drive as a Minimum Qualification will be required to produce a current, valid driver's license confirming their ability to drive. Such confirmation will be required prior to the preparation of the Screening Spreadsheet/Eligibility List, and Applicants who do not produce the required license will not be considered eligible and will be marked as not eligible on the Screening Spreadsheet/Eligibility List. Other motor vehicle testing may occur on site.

3.    Each pre-employment test will be administered, scored and considered on a consistent basis for each Applicant, and will be given at the same point in the application process.

4.    In the event an Applicant fails to appear for the scheduled pre-employment test, the Applicant shall have the opportunity to submit a written appeal, including a detailed explanation of why the Applicant failed to appear, to the Director of Personnel . If the Director of Personnel/Designee receives an appeal from the Applicant, he or she shall determine based upon the circumstances regarding the failure to appear whether to approve or deny the appeal. If the appeal is approved, the pre-employment test shall be rescheduled. If a timely appeal is not submitted or the appeal is denied, the Applicant shall be deemed not eligible. The Compliance Officer is permitted to oversee or audit this process as he or she deems necessary.

5.    The Personnel or Hiring Department employee(s) who conducts any testing will sign a No Political Consideration Certification.

J.    Final Preparation of the Screening Spreadsheet/Eligibility List. The final Screening Spreadsheet/Eligibility List will be prepared in accordance with the

28

11/23/2010

following:

1. The final Screening Spreadsheet/Eligibility List will include in alphabetical order the names of all Applicants whom the assigned Personnel staff members (or the Director of Personnel/Designee in the event of a disagreement as described above) have determined are eligible in accordance with this Employment Plan. The Applicants on the Spreadsheet/Eligibility List shall be deemed Candidates. The Director of Personnel/Designee may not add or delete the name of any other Internal or External Applicant or person to the final Screening Spreadsheet/Eligibility List unless he or she determines that a name may have been added or deleted due to Unlawful Political Contact or Unlawful Political Discrimination, in which case he or she will add or delete the name, as applicable, and immediately report the matter to the Compliance Officer and OPR.

2. No Personnel staff member, including, but not limited to, the Director of Personnel/Designee, may contact any Applicant, Candidate, Department Head/Designee, Sheriff's employee or any other individual for the purpose of influencing or affecting the status of any application, including, but not limited to, providing or soliciting information concerning the Candidate's qualifications, credentials or other eligibility factors, except as specifically provided in this Employment Plan.

3. No Applicant, Candidate, Supervisor, Department Head/Designee, Sheriff's employee or any other individual may contact any Personnel staff member for the purpose of influencing or affecting the status of any application, Applicant or Candidate, including, but not limited to, providing or soliciting information concerning the Applicant or Candidate's qualifications, credentials or other eligibility factors, except as specifically provided in this Employment Plan.

4. The Personnel employee responsible for compiling the final Screening Spreadsheet/Eligibility List will sign the No Political Consideration Certification.

5. If no Applicant is deemed eligible for a posted position, the position will be reposted, provided the file for the previous Notice of Job Opportunity will be documented to confirm that no Applicant was deemed eligible.

K. <u>Interview List</u>. Personnel will prepare an Interview List for each posted Non-exempt Civilian Position in accordance with the following:

1. If the final Screening Spreadsheet/Eligibility List contains the names of five (5) or fewer Candidates, Personnel will include all such Candidates' names in alphabetical order on the Interview List.

2. If the final Screening Spreadsheet/Eligibility List contains the names of

29

11/23/2010

more than five (5) Candidates, the Director of Personnel/Designee may choose to interview all Candidates or, with oversight by the Compliance Officer, will randomly and on a blind basis select the names of five (5) Candidates from the final Screening Spreadsheet/Eligibility List for each position sought to be filled and place their names alphabetically on the Interview List.

3.     On the date of Candidate interviews for any Non-exempt Civilian Position, Personnel shall bring a copy of the Interview List and the applications and related documents of all Candidates listed on the Interview List to the designated interviewers so that the material can be reviewed by them prior to the interviews.

L.     <u>Interview of Candidates</u>.  The following will apply to the interview of Candidates for posted Non-exempt Civilian Positions:

1.     Personnel will schedule interviews of all Candidates listed on the Interview List.   No Sheriff's employee may participate in or observe an interview without first receiving interview training described in this Employment Plan.

2.     At least 48 hours prior to any interview, the Compliance Officer will be notified in writing of the time and place of each interview for a Non-exempt Civilian Position.  The Compliance Officer, and the SSCA, while acting, may be present to monitor any interview for a Non-exempt Civilian Position.

3.     The Department Head/Designee will select two (2) employees in the Hiring Department who are familiar with the job duties and Minimum Qualifications of the Non-exempt Civilian Position being filled, both of whom are in supervisory positions.  The Director of Personnel/Designee shall also participate in the Interview.  The Department Head/Designee may participate as one of the three (3) interviewers.  For consistency, the same designated interviewers shall use best efforts to interview each Candidate on the Interview List for that position.

4.     In the event a Conflict of Interest is discovered prior to or during the interview, the panel member shall notify the Compliance Officer and the other members of the panel prior to the interview or as soon as possible that a Conflict of Interest exists and that a substitution is needed.  The panel member will then leave the interview room and will not participate in the interview or the selection process for that Candidate.  The substitute panel member shall be contacted to replace the panel member.  If no substitute is available, the interview will be rescheduled.  The substitute panel member shall assume the panel member's duties (asking questions, completing the Interview Evaluation Form, etc.).  Upon conclusion of the interview and any discussion regarding the Candidate, the panel member will be notified to return to the interview room to replace the substitute panel member and resume

11/23/2010

interviews.  If a Conflict of Interest is discovered after an interview, the Compliance Officer must be notified and he or she will make the determination of whether a second interview panel must be convened.

5.  The Hiring Department, in consultation with Personnel, will develop a written list of interview questions for each Non-exempt Civilian Position, which will be approved by the Director of Personnel/Designee and the Compliance Officer prior to implementation.  All questions will be based on and relate to the specific job duties and Minimum Qualifications of the Non-exempt Civilian Position as contained in the Job Description and Notice of Job Opportunity and will be designed to assess the Candidate's job-related qualifications, skills and suitability for employment.  The interview questions may be revised from time to time, with the approval of the Director of Personnel/Designee and the Compliance Officer, in order to account for any changes in the job and to prevent inappropriate sharing of questions and answers among Candidates.  The questions will be used to evaluate Candidates in accordance with the Interview Evaluation Form.

6.  The interview questions developed for a particular Non-exempt Civilian Position may be used for subsequent vacancies for that Non-exempt Civilian Position, provided appropriate precautions are taken to prevent advance dissemination of answers and provided the questions remain applicable to the position.

7.  All Candidates interviewed for the same Non-exempt Civilian Position will be asked to respond to at least five (5) of the same pre-approved interview questions. Additional and follow-up questions are permitted, provided they are related to a determination of the Candidate's suitability for the Non-exempt Civilian Position for which he or she is applying.

8.  The interview may also include questions that establish, at a minimum, the Candidate's:  (a) willingness and ability to do the job, (b) availability for work hours and willingness to work at the location where the job is located, (c) prior job performance (if objectively verified and deemed credible by the interviewers), (d) knowledge and understanding of  the position, (e) results on any applicable test, and (f) relative qualifications for the  position as compared with other Candidates.  None of the above factors will be considered determinative or mandatory, and Interviewers will determine what, if any, weight is to be given to each factor.

9.  Each interviewer will independently and personally complete and sign an Interview Evaluation Form for each Candidate at the conclusion of the interview.  Any notes taken at the time of the interview not written on the Interview form will be attached to the Interview Evaluation Form and must be in ink.  The interviewer will identify whether he or she has concluded that the Candidate is "Highly Recommended,"

31

11/23/2010

"Recommended" and deserving of further consideration, or "Not Recommended" and to be eliminated from consideration, as well as the reasons for his or her conclusions on the Interview Evaluation Form. No person may alter, add to or delete from any Interview Evaluation Form other than the interviewer who completes and signs the Interview Evaluation Form. All Interview Evaluation Forms must be completed in ink. A copy of the Interview Evaluation Form, which may be amended from time to time, is attached as Exhibit 12.

10. The Director of Personnel/Designee shall collect all of the completed Interview Evaluation Forms at the end of each interview.

11. All Candidates will be required to execute the Applicant Certification as part of the interview process. The completed Applicant Certifications will be collected by the Director of Personnel/Designee during the interview and shall be maintained along with other documents and supporting materials related to the Vacancy.

12. In the event an Applicant fails to appear for the scheduled interview, the Applicant shall have the opportunity to submit a written appeal including a detailed explanation to the Director of Personnel. If the Director of Personnel/Designee receives an appeal from the Applicant, he or she shall determine based upon the circumstances regarding the failure to appear whether to approve or deny the appeal. If the appeal is approved, interview shall be rescheduled. If a timely appeal is not submitted or the appeal is denied, the Applicant shall be deemed not eligible. The Compliance Officer is permitted to oversee or audit this process as he or she deems necessary.

13. All interviewers will be required to execute the No Political Consideration Certification as part of the interview process. The No Political Consideration Certification is located on the Interview Evaluation Form.

14. If no Candidate or an insufficient number of Candidates on the Interview List is rated as "Highly Recommended" or "Recommended" by at least two (2) of the interviewers, Personnel will contact the Department Head/Designee and send him or her a memorandum indicating that more interviews must be conducted. If more than five (5) individuals remain on the Eligibility List, the Director of Personnel/Designee and the Compliance Officer will randomly and on a blind basis select another five (5) Candidates from the Eligibility List to include on the Interview List.

15. If and when all Candidates on the original and any subsequent Interview Lists have been interviewed and none or an insufficient number of Candidates has been rated "Highly Recommended" or "Recommended" by at least two (2) of the interviewers, the position will be reposted, provided the file for the previous Notice of Job Opportunity will be

130032447v1 0861523 51151

11/23/2010

documented to confirm that no Applicant or an insufficient number of Applicants was found eligible and the individuals making that determination will complete and sign No Political Consideration Certifications.

M.   <u>Candidate Selection Procedures</u>.  Following completion of interviews and Interview Evaluation  Forms for all Candidates on the Interview List, Candidates will be selected for employment in accordance with the following:

1.   If any Candidate failed to appear for his or her interview, the interviewers shall conduct a Selection Meeting no earlier than 72 hours from his or her scheduled interview and no later than 10 days following the completion of interviews of all Candidates on the Interview List. At the Selection Meeting, each interviewer has an opportunity to freely and without fear of retaliation express his or her opinion regarding the Candidates and their suitability for employment.  Each interview panel member will indicate if he or she has "Highly Recommended", "Recommended" or "Not Recommended" the Candidate(s). The majority decision will determine the selection of Candidate(s).

