## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL L. SHAKMAN, *et. al.* | ) | |
| | ) | No. 69 C 2145 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Sidney I. Schenkier |
| DEMOCRATIC ORGANIZATION | ) | |
| OF COOK COUNTY, THE CITY OF | ) | |
| CHICAGO, RICHARD M. DALEY, | ) | |
| INDIVIDUALLY AND AS MAYOR OF | ) | |
| THE CITY OF CHICAGO, | ) | |
| REPUBLICAN STATE CENTRAL | ) | |
| COMMITTEE OF ILLINOIS, | ) | |
| REPUBLICAN COUNTY CENTRAL | ) | |
| COMMITTEE OF COOK COUNTY, | ) | |
| *et. al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs have moved for an order expanding the authority and responsibilities of the Special Master we appointed on November 18, 2014 (doc. # 4676: Pl. Motion to Expand)). This Court originally appointed the Special Master for the purpose of investigating and making recommendations with respect to the Illinois Department of Transportation's ("IDOT") compliance with a 1972 decree that enjoined then-Governor Richard B. Ogilvie, individually and as Governor of the State of Illinois as well as his successors in office, and other defendants from "conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time already a governmental employee, upon or because of any political factor or reason" (doc. # 4020: Order Appointing Special Master ("Special Master Order")).

The 1972 decree specifically vested in the Court the jurisdiction to address "the question of which governmental positions under [the Governor's] jurisdiction . . . are exempt" (1972 decree, ¶ H(1)(a)). Exempt positions are those for which an employer may take into account political considerations when deciding whom to hire, promote, or transfer to fill those positions. *See Branti v. Finkel*, 445 U.S. 507, 518 (1980), *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 78 (1990) (holding that, to correctly classify a job as exempt, the hiring authority must be able to demonstrate that party affiliation is an appropriate requirement for effective performance of the office). The genesis of the Special Master Order was the pervasive misuse by IDOT of a position labeled as exempt – that of Staff Assistant – by hiring people into that position and then having them perform non-exempt work. As a result, we empowered the Special Master, among other things, to address "whether positions in IDOT labeled as exempt were properly exempt under applicable legal principles" (Special Master Order, ¶ 3(iv)).

In their motion, plaintiffs ask that we now expand the Special Master Order to encompass not only a review of positions at IDOT which have been designated exempt, but also the positions labeled as exempt at all of the agencies, boards, commissions, or other instrumentalities of under the jurisdiction of the Office of the Governor of Illinois ("Governor"), other than an agency under the jurisdiction of the Attorney General, Secretary of State, or Comptroller, and other than the State Board of Election. The Governor filed a response to the motion (doc. # 4725), and plaintiffs filed a reply (doc. # 4747). For the following reasons, we grant plaintiff's motion.

## I.

For the past two years, the Special Master has worked diligently with IDOT to fulfill her duties under the Special Master Order by, among other things, investigating the reasons that

violations of the 1972 Decree occurred at IDOT; identifying positions improperly designated as exempt and recommending procedures for eliminating or reclassifying such positions; working to create a comprehensive list of properly exempt positions at IDOT; and making other recommendations about how to prevent similar violations from recurring in the future. The Special Master's investigation persuades us that the careful review of exempt positions she is overseeing at IDOT should take place at the other agencies under the Governor as well. The structural and procedural weaknesses that led to the ability to manipulate exempt positions at IDOT are not unique to IDOT; indeed, the Special Master's work has revealed that part of the problem at IDOT resulted from a lack of effective oversight policies at the Department of Central Management Services ("CMS"), which has authority to approve exempt job designations statewide. A review of the exempt positions at the other agencies will allow the Court to ensure the requirements of the 1972 decree (and the constitution) are met by ensuring that only positions that truly qualify for exempt status receive that label, and that robust processes are in place to ensure that remains the case.

In response, the Governor does not suggest that a review of exempt positions in other agencies is unwarranted. Rather, the Governor puts forward two reasons to deny plaintiffs' request. *First,* defendants say it is unnecessary (or, at the least, premature) for the Special Master to get involved, because these other agencies will be able to effectively conduct this review without the assistance of the Special Master. Defendants propose that the task of investigating compliance with the 1972 decree across all state agencies instead be handled by the newly created Hiring and Employment Monitoring ("HEM") unit of the Office of the Executive Inspector General ("OEIG"). Indeed, Defendants contend that HEM staff began reviewing files and monitoring hiring sequences in May 2016, and has also begun reviewing the exempt

3

determination process. *Second,* the Governor says that expanding the Special Master's role at this time will unduly burden the already overextended financial resources of the state (Governor's Response to Pl.'s Motion, at 1).

### III.

We do not doubt the Governor's desire to comply with the 1972 decree across all Illinois agencies. And we are sympathetic to the State's financial difficulties; it is not our intent to unnecessarily add to that burden. That said, financial difficulties cannot dissuade the Court from imposing the requirements it deems necessary to ensure the agencies are complying with the decree. Moreover, in our judgment, involving the Special Master in the endeavor from the outset will better promote effectiveness of the review, and will cost the State less money in the long run.

