**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL L. SHAKMAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 69 C 2145 |
| | ) | Magistrate Judge Sidney Schenkier |
| COUNTY OF COOK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**FIFTEENTH REPORT OF THE *SHAKMAN* COMPLIANCE ADMINISTRATOR**
**FOR COOK COUNTY**

Mary Robinson, *Shakman* Compliance Administrator for Cook County (the "Compliance Administrator" or the "CA"[1]), by and through her attorney, Matthew Pryor, submits this Fifteenth Report pursuant to the terms of the Supplemental Relief Order entered on November 30, 2006 (the "SRO"). The SRO requires the CA to study the existing employment practices of Cook County Government (the "County")[2], monitor the County's compliance with the provisions of the SRO, assist in formulating a new hiring plan, assist in establishing training programs on non-political hiring practices, adjudicate claims based upon violations that preceded entry of the SRO, make recommendations to the Court as to

---

[1] "CA" shall refer to the Compliance Administrator and/or her staff.

[2] For the purposes of this and future reports, "Cook County" and "the County" shall refer to the defendant, Cook County and, in particular, to those departments and functions that operate under the direct control of the President. There are three units of County government which, due to developments since entry of the SRO, operate independently of the President for hiring and other purposes relevant to the dictates of the SRO, and separate practices are being implemented for each. Those units will be designated as follows: the Office of the Cook County Public Defender (the "Public Defender"), the Office of the Independent Inspector General for Cook County ("OIIG") and the Cook County Health and Hospitals System ("CCHHS" or the "System"). Within the first year after entry of the SRO, the Juvenile Temporary Detention Center ("JTDC") began operating under the authority of a court-appointed monitor and then was recently transferred to the authority of the Chief Judge of the Circuit Court of Cook County. The CA has engaged in no oversight of JTDC since August 2007.

how to resolve issues regarding *Shakman* Exempt positions, and file reports describing the activities of the CA and the County's progress toward achieving Substantial Compliance with the requirements of the SRO.

On November 22, 2016, the CA submitted her Fourteenth Report to the Court wherein she provided updates on the County's progress in addressing the list of outstanding compliance-related matters that the CA believed the County, Public Defender, CCHHS, and OIIG needed to address prior to achieving Substantial Compliance with the SRO. The CA submits this report as a further update on progress made by those offices on those outstanding items in the past six weeks.

<u>**PROGRESS ON OUTSTANDING ITEMS SINCE FOURTEENTH REPORT**</u>

<u>*COUNTY*</u>

In the Fourteenth Report, the CA identified three issues that she believed the County needed to address pursuant to the SRO and Employment Plan (the "Plan"). Updates on the County's progress on those issues are below.

**1.      Develop job descriptions for exempt staff hired by Commissioners**

Since the Thirteenth Report, the County's Bureau of Human Resources ("BHR") updated the County's website to indicate which job title and job description apply to each current Commissioner Aide. Given this was the only remaining task for this issue, the CA considers this issue complete and will not include it in future reports.

**2.      Develop, implement and monitor procedures to ensure accurate and consistent reporting of discipline relevant to an employee's eligibility for other employment**

The Plan requires that employees who have been disciplined within a specified period of time are not eligible for consideration for other County positions. Plan § V.J.2.

The County is currently conducting the requisite disciplinary checks during the hiring process. In her Fourteenth Report, the CA noted that the Compliance Officer was looking into a potential issue with one Department's adherence to the disciplinary reporting procedures. Fourteenth Report at 3. The Compliance Officer has since completed her inquiry and did not find any material wrongdoing by the Department. The CA reviewed the findings and has no concerns with the same. The CA will continue to monitor the County's disciplinary process and will work with BHR and the Compliance Officer to resolve any issues that may arise.

3.      **Develop, implement and monitor procedures for conducting disciplinary hearings to foster predictability in process and consistency in outcomes**

In her Eleventh Report, the CA noted that the County lacked written procedures for disciplinary hearings – both third step grievances and for the Employee Appeals Board ("EAB") – and that the significant variability in hearings monitored by the CA opens the door for impermissible political considerations. Eleventh Report at 10. Since the Eleventh Report, the parties, OIIG and CA have had many exchanges concerning the development of internal standard operating procedures ("SOPs") for both third step grievance and EAB hearings as well as a more "public-facing" document that all employees would receive aimed at providing clear explanations of the third step and EAB procedures. The CA recently signed off on the SOPs and provided detailed redlines on the public-facing document. The CA anticipates receiving the County's response on the proposed changes soon and will update on any further progress made in her next report.

*PUBLIC DEFENDER*

In the Fourteenth Report, the CA discussed two outstanding issues that she believed the Public Defender needed to address pursuant to the SRO and the Plan. Updates on the Public Defender's progress on those three issues are below.

