# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL L. SHAKMAN, *et. al.* | )<br>) No. 69 C 2145 |
| Plaintiffs, | )<br>) |
| v. | )<br>) Magistrate Judge Sidney I. Schenkier |
| DEMOCRATIC ORGANIZATION<br>OF COOK COUNTY, *et. al.*, | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Cook County moves for an order vacating an arbitration decision that awarded John Wicks ("Mr. Wicks" or "Complainant") $125,000.00 in damages, along with $105,035.00 in attorneys' fees, based on Mr. Wicks' claim of retaliation (doc. # 4980: Cook Cty.'s Mot. to Vacate Arbitration Award "Mot. to Vacate").[1] Cook County moves to vacate the award on the grounds that the arbitrator based his decision on gross errors of law and fact (Mot. to Vacate at 2). In his response, Mr. Wicks moves to confirm the arbitration award; additionally, he seeks leave to supplement the award of fees to include the time his attorneys have spent in opposing the motion to vacate, and requests that interest be awarded on his arbitration award (doc. # 5018: John Wicks' Resp. in Opp'n to Cook Cty.'s Mot. to Vacate Arbitration Award and to Confirm Fee Awards, "Wicks Resp." at 1). Class Plaintiffs also filed a response asking the Court to affirm the arbitration award (doc. # 5036: Pls.' Resp. to Cook Cty.'s Mot. to Vacate Arbitration Award [Dkt. 4980]).

---

[1] The Record submitted to this Court does not contain the complaints submitted to the Inspector General's Office, the motions to dismiss, the motions *in limine*, or the exhibits entered into evidence at the arbitration hearing.

For the following reasons, we deny Cook County's motion to vacate the award and confirm the arbitration award of $125,000.00 to Mr. Wicks, as well as the arbitrator's award of the attorneys' fees. We deny Complainant's request for an award for fees and costs incurred in responding to Cook County's motion to vacate. Finally, we award Mr. Wicks interest on his arbitration award.

## I.

The arbitration at issue has its basis in Mr. Wicks' claim that Cook County violated the February 2, 2007 Supplemental Relief Order for Cook County (doc. # 587: "SRO") entered in the case of *Shakman, v. Democratic Org. of Cook Cty.*, 481 F.Supp. 1315, 1358 (N.D. Ill. 1979), *vacated sub nom., Shakman v. Dunne*, 829 F.2d 1387, 1398 (7th Cir. 1987), *cert. denied*, 484 U.S. 1065 (1988) ("*Shakman Decree*"). The *Shakman Decree* bars Cook County from "conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time already a government employee, upon or because of any political reason or factor." *Shakman*, 481 F.Supp. at 1358.

Mr. Wicks' Post-SRO claims arise from his employment as a Security Specialist at the Cook County Juvenile Temporary Detention Center ("JTDC"). By way of background, it is important to briefly review the time line of a separate consent decree concerning the JTDC ("the *Doe* matter") unrelated to the *Shakman Decree*.

### A.

On August 14, 2007, after entry of the SRO, Cook County entered into an Agreed Order Appointing a Transitional Administrator (the "*Doe* Agreed Order"). That order granted the Transitional Administrator "with the authority and responsibility to bring the [JTDC] into substantial compliance" with various agreements, orders and plans in the *Doe* matter (doc. #

4980: Cook County's Mot. to Vacate Arbitration Award, Ex. B, Agreed Order Appointing a Transitional Administrator, *Doe v. Cook Cty.*, 99 C 3945 (N.D. Ill. Aug. 14, 2007)).

Pursuant to the Doe Agreed Order, Earl L. Dunlap ("Mr. Dunlap") was appointed as Transitional Administrator ("TA") of the JTDC (*Id.* at 2). The *Doe* Agreed Order made clear that Mr. Dunlap was an agent of the district court, charged with the responsibility to put a qualified management team in place at the JTDC to implement the requirements of the various agreements, orders and plans in the *Doe* matter (*Id.*). Among his many responsibilities, Mr. Dunlap was charged with overseeing, supervising and directing "all management, administrative, financial, contractual, personnel, security, housing, custodial, purchasing, maintenance, technology, health services, mental health services, food and laundry service, recreational educational, and programmatic functions relating to the operation of the JTDC consistent with the authority vested in the position of the Superintendent of the JTDC" (*Id.*). To assist him in fulfilling these responsibilities, Mr. Dunlap hired Brenda Welch ("Ms. Welch") as a Deputy Transitional Administrator ("DTA") for the JTDC in 2007 (doc. # 5018: Wicks Resp., Ex. Tr. 6/17/16 full at 192). Ms. Welch remained in that position until May, 2015 (*Id.*).

