IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL L. SHAKMAN, *et. al.,* | ) | |
| | ) | No. 69 C 2145 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Sidney I. Schenkier |
| CLERK OF THE CIRCUIT COURT, | ) | |
| OF COOK COUNTY, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In 1972, the Clerk of the Circuit Court of Cook County (the "Clerk of Court's Office") entered into a Consent Decree (the "1972 Consent Decree") that prohibited the Clerk of Court's Office from, among other things, "conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time already a governmental employee, upon or because of any political reason or factor." Thereafter, in 1983, the Court entered judgment (the "1983 Judgment Order") prohibiting the Clerk of Court's Office from "conditioning, basing, or affecting of the hiring of Governmental Employees (other than for Exempt Positions) upon or because of any political reason or factor . . . ." *Shakman v. Democratic Org. of Cook County,* 569 F.Supp. 177, 179 (N.D. Ill. 1983). Together, the 1972 Consent Decree and the 1983 Judgment Order bar the Clerk of Court's Office from using political considerations in any employment decision that does not involve exempt positions.

In August 2018, the Court entered a supplemental relief order ("SRO") for the Clerk of Court's Office (doc. # 5945). The purpose of the SRO is to ensure that the Clerk of Court's Office is in substantial compliance with the requirement that it forego the impermissible use of political considerations. If the Court finds that the Clerk of Court's Office has satisfied the requirements

set for in the SRO for substantial compliance, the Court will terminate the SRO as well as the 1972 Consent Decree and the 1983 Judgment Order as they apply to the Clerk of Court's Office (SRO at ¶ III.F.1, 8).

To implement the SRO, the Court appointed a Special Master, referred to as the Clerk of Court's Compliance Administrator (the "CCCA"). The Court vested the CCCA with a broad range of powers and responsibilities, including auditing prior employment decisions, investigating to uncover evidence of any unlawful political discrimination and recommending measures to address any that may have occurred. To assist the CCCA in performing these functions the Clerk of Court's Office is required to cooperate with the CCCA by, among other things, "providing reasonable access to all relevant non-privileged documents and to current employees at all levels" (SRO at ¶ I.E). The CCCA also plays an important role in the substantial compliance determination, as she is required to advise the Court as to whether "the Clerk of Court's Office is or is not in Substantial Compliance with the [1972 Consent Decree and the 1983 Judgment Order] and the SRO" (SRO at ¶ III.F.3). In order for the CCCA to effectively discharge those Court-mandated functions, the SRO requires that the CCCA "actively monitor the Clerk of Court's Office's compliance with the [1972 Consent Decree, the 1983 Judgment Order], the SRO, and the New Employment Plan . . ." (SRO at ¶ III.D).

That monitoring process is the subject of the dispute now before the Court. Approximately 1,100 of the 1,400 employees of the Clerk of Court's Office are subject to the collective bargaining agreement ("CBA") with Teamsters Local 700 (the "Union"). The CCCA has sought to attend (that is, to monitor) grievance meetings for the Clerk of Court's Office employees who are members of the Union. The Union has objected to the presence of the CCCA or her staff at those grievance meetings; in an April 14, 2019 letter, the Union "demand[ed] that the Clerk cease and

desist any and all information sharing and authorizing third party attendance in Union matters until such time as the Union's objections may be heard and a resolution is rendered." That led to plaintiffs filing the motion for declaratory relief that is now before the Court (doc. # 6385: Pls.' Motion). In their motion, plaintiffs seek an order "declaring that the [CCCA] has the authority to monitor all employment actions involving employees covered by the CBA, including authority to attend and monitor grievance proceedings, to ensure that the . . . employment decisions are not affected by unlawful political reasons or factors" (Pls.' Motion at 9). The motion is fully briefed (*see* doc. # 6418, Union Resp.; doc. # 6425, Pls.' Reply). For the reasons that follow, we grant plaintiffs' motion.[1]

I.

At the threshold, it is plain that the provisions of the SRO that we have cited above authorize the CCCA to attend and to monitor grievance meetings. The Union does not contend otherwise and could not reasonably do so. Rather, the Union's opposition is premised on the notion that the Court lacked authority to enter an order authorizing its CCCA to monitor grievance meetings and that, in any event, there is no need for such monitoring. The Union's opposition to the CCCA carrying out those functions misconceives the court orders that apply to the Clerk of Court's Office and the intersection of those orders with the CBA.

II.

