**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL L. SHAKMAN** and **PAUL M. LURIE,** *et al.*, Plaintiffs, | ) ) ) ) | Case No. 69 C 2145 |
| v. | ) ) ) | |
| **DEMOCRATIC ORGANIZATION OF COOK COUNTY,** *et al.*, Defendants. | ) ) ) ) | Sidney I. Schenkier United States Magistrate Judge |

**FIFTH REPORT REGARDING STATEWIDE COMPLIANCE
WITH THE *SHAKMAN* DECREE**

Beginning in early 2017, the Special Master's office, the Governor's Office, Central Management Services, the Plaintiffs and the Office of the Executive Inspector General have worked collaboratively to accomplish significant progress towards ensuring the State of Illinois' future compliance with the *Shakman* Decree. Beginning during Governor Rauner's Administration and continuing with Governor Pritzker's Administration, the parties have accomplished the following with respect to *Shakman*-exempt positions:

1) Reducing the number of positions where political factors may be considered in hiring from approximately 3500 positions to approximately 1100 positions.

2) Eliminating all job protection for any *Shakman*-exempt positions.

3) Agreeing upon minimum qualifications for all *Shakman*-exempt positions.

4) Implementing a hiring process for *Shakman*-exempt positions that requires certification from the hiring agency that the candidate is qualified and will be performing exempt work, with oversight by the Office of Inspector General's Hiring and Employment Monitoring Division ("HEM").

Although some refinement will be required in the future, the work accomplished during this time period is notable. The Special Master's Fourth Report Regarding Statewide Identification of *Rutan*-Exempt Titles ("Fourth Report") (Dkt. 6306), filed on April 24, 2019, and previous reports to the Court, described these items in greater detail.

Similarly, the State has reported implementing the following with respect to *Shakman*-covered positions:

1) Issuing screening guidance to agencies to clarify how and when to use screening to limit the number of interview candidates (July 2018).
2) Discontinuing the practice of limiting job postings to current agency employees only (April 2018).
3) Issuing guidance requiring a minimum number of candidates to be interviewed for non-exempt positions (March 2019).
4) Creating and implementing a conflict of interest disclosure form (June 2019).
5) Conducting additional reviews for non-exempt positions where the selected candidate is a formerly exempt employee.
6) Providing updated interview training for close to 900 individuals that conduct interviews for covered positions.

The Special Master's office looks forward to receiving additional reports verifying agency compliance with the above listed policies. Based on those reports, we may perform additional reviews to ensure ongoing and future compliance.

## OVERVIEW

The Fourth Report described ongoing work and the January 2019 filing of three key documents: (1) the agreed upon statewide Exempt List; (2) the Exempt Employment Plan for Agencies Under the Jurisdiction of the Governor; and (3) the General Principles and Commitments Applicable to Hiring. This Report will focus on 1) effectiveness and efforts to improve the Exempt Hiring Process; and 2) the status and components of the State's Comprehensive Employment Plan for non-exempt hiring.

### I. IMPLEMENTATION OF THE EXEMPT EMPLOYMENT PLAN

The State of Illinois Employment Plan for Exempt Positions ("Exempt Employment Plan") was entered and approved by the Court on January 7, 2019, pursuant to an Agreed Order. (Dkt. 6154). The Fourth Report described the early stages of implementing the guidelines and principles contained in each of those documents.

### A. Exempt Hiring Process

As described in the Fourth Report, the Exempt Employment Plan includes a process by which the Governor's Office can initiate the appointment of qualified individuals into positions on the agreed Exempt List at agencies under the jurisdiction of the Governor. *See* Fourth Report at 5-6; Exempt Employment Plan, Para. D-G. The exempt hiring process requires the State to ensure that individuals appointed into titles on the Exempt List are at least minimally qualified for the jobs according to the written position descriptions.[1] First, the Governor's Office is limited to forwarding resumes of candidates that are qualified for exempt positions. When the Governor's Office identifies a position it wishes to fill and a selected candidate for that role, it informs the agency where the exempt position exists of its intent to fill the position. Second, the agency is responsible for submitting an Exempt Position Certification form, certifying that the selected candidate meets the minimum qualifications of the job before the person is hired. The Governor's Office then approves or denies the hire. Third, the Special Master and HEM still have an opportunity to ask questions or request additional information before the appointment is finalized.