2.   Candidates ranked "Highly Recommended" by all panel members will be selected to fill Vacancies.  In the event that there are more Candidates ranked "Highly Recommended" by all panel members than the number of Vacancies, the panel will follow the procedures in M.3 as to those "Highly Recommended Candidates".  In the event that there are fewer Candidates ranked "Highly Recommended" by all panel members than the number of Vacancies, the panel will consider Candidates ranked "Recommended" by one (1) or more panel member pursuant to the procedures in M.3.  If the number of Vacancies is equal to the number of Candidates who received any combination of "Recommended" or "Highly Recommended" by all panel members, then all Candidates will be selected to fill Vacancies.

3.   After reasonable discussion and deliberation, the interviewers will identify the top Candidate for the position and document the reasons they chose that Candidate.  If there are two (2) or more open positions, the interviewers will identify the top two (2) or more Candidates for the positions and document the reasons they chose those Candidates.  If there are more Candidates who are "Highly Recommended" or "Recommended" than there are open positions, the interviewers will rank the remaining top Candidates in order of recommendation.  If the interviewers are unable to come to agreement on ranking the top Candidates by majority rule, a Consensus Meeting will be required. One of the interviewers will take detailed notes on the Justification for Hire form at the Selection Meeting.  The notes will be signed by the interviewers to confirm their accuracy.  Such documentation shall be maintained by Personnel.  The Compliance Officer may be present to monitor each Selection Meeting for a Non-Exempt Civilian Position.

11/23/2010

4.    If one (1) panel member is in disagreement, the panel members may attempt to reach Consensus by discussing their opinions of the non-Consensus Candidate(s) freely and without fear of retaliation as well as by reviewing all notes and materials available, including the Application and Resume (if applicable) of the Candidate.  The interview panel member who is not in agreement with the other interview panel members may elect to review the available materials without discussion, or he or she may request further discussion with the other panel members.  After reviewing all materials, and possible further discussion, each interview panel member will determine if he or she desires to change his or her original conclusion regarding the Candidate(s).  Any interview panel member who changes his or her original conclusion regarding the Candidate(s), for example, changing a conclusion of "Not Recommended" to "Recommended", is required to provide additional notes to the original Interview Evaluation Form documenting his or her reason(s) for the change.  At the conclusion of the Selection Meeting, if one panel member remains in disagreement with the other panel members as to the selection and/or rejection of any Candidate(s), that panel member may indicate he or she wishes to challenge the decision and request a Consensus Meeting.  If a Consensus Meeting is requested, no final decision regarding any Candidate will occur until the Consensus Meeting is conducted.

5.    If one (1) panel member requests a Consensus Meeting, the Consensus Meeting will occur no later than 10 days following the completion of the Selection Meeting. The Director of Personnel/Designee, the Department Head/Designee and, if possible, all of the interview panel members will be present at the Consensus Meeting and the Compliance Officer may be present.  All panel members will make best efforts to attend, but the panel member who challenged the decision must be in attendance.  If the Department Head/Designee or Director of Personnel/Designee was present at the Selection Meeting in which the decision was challenged, the Compliance Officer must be present at the Consensus Meeting and make the final decision on the Candidate(s) in question, as explained below. At the Consensus Meeting, each interviewer has the opportunity to freely and without fear of retaliation express his or her opinion regarding the Candidate(s) whose selection or rejection was challenged.  The Director of Personnel/Designee and the Department Head/Designee, upon hearing all opinions from each interview panel member and reviewing all relevant information, will attempt to come to a Consensus between themselves on the selection of the Candidate.  If the Director of Personnel/Designee and the Department Head/Designee cannot come to a Consensus between themselves, the Compliance Officer will be presented with all documentation and the opinions of all participants of the Consensus Meeting and will be responsible for making the final determination regarding the selection or rejection of the Candidate.  One of the participants of the Consensus Meeting will take detailed notes on the Justification for Hire Form at the Consensus Meeting.  The notes will

130032447v1  0861523  51151

11/23/2010

also indicate the objective basis or bases on which any Candidate was recommended. The notes will be signed by all the participants to confirm their accuracy. The notes will be maintained by Personnel, along with the name(s) of the selected Candidate(s) as determined by the Consensus Meeting. If it is determined by the Consensus Meeting that no Candidate is to be selected, Personnel will notify the Department Head/Designee that more interviews must be conducted as outlined in Article V, Section K-M above.

N.  <u>Final Screening</u>. Upon receipt of the Hiring Department's selection and required documentation, Personnel will conduct a final screening as follows:

1.  Personnel will review all materials before extending an offer of employment to any Candidate, and no offer will be extended prior to the receipt of all required documents and supporting materials from the Hiring Department.

2.  Personnel will, and the Compliance Officer on a random basis may, contact references (preferably the most recent employers) listed on the application of selected Candidates who are External Applicants in order to verify the accuracy of information contained on the application, and any External Applicant who Personnel discovers provided incorrect or misleading information on his or her application will not be considered eligible and will not be extended an offer of employment. The Director of Personnel/Designee will document for the file the basis of his or her finding of ineligibility and notify the Department Head/Designee that the selected Candidate is not eligible. In such case, the provisions with respect to the selection an alternate Candidate shall apply.

3.  Personnel will, and the Compliance Officer on a random basis may, review the disciplinary records of all selected Candidates who are Internal Applicants to determine whether they have been subject to any additional disciplinary action not previously noted during the previous 18-month period, and any Internal Candidate who has been: (a) issued three or more written warnings, (b) suspended, (c) terminated or (d) received a disciplinary Demotion during that period will not be considered eligible and will not be extended an offer for the position, provided the terms of any applicable CBA will be observed. The Compliance Officer and Personnel will document for the file the basis of his or her finding of ineligibility and notify the Department Head/Designee that the selected Candidate is not eligible. In such case, the provisions with respect to the selection of an alternate Candidate shall apply.

4.  Prior to the Offer of Employment, the Director of Personnel/Designee will conduct a final pending disciplinary check with OPR and the Internal Applicant's respective Department. In the event of a pending Discipline case within the Internal Applicant's respective Department, the Selected Candidate will be marked not eligible on the Screening

130032447v1  0861523  51151

11/23/2010

Spreadsheet/Eligibility List. In the event of a pending Discipline case at OPR, the Executive Director of OPR shall make the decision whether or not to release the pending hold on the Offer of Employment based upon the facts of the case. If the OPR investigation concludes after an Offer of Employment has been extended to another Candidate and the charges against the Internal Applicant are dismissed, the Internal Applicant will be screened for eligibility, as outlined in this section, and if deemed eligible, the Internal Applicant's name will be changed from not eligible to eligible on the Screening Spreadsheet/Eligibility List, with notations made regarding the reason(s) for the change. As outlined in Article V, Section G, the Internal Applicant's application shall remain active for twelve months from the closing date of the Notice of Job Opportunity, unless otherwise required by an applicable CBA and may be used to apply for other Notices of Job Opportunities as long as the Job Descriptions and Notices are identical to the position for which the application was originally submitted.

5.  Personnel will conduct an investigation to determine whether any selected Candidate has been convicted of a felony or a misdemeanor that reflects negatively on the Candidate's character, honesty or integrity and impacts his or her suitability for the position and any Candidate whose record so indicates will be considered ineligible and will not be offered employment. Additionally, those Candidates whose criminal background checks indicate that they have direct connections with any gang or have otherwise been engaged in activity, which brings into question their suitability for employment as a Sheriff's Office employee will be considered ineligible and will not be offered employment.

6.  Selected Candidates will also be required to undergo a drug test in accordance with the Sheriff's Drug Testing Policy as well as a physical examination.

7.  All Applicants for Non-exempt Civilian Positions will be subject to a driver's license abstract investigation. Any Selected Candidate who in the previous 10 years (i) had his or her driver's license suspended for a serious violation or revoked at any time; (ii) has been convicted of or pled guilty or *nolo contendere* to a traffic violation involving an alcohol related offense or an offense involving controlled substances; or (iii) has been convicted of or pled guilty or *nolo contendere* to a traffic violation involving serious injury or death will be deemed Not Qualified, and the next highest ranked Candidate(s) on the Applicant List shall be selected.

8.  All selected Candidate(s) will be advised that any offer of employment is contingent on their submission to a criminal background check, and those whose criminal background checks indicate they have any conviction may not be considered eligible and may not be extended an offer of employment. Personnel will apply the same standards to assessing the impact of any criminal record to all Candidates on a

130032447v1 0861523 51151

11/23/2010

consistent basis. If a criminal background check reveals that a selected Candidate has been convicted of a felony or misdemeanor that impacts his or her suitability for the position for which he or she has received a contingent offer for employment with the Sheriff's Office in general, the contingent offer of employment will be withdrawn. If the background check reveals the Candidate has withheld or given inaccurate information concerning his or her criminal record, the contingent offer of employment will be withdrawn.

9.       All selected Candidates who receive a contingent offer of employment will be advised that the offer is contingent on all pre-employment screening and pursuant and subject to any applicable CBA and the Sheriff's Drug Testing Policy.

O.       Offers of Employment. After Personnel has verified all requirements documented in this Section, Article N above, employment offers will be extended in accordance with the following:

1.       Personnel will extend the initial offer to the Candidate identified in the Justification for Hire. If that Candidate does not accept the offer, the provisions of Section K-N will be repeated for the selection of an alternate Candidate.

2.       If the selected Candidate and no alternate Candidate is eligible upon completion of the final screening, or none accepts the offer of employment, the Notice of Job Opportunity will be reposted. Pursuant and subject to the terms of any applicable CBA, if the selected Candidate terminates employment or is terminated during any applicable probationary period, the provisions of Section K-N will apply with respect to the selection of an alternate Candidate.

3.       Personnel will comply with the employment procedures contained in the Personnel Rules with respect to each Candidate who is offered and accepts an offer of employment.

4.       No final offer of employment will occur until all results of a criminal background investigation and medical processing have been received by Personnel and all results have been determined satisfactory.

5.       As a final step, the Director of Personnel/Designee must obtain a signature of approval by the Chief of Staff/Designee to hire the selected Candidate(s). No final offer of employment will occur until an approval by the Chief of Staff/Designee is obtained.

P.       Taleo Updating. Once Taleo is fully operational, the provisions of this Article V will be amended to reflect the full functionality of Taleo.

130032447v1  0861523  51151

11/23/2010

VI.     General Hiring Process Applicable to Sworn Positions

    The specific elements of the General Hiring Process applicable to Sworn Positions are described in detail below.