We are confident in the ability of the Special Master to provide the most effective and efficient means to oversee this review – and with good reason. Her breadth and depth of experience stem not only from her nearly two years working with IDOT under the Special Master Order, but also from the nine years before that overseeing – and successfully shepherding – the City of Chicago through a far more complex process that resulted in the *Shakman* decree being terminated as to the City. This experience makes the Special Master uniquely qualified to quickly and effectively understand, identify and facilitate the correction of any misuse of the exempt position designation.

In fact, the Special Master has been instrumental in identifying and beginning remediation of a number of problems with consent decree compliance at IDOT (*see,* doc. # 4631: 4th Special Master Report at 5). We are confident these problems would not have been uncovered without the work of the Special Master. We are equally confident that the process of identifying

4

and correcting any similar issues at the other agencies will be best completed under the guidance of the Special Master. She has developed detailed knowledge about the way that exempt and non-exempt hiring and job-classification has been undertaken in Illinois, as well as an on-the-ground understanding of what types of problems may exist with respect to compliance with the 1972 decree across the State.

We do not intend our expression of confidence in the Special Master as a criticism of the HEM unit. To the contrary, we applaud the creation of that unit, which is evidence of the Governor's desire to correct the problems that led to the Special Master Order. And, we understand from the Special Master that the unit has been assisting with her work at IDOT and has performed admirably in that role. But, we are not convinced that the newly-created HEM unit currently possesses the experience or expertise to take on the investigation and review of exempt positions – and the process for determining which positions are exempt – for the entire state of Illinois without the active involvement of the Special Master.

Allowing the HEM unit to handle that task "flying solo" would create the unacceptable risk that the unit would miss critical issues as it climbs the analytical learning curve, or make improvident decisions that could require costly unraveling later. Better to conduct the review under the direction of the Special Master now, with the Special Master determining how best to use all available resource. This will best avoid the risk of legal challenges, delay and increased expenditures in the future.

And it is not only the HEM unit that will benefit from the Special Master's experience. As defendants point out, the task of reviewing all exempt positions requires the involvement of CMS, which has already begun reviewing and re-designating positions as *Rutan*-exempt or not, across state all state agencies. The Special Master was instrumental in helping identify and

remedy some of CMS' shortcomings with respect to properly categorizing exempt positions at IDOT, and we expect that her expertise will be invaluable in helping create policies for CMS to follow going forward, as it designates positions as exempt or not across the state.

We do not intend to impose a strict deadline for completing the review of all exempt positions in the State. We recognize that this is a task that will not be completed immediately; accuracy and thoroughness are paramount. But, we are mindful of the fact that the review of the exempt positions at IDOT has been a lengthy process. That task would have undoubtedly taken longer without the guidance and "prodding" of the Special Master. The support and assistance of the Special Master is vital to ensure that review of exempt positions across the State occurs within a reasonable time frame.

By expanding the Special Master's role to all agencies, we do not say that the Special Master and her staff will do all of the work themselves. One goal of our order is to encourage the fastest and most efficient transfer of knowledge and experience from the Special Master to HEM unit employees so that they may carry more of the burden. To that end, part of our order to the Special Master is that she should – as much as practicable – utilize the HEM staff (as well as persons within the agencies) to help carry out her duties.

## IV.

We therefore expand the authority of the Special Master to:

- Review all positions under the jurisdiction of the Governor that are identified as exempt to determine whether the Governor has adequately demonstrated that the positions meet the *Branti* standards;

- Develop an approved and comprehensive list of all *Rutan* exempt positions across all agencies in the state ("Exempt List");

- Develop procedures for correcting and revising the Exempt List; and

- Analyze any *Rutan* exempt positions that are also protected under either the State Personnel Code or are subject to a collective bargaining agreement and make recommendations about whether these positions may continue to be classified as exempt and still adhere to the *Branti* criteria.

We also allow plaintiffs to reasonably monitor and comment upon the foregoing activities by the Special Master.

The Court has reviewed the Proposed Order (Corrected) that plaintiffs submitted along with their motion. In light of our opinion here, the parties should confer about any changes to be made to that document and submit a proposed order to the Court by December 19, 2016.

The Special Master should promptly meet with the HEM unit and appropriate officials within each agency to coordinate the review of both the exempt positions, and the processes for determining what positions are exempt. These meetings should enable the Special Master to gain an understanding of each agency's hiring processes, and determine what resources the HEM unit and each agency are able to devote to the review. In doing so, the Special Master should work collaboratively with the HEM unit and with each agency to begin the process of identifying those individuals who will assist in review and investigation process. These meetings should culminate in the preparation of a comprehensive report the Special Master will file approximately 90 days from the entry of the order referenced above, detailing how she expects the process to unfold, what work will be involved, what assistance she will receive from the HEM unit and the agencies, and any additional resources she may need to complete it.

We will not set a deadline for final completion of the Special Master's work with respect to all Illinois agencies. As with her work with IDOT, we will schedule regular meetings and

require the submission of periodic reports. We understand this will involve an additional outlay of some funds by the State, but we are confident that this is the most efficient and cost-effective way to uncover and remedy any violations of the 1972 decree across the state.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATE: November 28, 2016