**1.    Correct missteps with implementation of intern/volunteer program and develop processes to ensure future compliance**

The Plan contains a specific process through which the Public Defender may operate an intern/volunteer program. Plan § IX.B. By agreement, the program is now being administered through ATAS so that all applications can be accurately captured and tracked. Since the CA's Fourteenth Report, the CA has monitored the Public Defender's most recent posting concerning interns/volunteers, and found no material issues. There was disagreement as of the last status appearance in this case as to whether and how assignments of interns/volunteers would be tracked. The disagreement has been resolved, so that initial assignments of interns/volunteers will be recorded in ATAS.

**2.    Ensure CO and CA are permitted to monitor disciplinary processes**

The CA noted in the Fourteenth Report that any roadblocks previously interfering with the CA's efforts to monitor PD disciplinary hearings had been addressed and that the CA had begun monitoring such hearings. No such hearings have been conducted since the Fourteenth Report; the CA will continue to attempt to monitor such hearings and will report on the same in the future.

*CCHHS*

In her Fourteenth Report, the CA identified eight issues that she believed CCHHS needed to address pursuant to the SRO and the CCHHS Employment Plan (the "CCHHS Plan"). Updates on CCHHS' progress on those issues are below.

**1.    Implement internal candidate preference option**

The CCHHS Plan permits department heads to request that current employees in the department who apply for a posted position be exempted from randomization where the experience of those current employees would be beneficial in carrying out the duties and responsibilities of the position, provided they meet the minimum qualifications of a posted position. Plan § V.B.3. Final implementation of the process required completion of a redefinition of CCHHS departments, which is now done, and CCHHS intends to circulate information to Hiring Managers identifying that the process is now available. The CA will monitor any utilization of the process and report on the same in her next report.

**2.    Implement employment verification procedures for non-credentialed positions**

Based on OIIG reports wherein selected candidates for non-credentialed CCHHS positions were found to have provided false and/or misleading information concerning their qualifications, CCHHS agreed to implement more robust employment verification procedures to ensure selected candidates are accurately representing their qualifications and experience. CCHHS' Department of Human Resources ("DHR") is in the process of finalizing a contract with external vendor and expects to have verification procedures in operation  by the end of February 2017.

### 3.     Implement process to disqualify candidates because of discipline

The CCHHS Plan requires DHR to review the personnel files of internal candidates (and recent former employees) for open positions and to disqualify any such candidates from consideration if they have been suspended in the 12-month period prior to their applications.  Plan § V.J.3.a-b.  DHR has reported that it is capable of electronically tracking all discipline.  In her Fourteenth Report, the CA reported on the EPO's recent training of relevant managers and supervisors on disciplinary recordkeeping and reporting, DHR leadership's training of its staff on the new electronic disciplinary tracking mechanisms, and DHR's memorandum to senior leaders throughout CCHHS notifying them that the new disciplinary policy requires departments to notify DHR of disciplinary actions.  DHR has reissued this memorandum and will continue doing so on a monthly basis until all departments are in compliance.  The CA has begun receiving the disciplinary notices and will continue to monitor them to ensure they comply with the CCHHS disciplinary policy. The CA will also conduct an audit to assure that reports are being forwarded to DHR.

### 4.     Implement an Ineligible for Rehire List

The CCHHS Plan requires DHR to create and maintain a list of former employees who are ineligible for employment with CCHHS based on violating one of many specified CCHHS Personnel Rules or Sections 44-54 or 44-56 of the County Code of Ordinances. CCHHS Plan § IV.P.  In her Fourteenth Report, the CA stated that DHR and the EPO were "finalizing their review of the personnel files of certain former employees before completing the Ineligible for Rehire List."  Fourteenth Report at 6.   This final review continues and the EPO anticipates it will be completed by mid-January.

6

5.      **Ensure that all Direct Appointment applications are placed on ATAS**

The CCHHS Plan requires that all Direct Appointment hires will complete an employment application on ATAS and provide licenses and certifications that demonstrate the hire meets the minimum qualifications for the position.  Plan § VIII.G.3.  CCHHS has continued to include Direct Appointment hiring applications on ATAS; however, CCHHS must still post all Direct Appointment Job Descriptions on its website (Plan § VIII.G.2).  DHR anticipates doing so later this month.

6.      **Implement a hiring process for part-time temporary physicians**

Prior to finalizing the CCHHS Plan, DHR agreed to later develop a hiring process that would cover its use of part-time temporary physicians.  CCHHS later decided to use the Advanced Clinical Position ("ACP") hiring process for such hires.  Since the Fourteenth Report, the CA has monitored eight part-time temporary physician positions on ATAS of which four resulted in final hiring selections.  No issues were identified.  The CA will continue to monitor part-time temporary physician hiring and will report on any material issues that arise.