After some questions arose regarding the immunity to litigation enjoyed by the TA and his staff, on June 22, 2010, the court in the *Doe* matter deleted paragraph 7(h) of its August 14, 2007 Order, and replaced it with the following language: "Effective August 14, 2007, the TA and his staff shall have the status of officers and agents of this Court and as such shall be vested with the same immunities as vest with this Court" (*Doe v. Cook Cty.*, 99 C 3945 (N.D. Ill. June 22, 2010) doc. # 587). The *Doe* court also ordered that Cook County indemnify the TA and his staff members to the same extent that Cook County and/or the Office of the Chief Judge of the Circuit Court of Cook County is obligated to indemnify the Superintendent of the JTDC (*Id.*).

In its concluding order in the *Doe* matter, entered on May 15, 2015, the district court transferred the administrative control of the JTDC from the TA to the Office of the Chief Judge of the Circuit Court of Cook County ("OCJ"), effective May 20, 2015 (*Doe v. Cook Cty.*, 99 C 3945 (N.D. Ill. May 15, 2015) doc. # 786). Pursuant to this order, Mr. Dunlap's appointment as TA also terminated on May 20, 2015 (*Id.*).

**B.**

Mr. Wicks was hired by the JTDC on May 8, 2000 (doc. # 5018: Wicks Resp., Ex. Tr. 6/16/16 AM Hr'g at 25). In 2007, Mr. Wicks was the acting director of security at the JTDC (*Id.* at 27). The SRO provides that a person alleging unlawful political discrimination occurring prior to the entry of the SRO on February 2, 2007, could seek an award of monetary damages. Mr. Wicks filed such a claim. The Compliance Administrator charged under the SRO with considering pre-SRO claims found that Mr. Wicks' claim had merit and, in 2008, awarded him $94,000.00 (*Id.* at 31-33).

Soon thereafter, the DTA at the JTDC, Ms. Welch, called Mr. Wicks into her office and said, "Hello, Mr. Millionaire," "sarcastically" and in an "almost angry" tone (doc. # 5018: Wicks Resp., Ex. Tr. 6/16/16 AM Hr'g at 42). Ms. Welch continued, "Oh, I guess you think you're really rich now, ha?" (*Id.*). Mr. Wicks replied, "Well, Brenda, it just proves that you-all cannot do what you wanted to do. It was wrong" (*Id.*). From that point forward, despite not having any disciplinary issues during the prior eight years he was employed with the JTDC, Mr. Wicks was the subject of numerous disciplinary actions, denial of promotional opportunities and a 2011 termination that was later overturned pursuant to the union grievance process (*Id.* at 27, 39, 43-58).[2]

---

[2] Mr. Wicks has not had any disciplinary action taken against him since the time Ms. Welch left the JTDC in May 2015 (doc. # 5018: Wicks Resp., Ex. Tr. 6/17/16 full at 265).

Under the terms of the SRO, Mr. Wicks filed complaints alleging retaliation for his successful pre-SRO complaint with the Office of the Independent Inspector General ("OIIG"). In December 2013, the OIIG issued a report consolidating and denying all of Mr. Wicks' claims (Mot. to Vacate at 2). Mr. Wicks elected to pursue arbitration of his claims instead of filing a lawsuit in federal court, as was his right pursuant to the SRO. Cook County moved to dismiss the arbitration petition, arguing that Mr. Wicks presented no evidence that an adverse employment action was taken against him for political reasons or factors; in addition, Cook County argued that it cannot be held liable for any alleged *Shakman* violations during the relevant time period because, at that time, Cook County was not responsible for the operations of the JTDC, which was being operated by the TA under the auspices of the district court (Mot. to Vacate, Ex. A at 23). On March 14, 2016, the arbitrator denied the motion (*Id.*).