Throughout its memorandum, the Union treats the SRO and related orders as focused solely on hiring (*see, e.g.,* Union Resp. at 10) (asserting that "the origin of this litigation is tied only to matters involving hiring and by its own admission does not extend any further than to attempt to

---

[1] The CCCA has not filed a brief in connection with the motion. However, in her May 9, 2019 report, the CCCA noted the Union's resistance to her attendance at the grievance meetings and stated her opposition to that position (doc. # 6319: CCCA Report at 8).

3

eliminate political considerations in hiring"). From this premise, the Union appears to suggest that the SRO does not authorize the CCCA to attend grievance meetings because they pertain only to existing employees.

This argument disregards the 1972 Consent Decree, which specifically bars the impermissible use of political considerations in connection with decisions involving existing employees of the Clerk of Court's Office. Building on both the 1972 Consent Decree and the 1983 Judgment Order, the class that falls within the scope of the SRO includes both "applicants for employment with the Clerk of Court's Office and ... employees of the Clerk of Court's Office" (SRO at 2). For this reason, the SRO requires the Clerk of Court's Office to develop an employment plan that covers not just hiring, but also "promotion, transfer, assignment of overtime, discipline and discharge;" requires the CCCA to monitor the Clerk of Court's Office performance under that plan; and requires the Clerk of Court's Office to show the effective implementation of that plan in order to demonstrate substantial compliance (SRO ¶¶ II.C, III.C and III.F.8(1)).

To the extent that the Union suggests that the 1972 Consent Decree provides an inadequate source of authority for the SRO provisions governing existing employees, the Union is mistaken. "Once entered, a consent decree may be enforced." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 440 (2004). In sum, there is ample authority for the SRO provisions prohibiting the use of impermissible political considerations in decisions involving existing employees, and empowering the CCCA – the Court's "eyes and ears," *Shakman v. Democratic Org. of Cook Cty.*, 69 C 2145, 2017 WL 4639700, at *3 (N.D. Ill. Oct 16, 2017) – to monitor those employment actions to determine whether that prohibition is being honored.

4

## III.

The Union argues that allowing the presence of the CCCA would violate the CBA, because only parties to that agreement may be present at a grievance meeting. In a related vein, the Union argues that the presence of the CCCA would violate the Illinois Public Labor Relations Act ("IPLRA"), 5 ILCS 315. We disagree. The Union has pointed to nothing in the CBA or the IPLRA that bars non-parties from attending a grievance meeting.

Nor is the CCCA's monitoring of grievance meetings a term or condition of employment over which the Clerk of Court's Office was required to bargain about with the Union prior to entry of the SRO. The presence of the CCCA at the grievance meetings does not touch upon matters of wages, hours or terms and conditions of employment. Contrary to the Union's suggestion, the CCCA is not affiliated with the plaintiffs or with the Clerk of Court's Office. The CCCA's presence is authorized under the SRO not because the CCCA will assist any party, but rather because she will assist the Court in assessing the Clerk of Court's Office compliance with the SRO and progress toward substantial compliance. As a result, the role of the CCCA is to observe the process to determine whether impermissible considerations have seeped into the process and not to weigh in on the merits of any disciplinary matter at issue in the grievance meeting.

The information that the CCCA obtains during the monitoring process certainly may inform comments she makes concerning the Clerk of Court's Office progress toward substantial compliance, as well as recommendations about changes in its employment practices that the Clerk of Court's Office may need to implement to reach that destination. But that use of information is no different than the CCCA's use of information obtained by other means (such as, review of documents concerning hiring or promotion sequences), and we do not understand the Union to say that the Clerk of Court's Office must bargain with it over such actions by the CCCA. And if the

5

Union made such an argument, we would reject it. Not every action that alters the workplace in any way invariably affects wages, hours or terms and conditions of employment. *E.g., City of Belvidere v. Illinois State Labor Relations Bd.,* 181 Ill.2d 191, 209-211 (1998) (a decision to contract out paramedic services to a private ambulance company was not a matter of wages, hours or terms and conditions of employment over which the employer was required to bargain).

Since the presence of the CCCA at grievance meetings does not touch upon wages, hours or terms and conditions of employment, it is not the subject mandatory bargaining under the IPLRA. *Cent. City Educ. Ass'n, IEA/NEA v. Illinois Educ. Labor Relations Bd.,* 149 Ill.2d 496, 522-23 (1992).