### B. Number of Appointments and General Issues Identified

Since January 2019, Governor Pritzker's Administration has appointed approximately 350 individuals into positions on the Exempt List. The September 1, 2019 Exempt List posted on the State of Illinois website reflects 271 vacant positions out of 1100.[2] In most cases, agencies have successfully complied with the exempt hiring process by submitting the required paperwork to confirm the qualifications of the selected candidates in a timely manner.

In a limited number of instances, HEM and the Special Master's office have noted concerns about certain *Shakman*-exempt appointments, including incomplete paperwork, temporary assignments into exempt positions, additional identical appointments for exempt positions, untimely submissions, and meeting minimum qualifications. In those instances, HEM or the

---

[1] Position descriptions for titles under the Illinois Personnel Code are documented on CMS 104 forms. Each CMS 104 contains a field called Box 19 that describes the knowledge, skill, and abilities necessary to perform the essential functions of the position ("minimum qualifications").

[2] Pursuant to the Exempt Hiring Plan, CMS is required to post monthly updates to the Exempt List on the State of Illinois website. The online Exempt List identifies incumbents in the positions, including permanent incumbents and individuals who are filling the jobs in a temporary or "acting" capacity.

Special Master's office has requested additional information prior to the appointment and have generally received satisfactory responses allowing the appointment to proceed. In two instances, however, HEM or the Special Master have raised concerns that led to the Governor's Office's withdrawal of the appointment or the appointee declining the position. Additionally, three exempt appointments raised more substantive concerns and are discussed in more detail below.

### C. Rehire of Individuals Involved in Staff Assistants Hiring

On April 8, 2019, the Department of Human Services submitted exempt appointment paperwork to hire a candidate into a senior level position. The selected candidate was a previous State employee. During the Special Master's investigation into the Governor's Office's involvement in Staff Assistant hiring, this individual was identified as one of several Governor's Office officials who knew or should have known about hiring manipulation related to the Staff Assistant position at IDOT and whose explanations during the investigation were not credible. *See generally* Fifth (IDOT-specific) Report of the Special Master, Dkt. 5012. After raising a concern about this appointment, the Governor's Office met with the Special Master, the Executive Inspector General (EIG), HEM, and the Plaintiffs and provided assurances that the selected candidate would not be directly involved in hiring and proposed additional safeguards to address the concerns raised. Notably, the candidate has steadfastly denied any intentional wrongdoing during the individual's previous State service and is clearly qualified for the DHS position at issue.

Relatedly, in September 2019, the Department of Public Health appointed an individual who previously worked for a State Senator and who had forwarded numerous resumes on behalf of the Senator to IDOT during the time period when the Staff Assistant position was used to circumvent the *Rutan* hiring process. The individual's involvement was noted in the Fifth Report of the Special Master regarding IDOT and the attached chronology. (Dkt. 4988). Although the position at issue is unlikely to have hiring responsibilities, the Special Master's office intends to propose safeguards similar to those discussed above to alleviate future concerns regarding this employee. While Exempt List positions are ones for which political affiliation is an appropriate consideration, the Special Master is concerned that rehiring individuals who were involved in past violations of the 1972 Decree could result in future violations.