    A.    <u>Merit Board Certification</u>.  The Merit Board is empowered by statute to conduct tests, which may consist of written examinations, physical ability tests, background checks, and any other examinations or processes the Merit Board deems necessary (including, but not limited to interviews), and to prepare the Merit Board  Eligibility List for all posted Non-exempt Sworn Positions.  It will take steps to ensure that it conducts such tests and interviews and establishes all Merit Board Eligibility Lists in a manner that will comply with the requirements of this Employment Plan and the General Order and will avoid any Unlawful Political Contacts or Unlawful Political Discrimination.  The current Merit Board Certification Process includes the following:

        1.    Written examination;

        2.    Physical examination;

        3.    Background check and investigation; and

        4.    Past employment verification and reference check.

    B.    <u>Recruitment</u>.  The Merit Board will take steps to ensure that all recruitment efforts for Applicants for Non-exempt Sworn Positions are conducted in a manner that will maximize the pool of Applicants and avoid Unlawful Political Contacts and Unlawful Political Discrimination, including, but not limited to, the following:

        1.    Announcements regarding Non-exempt Sworn Positions, which the Sheriff is seeking to fill will be posted at Personnel, at all facilities where employees of the Sheriff's Office work, provided that the Sheriff is allowed access to post at the facility, in the Merit Board Office and on the Sheriff's website.

        2.    All recruiting materials, advertisements and other materials posted or distributed by the Sheriff or the Merit Board will contain a written notice that the Merit Board and the Sheriff will not engage in any Unlawful Political Contacts or Unlawful Political Discrimination.

        3.    The Sheriff's Office will request Merit Board members to complete No Political Consideration Certifications with respect to all of their recruitment, evaluation and certification activities.

    C.    <u>Request to Hire</u>.

        1.    The Director of Personnel/Designee shall consult with the Chief of

11/23/2010

Staff/Designee, Undersheriff and the Chief Financial Officer to determine if a Vacancy(s) exists and if the Vacancy(s) will be filled pursuant to SEAM, Article A.

2.      The Director of Personnel/Designee must obtain an approval signature from the Chief of Staff/Designee (either on the RTH or request memorandum including the position and number of vacancies to be filled) to proceed with the sworn hiring process.  Upon approval by the Chief of Staff/Designee, the Director of Personnel/Designee will forward a copy of written request to the Compliance Officer and the Undersheriff.

3.      The RTH will include the No Political Consideration Certification language.

D.      <u>Pre-Employment Testing</u>.  Upon receipt of the Merit Board Eligibility List and approval from the Chief of Staff/Designee pursuant to Section C above, Personnel will conduct or coordinate all required pre-employment testing of Candidates, and it will take steps to ensure such testing is done in accordance with the following:

1.      All Candidates will be required to take a physical ability test conducted and scored by the Sheriff's Training Academy.  Those Candidates who fail the physical ability test after two (2) separate attempts will be disqualified and will not be re-scheduled unless the Candidate requests additional attempt(s) by submitting a written request to the Director of Personnel/Designee.  The physical ability test will be administered and scored consistently for all Candidates.  The employees conducting the physical ability test will complete a No Political Consideration Certification.

2.      All Candidates who pass the physical ability test will be given a polygraph test conducted and scored by a state licensed polygraphist. The polygraph examination will evaluate whether a Candidate is well suited for employment, and Candidates may be disqualified based on the information gathered during the polygraph examination.  The polygraph examiner will complete a No Political Consideration Certification.

3.      All Candidates who pass the physical ability test and complete the polygraph test will be given a psychological screening independently conducted and scored by a state licensed clinical psychologist.  Those Candidates who are rated as not well suited by this individual will be disqualified.

4.      After the Candidate completes both the polygraph test and the psychological test, results from either or both may deem the Candidate not well suited for the position and the Candidate will be disqualified.

130032447v1  0861523  51151

11/23/2010

5.     In the event a Candidate fails to appear for the scheduled pre-employment test, the Candidate shall have the opportunity to submit a written appeal including a detailed explanation to the Director of Personnel.  If the Director of Personnel/Designee receives an appeal from the Candidate, he or she shall determine based upon the circumstances regarding the failure to appear whether to approve or deny the appeal.  If the appeal is approved, the pre-employment test shall be rescheduled.  If a timely appeal is not submitted or the appeal is denied, the Applicant shall be deemed not eligible. The Compliance Officer is permitted to oversee or audit this process as he or she deems necessary.

6.     Personnel will be responsible for notifying either in writing or telephonically each Candidate of the time and location for the various required pre-employment tests and any documentation the Candidate is required to produce at such test.  Personnel must maintain a log documenting the contacts.  Personnel will also be required to disqualify the Candidates who do not pass any pre-employment test and to notify each Candidate of his or her eligibility or ineligibility for further consideration for employment in writing.

D.    <u>Disqualification of Candidates for Sworn Positions</u>.  All disqualifications of Candidates for Sworn Positions by Personnel will be done in accordance with the following:

1.     No Personnel staff member, including, but not limited to, the Director of Personnel/Designee, may contact any Sheriff's employee or any other individual for the purpose of influencing or affecting the status of any Candidate or his or her inclusion on the Merit Board Eligibility List, including, but not limited to, providing or soliciting information concerning the Candidate's qualifications, credentials or other eligibility factors, except as specifically provided in this Employment Plan.

2.     No Applicant, Sheriff's employee or any other individual may contact any Personnel staff member for the purpose of influencing or affecting the status of any Candidate or his or her inclusion on the Merit Board Eligibility List, including, but not limited to, providing or soliciting information concerning the Candidate's qualifications, credentials or other eligibility factors, except as specifically provided in this Employment Plan.

3.     The Director of Personnel/Designee will advise the Compliance Officer of any disqualification of an Applicant and document the reasons for the disqualification.

4.     Whenever Applicants are disqualified by the Director of Personnel/Designee, that person will sign a No Political Consideration Certification.

11/23/2010

E. <u>Interview of Candidates</u>.  The following will apply to the interview of Candidates for Non-exempt Sworn Positions:

1. The Department of Personnel will schedule interviews of all Candidates listed on the Merit Board Eligibility List, as amended pursuant to Article VI Sections C and D above, in conjunction with the Department Head/Designee.  No Sheriff's employee may participate in or observe an interview without first receiving interview training as described in Article IV Section E above.

2. At least 48 hours prior to any interview, the Compliance Officer will be notified in writing of the time and place of each interview for a Non-exempt Sworn Position.  The Compliance Officer and the SSCA, while acting, may be present to monitor any interview for a Non-exempt Sworn Position.

3. The Department Head/Designee will select two (2) employees in the Hiring Department who are familiar with the job duties and Minimum Qualifications of the Non-exempt Sworn Position being filled.  The Department Head/Designee may choose to be one of the two interviewers.  In addition to the two interviewers from the Hiring Department, the Director of Personnel/Designee shall be included as part of the interview panel.  Depending upon the number of open positions to be filled for each hiring sequence, the Director of Personnel/Designee, in conjunction with the Department Head/Designee, may choose to create two or more interview panels in accordance with this Section.

4. In the event a Conflict of Interest is discovered prior to or during the interview, the panel member shall notify the Compliance Officer and the other members of the panel prior to the interview or as soon as possible that a Conflict of Interest exists and that a substitution is needed.  The panel member will then leave the interview room and will not participate in the interview or the selection process for that Candidate.  The substitute panel member shall be contacted to replace the panel member.  If no substitute is available, the interview will be rescheduled.  The substitute panel member shall assume the panel member's duties (asking questions, completing the Interview Evaluation Form, etc.).  Upon conclusion of the interview and any discussion regarding the Candidate, the panel member will be notified to return to the interview room to replace the substitute panel member and resume interviews.  If a Conflict of Interest is discovered after an interview, the Compliance Officer must be notified and he or she will make the determination of whether a second interview panel must be convened.

5. The Hiring Department, in conjunction with Personnel, will develop a written list of at least 10 interview questions for each Non-exempt Sworn Position, which will be approved by the Director of Personnel/Designee and the Compliance Officer prior to

11/23/2010

implementation.  All questions will be based on and relate to the specific job duties and Minimum Qualifications of the Non-exempt Sworn Position as contained in the Job Description and will be designed to assess the Candidate's job-related qualifications, skills and suitability for employment.  The interview questions may be revised from time to time with the prior approval of the Director of Personnel/Designee and the Compliance Officer in order to account for any changes in the  job and to prevent inappropriate sharing of questions and answers among Candidates.

6.      The questions will be included on the Interview Evaluation Form.  The interview questions developed for a particular Non-exempt Sworn Position may be used for subsequent vacancies for that position, provided appropriate precautions are taken to prevent advance dissemination of answers and provided they remain applicable to the position.

7.      All Candidates interviewed will be asked to respond to each of the approved interview questions.  Additional follow-up questions are permitted, provided they are related to a determination of the Candidate's suitability for the Non-exempt Sworn Position for which he or she is applying.

8.      The interview will also include questions that establish, at a minimum, the Candidate's:  (a) willingness and ability to do the job, (b) availability for work hours and willingness to work at the location where the job is located, (c) prior job performance (if objectively verified and deemed credible by the interviewers), (d) knowledge and understanding of the position, and (e) relative qualifications for the position as compared with other Candidates.  None of the above factors will be considered determinative or mandatory, and interviewers will determine what, if any, weight is to be given to each factor.

9.      Each interviewer will independently and personally complete and sign an Interview Evaluation Form for each Candidate at the conclusion of the interview, but notes may be taken on the Interview Evaluation Form during the interview.  The interviewer will identify on the Interview Evaluation Form whether he or she has concluded that the Candidate is "Recommended" and deserving of further consideration or "Not Recommended" and to be eliminated from consideration.  He or she will also include a description of the reasons for their conclusions and sign the Interview Evaluation Form.  No person may alter, add to or delete from the Interview Evaluation Form other than the interviewer who completes and signs the Interview Evaluation Form.  All Interview Evaluation Forms must be completed in ink.

10.     All completed Evaluation Forms will be returned to the Director of Personnel/Designee present at the interview upon completion of each interview.

11/23/2010

11.     All Candidates will be required to execute the Applicant Certification as part of the interview process. The completed Applicant Certifications will be collected by the Director of Personnel/Designee during the interview and shall be maintained along with other documents and supporting materials related to the Vacancy.

12.     In the event a Candidate fails to appear for the scheduled interview, the Candidate shall have the opportunity to submit a written appeal including a detailed explanation to the Director of Personnel. If the Director of Personnel/Designee receives an appeal from the Candidate, he or she shall determine based upon the circumstances regarding the failure to appear whether to approve or deny the appeal. If the appeal is approved, the interview shall be rescheduled. If a timely appeal is not submitted or the appeal is denied, the Candidate shall be deemed not eligible. The Compliance Officer is permitted to oversee or audit this process as he or she deems necessary.

13.     All interviewers will be required to execute the No Political Consideration Certification as part of the interview process. The No Political Consideration Certification is located on the Interview Evaluation Forms.