7.      **Train relevant staff and implement recently-completed ACP hiring process**

Upon request of CCHHS, the parties and CA developed the new ACP hiring process to allow for more flexible procedures (but still monitored by the EPO and CA) for hiring doctors and other advanced clinicians.  Eleventh Report at 4.  As of the filing of this report, the EPO has trained nearly all of the relevant staff across CCHHS on this process.

Since the Fourteenth Report, the CA has continued to monitor implementation of the ACP hiring process.  The CA continues to see improvement with Hiring Managers recording the required recruiting details in the activity logs required in the ACP process.

The CA noted in her Fourteenth Report that while the ACP process had been in use for several months, it had not yet formally been incorporated into the CCHHS Plan. Since the Fourteenth Report, the CA provided DHR with her final edits to the Plan. This week, CCHHS approved all of the CA's proposed edits. The CA anticipates Plaintiffs responding soon with their input on the proposed edits and hopes that an amended CCHHS Plan will be filed with the Court shortly.

**8. Finalize, train relevant staff, and implement policies and procedures for non-hiring employment actions such as discipline, transfer, overtime and compensatory time, and others**

In June 2016, the parties and CA agreed to supplemental policies that would cover the following non-hiring employment actions: reclassification, transfer, training, overtime, discipline, interim assignment/interim pay, layoff/recall, third-party provider, desk audit, and demotion. The EPO has trained over 90% of staff tasked with implementing these policies. The CA has not monitored the implementation of any of the supplemental policies but will report on any such monitoring in her next report.

*OIIG*

The OIIG does not have any outstanding obligations under the SRO other than continued adherence to its Plan and Manual.

## OTHER UPDATES SINCE FOURTEENTH REPORT

In addition to working with the County, Public Defender, CCHHS and the OIIG on the above issues, the CA has continued to monitor discipline in the County and Public Defender, the Public Defender's volunteer program, hiring in CCHHS, and the performance of the Compliance Officer, EPO and OIIG concerning *Shakman* compliance-related duties. Below

are updates on other issues discussed in prior Reports.

*OIIG Summary Report 14-0080*

The CA previously identified concerns with the County's handling of a matter concerning a successful Post-SRO complainant that was detailed in OIIG Summary Report 14-0080. Eleventh Report at 20-21. The OIIG recommended that the County and CCHHS provide the complainant the same consideration afforded to other similarly-situated applicants by requesting and considering an explanation from the complainant for an omission on his application for hire. The matter is scheduled for arbitration later this month. The CA will provide an update in her next report.

*OIIG Summary Report 16-0173*

On August 12, 2016, the OIIG issued Summary Report 16-0173 wherein the Inspector General found that CCHHS DHR worked with a department to alter a Direct Appointment job description to fit a specific candidate without being transparent about the reasons for so doing. The OIIG concluded that DHR's actions violated the Plan and recommended that: 1) DHR stress to hiring managers that they must analyze language of job descriptions before recruitment efforts are initiated; 2) the CCHHS Plan be amended to require DHR to provide the OIIG 10 days to review direct appointment hiring packets before any such hire is finalized; and 3) CCHHS comply with the Plan by being transparent about the bases for amending direct appointment job descriptions going forward. On November 23, 2016, CCHHS responded to the OIIG's findings and recommendations. CCHHS explained that its efforts to fill the specific Direct Appointment position at issue in the IG's report had spanned five years and at three points included changes to the job description. CCHHS stated that any changes to the job description were intended "to help

increase the applicant pool and allow CCHHS to find a suitable candidate to resolve this hard to fill position". CCHHS denied attempting to change the job description to fit any specific candidate but agreed that in the future "the fact that the modified job description would benefit a candidate already being considered is information that CCHHS will share with the OIIG when the request to modify is proposed." CCHHS wrote that it "agrees with the OIIG recommendation that we must stress to hiring managers the necessity of fully analyzing the language contained in our job descriptions prior to initiating recruitment efforts for a position".

## **CONCLUSION**

The CA believes progress is being made by the various offices and will report on further progress in her next report. The CA thanks the parties for their sincere efforts and this Court for its continued guidance on this matter.

Respectfully Submitted,

Mary Robinson
Cook County *Shakman* Compliance Administrator

By: /s/ Matthew D. Pryor
Matthew D. Pryor
Her Attorney

Matthew D. Pryor
(matthew.d.pryor@gmail.com)
Counsel to the Compliance Administrator
69 West Washington, Suite 840
Chicago, IL 60602
Telephone: (312) 603-8911
Fax: (312) 603-9505