On June 16 and 17, 2016, Mr. Wicks, represented by counsel, participated in an arbitration hearing, during which he had the opportunity to present witnesses and evidence. At the outset of the hearing, Cook County filed a motion *in limine* contending that any evidence concerning alleged retaliatory acts not set forth in Mr. Wicks' OIIG complaints should be disregarded because Mr. Wicks had not filed additional complaints about those acts with the OIIG (Mot. to Vacate, Ex. A at 26). After reading Cook County's post-hearing brief and reviewing the relevant articles of the SRO, the arbitrator ultimately denied that motion.

C.

On January 18, 2017, the arbitrator issued his decision, finding that Mr. Wicks was subjected to unlawful retaliation and granted him an award of damages in the amount of $125,000.00 (Mot. to Vacate, Ex. A at 31). The arbitrator determined that Ms. Welch's treatment

5

of Mr. Wicks after he received his pre-SRO "award amounted to retaliation in violation of the SRO" (*Id.* at 27).

In explaining that finding, the arbitrator first found that "Ms. Welch was not a teller of the truth" (Mot. to Vacate, Ex. A at 27). He found that the inconsistent statements in the disciplinary reports about Mr. Wicks and in "Ms. Welch's testimony … to be sufficient evidence that she was not a truthful witness" (*Id.* at 28). The arbitrator credited Mr. Wicks' testimony about the "millionaire" statement over Ms. Welch's denial of it (*Id.* at 29). The arbitrator explained that his conclusion was "buttressed by the undisputed fact that the only times Mr. Wicks was disciplined were when Ms. Welch was employed at the JTDC as head of the security department where Wicks worked:" he was never disciplined before his successful pre-SRO complaint or after Ms. Welch left the JTDC sometime between January and May 2015 (*Id.*). The arbitrator also determined that, contrary to Ms. Welch's testimony that she was not involved in Mr. Wicks' disciplinary actions (other than one 29-day suspension), Ms. Welch had to give her approval in order for security department employees to be sent for a "hearing" and possible discipline (*Id.*). The arbitrator found the disciplinary "hearings," which took place with no live witnesses for cross-examination and with *ex parte* meetings between management and its witnesses, lacked due process and were fundamentally unfair (*Id.* at 31). The arbitrator found that Ms. Welch's retaliation against Mr. Wicks continued when she falsely testified at the arbitration (*Id.* at 30).

The arbitrator considered Cook County's arguments about why Mr. Wicks was not entitled to an award, but found none of them availing (Mot. to Vacate, Ex. A at 30). *First*, Cook County argued that it cannot be held liable because it was not the employer of Mr. Wicks or responsible for the operations of the JTDC (*Id.*). The arbitrator had rejected this same argument

6

in denying an earlier motion to dismiss, and he adhered to that ruling in his final decision (*Id.*). He further found it was undisputed that Cook County was required by statue to pay the salaries of those employed by the JTDC, and that it did in fact pay the employees' salaries (*Id.*, citing 55 ILCS §75/3(a)).

*Second*, Cook County argued that if management acted contrary to state law that was not a cognizable claim under the *Shakman* Decree or the SRO (Mot. to Vacate, Ex. A at 30.) The arbitrator rejected that argument reasoning that the SRO is designed to "eliminate unlawful political discrimination and ***retaliation***" (*Id.* at 30-31, citing *Lewis v. Cty. of Cook*, No. 10 C 1313, 2011 WL 839753 (N.D. Ill. Feb. 24, 2011); emphasis in original).