### III.

The Union urges that in interpreting the SRO, we consider the interest of employees who are subject to the CBA. The Union argues that the SRO "does not warrant supplanting the will of the employees it alleges to protect and the expressed public policy of the State of Illinois" (Union Mem. at 10).

As we have already explained, we find no CBA provision that shows it was the "will of the employees" to exclude from grievance meetings an agent of the Court whose presence is intended to promote the Court's enforcement of its order barring the impermissible use of political considerations in employment decisions. As we have explained above, there is no state public policy that requires exclusion of a court-appointed monitor pursuant to a consent decree and a judgment order.

Nor is the presence of the CCCA at the grievance meetings a burden on that process. Since 2006, this Court has been involved in overseeing supplemental relief orders pertaining to six other governmental entities. In each case, court-appointed administrators have monitored an array of employment actions – including grievance meetings – and have not disrupted the process. On the

other side of the ledger, the Union suggests that there is no need for monitoring because there is no evidence of any current use of impermissible considerations by the Clerk of Court's Office (Union Resp. at 9). Plaintiffs assert otherwise (Pls.' Reply at 13-14). We have no need to weigh in on that disagreement, because our decision does not turn on it. The Court is not required to refrain from monitoring the Clerk of Court's Office unless a violation of the SRO first is uncovered. As has been true in the other *Shakman* cases with supplemental relief orders, the monitoring process will be instrumental to the Court's ability to see that its orders are being followed and to gauge the progress of the Clerk of Court's Officer toward substantial compliance.

We also note that there note that is no inherent tension between the CBA and the SRO. The Clerk of Court's Office employees who are subject to the collective bargaining agreement also are members of the class of employees under the protection of the SRO. Similar to the SRO, the CBA bars any discrimination based on "political affiliation and/or beliefs" (Union Resp. Ex. 45(CBA) at Art. II, § 1). As the plaintiffs have explained (Pls.' Reply at 5), the parties and the Court have respected the important role of unions and the applicable CBAs in supplemental relief orders governing other governmental entities. The same will be true here. As we have explained, the attendance of the CCCA at grievance meetings is not a change that implicates the CBA. That said, we agree with plaintiffs that if the CCCA "makes any recommendations that could impact any matter covered by the CBA, the [Clerk of Court's Office] must bargain with the Union before implementing any such changes" (Pls.' Reply at 7).

However, the Union must understand the CBA does not trump the first amendment rights of its members and does not insulate the Union from the effective enforcement of court orders designed to protect those rights. "Federal courts are not reduced to approving consent decrees and hoping for compliance." *Frew ex rel. Frew*, 540 U.S. at 440. A court's authority to enforce its

orders includes the power to ensure that non-parties do not interfere with that enforcement. *United States v. Bd. of Educ. of City of Chicago,* 11 F.3d 668, 673 (7th Cir. 1993). Thus, the SRO does not supplant CBA procedures, so long as those procedures do not permit or involve the impermissible use of political considerations. The monitoring process is central to the Court's ability to verify through the CCCA that those considerations are not affecting the grievance meetings, but if they are, to receive from the CCCA recommendations for effective remedies.[2]

## CONCLUSION

For the foregoing reasons, we grant the plaintiffs' motion for declaratory relief (doc. # 6385). We hereby declare that the CCCA has the authority to monitor all employment actions involving employees covered by the CBA, including the authority to attend and monitor grievance proceedings, to ensure that the Clerk of Court's Office's employment decisions are not affected by unlawful political reasons or factors.

**ENTER:**

SIDNEY I. SCHENKIER
United States Magistrate Judge

**DATE: August 15, 2019**

---

[2] The Union also complains that while the SRO gives the parties the right to engage in *ex parte* communications "with little restraint," the Union and its members have no similar right (Union Mem. at 10-11). The Union speculates that the CCCA "may" use this authority to have communications with the Clerk of Court's Office that affect decisions on grievances (*Id.* at 13) or otherwise might breach confidentiality without the Union having recourse (*Id.* at 14). Again, the focus of the monitoring process is to assess whether impermissible political considerations are at play and not to offer assessments of the merits of any grievance. The Court can assure the Union that since the first supplemental relief order in 2006, court-appointed administrators have exercised their authority with integrity and discretion and have scrupulously honored their confidentiality obligations. We have no doubt that our experienced and extremely capable CCCA, who also is serving as compliance administrator on the supplemental relief order covering the Assessor's Office, will do no less here.

8