4

### D. Exempt Minimum Qualifications

Requiring individuals to be minimally qualified for exempt positions is a key component of the Exempt Employment Plan. In one instance, the Special Master's office and HEM identified a candidate who did not appear to meet the minimum qualifications. The State submitted two new positions pursuant to the request to change provisions in the Exempt Employment Plan on June 25, 2019. The position descriptions listed high level responsibilities with significant financial implications for the State. The EIG approved the positions for addition to the Exempt List on July 5, 2019, based on the stated exempt duties and required qualifications in the written position description and answers to follow up questions. The positions were submitted to CSC for 4d(3) determination and CSC granted 4d(3) status at its August 2019 meeting.

On July 31, 2019, the agency initially submitted exempt appointment paperwork to the Governor's Office to provisionally appoint a candidate into one of the two positions; the paperwork was forwarded to HEM and the Special Master on August 1.[3] After review, HEM and the Special Master questioned whether the candidate met the minimum qualifications stated in the position description. The candidate's application and resume did not demonstrate the minimum number of years of progressively responsible administrative experience stated in the position description. Specifically, it did not reflect four years of progressively responsible administrative experience in outreach. The candidate's prior work experience included two and half years as an attorney in Speaker Michael Madigan's office. The candidate's overall work experience was several months less than four years in total. She did possess a law degree, which was not a requirement for the position.

In response to the questions raised, the Governor's Office and CMS explained that, in their view, the candidate met the minimum qualifications based on a CMS Examining & Counseling equivalency rule, whereby the candidate's law school education could be used to compensate for the missing work experience. This equivalency was not noted in the position description or any of the paperwork submitted to HEM or the Special Master in its prior review of the proposed positions. The Governor's Office provided the resumes of other potential candidates for this

---

[3] Although HEM and the Special Master raised concerns with this appointment prior to August 8 (the planned start date), the employee had actually started working on August 1, the date the paperwork was submitted to HEM and the Special Master.

position and a number of them clearly met the minimum qualifications, without application of the equivalency standard. The Governor's Office explained that the selected candidate was described to have other unique and necessary qualities, such as credibility with some of the individuals the employee would engage with, which addressed the "ability to develop and maintain cooperative working relationships" qualification noted on the position description. They also stated Speaker Madigan did not refer the candidate or play any role in selection. The Special Master appreciates the Governor's Office's and CMS's position and willingness to discuss the matter. There is a concern, however, when candidates are deemed to meet the minimum qualifications through undisclosed equivalency standards for senior level positions with significant authority. That concern is heightened when the candidate previously worked in the office of a politician who has previously been linked to patronage violations.[4]

## II. CHANGES TO THE STATEWIDE EXEMPT LIST

As stated in the Fourth Report, the Exempt List was initially filed on January 22, 2019. (Dkt. 6177). Since that time, the list has been formally amended and approved by the Court twice. (Dkt. 6294, 6376). The Exempt List filed on June 18, 2019, is the most recent Court approved amendment to the list.[5] (Dkt. 6376). There are a small number of positions that remain under consideration for addition to the Exempt List.

In total, 33 positions have been added since January 2019 pursuant to the request to change process. Due to a reorganization, the Department of Children and Family Services added 11 new exempt positions which were reviewed and approved by the EIG and the Plaintiffs. Similarly, due to an expansion of duties, the Illinois Gaming Board added four additional exempt positions. The Special Master and HEM have encouraged the Governor's Office and agencies to also assess whether certain positions should be removed from the Exempt List because of new positions that subsume the duties of existing jobs or when a reorganization makes a position no longer necessary.

---

[4] The position at issue will likely have responsibilities related to hiring individuals on a temporary basis to perform non-exempt work or awarding grants to organizations that will hire temporary workers. The Special Master would like to discuss safeguards to ensure any individuals hired to perform non-exempt duties are hired without consideration of political factors.

[5] The June 2019 list reflects all properly exempt positions at IDOT. (*See* Tenth (IDOT-specific) Report, Dkt. 6458). As described in Section I, CMS also provides monthly updates to the Exempt List on its website.

Since January 2019, the Governor's Office has withdrawn two requests to add positions to the Exempt List and submitted one request to delete an existing Exempt List position, which the EIG approved. Additionally, the State reports that numerous positions have been considered and rejected for addition to the Exempt List after an internal vetting process.