14.     After each interview, the Director of Personnel/Designee will collect the Interview Evaluation Forms from each interviewer. At the conclusion of the interviews for a particular hiring sequence, the Department of Personnel shall compile results from the Interview Evaluation Forms. All Candidates identified as "Recommended" by all interviewers will be included on the list of Recommended Candidates.

F.     <u>Candidate Selection Procedures</u>. Following completion of interviews of Candidates on the Merit Board Eligibility List for a Non-exempt Sworn Position or following each day of interviews if multiple days of interviews are conducted, all Candidates who have not been disqualified will be selected for employment in accordance with the following:

1.     Upon conclusion of all interviews scheduled for a particular interview day, the interview panel members will conduct a Selection Meeting. Each interview panel member will indicate if he or she has "Recommended" or "Not Recommended" each Candidate. In an attempt to reach a Consensus on those Candidates that interview panel members did not uniformly identify as either "Recommended" or "Not Recommended," (the "non-Consensus Candidates"), the panel members will attempt to reach Consensus of the non-Consensus Candidate(s) by discussing their opinions freely and without fear of retaliation, as well as by reviewing all notes and materials available, such as the Merit Board File and Application of the Candidate(s). The interview panel member who is not in agreement with the other interview panel members may elect to review the available materials without discussion, or he or she may request further discussion with the other panel members. After

130032447v1  0861523  51151

11/23/2010

reviewing all materials, and possible further discussion, each interview panel member will determine if he or she desires to change his or her original decision regarding the Candidate. Any interview panel member who changes his or her original decision regarding the Candidate, for example, changing a decision of "Not Recommended" to "Recommended", is required to provide additional notes to the Interview Evaluation Form documenting his or her reason(s) for the change.

2. Upon completion of the Selection Meeting, all completed Interview Evaluation Forms will be returned to the Director of Personnel/Designee present at the interview. The Department of Personnel shall compile results from the Interview Evaluation Forms. All Candidates identified as "Recommended" by all interviewers will be included on the list of Recommended Candidates. All Candidates "Not Recommended" by all interview panel members will be disqualified from consideration.

3. After the Selection Meeting, if any non-Consensus Candidates remains, within 10 days following the last Candidate interview and Selection Meeting, the Director of Personnel/Designee, the Department Head/Designee and all members of the interview panel shall conduct a Consensus Meeting to discuss the non-Consensus Candidates. All interview panel members shall use best efforts to be present at the Consensus Meeting. If the Department Head/Designee or Director of Personnel/Designee were members of an interview panel with a non-Consensus Candidate, the Compliance Officer will be make the final decision on the non-Consensus Candidate, as explained below. At the Consensus Meeting, each interview panel member will freely and without fear of retaliation express his or her opinion of all non-Consensus Candidates to the Director of Personnel/Designee and the Department Head/Designee. The Director of Personnel/Designee and the Department Head/Designee, upon hearing all opinions from each interview panel member and reviewing all relevant information, will attempt to come to a Consensus between themselves on the selection of each non-Consensus Candidate. If the Director of Personnel/Designee and the Department Head/Designee cannot come to a Consensus between themselves, the Compliance Officer will be presented with all documentation and the opinions of all participants of the Consensus Meeting and will be responsible for making the final determination regarding the disqualification or recommendation of each non-Consensus Candidate. One of the participants of the Consensus Meeting will take detailed notes on the Justification for Hire Form at the Consensus Meeting. The notes will indicate the objective basis or bases on which any Candidate was disqualified or recommended. On the Justification for Hire Form, all notes will be signed by all the participants to confirm their accuracy and all participants in the Consensus Meeting will be required to execute the No Political Consideration Certification, located on the Justification for Hire Form. The Justification for Hire form will be maintained by Personnel, along

44

11/23/2010

with the names of any Candidate the participants recommend adding to the list of Recommended Candidates as a result of the Consensus Meeting. If a Candidate is disqualified, Personnel shall send that Candidate a letter noting the disqualification.

4.  The Department of Personnel shall compile a list of all recommended Candidates in order of their Merit Board Certification date.

5.  The Candidate with the earliest certification date shall be offered the position. If more than one (1) position is available, the Candidate with the next earliest certification date shall be offered the position. Candidates with the same certification date will be subject to a blind, random selection process, if there are more recommended Candidates than available Non-exempt Sworn Positions.

6.  The names of those Candidates selected will be placed on the Decision to Hire Memorandum.

G.  <u>Final Screening</u>. Upon completion of the Decision to Hire Memorandum and required documentation, Personnel will conduct a final screening as follows:

1.  The Director of Personnel/Designee and the Compliance Officer will review all materials provided before extending an offer of employment to any Candidate, and no offer will be extended prior to the receipt of all required documents and supporting materials.

2.  Personnel will, and the Compliance Officer may, on a random basis, contact references (preferably the most recent employers) listed on the application of all selected Candidates in order to verify the accuracy of information contained on the application. The name of any Candidate who Personnel or the Compliance Officer discovers provided incorrect information on his or her application will be removed from the Decision to Hire Memorandum, including a notation as to the reason for removal. The Compliance Officer will notify the Merit Board of the identity of any Candidate who is removed from the Decision to Hire Form for further investigation.

3.  Personnel will complete an up-to-date background check for each selected Candidate. Based on the results of the background check, Personnel may send the name of the Candidate back to the Merit Board for further investigation to determine whether the Candidate's certification should be revoked. Those Candidates whose criminal background checks indicate they have been convicted of a misdemeanor or felony, have direct connections with any gang or have otherwise been engaged in activity which brings into question their suitability for employment as a Sworn Employee will be disqualified by Personnel.

H.  The Director of Personnel/Designee must obtain a signature of approval by the Chief of Staff/Designee to hire the selected

130032447v1  0861523  51151

11/23/2010

Candidate(s). No final offer of employment will occur until an approval by the Chief of Staff/Designee is obtained.

I.     Offers of Employment. Personnel will extend conditional employment offers to those Candidates whose names remain on the Decision to Hire Memorandum after the final screening in accordance with the following:

1.     All selected Candidates who receive a contingent offer of employment will be advised of the date of orientation and the start date with the Training Academy.

2.     All selected Candidates who receive an offer of employment will be advised that the offer is contingent on their submission to a drug test prior to commencement of employment, pursuant to the Sheriff's Drug Testing Policy as well as a physical examination by their private physician.

3.     Personnel will comply with the hiring and employment procedures contained in the Personnel Rules with respect to each Candidate who is offered and accepts an offer of employment.

VII.   Exceptions to the General Employment Process

The following limited exceptions apply to the General Hiring Processes for Sworn and Civilian Employees or specified portions thereof:

A.     Exempt Positions. The Sheriff may consider Political Reasons or Factors in taking any Employment Action relating to any individual applying for or holding an Exempt Position as listed on the Exempt List. This exception does not apply to any position that is not included on the Exempt List.

B.     Senior Manager Positions. See Section VIII below.

C.     Senior Assistant Positions. See Section IX below.

D.     Emergency Hires. The Sheriff is not required to comply with the General Employment Process in the event of an emergency involving a threat to public safety or health, not including a hiring freeze. No more than 100 individuals may be hired pursuant to this Section in any calendar year without prior concurrence of the Compliance Officer unless the Director of Personnel and the Department Head where the emergency hiring is located certify in writing that (1) there is a need for such hiring based on an emergency involving public health or safety, (2) the approximate number of individuals required by the emergency, and (3) an estimate of the duration of the emergency, and keep such certification on file. No person may be hired on an emergency basis for more

46

11/23/2010

than 45 days in any calendar year without prior concurrence from the Compliance Officer. Emergency hires may not be based on any Political Reason or Factor.

E.  Interns. The Sheriff may hire or place Interns on a temporary basis pursuant to any bona fide student internship program without complying with the Notice of Job Opportunity provisions contained in Article V, Sections C and D respectively, of this Employment Plan. This exception does not apply to any other requirement of the General Employment Process and all Interns wishing to apply for an Intern position must complete an application and meet the Minimum Qualifications of the Intern position contained in the Job Description. Interns may not be selected for participation in any seasonal work or internship program on the basis of any Political Reason or Factor, and they may not be subject to any Unlawful Political Contact or Unlawful Political Discrimination. This exception will not apply in the event a former Intern is being considered for regular employment with the Sheriff, in which case all aspects of the General Employment Process will apply. All individuals involved in the process of hiring or placing Interns must execute a No Political Consideration Certification, and all Interns must complete and sign an Applicant Certification.

F.  Seasonal Employees. The Sheriff may hire seasonal employees in compliance with CBAs that cover employees who perform seasonal work. Such hiring cannot be based on any Political Reasons or Factors.

G.  Settlements and Awards. The Sheriff may comply with any judgment, negotiated settlement of a complaint or arbitral award that requires it to take an Employment Action with respect to a specific individual or individuals.

H.  Recall, Reemployment and Reinstatement Candidates. Any individual who is entitled to Transfer or reinstatement under a CBA may be given preference as provided in the applicable CBA. Such Transfer or reinstatement cannot be based on any Political Reasons or Factors.

I.  Reclassifications. The Reclassification of any position in accordance with this Employment Plan will not require the submission of a RTH, and the incumbent in such reclassified position may continue to be employed in the position provided he or she possesses the minimum qualifications of the reclassified or position. Such Reclassification cannot be based on any Political Reasons or Factors.

J.  Probationary Employees. Pursuant and subject to any applicable CBA, the Sheriff's Office can terminate probationary employees at will. Such termination cannot be based on any Political Reasons or Factors.

K.  Detailing. See SEAM, Article C.

VIII.  Senior Manager Hiring Process

47

130032447v1 0861523 51151

11/23/2010

Senior Manager Positions are those positions that have significant managerial responsibilities, are not covered under any CBA and are not Exempt Positions. The nature of the Senior Manager position makes discretion and flexibility in hiring justifiable in order to build an accountable and qualified management team. Political Reasons or Factors shall not be considered in the employment of any employee holding a Senior Manager Position. The following will apply with respect to the hiring and employment of Senior Managers:

A. <u>Posting the Senior Manager List</u>. The Sheriff's Office will post and maintain a current Senior Manager List in the Personnel Office and on the Sheriff's website in accordance with the following:

    1. The Senior Manager List shall be available for public viewing inside the Personnel Office and include: (a) the name of the Department to which the Senior Manager Position is assigned and in which the individual holding the Senior Manager Position works, (b) the job title, and (c) the incumbent's name. The Sheriff's Office will provide a copy of the current Senior Manager List to individuals upon written request either in person or via e-mail if so requested.

    2. The Senior Manager List will also be posted on the Sheriff's website. The posting will include: (a) the name of the Department to which the Senior Manager Position is assigned and in which the individual holding the Senior Manager Position works, (b) the job title, and (c) a link to the Job Description for each Senior Manager Position.