### D.

Finally, the arbitrator retained jurisdiction to determine the reasonable amount of attorneys' fees (Mot. to Vacate, Ex. A at 31). In the arbitration, Mr. Wicks was represented by John T. Moran, Jr. ("Mr. Moran") and Ivan Rittenberg ("Mr. Rittenberg) (doc. # 5018: Wicks' Response, Ex. B). Mr. Moran filed a three-page fee petition with the arbitrator, based on an hourly rate of $600.00, requesting $83,160.00, plus a 15 percent upward adjustment for a total of $95,700.00 (*Id.* at 6).[3] In support of his petition, Mr. Moran filed (1) seven pages of time records detailing 138.6 total hours of work; (2) a 12-page biography listing his "Professional Background" and cases he has litigated; (3) supporting declarations by Attorneys David Lee and Aaron B. Maduff; and (4) a copy of a decision in *Washington v. Office of the State Appellate Def.*, No. 12 C 8533 (N.D. Ill. Sept. 22, 2016) (doc. # 193), awarding Mr. Moran fees based on

---

[3] The page number of the arbitrator's fee petition decision refers to the document page number at the top of the exhibit, not the page number at the bottom of the exhibit. For example, page 6 refers to Page 6 of 16 Page ID #: 33640.

7

an hourly rate of $600.00 (*Id.* at 6-7).[4] Mr. Rittenberg submitted a "verbatim" copy of Mr. Moran's fee petition except that he sought fees based on time sheets from July 16, 2010 to January 30, 2017 reflecting 75.7 hours at $600.00, plus a 15% upward adjustment for a total of $45,420.00, along with certain deposition costs (doc. # 5018: Wicks' Response, Ex. B at 8). In arguing that the fees were excessive and should be reduced, Cook County contends that based on Section V(B)(6) of the SRO, fees should be calculated using the Special State's Attorney rate:

> Prevailing complainants shall be entitled to reasonable attorneys' fees and costs as set forth in the resolution for the appointment of Special State's Attorneys. Complainants may petition the Court for additional attorneys' fees in special circumstances, such as where the issues presented were complex justifying compensating the Complainant's attorneys at a higher rate.

(*Id.* at 9).

On April 18, 2017, after full briefing, the arbitrator issued a thorough and detailed award on attorneys' fees (doc. # 5018: Wicks' Response, Ex. B). The arbitrator found that Cook County's reliance on the Guidelines for the "Appointment of Special State's Attorneys" was misplaced (doc. # 5018: Wicks' Response, Ex. B at 11). He explained that because Mr. Wicks' lawyers were not acting as Special State's Attorneys, and were not entitled to the benefits of such a designation, they should also not be bound by its fee limitations. He explained that Mr. Wicks' attorneys were not appointed by any court and if they had been acting as Special State's Attorneys they would have been paid at the rate of $185.00 an hour whether they won or lost the case (*Id.* at 12). The arbitrator questioned why a qualified lawyer would take a case like this, prevail after eight years, but be paid at less than one-third of his market rate (*Id.*). If they were, he surmised, JTDC employees like Mr. Wicks would have had great difficulty finding qualified lawyers willing to represent them (*Id.*).

---

[4] The record does not contain Mr. Moran's or Mr. Rittenberg's fee petitions and supporting documents, or disclose the amount of the deposition costs.

8

Additionally, the arbitrator rejected Cook County's reliance of Section V(B)(6) for the following reasons: (1) during the eight years of litigation, the record is devoid of evidence that Cook County suggested the applicability of the Guideline limitations and had the County raised that issue, it may have "spurred" settlement; (2) Cook County refused to discuss settlement with Mr. Wicks; and (3) Cook County was "dilatory," for example, by filing two motions to dismiss, both of which were denied (doc. # 5018: Wicks' Response, Ex. B at 12). Alternatively, the arbitrator found Cook County was barred from asserting the defense under the doctrine of laches, because it failed to alert Mr. Wicks' attorneys to this fee limitation during more than the eight years of litigation (*Id.* at 12-13). In a footnote, the arbitrator raised what he saw as the inherent conflict between the fee provisions of the SRO ("prevailing Complainants shall be entitled to reasonable attorneys' fees) and the Guidelines (fee limit of $185.00 intended as a fixed, not contingent fee) (*Id.* at 13). And stated "[I]f this issue reaches the District Court, it is respectfully requested that it find that the County is barred from asserting the fee limit in a contingent fee case" (*Id.* at 13).