### III. CIVIL SERVICE COMMISSION DECISIONS REGARDING 4d(3) STATUS

Under the Personnel Code, the Civil Service Commission ("CSC") is responsible for determining 4d(3) status.[6] (20 ILCS 415/4d(3)). The Exempt Employment Plan filed with the Court describes the CSC's role regarding the Exempt List. The CSC is an integral part of the *Shakman* Exempt List because if the CSC determines a position does not meet the 4d(3) standard, then the position cannot be included on the Exempt List. Conversely, if the CSC determines a position does meet the 4d(3) standard, it may be included (absent an objection from the parties). Disagreement between CSC and the parties about the status of a position can lead to the anomaly described below regarding the Department of Natural Resources.

Since January 2019, 124 positions have been submitted to the CSC for determination of 4d(3) status or rescission related to the Exempt List.[7] As of the August 2019 CSC meeting, in all but the following five instances, CSC's decisions were consistent with the recommendations made through the *Shakman* Exempt position review process:

| Agency | Working Title | Position Number | Shakman Recommendations | CSC Decision |
|---|---|---|---|---|
| Property Tax Appeal Board | Chief Administrative Law Judge | 40070-50-48-600-00-51 | Proposed 4d(3); on the Exempt List | 4d(3) request denied |

---

[6] The Personnel Rules delineate seven factors to consider when determining whether a position qualifies for 4d(3) status. ILL. ADMIN. CODE. tit. 80, §1.142. These factors are: 1) The amount and scope of principal policy making authority; 2) The amount and scope of principal policy administering authority; 3) The amount of independent authority to represent the agency, board or commission to individuals, legislators, organizations or other agencies relative to programmatic responsibilities; 4) The capability to bind the agency, board or commission to a course of action; 5) The nature of the program for which the position has principal policy responsibility; 6) The placement of the position on the organizational chart of the agency, board or commission; and 7) The mission, size and geographical scope of the organizational entity or program within the agency, board or commission to which the position is allocated or detailed.

[7] This number does not include proposed 4d(3) positions at IDOT, positions that were unresolved when the January Exempt List was filed, or proposed additions under the Exempt Employment Plan's request to change provisions.

| Department of Veterans' Affairs | Deputy General Counsel | 40070-34-00-210-00-01 | Proposed 4d(3); on the Exempt List | 4d(3) request denied |
|---|---|---|---|---|
| Department of Healthcare and Family Services | Administrator of Personnel and Administrative Services | 40070-33-10-000-00-61 | Proposed 4d(3); on the Exempt List | 4d(3) request denied |
| Illinois Emergency Management Agency | Field Operations | 37015-50-17-500-50-01 | Proposed 4d(3); on the Exempt List | 4d(3) request denied |
| Department of Natural Resources | Executive Director World Shooting Complex | 40070-12-04-000-00-01 | Proposed rescission of 4d(3); excluded from Exempt List | Rescission request denied |

For the position at the Department of Natural Resources ("DNR"), the CSC focused on different information in making its 4d(3) decision than that relied on during the *Shakman* review process. Rather than consider information adduced during the *Shakman* review process as to actual duties performed, the CSC relied heavily on the written position description and considered factors outside the scope of the administrative rules, such as keeping the position at-will so that a poor performing Executive Director could be terminated and whether the current incumbent thought the position should be exempt. The CMS Deputy Director(s) pointed out to CSC that the position description was inaccurate as to actual duties performed. Nevertheless, the CSC voted unanimously to deny the rescission request, i.e., for the position to remain 4d(3) exempt.[8]

Although the number of instances in which the CSC came to a different conclusion is limited, going forward it is important to establish a cooperative partnership in order to maintain an appropriate Exempt List that includes positions that meet the *Branti* standard and excludes those that do not.[9]

---

[8] Historically, CSC has relied on position descriptions in making 4d(3) determinations, and that was identified as problematic by the Office of the Auditor General in the past. *See e.g.,* State of Illinois Office of the Auditor General: *General Management Audit: Exemptions Granted by the Civil Service Commission* (2010), available at: http://www.auditor.illinois.gov/Audit-Reports/Performance-Special-Multi/Performance-Audits/2010_Releases/10-Civil-Svc-Com-Exem-Mgmt-full.pdf.