    3. The Sheriff's Office will repost and update the Senior Manager List at the Personnel Office and on its website within 10 business days of any change being approved. The Compliance Officer will oversee the update, maintenance and posting of the Senior Manager List to ensure its accuracy.

B. <u>Additions to and Deletions from the Senior Manager List</u>. The Sheriff's Office may from time to time add positions to or delete positions from the Senior Manager List in accordance with the following:

    1. The Department Head/Designee, with the prior approval of the Executive Office/Designee, shall submit written notice of any proposed addition to or deletion from the Senior Manager List, along with supporting documentation. Such request shall include but is not limited to, (a) the job title of the Senior Manager Position (including a copy of the Job Description for the position) and (b) an explanation of the basis on which he or she believes the position should be added to or deleted from the Senior Manager List. The request will be submitted to the Compliance Officer and Director of Personnel/Designee, who will respond with a written notice of approval or denial of approval (including the reasons for their decision) within forty-five days. If the Compliance Officer and Director of Personnel/Designee approve the request, the position will be added to or deleted from the Senior Manager List, as applicable, and such revision will be made to the

130032447v1 0861523 51151

11/23/2010

Senior Manager List.  Any Job Description for a new Senior Manager Position will be subject to the requirements of Article VIII, Section C below.  If either the Compliance Officer or Director of Personnel/Designee does not approve the request, the position will not be added to or deleted from the Senior Manager List, provided a member of the Executive Office  may appeal the Compliance Officer's or Director of Personnel/Designee's decision to the Director of OPR for a final decision.

2.      In the event the Executive Office/Designee files an appeal, the Compliance Officer and Director of Personnel/Designee shall forward a copy of their decisions to add or remove the position from the Senior Manager List to the Hiring Department and OPR.  OPR will consider the appeal and the decisions and make a final determination within 30 days.  OPR's written decision will be sent to the Director of Personnel/Designee, the Compliance Officer and the Executive Office/Designee.

3.      In addition to the above, until such time as the judge in the Shakman Case signs an order terminating the SRO, the Sheriff's Office shall provide to Plaintiff's counsel in the Shakman Case and to the SSCA written notice of any proposed addition to or deletion from the Senior Manager List, along with supporting documentation, including but not limited to, (a) the identity of the Senior Manager Position (including a copy of the current Job Description for the position or a proposed Job Description for any proposed position prepared in compliance with Article VIII, Section C below); and (b) an explanation of the basis on which it believes the position should be added to or deleted from the Senior Manager List.  Plaintiff's counsel will respond with his or her written notice of approval or denial of approval (including the reasons for the denial of approval) within ten days of receipt of all supporting documentation.  A copy of such response will also be sent to the SSCA. If the Plaintiff's counsel in the Shakman Case approves the request, the position will be added to or deleted from the Senior Manager List, as applicable, and such revision will be made to the Senior Manager List as soon as practicable.   If the Plaintiff's counsel in the Shakman Case does not approve the request, the matter will be referred to the SSCA for mediation.  If the Plaintiff's counsel and the Sheriff cannot resolve their dispute with the assistance of the SSCA, the matter will be referred to the court having jurisdiction in the Shakman Case for final resolution. The position will not be added to or deleted from the Senior Manager List until final resolution by the court.

C.      Job Descriptions, Minimum Qualifications.  An accurate and detailed Job Description for every Senior Manager Position must be on file with Personnel prior to implementation of this Senior Manager Process.  Prior to filling any Senior Manager Position, a current, accurate and detailed Job Description for the position must be approved and posted pursuant to Article VIII, Section A.2 above.  The Job Description must accurately reflect the position's actual job duties and responsibilities and must include the Minimum Qualifications and, if

11/23/2010

applicable, any Preferred Qualifications, skills or experience for the position. The job title for each such position will include a distinctive identification of the position and will be used for all RTHs.

D.  <u>Modifications to Job Descriptions</u>.    Any modification to Minimum Qualifications and Preferred Qualifications on a Job Description for a Senior Manager Position shall be made in accordance with the following:

1.  Either the Department Head/Designee or the Director of Personnel/Designee, after conferring with each other and agreeing, may request a change in the Minimum Qualifications and/or Preferred Qualifications on a job description.  The requested change must be submitted in advance by the Director of Personnel/Designee to the Compliance Officer for approval, which approval or denial will be provided within 30 days and will be based on whether the revised description, qualifications and criteria are accurate, job-related and sufficient to advise Applicants, screeners, interviewers and others of the attributes being sought for the Senior Manager Position involved.

2.  If the Compliance Officer does not approve the request, the modification to the Job Description will not be made, provided the Director of Personnel/Designee and the Department Head/Designee may jointly appeal the Compliance Officer's denial in writing to OPR. Notice of any appeal to OPR will be provided to the Compliance Officer by the Director of Personnel with a copy to the Executive Office/Designee and the Department Head/Designee.

3.  In the event of an appeal, the Compliance Officer shall forward his or her reason(s) for denying the modification to any Senior Manager Job Description to OPR, the Director of Personnel/Designee and the Department Head/Designee.

4.  Within 30 days of its receipt of any appeal, OPR will send the Compliance Officer, the Director of Personnel and the Department Head/Designee written notification of its decision to grant or deny the appeal, including the basis for its decision, and that decision will be final.  OPR shall base its decision on relevant definitions and provisions of this Employment Plan.  The decision must be accompanied by a No Political Consideration Certification signed by the OPR staff member making the decision.

5.  Until such time as the SRO is terminated, copies of all modification requests must also be submitted to the SSCA for approval at the same time they are submitted to the Compliance Officer.  If the SSCA does not approve of the modification, the request will be denied, and no appeal will be available.

E.  <u>Manager Requests to Hire</u>.

1.  The Department Head/Designee requesting to fill a Senior Manager

50

11/23/2010

position within his or her Department and the Director of Personnel/Designee shall consult with the Chief of Staff/Designee, Undersheriff and the Chief Financial Officer to determine if a Vacancy(s) exists and if the Vacancy(s) will be filled pursuant to SEAM, Article A.

2. The hiring Department Head/Designee shall submit a RTH to the Director of Personnel. The Department Head/Designee or Director of Personnel/Designee must obtain an approval signature from the Chief of Staff/Designee (either on the RTH or request memorandum including the position and number of vacancies to be filled) to proceed with the hiring process for a Senior Manager position. Upon approval by the Chief of Staff/Designee, the Director of Personnel/Designee will forward a copy of written request to the Compliance Officer and the Undersheriff.

3. The RTH must be accompanied by a copy of the current Job Description for the Senior Manager Position. If no Job Description exists or the current Job Description is not accurate, Personnel will draft a new or updated Job Description in compliance with Article VIII, Section D. above. In addition, the Hiring Department and Personnel may, at the Director of Personnel/Designee's discretion, conduct a desk audit as described in Article XII, Section C below where the inaccuracies in the current Job Description relate to the minimum qualifications of the position.

3. If applicable, the RTH will include any additional Preferred Qualifications relating to the Senior Manager Position that the Department Head/Designee feels are appropriate to consider as part of the selection process, provided Personnel confirms that such Preferred Qualifications are, in fact, attributes needed to successfully perform the Senior Manager Position. If appropriate, the Job Description will be revised to include the additional Preferred Qualifications, pursuant to Article VIII, Section D above.

4. The RTH will include the No Political Consideration Certification language.

F.   Preparation of Notice of Job Opportunity.  Personnel will follow the procedures detailed below in preparing a Notice of Job Opportunity.

1. The Director of Personnel/Designee, shall confer with the Executive Office/Designee to determine whether operational needs and priorities require the particular Senior Manager Position to be filled.

130032447v1 0861523 51151

11/23/2010

2. If needed, the Director of Personnel/Designee shall conduct a budget analysis to ensure that available funding exists for the position.

3. If the Director of Personnel/Designee concludes that the Senior Manager Position shall be filled, then the Director of Personnel/Designee shall complete a Notice of Job Opportunity to be posted for the Senior Manager Position based on information contained in the RTH and the current Job Description.

4. The Notice of Job Opportunity will include: (a) the Job Description, (b) the pay, (c) directions on how and where to apply, (d) a non-discrimination clause, (e) a non-political hiring statement, and (f) the time period during which applications will be accepted.

5. The Notice of Job Opportunity will also include a list of all additional documents, e.g., transcripts, diplomas, certifications and licenses, that the individual must produce and the time by which they must be produced in order for the Applicant to be considered eligible for the position.

6. The Notice of Job Opportunity will contain a description of any tests that will be administered and the scores that must be achieved on those tests in order to be considered eligible for the position, if applicable.

7. The Director of Personnel or his or her Designee and the Department Head/Designee will document in writing their approval and confirmation of accuracy of the Notice of Job Opportunity before it is posted.

G. <u>Posting of Notices of Job Opportunity</u>. The Sheriff's Office will post Notices of Job Opportunity for Senior Manager Positions as follows:

1. All Notices of Job Opportunity will be posted at each place where individuals may make application for employment with the Sheriff's Office and on the Sheriff's website. Notices of Job Opportunity will also be provided (at no cost) to each individual who requests a copy in person. Notices of Job Opportunity may also be posted or otherwise distributed to schools, professional organizations, labor organizations and other appropriate groups in order to generate the largest possible pool of qualified applicants. All such efforts must be documented.

2. All Notices of Job Opportunity will be posted for a minimum of 10 business days prior to the closing of the period for filing applications.

H. <u>Recommendations</u>. The following will apply to the submission and consideration of recommendations regarding individuals being considered or applying for any Senior Manager Position:

1. Individuals, may submit written recommendations (and written recommendations only) on behalf of any individual applying for any Senior Manager Position where such recommendation is based on the

11/23/2010

recommender's personal knowledge of the Applicant's work, skill, work experience or other job-related qualification, provided such written recommendation must be included in the individual's application materials and in the individual's Personnel file if the individual is hired. Additionally, such recommendation must be recorded on the Contact Log.

2.   No Sheriff's Office employees, including, but not limited to, Department Heads/Designees, Public Officials/Agents, or any Political Organizations may contact any Sheriff's employee involved in the selection process to fill a Senior Manager Position with the intent or for the purpose of:  (a) lobbying or advocating for or against a specific individual who is being considered or applying for a Senior Manager Position, (b) requesting that an individual be added to or deleted from a Senior Manager Eligibility List, or (c) otherwise influencing the selection process related to a particular individual who is being considered or applying for a Senior Manager Position, except as provided in Article VIII, Section H.1. above.