Turning to the merits of the fee petition, the arbitrator found that Mr. Moran's hourly rate of $600.00 was reasonable, citing to the *Washington* decision awarding him that rate and the arbitrator's observations of Mr. Moran's performance during the two-day hearing and in the written briefs (doc. # 5018: Wicks' Response, Ex. B at 13). The arbitrator deducted four hours for the time which Mr. Moran claimed, reducing the total allowable time to 134.60 hours. Based on Mr. Moran's rate of $600.00, the arbitrator awarded him $80,760.00 (*Id.*). Turning to Mr. Rittenberg, the arbitrator reduced the compensable time from the 75.7 hours Mr. Rittenberg sought to 65 hours (*Id.* at 15). The arbitrator also reduced Mr. Rittenberg's hourly rate from $600.00 to $375.00, based on his experience as an attorney since 1972 but lack of information

9

regarding how long he has practiced as a full-time attorney, for a total award for Mr. Rittenberg of $24,375.00, plus deposition costs (*Id.* at 14-16).[5]

## II.

Under the Illinois Uniform Arbitration Act, 710 ILCS 5/1 *et. seq.* ("Arbitration Act"), as incorporated in the SRO, there are limited grounds upon which we can vacate an arbitrator's decision. Specifically, a court "shall vacate an award" where:

- the award was procured by corruption, fraud or other undue means;

- there was evident partiality by an arbitrator appointed as a neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party;

- the arbitrators exceeded their powers;

- the arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provision or Section 5, as to prejudice substantially the rights of a party, or

- there was no arbitration agreement and the issue was not adversely determined in proceedings under Section 2 and the party did not participate in the arbitration hearing without raising the objection, but the fact that the relief was such that it could not or would not be granted by the circuit court is not ground for vacating or refusing to confirm the award.

710 ILCS 5/12(a)(1)-(5).

Judicial review of an arbitration award is extremely limited. *Shakman v. Democratic Org.* No. 69 C 2145, 2017 WL 962762 * 3 (N.D. Ill. March 9, 2017) (*Schenkier, J.*). Illinois courts will review arbitration awards so as to uphold their validity "wherever possible." *Salitz v. Kreiss*, 198 Ill.2d 1, 13 (Ill. 2001). "Because the parties to an arbitration did not bargain for a judicial determination, a reviewing court cannot set aside an arbitration award because of errors in

---

[5] The fee petition showed that Mr. Rittenberg worked for the Chicago Police Department from 1964 until retiring as a Captain in 1995, with a leave of absence from 1979-1983 while he served as Alderman of the 40th Ward (doc. #: 5018: Wicks' Response, Ex. B at 14). The arbitrator found the record was not clear how long he practiced as a full-time attorney (*Id*).

10

judgment or mistakes of law or fact," unless they are gross errors apparent on the face of the award. *See Int'l Ass'n of Firefighters, Local No. 37 v. City of Springfield*, 883 N.E.2d 590, 592 (Ill. Ct. App. 2008). That is, "Illinois courts will not vacate an arbitration award for 'mere errors in judgment or mistakes of law;'" rather, the errors must be significant and plainly apparent on the face of the award. *Bankers Life & Casualty Ins. Co. v. CBRE, Inc.*, 830 F.3d 729, 732 (7th Cir. 2016) *citing Carver v. Ferguson*, 389 N.E.2d 1181, 1183-84 (1979). The party seeking to vacate has a substantial burden to prove that one of the above criteria apply. *Shakman v. Democratic Org. of Cook Cty.*, No. 69 C 2145, 2014 WL 2536486 *4 (N.D. Ill. June 2, 2014) (*Schenkier, J.*).

Cook County argues that the "arbitrator committed gross errors of law apparent on the face of the award" (Mot. to Vacate at 5). Specifically, the County argues that: (1) the arbitrator committed a gross error of law in finding that Cook County was responsible for the operation of the JTDC, (2) the arbitrator committed a gross error of law in holding that the office of the Transitional Administrator engaged in political retaliation, and (3) the arbitrator grossly erred in his interpretation of the SRO (*Id.* at 5-11, 14). We disagree that any of Cook County's arguments demonstrate gross errors of law or fact sufficient to support vacating the award.