[9] Currently, the statutory language for 4d(3) designation does not align with the *Branti* standard for *Shakman* exemption. The parties have been discussing a statutory amendment to align the standards. On September 12, 2019, the Governor's Office tendered an initial proposed draft which the parties are considering. On October 3, 2019, the OEIG circulated proposed amendments to the Personnel Rules for the parties' consideration as well.

8

CSC recently appointed a new Executive Director.[10] The Special Master is hopeful that increased communication between the *Shakman* parties and the CSC will ensure that decision makers rely upon all available information about proposed 4d(3) positions or proposed rescissions, including the actual duties being performed.

### IV. ILLINOIS GAMING BOARD AND ILLINOIS STATE POLICE INTERGOVERNMENTAL AGREEMENT

The Illinois Gaming Board ("IGB") and the Illinois State Police ("ISP") are both agencies under the Governor's jurisdiction for purposes of the *Shakman* litigation. However, ISP positions are exempt from jurisdictions A, B, and C of the Personnel Code, "so long as they are subject to the merit provisions of the State Police Act." 230 ILCS 4c(10). Under the Riverboat Gambling Act, IGB may contract with ISP "for the use of trained and qualified State police officers […] to conduct investigations, searches, seizures, arrests, and other duties imposed under this Act…." 230 ILCS 10/5c(20.7).

IGB and ISP have an intergovernmental agreement that allows a certain number of ISP employees to be assigned to IGB to perform *Rutan*-covered and Personnel Code covered positions at IGB. At the discretion of the agency heads, positions may be posted through the Illinois State Police Merit Board[11] and filled by ISP employees pursuant to contractual rights and/or rank seniority. The postings do not appear on Work.Illinois.Gov as required for *Shakman*-covered positions by the Administrative Order No. 2 (2009), governing CMS guidance, and the General Principles.[12] Filling the positions with ISP employees through the Merit Board prohibits current

---

[10] The Executive Director of CSC position was formerly a Personnel Code covered position with full job protection. CMS proposed the position for 4d(3) status at the June 2019 CSC meeting, and the request was granted. While CSC is not an agency under the jurisdiction of the Governor for *Shakman* purposes, the Special Master and HEM supported CMS's request to exclude this position from the Personnel Code under 4d(3).

[11] The Governor's Office has taken the position that the Merit Board is not an agency under the jurisdiction of the Governor for *Shakman* purposes. However, whether delegation of employment-related responsibilities by agencies under the jurisdiction of the Governor to the Merit Board removes such delegated responsibilities from review for *Shakman* purposes has not been resolved. Plaintiffs have informed the Special Master that they believe such actions are subject to Special Master review to the extent that the actions may implicate issues under the 1972 Decree.

[12] Administrative Order No. 2 (2009) requires that all vacancies for *Rutan*-covered positions must be posted on the State's website: Work.Illinois.Gov. CMS guidance issued on April 30, 2018, which was developed with input from the Special Master and HEM, expanded on this requirement: "There is no exception for agencies that post on their own websites or other places….In short, vacancies for **all positions**

IGB sworn officers and other candidates from applying and has resulted in complaints being made to the Special Master's office. Because of the structure explained above, these positions are not subject to CMS oversight during the hiring process.

The Special Master raised concerns about these practices with CMS, which has provided information and discussed the issue in response. The Special Master is awaiting additional information. The Special Master looks forward to continuing discussions and will report on this issue in the future.