3.   Sheriff's Office employees, including, but not limited to, Department Heads/Designees, may discuss the Senior Manager Process and related general practices and procedures with Personnel or any person involved in the selection process at any time, and, there is no prohibition against Executive Office employees discussing particular Senior Manager Positions or potential Senior Manager Positions with Personnel or any person involved in the selection process at any time, provided that no such discussion otherwise violates this Employment Plan or the SRO, while in effect, or involves or constitutes an Unlawful Political Contact or Unlawful Political Discrimination.

4.   Any and all recommendations for Senior Manager Positions shall be forwarded to the Compliance Officer and recorded on the Contact Log. Any violation of the prohibitions in this Section H must be reported to OPR and must be investigated by OPR.

I.   Submission of Applications.  The following will apply to the submission of applications in response to any Notice of Job Opportunity for a Senior Manager Position:

1.   The application form will include (a) a non-discrimination clause and (b) a non-political hiring provision relating to Non-exempt Positions.

2.   All applications for any posted Senior Manager Position submitted to Personnel within the applicable posting period will be accepted and logged in by Personnel.  Applications may be submitted to Personnel in person at the Personnel Office, or by certified mail or overnight courier, return receipt requested.  All applications must be received in hand by Personnel no later than the close of business on the date of closing of the posting.

11/23/2010

    3.     Applicants shall also complete and submit an Applicant Certification.

J.    <u>Screening Applications</u>.  Upon the expiration of the posting period, if more than 35 applications are properly received by Personnel for an open position, then Personnel may randomly select 35 applications and continue with the following process as outlined with those 35 applications.  The Director of Personnel or his or her Designee and a second trained Personnel staff member, with oversight by the Compliance Officer, will review the applications, as applicable, for each Senior Manager Position and determine the eligibility of each Applicant in accordance with the following:

    1.     The Director of Personnel/Designee, the second screener from Personnel, and the Compliance Officer will receive substantive, formal and on-the-job training on the appropriate method for performing eligibility screening prior to reviewing any application and determining eligibility status of any applicant for a Senior Manager Position.  Such training will be documented in their personnel files.

    2.     The Director of Personnel/Designee, the second screener from Personnel, with oversight by the Compliance Officer, will review each of the applications for each Senior Manager Position and determine whether:  (a) the application is complete and has been submitted in a timely manner; (b) the application indicates the Applicant possesses all of the Minimum Qualifications stated in the Notice of Job Opportunity; (c) all supporting documentation listed on the Notice of Job Opportunity has been provided by the Applicant;  and (d) the Applicant should be included on the Eligibility List.  The Director of Personnel/Designee, the second screener from Personnel, and the Compliance Officer will complete the Screening Spreadsheet, which shall list the names of all Applicants reviewed for the Senior Manager Position and shall include all of the information contained in (a),(b) and (c) above.

    3.     Any Applicant who has not submitted a copy of a transcript, diploma, certification, license or other required document within the applicable posting period, if required by the posting, or at the time of interview, as applicable, will not be considered eligible, and his or her name will not be included on the Eligibility List, provided that this will not apply to Senior Manger Positions that indicate such documentation may be submitted at the time of interview.

    4.     Any Applicant who has submitted an incomplete application form for a Senior Manager Position will not be considered eligible, and his or her name will not be included on the Eligibility List.  Minor omissions that do not impact a determination of the Applicant's employment qualifications, will not be considered in the determination of whether the application is incomplete.

    5.     Any Applicant whose application or other submitted information indicates he or she does not possess all of the Minimum Qualifications

11/23/2010

listed on the Job Description will not be considered eligible, and his or her name will not be included on the Eligibility List.

6. Any Internal Applicant who has been subject to Discipline consisting of (a) three (3) written warnings, (b) a disciplinary Demotion or (c) a suspension during the eighteen-month period prior to his or her application for Promotion or Transfer to a Senior Manager Position will not be considered eligible and his or her name will not be included on the Eligibility List, provided the terms of any applicable CBA will be observed.

7. The Director of Personnel/Designee shall thoroughly review each Internal Applicant's timecards from the previous 18 months to determine if the Internal Applicant has incurred one (1) or more of the Unpaid Unauthorized Activities identified in this Section VIII.J.7.a-j, three (3) or more instances of Tardiness identified in this Section VIII.J.7.k, or six (6) or more instances of an Attendance Pattern identified in this Section VIII.J.7.l, which are not associated with any Mitigating Circumstances:

    a.      No Sick Time (NST/0)

    b.      Absent Late Call (ALC/0)

    c.      Absent No Call (ANC/0)

    d.      No Vacation Time (NVT/0)

    e.      No Personal Time (NPT/0)

    f.      No Compensatory Time (NCET/0)

    g.      No Holiday Time (H/0)

    h.      Unauthorized FMLA (0/FMLA Unauthorized)

    i.      Unauthorized IOD (IOD/Unauthorized)

    j.      Proof Status (0/Proof)

    k.      Tardiness Docked Time (O)

    l.      Attendance Pattern

8. If the Director of Personnel/Designee determines that the Internal Applicant has incurred one (1) or more of the Unpaid Unauthorized Activities identified in this Section VIII.J.7.a-j, three (3) or more instances of Tardiness identified in this Section VIII.J.7.k, or six (6) or

130032447v1  0861523  51151

11/23/2010

more instances of an Attendance Pattern identified in this Section VIII.J.7.l without any mitigating circumstances, the Internal Applicant shall be marked not eligible on the Screening Spreadsheet/Eligibility List.

9.    If the Director of Personnel/Designee, the second screener from Personnel, and the Compliance Officer disagree about whether an Applicant's name should be included on the Eligibility List, the name will not be added to the Eligibility List. In the instance of such a dispute, a notation shall be added to the file documenting the reason(s) for not including the name on the Eligibility List. The names of Candidates will be placed in random order on an Eligibility List. Applicants who are not placed on an Eligibility List will be so notified.

K.    <u>Preparation of the Eligibility List</u>. The Director of Personnel/Designee and the second screener will prepare the Eligibility List for Senior Manager Positions with oversight by the Compliance Officer, in accordance with the following:

1.    The Eligibility List will include the names of all Applicants whom the Director of Personnel or the second screener determine eligible in accordance with this Employment Plan with oversight by the Compliance Officer, and no one may add or delete the name of any other Internal or External Applicant or person to the Eligibility List. If either the Director of Personnel or the Compliance Officer determines that a name has been added or deleted due to Unlawful Political Contacts or Unlawful Political Discrimination, he or she will immediately suspend the hiring process and report the matter to OPR.

2.    Neither the Director of Personnel nor his or her Designee nor the Compliance Officer may contact any Applicant, Department Head/Designee, Sheriff's employee or any other individual for the purpose of influencing or affecting the status of any application or Applicant, including, but not limited to, providing or soliciting information concerning the Applicant's qualifications, credentials or other eligibility factors, except as specifically permitted in this Employment Plan.

3.    No Applicant, Supervisor, Department Head/Designee, Sheriff's employee or any other individual may contact any Personnel staff member, including the Director of Personnel or the Compliance Officer, for the purpose of influencing or affecting the status of any application or Applicant for a Senior Manager Position, including, but not limited to, providing or soliciting information concerning the Applicant's qualifications, credentials or other eligibility factors, except as specifically provided in this Employment Plan.

4.    If no Applicant is deemed eligible, the position will be reposted, provided the file for the previous posting will be documented to confirm that no Applicant was deemed eligible.

56

11/23/2010

L.    <u>Preparation of Interview List.</u>  The Interview List for Senior Manager Positions will be prepared as follows:

1.    An interview selection panel consisting of, at a minimum, the Department Head/Designee and the Director of Personnel/Designee shall meet and review the applications of all Candidates on the Eligibility List.  The Director of Personnel/Designee shall bring copies of all Candidate materials to the panel for review.

2.    The Compliance Officer shall be notified in writing of the date, time and location of the interview selection panel at least 48 hours prior to commencement of the interview selection panel meeting.  The Compliance Officer may elect to be present to monitor any interview selection panel meeting for a Senior Manager Position.

3.    At this meeting, each member of the interview selection panel will have an opportunity to freely and without fear of retaliation express his or her opinion regarding the Candidates listed on the Eligibility List and their suitability for the position.

4.    The interview selection panel will identify and agree upon a sub-pool of those Candidates whose Minimum Qualifications and Preferred Qualifications, if applicable, most closely match those contained on the Job Description and on the Notice of Job Opportunity.  The interview selection panel shall choose a minimum of three (3) Candidates for each open position whom all interview selection panel members agree are the best qualified and place them on the Interview List.  The Interview List will be signed by all members of the interview selection panel.

M.    <u>Interviews.</u>  Interviews of Candidates for Senior Manager Positions will be conducted as follows:

1.    A panel, either the same or different from the interview selection panel, shall interview the Candidates whose names appear on the Interview List.  The interview panel shall consist of, at a minimum, (a) the Department Head/Designee, (b) the Director of Personnel or his or her Designee and (c) a supervisory-level employee from the Hiring Department.

2.    Interviews will commence as soon as possible after the interview selection panel has determined the identity of the Candidates to be interviewed and has prepared the Interview List.  All Candidates listed on the Interview List will be interviewed.

3.    In the event a Candidate fails to appear for the scheduled interview, the Candidate shall have the opportunity to submit a written appeal including a detailed explanation to the Director of Personnel .  If the Director of Personnel/Designee receives an appeal from the Candidate, he or she shall determine based upon the circumstances regarding the failure to appear whether to approve or deny the appeal.   If the appeal is approved, the interview shall be rescheduled.  If a timely appeal is not

11/23/2010

submitted or the appeal is denied, the Candidate shall be deemed not eligible. The Compliance Officer is permitted to oversee or audit this process as he or she deems necessary.

4. The Hiring Department, in consultation with Personnel, will develop a written list of interview questions for each group of Candidates interviewed for any Senior Manager Position, which will be approved by the Director of Personnel/Designee and the Compliance Officer prior to implementation. All questions will be based on and relate to the specific job duties and Minimum Qualifications of the Senior Manager Position as contained in the Job Description and Notice of Job Opportunity and will be designed to assess the Candidate's job-related qualifications, skills and suitability for employment. The interview questions may be revised from time to time, with the approval of the Director of Personnel/Designee and the Compliance Officer, in order to account for any changes in the job and to prevent inappropriate sharing of questions and answers among Candidates. The questions will be used to evaluate Candidates in accordance with the Interview Evaluation Form.

5. The interview questions developed for a particular Senior Manager Position may be used for subsequent vacancies for that position, provided appropriate precautions are taken to prevent advance dissemination of questions or answers and provided the questions remain applicable to the position.

6. All Candidates interviewed for the same Senior Manager Position will be asked to respond to at least five (5) of the same pre-approved interview questions. Additional and follow-up questions are permitted, provided they are related to a determination of the Candidate's suitability for the Senior Manager Position for which he or she is applying.