### A.

The arbitrator did not commit a gross error of law by finding Cook County to be the employer of Mr. Wicks or financially responsible for the operations of the JTDC. There can be no doubt that the operation of the JTDC, both under the auspices of Cook County or the court through the TA, is subject to *Shakman* and the SRO. Cook County entered into the SRO before entry of the *Doe* Agreed Order appointing the TA, and that order did not absolve the JTDC from complying with *Shakman*. The *Doe* court did not issue any ruling that purported to relieve the

11

JTDC of its *Shakman* obligations. To the contrary, the *Doe* court specifically confirmed that even after entry of the Doe Agreed Order, the JTDC remained bound by its *Shakman* obligations. *Coleman v. Cty. of Cook*, No. 10 C 2388, 2011 WL 2647891 * 9-10, 13 (N.D. Ill. June 22, 2011).

There also can be no doubt that the TA, Mr. Dunlap, and his agents have no immunity from *Shakman* and the SRO based on judicial immunity. The *Doe* court made clear that "the TA and his staff shall have the status of officers and agents of this Court and as such shall be vested with the same immunities as vest with this Court" (*Doe v. Cook Cty.*, 99 C 3945 (N.D. Ill. June 22, 2010) doc. # 587). However, judicial immunity only covers actions of a judge when carrying out judicial responsibilities; it does not shield a judge from liability for non-judicial activities. Thus, while the TA and his staff had immunity as agents of the court in implementing the plan to remediate the problem of the JTDC that led to the *Doe* Agreed Order, that immunity did not extend to acts, such as retaliation forbidden by the SRO, which were not part of the remediation plan. *See Coleman v. Cty. of Cook*, No. 10 C 2388, 2011 WL 2647891 *4 (N.D. Ill. June 22, 2011), *aff'd sub nom. Coleman v. Dunlap*, 695 F.3d 650, 651, 653 (7th Cir. 2012) (holding that the TA was not protected by absolute immunity where the decisions complained about were not made by anyone acting in a judicial capacity even though he was acting within the scope of his authority)).

Furthermore, there was no gross error in finding that Cook County was the "employer" of Mr. Dunlap and his staff, including Ms. Welch. Cook County was required by statute to pay the salaries of the JTDC employees and they did in fact pay all of the employees' salaries (doc. #5018: Wick's Resp., Ex. A at 30).

Finally, the arbitrator committed no error, much less gross error, in holding Cook County financially responsible for Ms. Welch's acts. In the *Doe* matter, the court ordered that "the

County shall indemnify the TA and members of his staff to the same extent that Cook County and/or the Office of the Chief Judge of the Circuit Court of Cook County is obligated to indemnify the Superintendent of the JTDC." *Doe v. Cook Cty.*, 99 C 3945 (N.D. Ill. June 22, 2010) (doc. # 587). Thus, Cook County was a necessary party as it was responsible for indemnifying the OTA. *See Brass v. Cook Cty.*, No. 09 C 6873, 2011 WL 124251 *7n.6 (N.D. Ill. Jan. 14, 2011).[6]

**B.**

The arbitrator also did not commit gross error of law in holding that the OTA engaged in retaliation. Cook County has tried to rewrite the arbitrator's decision into one that found only political retaliation, and tries to limit the scope of a claim under the SRO to allegations based on "politics in the traditional sense, the affiliation or lack of affiliation with a political party." (Mot. to Vacate, at 11). However, neither the SRO nor the arbitrator's decision is so narrow.

Section VI of the SRO, titled "No Retaliation," states that "[n]o person shall take any unlawful retaliatory action against any individual who exercises any rights provided by, or who reports violations of, the Consent Decrees or the SRO. Any person who believes retaliation has occurred may seek relief under the post-SRO process." SRO, Sec. VI at 27. "The SRO, which binds the County, is designed to eliminate unlawful political discrimination *and* retaliation as it relates to employment practices within the County." *Lewis v. Cty of Cook*, No. 10 C 1313, 2011 WL 839753 * 10 (N.D. Ill. Feb. 24, 2011) (*J. Schenkier*) (emphasis added). Cook County asks us to read the word "political" as modifying both discrimination and retaliation (doc. # 5094: Corrected Reply in Supp. of Cook Cty.'s Mot. to Vacate Arbitration Award, at 7). That reading is neither faithful to the SRO nor consistent with the *Lewis* analysis. The point of the ban on

---

[6] Cook County's argument that it lacked actual control over Ms. Welch is beside the point, since it plainly has financial responsibility for the acts that violate the SRO. Thus, we need not delve into the question of whether Cook County lacked any control over her actions.