### V. STATEWIDE COMPREHENSIVE EMPLOYMENT PLAN

As previously reported, the parties have been working on drafts of a Comprehensive Employment Plan for the State of Illinois ("CEP"). On September 11, 2019, the Governor's Office tendered an updated draft of the CEP to the Special Master and the Plaintiffs. On September 26, 2019, the Governor's Office, CMS, the EIG and HEM Director, and the Special Master's office met to discuss, among other things, a preliminary response to the CEP. In that meeting, the Special Master's office recommended the following items be addressed in the CEP: temporary assignments; interim assignments; contractors; and Personal Services Contracts. The Special Master's office provided more comprehensive written comments regarding the CEP before the parties held an in-person meeting on October 22, 2019.

The CEP contemplates the use of an electronic application and screening process for all non-exempt positions. The State of Illinois is in the process of testing an electronic application process that will be incorporated into the CEP. Forty-five hiring sequences are at varying phases of the electronic application process. Some hiring sequences are complete. For example, 18 individuals have been hired using the process. Other sequences are in line to participate, pre-posting, posting, interviewing, or pre-offer.

The Special Master recently received documents related to this process and has requested additional information. At this time, the Special Master and HEM are reviewing the effectiveness of the electronic application process and the Special Master will report further in future reports.

---

that are not completely at-will, must be posted on the State's centralized vacancy website." April 30, 2018 CMS Guidance. The General Principles reiterate that proposition. General Principles, Para. I.

## VI. RECOMMENDATIONS

As discussed in the introduction, the State has made significant progress in ensuring future compliance with the *Shakman* Decree. In light of the anticipated upcoming events, the parties are committed to reaching certain goals within the next six months. After review by the State, the Plaintiffs, HEM, and CMS, the following deadlines are agreed upon for completion of certain portions of work over the next several months:[13]

**A. Finalize the Exempt List.** As stated above, there are several positions whose exempt or non-exempt status is still under discussion. The status of the positions will be determined, and an updated Exempt List will be filed to reflect any additional titles by December 1, 2019.

**B. Finalize the CEP.** The Governor's Office submitted a draft of the CEP to the Special Master's office on September 11, 2019. The proposed deadline for finalizing the CEP is December 1, 2019.

**C. Monitor Compliance with the CEP.** After the CEP is completed, monitoring its implementation to ensure agencies' compliance with the CEP will be critical. CMS has committed to creating the CMS Office of Compliance in Personnel and to hiring a non-exempt Chief Compliance Officer to head the office. Until the State achieves substantial compliance with the 1972 Decree, the Special Master will work with HEM and CMS to monitor compliance with the CEP, modify the CEP if necessary, and issue recommendations to improve the State's employment policies and practices.

**D. State's Recommendation for Individuals Hired Into "Exempt" Positions Improperly.** As set forth in Section F of the May 1, 2017 Agreed Order, the Special Master is to recommend a process for treating individuals that were hired through an "exempt" process but were not at-will employees. The Governor's Office and CMS have agreed to make a recommendation by October 31, 2019.

---

[13] The next steps listed in Section VI. do not include next steps for IDOT, which were addressed in the IDOT-specific Special Master's Tenth Report (Dkt. 6458) and will be discussed in future reports pertaining to IDOT.

## VII. CONCLUSION

The Special Master looks forward to continuing to work with Governor Pritzker's Administration as the parties take the next steps in this process together. The parties are making significant progress toward the future goal of substantial compliance with the 1972 Decree.

Dated: October 23, 2019               Respectfully submitted,
                                      /s/ *Noelle C. Brennan*


Noelle C. Brennan
Kristin H. Carter
NOELLE BRENNAN & ASSOCIATES, LTD.
20 S. Clark St., Suite 1530
Chicago, IL 60603
(312) 422-0001

Kristi Nelson
GAIR EBERHARD NELSON DEDINAS, LTD.
1 East Wacker Drive, Suite 2600
Chicago, IL 60601
(312) 647-2733