7. The interview may also include questions that establish, at a minimum, the Candidate's: (a) willingness and ability to do the job; (b) availability for work hours and willingness to work at the location where the job is located; (c) prior job performance (if objectively verified and deemed credible by the interviewers); (d) knowledge and understanding of the position; (e) results on any applicable test; and (f) relative qualifications for the position as compared with other Candidates. None of the above factors will be considered determinative or mandatory, and interview panel members will determine what, if any, weight is to be given to each factor.

8. In the event a Conflict of Interest is discovered prior to or during the interview, the panel member shall notify the Compliance Officer and the other members of the panel prior to the interview or as soon as possible that a Conflict of Interest exists and that a substitution is needed. The panel member will then leave the interview room and will not participate in the interview or the selection process for that

11/23/2010

Candidate. The substitute panel member shall be contacted to replace the panel member. If no substitute is available, the interview will be rescheduled. The substitute panel member shall assume the panel member's duties (asking questions, completing the Interview Evaluation Form, etc.). Upon conclusion of the interview and any discussion regarding the Candidate, the panel member will be notified to return to the interview room to replace the substitute panel member and resume interviews. If a Conflict of Interest is discovered after an interview, the Compliance Officer must be notified and he or she will make the determination of whether a second interview panel must be convened.

9.     Each member of the interview panel (including the Department Head/Designee) will independently and personally complete and sign an Interview Evaluation Form for each Candidate at the conclusion of the interview. The interviewer will identify on the Interview Evaluation Form whether the Candidate is (a) "Highly Recommended," (b) "Recommended" and deserving of further consideration, or (c) "Not Recommended," as well as the reasons for his or her conclusions. No person may alter or add information to or delete information from any Interview Evaluation Form other than the interviewer who completes and signs the Interview Evaluation Form. All Interview Evaluation Forms must be completed in ink. All completed Interview Evaluation Forms will be signed and dated by the interviewer and returned to the Director of Personnel or his or her Designee participating in the interview upon completion of each interview.

10.    The Compliance Officer shall be notified in writing of the dates, times and locations of all Candidate interviews at least 48 hours prior to commencement of any interview for a Senior Manager Position. The Compliance Officer may elect to be present to monitor any interview for a Senior Manager Position.

11.    Until such time as the SRO is terminated, the SSCA shall be notified in writing of the dates, times and locations of the interviews at least 48 hours prior to commencement of any interview for a Senior Manager Position and may elect to be present to monitor any interview for a Senior Manager Position.

12.    If no Candidate or an insufficient number of Candidates on the Interview List is selected by a Consensus of the interview panel, the interview selection panel will reconvene and prepare another Interview List from the Candidates remaining on the Eligibility List.

13.    After conducting interviews and completing the Interviewer Evaluation Forms of all Candidates listed on the Interview List and Eligibility List, the Department Head/Designee may request that Personnel restart the Senior Manager hiring process if no Candidate from the Eligibility List has been rated as Highly Recommended or Recommended by all of the interviewers. The Director of Personnel/Designee and the Compliance Officer will review the request, the Interview Evaluation Forms,

11/23/2010

interview notes and applications of the Candidates on the Eligibility List and confirm that no Candidate was rated as Highly Recommended and/or Recommended by all of the interviewers. If no further Candidates are available, the position may be posted again upon the agreement of the Director of Personnel/Designee and the Compliance Officer.

N. <u>Selection for Hire</u>. Following completion of interviews with all Candidates on the Interview List, Candidates will be selected for employment in accordance with the following:

    1. After 48 hours and within 10 days following the last Candidate interview, the Department Head/Designee will conduct a Consensus Meeting at which all of the members of the interview panel will make best efforts to be present and at which each interviewer has an opportunity to freely and without fear of retaliation express his or her opinion regarding the Candidates who have been ranked as Highly Recommended or Recommended by all of the interviewers and their suitability for employment. No Consensus Meeting will occur unless at least two (2) of the interviewers are available to attend. The Consensus meeting may occur immediately following the last Candidate interview provided that all Candidates appeared and sat for their scheduled interview.

    2. After reasonable discussion and deliberation, the participants will identify the top Candidate for the position and document the reasons it chose that Candidate in a Justification for Hire form. One of the participants will take detailed notes on the Justification for Hire form at the Consensus Meeting. The notes will also indicate the objective basis or bases on which any Candidate was selected. The notes will be signed by the Department Head/Designee and each of the interviewers to confirm their accuracy. The notes will be forwarded to Personnel along with other required documentation. If the interview panel elects to do so, it also may designate the second, third and fourth best Candidates.

    3. The names of the Candidate or Candidates selected will be placed on the Justification for Hire Form completed by the participants and will be given to Personnel for final screening.

    4. The Justification for Hire form and other documentation shall be maintained by Personnel.

    5. The Compliance Officer and the SSCA, while acting, may be present to monitor each Consensus Meeting.

O. <u>Final Screening</u>. Upon receipt of the Justification for Hire Form and required documentation, Personnel will conduct a final screening as follows:

11/23/2010

1. The Director of Personnel/Designee and the Compliance Officer will review all documents related to the selection of any Candidate for a Senior Manager Position before extending an offer of employment to any Candidate selected for a Senior Manager Position, and no offer will be extended prior to the receipt of all required documents and supporting materials.

2. The Director of Personnel/Designee will update the review of disciplinary records, OPR records and attendance records and will conduct an up-to-date background check of each selected Candidate.

3. Prior to the offer of employment, the Director of Personnel/Designee will conduct a final pending disciplinary check with OPR and the Internal Applicant's respective Department. In the event of a pending Discipline case within the Internal Applicant's respective Department, the Selected Candidate will be marked not eligible on the Screening Spreadsheet/Eligibility List. In the event of a pending Discipline case at OPR, the Executive Director of OPR shall make the decision whether or not to release the pending hold on the offer of employment based upon the facts of the case. If the OPR investigation concludes after an offer of employment has been extended to another Candidate and the charges against the Internal Applicant are dismissed, the Internal Applicant will be screened for eligibility, as outlined in this section, and if deemed eligible, the Internal Applicant's name will be changed from not eligible to eligible on the Screening Spreadsheet/Eligibility List, with notations made regarding the reason(s) for the change. As outlined in Article V, Section G, the Internal Applicants application shall remain active for twelve months from the closing date of the Notice of Job Opportunity, unless otherwise required by an applicable CBA and may be used to apply for other Notices of Job Opportunities as long as the Job Descriptions and Notices are identical to the position for which the application was originally submitted.

4. Personnel will conduct an investigation to determine whether any selected Candidate has been convicted of a felony or a misdemeanor that reflects negatively on the Candidate's character, honesty or integrity and impacts his or her suitability for the position and any Candidate whose record so indicates will be considered ineligible and will not be offered employment. Additionally, those Candidates whose criminal background checks indicate that they have direct connections with any gang or have otherwise been engaged in activity, which brings into question their suitability for employment as a Sheriff's Office employee will be considered ineligible and will not be offered employment.

5. Selected Candidates will also be required to undergo a drug test in accordance with the Sheriff's Drug Testing Policy as well as a physical examination.

11/23/2010

      6.      All Applicants for Non-exempt Civilian Positions will be subject to a driver's license abstract investigation. Any Selected Candidate who in the previous 10 years (i) had his or her driver's license suspended for a serious violation or revoked at any time; (ii) has been convicted of or pled guilty or *nolo contendere* to a traffic violation involving an alcohol related offense or an offense involving controlled substances; or (iii) has been convicted of or pled guilty or *nolo contendere* to a traffic violation involving serious injury or death will be deemed Not Qualified, and the next highest ranked Candidate(s) on the Applicant List shall be selected.

      7.      The Director of Personnel/Designee will, and the Compliance Officer may, contact references (preferably the most recent employers) listed on the application of the selected Candidate in order to verify the accuracy of information contained on the application. If the Director of Personnel/Designee discovers that the selected Candidate provided incorrect or misleading information of a substantive nature on his or her application or resume, or during the interview process, he or she will notify the Compliance Officer and, with the agreement of the Compliance Officer, the Candidate will not be offered employment.

      8.      If the Director of Personnel/Designee (with the concurrence of the Compliance Officer) determines that a Candidate should be disqualified as a result of the final screening, the Director of Personnel/Designee may: (a) notify the next-highest ranking Highly Recommended or Recommended Candidate interviewed that he or she has been selected; (b) reconvene the interview selection panel to select Candidates from the Eligibility List for interviews; or (c) if there are no further ranked Candidates who meet the conditions in Article VIII, Section M.13, determine whether to restart the Senior Manager hiring process.

P.      The Director of Personnel/Designee must obtain a signature of approval by the Chief of Staff/Designee to hire the selected Candidate(s). No final offer of employment will occur until an approval by the Chief of Staff/Designee is obtained.

Q.      <u>No Political Consideration Certification</u>. Employees substantively participating in any stage of the Senior Manager Protocol shall execute the applicable forms containing the No Political Consideration Certification. Each Applicant also shall execute an Applicant Certification.

R.      <u>Application File</u>. The entire application file for each Senior Manager Position, including, but not limited to, the MRTH, the Notice of Job Opportunity, applications and supporting materials, Interview Evaluation Forms and notes, No Political Consideration Certification Forms, Applicant Certifications, Decision to Hire Forms, and Justification for Hire Forms will be kept by Personnel for at least two (2) years, unless a longer period is required under the Local Records Retention Act. A copy of the entire application file will be made

11/23/2010

available to OPR, the Compliance Officer and the SSCA while acting, upon request.

IX. Senior Assistant Hiring Process

The hiring process for Senior Assistants assigned to a Department Head does not require posting of job Vacancies, screening for qualifications or conducting interviews.

A. Duties. Senior Assistants are non-union positions reporting directly to a Department/Unit/Facility/Division Head or an executive level position, and are responsible for performing administrative support duties.

B. Selection Process.

1. The Department must have an existing Vacancy in their budget. The Department Head/Designee must submit an RTH to the Director of Personnel/Designee and organizational chart highlighting the reporting structure of the requested position.

2. The Director of Personnel/Designee will consult with the Undersheriff/Designee and the Chief Financial Officer/Designee to determine if a Vacancy(s) exists in the budget and that such Vacancy(s) can be filled.

3. The Department Head/Designee requesting the Senior Assistant position shall select the Candidate(s) and submit a request to the Chief of Staff/Designee for approval. The request shall include the name of the Candidate. A copy of the approved request shall be forwarded to the Director of Personnel/Designee and the Compliance Officer.

4. Political Reasons or Factors cannot be considered when selecting a Senior Assistant.

5. All individuals involved in the Senior Assistant Hiring Process as well as the individual(s) selected for the Senior Assistant position(s) must sign a No Political Consideration Certification.