13

retaliation is to empower people to raise claims of political discrimination without fear of retribution, in aid of the SRO's goal of eliminating unlawful political discrimination. The retaliation need not be based on politics in order to be within the scope of prohibited conduct under the SRO. Any retaliation for asserting rights under the SRO, for whatever reason, could undermine that goal by deterring people from bringing forth claims of political discrimination for investigation.

Moreover, the facts of *Lewis* fail to support Cook County's attempt to limit the SRO to prohibiting political retaliation. In *Lewis*, a Cook County employee alleged retaliation after she was granted a *Shakman* pre-SRO award. In denying the County's motion to dismiss, we held that "[g]iven the public significance of the County's compliance with the SRO, an employee's charge that the County retaliated against her for resorting to the procedures put into place by that very SRO is a matter of public concern." *Lewis v. Cty of Cook*, No. 10 C 1313, 2011 WL 839753 * 10 (N.D. Ill. Feb. 24, 2011) (*J. Schenkier*) (emphasis added). The arbitrator did not commit gross error in concluding that retaliation need not be politically based in order to violate the SRO.

C.

Finally, the arbitrator did not grossly err in interpreting the SRO to allow him to consider conduct occurring after the OIIG complaint. The County, both prior to and during the hearing, moved the arbitrator for an order *in limine* barring evidence of retaliation allegations that were not considered by the OIIG or addressed in its report. However, SRO arbitrations are governed by the National Rules for Employment Disputes of the American Arbitration Association, which allow for a party to offer new or different claims or counterclaims at the discretion of the

14

arbitrator (doc. # 5018: Wicks' Resp., Ex. C, SRO Sec. V.B.5.)[7] Here, the arbitrator was apprised of the County's position and allowed evidence of retaliation that occurred after the OIIG issued its report because he found that these acts were part of an on-going retaliation against Mr. Wicks by Ms. Welch. It was not gross error for the arbitrator to consider conduct he saw as part of a continuing pattern, instead of requiring Mr. Wicks to file seriation OIIG complaints which could then lead to seriation arbitrations. Moreover, while Cook County offers a conclusory assertion of prejudice (doc. # 4980: Mot. to Vacate at 13), it offers nothing to back up that assertion. Underdeveloped arguments are waived. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012).

Nor did the arbitrator commit a gross error of fact or law in finding that Mr. Wicks was subjected to retaliation. The arbitrator determined that Mr. Wicks was not the subject of any disciplinary complaints during either the eight years prior to Ms. Welch being appointed the DTA or the period after her appointment ended. He found the disciplinary actions began after Mr. Wicks' pre-SRO award was published, that Ms. Welch made angry and sarcastic comments to him concerning the award, and that this episode marked the beginning of a series of retaliatory disciplinary actions against Mr. Wicks. Moreover, the arbitrator found Ms. Welch's denials of the comments about the award or involvement in the alleged retaliatory discipline lacked credibility, and bluntly found that she was not a "truth teller." Cook County fails to address these findings, much less explain how they constitute gross error.

### D.

In sum, the arbitrator heard two days of live testimony, assessed the credibility of six witnesses, and considered the exhibits, evidence and arguments of both parties. We find no

---

[7] The National Rules for Employment Disputes of the American Arbitration Association have been re-named the Employment Arbitration Rules and Mediation Procedures. *See* Employment Arbitration Rules and Mediation Procedures, Rule 1, http:// www.adr.org/employment (last visited November 2, 2017).

reason to disturb the arbitrator's finding Mr. Wicks suffered retaliation in violation of the SRO. Cook County offers no challenge to the amount of the damages awarded. We thus confirm the award of $125,000.00 in favor of Mr. Wicks.