6. The Office of Personnel will process the selected Candidate pursuant to Section VIII.O, Final Screening.

C. Removal Process. A Senior Assistant hired or transferred pursuant to the process described in Section IX.B above may be terminated at the discretion of the Department Head/Designee or an individual holding an Exempt Position.

X. Promotions

A. Merit Rank Promotions – See SEAM, Article B

11/23/2010

    B.    Non-Merit Rank Promotions – See SEAM, Article Q

XI.    Transfers

    A.    Employer Rights Transfer – See SEAM, Article F

    B.    Hardship Transfer – See SEAM, Article G

    C.    Non-Bid Transfer – See SEAM, Article H

    D.    Operational Transfer – See SEAM, Article I

    E.    Seniority Plus Bid Transfer – See SEAM, Article J

    F.    Straight Seniority Bid Transfer – See SEAM, Article K

XII.    Details

    A.    Detail – See SEAM, Article C

    B.    Specialized Detail – See SEAM, Article D

XIII.    Personnel Rules – See SEAM, Article U

XIV.    Definitions – See Glossary

XIII.    Desk Audits for Job Description Creation and Revision and Reclassification

Personnel will conduct desk audits of Sheriff's jobs for the purpose of determining whether a position should be reclassified and as required by Article V, Section B. 3 and Article VIII, Section E.3. in accordance with the following procedures:

    A.    <u>Department Head Request and Authorization</u>. If a Department Head/Designee requests a Reclassification, creation of a new Job Description or revision of an existing Job Description such request must be submitted in writing to the Director of Personnel by the Department Head. The request must include: (1) a copy of the current Job Description (if applicable); (2) a description of the specific duties that have been added to or deleted from the position and when (if applicable); (3) an explanation of the reasons for those changes; and (4) a description of the new, revised or reclassified position, including a description of all Minimum Qualifications. The request must be accompanied by a signed No Political Consideration Certification.

130032447v1 0861523 51151

11/23/2010

B.    <u>Personnel Initial Review</u>.  The Director of Personnel/Designee will review the request and determine whether a desk audit is needed to ensure the Job Description is accurate.

C.    <u>Desk Audit Procedure</u>.  Personnel will conduct all desk audits as follows:

1.    If inaccuracies in the existing Job Description are the result of minor alterations in job responsibilities that do not involve a change in the Minimum Qualifications, the Director of Personnel/Designee, after consultation with and the concurrence of the Department Head/Designee, may make the appropriate adjustments to the Job Description.

2.    If inaccuracies in the existing Job Description are the result of a quantitative change in any Minimum Qualification contained in the existing Job Description (e.g., an increase or decrease in years of experience or educational level required), the Director of Personnel/Designee will consult with the Department Head and confirm that the basis for the change is supported by objective, business-related reasons.  If so, the Director of Personnel/Designee may make the appropriate adjustments to the Job Description, provided the Director of Personnel/Designee will document the reasons for the change and send a copy of such documentation, along with a copy of the revised Job Description, to the Compliance Officer for review.

3.    If there is no Job Description or there are inaccuracies in the existing Job Description as the result of a qualitative change in any Minimum Qualification contained in the existing Job Description, the Director of Personnel/Designee will assign a trained and experienced Personnel staff member to conduct a full desk audit including the following:

a.    A Personnel staff member will meet individually with the incumbent in the position in question, preferably at the incumbent's work location, to observe the incumbent's activities and conduct an in-depth interview to determine his or her specific job duties and assigned responsibilities.

b.    The Personnel staff member will then conduct interviews with the incumbent's immediate supervisor and the Department Head and document their views of the position's duties and responsibilities.

c.    The Personnel staff member will complete the Desk Audit Form at the conclusion of the interviews and indicate his or her determination regarding whether the position should be Reclassified.  That determination, along with any supporting documentation and interview notes, will be reviewed by the Director of Personnel/Designee, who will either approve or not

11/23/2010

approve the determination. A copy of the determination will also be sent to the Compliance Officer for review.

    d.    The Department Head will be notified of the Director of Personnel/Designee's determination. If approved, Personnel will revise the Job Description, including the Minimum Qualifications, to reflect the actual duties of the position.

    4.    For Reclassifications, if the incumbent possesses the Minimum Qualifications contained in the revised Job Description, he or she will remain in the position, and any adjustment in the incumbent's compensation will be made in accordance with SEAM, Article U, Personnel Rules. If the incumbent does not possess the Minimum Qualifications contained in the revised Job Description, the job will be posted and filled in accordance with the General Employment Process, and the incumbent will be transferred in accordance with the Personnel Rules applicable to layoff and any applicable CBA.

    D.    <u>No Political Considerations or Factors</u>. No request for Reclassification or Job Description creation, or any decision in response to such request may be based on any Political Reason or Factor, and any request or attempt to influence such request, or any Reclassification or Job Description creation, based on Political Reasons or Factors will be considered an Unlawful Political Contact or Unlawful Political Discrimination, as applicable, and must be reported pursuant to the Consent Decrees and SRO (while in effect), the General Order, and this Employment Plan and SEAM.

## XIV. Compliance Officer

In furtherance of the Sheriff's commitment to compliance, he has recruited and hired a Compliance Officer whose employment will be subject to the following terms and conditions:

    A.    <u>Primary Responsibilities</u>. The Compliance Officer's primary responsibilities will include, but not be limited to, performing the duties and responsibilities described in this Employment Plan and taking appropriate steps to eliminate, remedy and report instances of Unlawful Political Contacts and Unlawful Political Discrimination, including the development, recommendation and implementation of necessary policy and operating changes. The Compliance Officer will also be authorized to: (a) receive and investigate complaints of alleged violations of this Employment Plan, the Ordinances, and the Sheriff's Orders and directives; (b) investigate Political Contacts; (c) forward complaints and investigation results to the Director of OPR; (d) review OPR investigation reports and append as necessary; (e) conduct training; (f) monitor interviews; (g) audit Employment Plan compliance; (h) receive reports and logs of Political Contacts on employment matters from Department Heads and employees; and (i) distribute Contact Logs and Resolution Logs to appropriate individuals. The Compliance Officer will also be responsible for the update,

130032447v1 0861523 51151

maintenance and posting of the Exempt and Senior Manager Lists. In the event of the Compliance Officer's absence, a Non-exempt Designee shall perform all duties as necessary. If there is no Non-exempt Designee available, the Executive Director of OPR shall perform all duties as necessary.

B.    <u>Terms of Employment</u>. The Compliance Officer will be a Non-exempt Position, and no aspect of his or her employment will be subject to Political Reasons or Factors. The Compliance Officer will be employed pursuant to a written agreement with the Sheriff specifying that his or her employment will be for a term of no less than four (4) years. The agreement will further provide that the Compliance Officer may be terminated prior to the end of his or her minimum four-year appointment only in the event the Sheriff and OPR agree that he or she should be terminated due to "Cause," which for purposes of this Section XIV will be defined as: (a) the Compliance Officer's death; (b) the inability of the Compliance Officer to perform the essential duties of his or her employment for more than 12 weeks in the aggregate during any rolling 20 month period; (c) the Compliance Officer's willful failure or refusal to perform any of his or her material duties or obligations described in this Employment Plan, or (d) violation of any state, federal or local law, regulation or ordinance in connection with the Compliance Officer's employment, or any activity involving moral turpitude, dishonesty, or fraud, or conviction of any felony. The reason for the termination shall be publicly made available.

C.    <u>Access to Sheriff Hiring Processes and Personnel</u>. The Sheriff will provide the Compliance Officer with unrestricted access to the Sheriff's employment processes for Non-exempt Positions and all Sheriff personnel. The Compliance Officer shall monitor, investigate and report on compliance with this Employment Plan, the SRO, while effective, and other court orders, the Ordinances and General Orders at any time and in his or her sole discretion.

D.    <u>Cooperation with Compliance Officer</u>. The Sheriff's Office employees will cooperate in the Compliance Officer's investigation of any complaints related to alleged violations of this Employment Plan, the SRO, as long as it is in effect, and other court orders, the Ordinances or the General Orders, including, but not limited to, any allegation of Unlawful Political Discrimination, and Unlawful Political Contacts.

E.    <u>Reporting by Compliance Officer</u>. The Compliance Officer will prepare written semi-annual reports detailing all complaints received, monitored or investigated by him or her during the preceding six (6) month period and will submit such reports to the Sheriff and the Director of OPR. The reports will include, but not be limited to: (a) a description of all complaints, including a copy of any written complaint and a copy of the Contact Log; (b) the status of any investigation as of the report date, including a copy of any written report; (c) recommendations for correction of any unlawful conduct or non-compliance described in the report, provided that any information regarding complaints referred to OPR by the Compliance Officer pursuant to Article IV, Section J above shall be limited as described therein; and (d) a signed No Political Consideration Certification confirming the accuracy and completeness of the

11/23/2010

report. The Recommendation Section of these reports will be considered public and copies of reports will be provided to individuals upon written request either in person or via e-mail if so requested. The Contact Log maintained by the Compliance Officer will be made available for review by the public upon written request to Personnel. Prior to termination of the SRO, the above described reports shall be made quarterly and shall cover the preceding three month period.

F.  <u>OPR Support</u>.  OPR will review and investigate all reports submitted by the Compliance Officer and take any disciplinary, remedial or other action appropriate under the circumstances and in compliance with its obligations under the General Orders and Directives applicable to OPR and this Employment Plan.

G.  <u>Employee Cooperation</u>.  All Sheriff's Office employees must cooperate with the Compliance Officer at all times, and their failure to do so could give rise to disciplinary action, up to and including termination of their employment.

H.  <u>Political Activity Prohibited</u>.  The Compliance Officer shall not engage in any Prohibited Political Activity as defined in Section 2-561 of the Cook County Ethics Ordinance.

XV.  Implementation

All outside consultants and employees actively participating in any stage of the selection of an individual for any position shall receive a copy of this Employment Plan, will sign a form acknowledging that the individual has received and read this Employment Plan, and will be required to sign No Political Consideration Certifications as required in this Employment Plan. All Department Heads in the Sheriff's Office shall receive a copy of this Employment Plan and will sign a form acknowledging that he or she has received and read this Employment Plan.

XVI.  Conclusion

The Sheriff is committed to continuing its practices of being an equal opportunity employer, hiring qualified candidates and prohibiting Unlawful Political Contacts and Unlawful Political Discrimination with respect to all Employment Actions. This Employment Plan is intended to create transparent and workable employment processes and procedures that meet the business needs of the Sheriff and comply with legal requirements. It is not possible to anticipate and address every situation that may give rise to Unlawful Political Contacts or Political Discrimination, and the Sheriff is prepared to comply with the spirit as well as the letter of the law to meet those situations in the future.

130032447v1  0861523  51151