### III.

In his response, Mr. Wicks also moves the Court to confirm the award of attorneys' fees and costs in the amount of $80,760.00 to Mr. Moran and $24,375.00, plus deposition costs to Mr. Rittenberg, and to allow the attorneys to supplement their fee request to include the time and expense of responding to the County's motion to vacate.[8] Mr. Wicks filed his fee petition with the arbitrator and after a thorough review, the arbitrator awarded Mr. Moran the $600.00 hourly rate he was seeking and slightly adjusted the amount of his hours. The arbitrator awarded Mr. Rittenberg, who requested $600.00 per hour, a rate of $375.00 per hour and significantly reduced his billable hours. Cook County does not challenge the amount of hours the arbitrator awarded to Mr. Moran and Mr. Rittenberg for compensation. Nor does Cook County argue that the hourly rates awarded by the arbitrator are not the reasonable hourly rate that Messrs. Moran and Rittenberg commanded in other work they perform. Rather, Cook County argues that this Court should vacate the award of attorney fees and, if this Court finds the arbitration award should not be vacated, then remand the issue of attorneys' fees to the arbitrator with instructions to calculate the attorney fees at $185.00 per hour.

Regarding attorneys' fees, the SRO provides:

Prevailing Complainants shall be entitled to reasonable attorneys' fees and costs as set forth in the resolution for the appointment of Special State's Attorneys. Complainants may petition the Court for additional attorneys' fees in special circumstances, such as where the issues presented were complex justifying compensating the Complainant's attorneys at a higher rate.

---

[8] Neither attorney requests the upward fee adjustment of 15% that they sought before the arbitrator so we deem that request waived.

(doc. #5018: Wicks' Resp., Ex. C, SRO, Sec. V.B.6). Cook County Guidelines for Special State's Attorneys provides a partner hourly rate of $185.00 (doc. #5094: Corrected Reply in Supp. of Cook Cty.'s Mot. to Vacate Arbitration Award, Ex. 2 at 4). While the SRO provides that prevailing complainants are entitled to reasonable attorneys' fees commensurate with the Special State's Attorneys guidelines, it also allows complainants the right to petition the Court for additional attorneys' fees. Here, Mr. Wicks did petition the Court for additional attorneys' fees by asking that we affirm the fee award granted to Mr. Wicks' attorneys by the arbitrator. We affirm the fee award based on the unusual duration of this matter of eight plus years, as well as the complex and novel issues presented concerning the interpretation of the SRO and the status of Cook County as a proper party. Based on these unusual circumstances, we find no gross error in the arbitrator's thorough review of the fee petitions and detailed analysis of his reasoning and fee award.[9]

Mr. Wicks' attorneys' request for fees for preparing a response to the motion to vacate is denied. We decline to award additional fees here given the rates awarded Messrs. Moran and Rittenberg were significantly greater than the Special State's Attorney rate. We conclude that the fee award issued by the arbitrator and affirmed by this Court fairly compensates them for their efforts on behalf of Mr. Wicks.

Finally, Mr. Wicks' request for interest on the arbitrator's award is granted at the statutory rate of six percent per annum for a governmental entity and accrues from the date of the entry of the arbitrator's award. 735 ILCS 5/2-1303; *See also Bargenquast v. Nakano Foods, Inc.*, 243 F. Supp. 2d 772, 777 (N.D.Ill. 2002) (holding interest began accruing on the date the arbitration award was entered); *Ryan v. Kontrick*, 710 N.E.2d 11, 17 (Ill. App. Ct. 1999).

---

[9] We reject the proposition that an attorney's decision to take on a contingency fee case is in and of itself an exceptional circumstance and decline the arbitrator's invitation to revisit the fee structure set out in the Guidelines.

## CONCLUSION

For the foregoing reasons, we deny Cook County's Motion to Vacate Arbitration Award (doc. # 4980). We confirm the arbitration award of $125,000.00 to Mr. Wicks and the attorneys' fees awards of $80,760.00 to Mr. Moran and $24,375.00, plus deposition costs to Mr. Rittenberg. We deny the request for additional attorneys' fees incurred in briefing the motion to vacate. We award interest on the arbitration award at a rate of six percent per annum accruing from the date of the entry of the arbitrator's award on January 18, 2017. 735 ILCS 5/2-1303.

ENTER:

/s/ Sidney I. Schenkier

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATE: November 8, 2017