IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL L. SHAKMAN, PAUL M. LURIE, INDEPENDENT VOTERS OF ILLINOIS-INDEPENDENT PRECINCT ORGANIZATION, et al.,  Plaintiffs, v. CLERK OF COOK COUNTY, et al., Defendants. | Case No. 69 C 2145  Hon. Sidney I. Schenkier Magistrate Judge |

**PLAINTIFFS' REPLY IN SUPPORT OF STANDING AND JUSTICIABILITY**

Plaintiffs Michael L. Shakman, Paul M. Lurie, and the Independent Voters of Illinois – Independent Precinct Organizations ("IVI-IPO")("**Plaintiffs**"), on behalf of the classes they represent, submit this Reply in support of their Motion for Supplemental Relief ("**Motion**") against the Cook County Clerk in her official capacity ("**Clerk's Office**").[1] (Dkt. No. 6486). Plaintiffs allege that the Clerk's Office has violated the County Clerk Decrees by pursuing "classic" patronage practices: attempting to force employees with no political connections to quit, placing political allies in non-exempt positions, and coercing non-exempt employees to contribute to Clerk Yarbrough's political campaign. The Clerk's Office asserts that Plaintiffs lack standing to bring their Motion, and that Plaintiffs' claims are not justiciable because they present political questions. Those objections are meritless for these reasons:

**Reason 1: The Clerk's Office has not met the controlling standard for vacating an**

---

[1] In its Response to Plaintiffs' Motion for Supplemental Relief ("**Response**")(Dkt. No. 6588), the Clerk's Office incorrectly states that "Plaintiffs seek to bring new claims against the Clerk in her individual capacity, rather than her official capacity." *Id.* at 2. Plaintiffs seek relief against the Clerk in her official capacity, not in her individual capacity. To avoid confusion, Plaintiffs will refer to the "Clerk's Office" and "**Clerk Yarbrough**" to distinguish between the office and the individual.

1

**institutional consent decree.** The Seventh Circuit has held twice in this very case that a defendant, like the Clerk's Office, may not raise standing objections as if it were litigating the issue afresh for the first time. Instead, a defendant seeking to vacate a consent decree must meet the equitable standards of Federal Rule of Civil Procedure 60(b)(5). *See O'Sullivan v. City of Chicago*, 396 F.3d 843, 868 (7th Cir. 2005)("**Shakman III**")(citing Supreme Court precedent holding that when seeking to overturn a public consent decree, the defendant must file a motion to vacate under Rule 60(b)(5) and satisfy the equitable principles of that Rule); *Shakman v. City of Chicago*, 426 F.3d 925, 931 (7th Cir. 2005)("**Shakman IV**")(same).

In connection with a prior effort to vacate a consent decree in this case based on lack of standing, the court stated: "[T]he focus of the district court shall be not on the law of standing as a jurisdictional concept but on the equitable standards embodied in Rule 60(b)(5)." *Shakman III*, 396 F.3d at 868. The Seventh Circuit repeated the rule in *Shakman IV*, holding that the defendant "bears the burden of establishing that a significant change in circumstances warrants revision of the decree." (quoting *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. at 383). In *Shakman III*, 396 F.3d at 867-68, and *Shakman IV,* 426 F.3d at 931, the court explained:

> The present plaintiffs brought an action to *enforce* the 1983 Consent Decree, and the district court had the power to enforce that decree: "'[F]ederal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, a consent decree may be enforced.'" A party may not simply ignore the decree because it believes that factual or legal changes since the decree's entry renders continued enforcement illegal or inequitable. Rather, Rule 60(b) provides an avenue to seek relief from some or all of the requirements of the original decree. (citations omitted).

The Clerk's Office has not filed a Rule 60(b)(5) motion and has not explained how it could possibly meet the equitable standards of the Rule if it continues to engage in patronage violations. Even if it files such a motion, the Court should not consider the motion before the Court conducts an evidentiary hearing to determine whether "factual or legal changes since the

2

decree's entry" warrant vacating the Decrees under the equitable principles of Rule 60(b)(5). As the Supreme Court stated in *Rufo,* 502 U.S. 367, 369-7, "[a] modification must not perpetuate or create a constitutional violation." If the Clerk's Office is engaged in old-style patronage practices, relieving it of the County Clerk Decrees would "perpetuate ... a constitutional violation." That clearly fails the equitable standard of Rule 60(b)(5).

**Reason 2: IVI-IPO.** The Clerk's Office ignores the presence of the IVI-IPO as a plaintiff, and the separate standing it possesses to enforce the County Clerk Decrees. On November 5, 1990, Plaintiffs filed a Supplement to the First Amended Complaint ("**Supplement**") adding the IVI-IPO as a plaintiff on its own behalf and on behalf of its members, who were job applicants and employees of various County offices, including the Clerk's Office. Ex. A. The IVI-IPO represents its members' interests as employees and applicants and its own interest as an independent political organization–establishing separate standing from the other Plaintiff Candidate and Voter Classes. *See* Ex. A, ¶¶14-16. Employees and job applicants have standing to challenge political patronage. So do independent political organizations. *See Elrod v. Burns*, 427 U.S. 347, 372 (1976)(employees), *Rutan v. Republican Party of Illinois*, 479 U.S. 62, 65, 76 (1990)(applicants).

**Reason 3. Standing to Challenge Politically Motivated Employment Practices.** Separately, the Court should deny the standing objection, even if it only considers the standing of the Plaintiff Candidate Class, because the Court of Appeals made clear that its 1987 ruling in *Shakman v. Dunne*, 829 F.2d 1387, 1395 (7th Cir. 1987)("**Shakman II**"), dealt only with Plaintiffs' *voter* and *candidate* standing in the context of *political hiring*. It did not address standing to assert challenges to patronage practices affecting employees. Similarly, in *Shakman III*, the Court of Appeals addressed only *voter* claims for political discrimination in hiring. Even

3

in that context it remanded for application of the equitable standard under Rule 60(b)(5). *Id.* at 867-69. Thus, *Shakman v. Democratic Org. of Cook County*, 435 F.2d 267, 270 (7th Cir. 1970)("**Shakman I**"), which held that political candidates and voters had standing to challenge unlawful political discrimination against employees, has not been disturbed. *See Shakman II*, 829 F.2d at 1398-99; *Shakman III*, 426 F.3d at 936.

**Reason 4. Justiciability.** The Supreme Court and the Seventh Circuit have consistently held claims of unlawful patronage practices to be justiciable. The Supreme Court's recent decision holding partisan gerrymandering claims present non-justiciable political questions, *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019), does not cast any doubt on those rulings.

## ARGUMENT

### I.     The Clerk's Office Has Improperly Ignored Rule 60(b) and Its Requirements.

The Clerk's Office violated the County Clerk Decrees. Then, in response to Plaintiffs' enforcement motion, it belatedly raised standing as a defense. A party has no right to violate an injunction based on its hope that it can persuade a court that the order should be vacated. As the court held in *Shakman III* and repeated in *Shakman IV,* a party challenging a consent decree is not entitled to ignore a court order simply because it believes the order is void. *See also United States v. United Mine Workers of Am.*, 330 U.S. 258, 291 (1947); *GTE Sylvania, Inc. v. Consumers Union of U. S., Inc.*, 445 U.S. 375, 386 (1980). In *Shakman III* and *Shakman IV,* the court twice held that Rule 60(b)(5) establishes the only proper procedure to challenge on the basis of standing a decree in this case. The Clerk's Office has ignored those holdings.

Even if the Clerk's Office's Response is treated as a motion under Rule 60(b), it is untimely and fails to recognize or apply the controlling standard. *See* Fed. R. Civ. P. 60(c)(1)("A motion under Rule 60(b) must be made within a reasonable time."). In assessing timeliness under Rule 60(c), a court must consider the interest in finality, the reason for the Clerk's Office's

4

delay, the ability of the Clerk's Office to learn of the grounds relied upon earlier, and the prejudice to the parties. Additionally, the court must consider "the resulting prejudice, if any, to the present elected officials and the public they represent." *Shakman III*, 426 F.3d at 933. All these factors weigh against vacating the decrees.

The Clerk's Office agreed to the terms of the County Clerk Decrees, and then waited until it was charged with non-compliance 29 years later to raise its standing challenge, despite the Seventh Circuit's statement in 2005 that Rule 60(b)(5) is the appropriate vehicle to challenge Plaintiffs' standing. The Clerk's Office provides no reason for its delay, or for its failure even to file a motion under Rule 60(b)(5).

Most importantly, Rule 60(b)(5) requires application of a discretionary equitable test to decide whether a final order should be modified or vacated. "[A] critical question in this Rule 60(b)(5) inquiry is whether the objective of the" court's order "has been achieved." *Home v. Flores*, 557 U.S. 433, 450 (2009)(remanding appeal involving motion to vacate a statewide declaratory judgment for consideration of "whether ongoing enforcement of the original order was supported by an ongoing violation of federal law"). The Supreme Court in *Rufo* held that a party seeking modification of a consent decree under Rule 60(b) "bears the burden of establishing that a significant change in circumstances warrants revision of the decree." *Rufo*, 502 U.S. at 383. The Court made clear that "[a] modification must not perpetuate or create a constitutional violation." *Id.* at 369-70. As noted above, the only way the Court can determine whether the sort of violations that gave rise to the County Clerk Decrees have continued is to conduct the evidentiary hearing the Plaintiffs have requested. Then the Court will be in a position to decide whether the defendant has demonstrated "that a significant change in circumstances warrants revision of the decree" and that equitable factors warrant such relief. *See Shakman III*

*and IV, supra.*[2]

## II. Plaintiff IVI-IPO Has Standing.

The Clerk's Office bases its entire standing argument on the erroneous view that plaintiffs Michael L. Shakman and Paul M. Lurie—on behalf of themselves and classes of independent candidates and voters—are the only plaintiffs. Response at 6 ("Plaintiffs, as candidates and voters, cannot claim in this Motion that they have standing for relief based on the alleged grievances of employees"). It argues that this case is solely about "political power and elections" and has nothing to do with "employment rights," only with the "balance of political power among the two major parties and independent candidates like Plaintiff Shakman." Response at 4, 7. The Clerk's Office ignores Plaintiff IVI-IPO, an independent political organization with members who are job applicants and job holders. It ignores Plaintiffs' allegations that unlawful patronage practices adversely impact current and prospective employees' constitutional rights. Plaintiff IVI-IPO asserted injuries, both to itself and to its members, caused by the Clerk's Office's unlawful patronage practices.

These allegations make clear that the right of public employees and job applicants to be free from forced partisan loyalty was an important part of the basis on which the County Clerk Decrees were entered. Enforcing those rights is why, over the past decade, this Court has appointed "compliance administrators" or special masters to monitor employment actions for a number of defendants to make sure that the defendants comply with their consent decrees and eliminate vestiges of patronage. The Court has supervised compliance with a series of Supplemental Relief Orders ("SRO") and Employment Plans that govern the employment

---

[2] The Clerk's Office relies upon Rule 60(b)(4) to argue that the County Clerk Decrees are void for lack of jurisdiction. The Seventh Circuit has twice rejected that approach and has held that the equitable standards of Rule 60(b)(5) control. *See Shakman III*, 396 F.3d 843 at 868 ("On remand, assuming the City wishes to pursue the issue, the focus of the district court shall be not on the law of standing as a jurisdictional concept but on the equitable standards embodied in Rule 60(b)(5)."); *Shakman IV*, 426 F.3d at 931 (same).

practices of the defendants. (*See e.g.*, Dkt. No. 6413-1 [Clerk of the Circuit Court of Cook County Interim Employment Plan]; Dkt. No. 6318 [Cook County Assessor's Office Employment Plan]; Dkt. No. 5705 [Cook County Recorder of Deeds' Employment Plan].) The SROs and Employment Plans require the defendants to draft or revise Employee Handbooks or Manuals, create or revise new job descriptions for all positions, and create procedures for all employment decisions, including hiring, firing, transfer and discipline. *Id*. In short, the argument that this case is solely about elections, as opposed to employment practices, ignores this history.

An organization like IVI-IPO has standing to assert the rights of its members. *See Hunt v. Wash. State Apple Adver. Com'n*, 432 U.S. 333, 343 (1977). It must show that: (1) at least one of its members has standing, (2) that the interests at stake are germane to the organization's purpose, and (3) that neither the claim nor the relief requested requires participation of the organization's individual members. *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *Milwaukee Police Ass'n v. Bd. of Fire & Police Com'rs*, 708 F.3d 921, 928 (7th Cir. 2013). The prerequisites to associational standing are present.

As alleged in IVI-IPO's Supplement, many members of IVI-IPO were excluded from being hired for Clerk's Office positions, and employees were pressured to pledge allegiance and financial support to candidates they do not support. Ex. A at ¶¶ 14, 19. Indeed, the Clerk's Office admits that employees have standing to challenge the Clerk's Office's unlawful hiring practices. Response at 8 ("And employees can file lawsuits to enforce rights under state law, federal law, and *Rutan*."). *See, e.g., Friends of the Earth*, 528 U.S. at 182-83 (FOE had standing to challenge a corporation's failure to comply with the Clean Water Act where at least one of its members alleged that his enjoyment of the river has been diminished by the defendants' violations of the Act); *Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007), *aff'd* 553 U.S.

7

181, 189 n.7 (2008)("The Democratic Party also has standing to assert the rights of those of its members who will be prevented from voting by the new law.").

The interests at stake—the right of employees to be free to join, work for, or contribute to the political party and candidates of their choice — is directly relevant to the IVI-IPO's mission "to achieve social justice through good government by increasing voter participation and knowledge, by providing a framework for candidate evaluation, and by electing responsive government officials." *See* http://www.iviipo.org/mission.htm (last visited January 5, 2019). Consistent with this mission statement, the IVI-IPO "opposes solicitation of campaign contributions from public employees" and "opposes patronage." *See* http://www.iviipo.org/Ethics.htm (last visited January 5, 2019).

The IVI-IPO's request for injunctive relief does not require individualized proof of damages so that class action treatment is proper. *Warth v. Seldin*, 422 U.S. 490, 515 (1975)("If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured."); *see also United Food & Comm. Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 554 (1996)(stating that "individual participation" is not necessary when an association seeks prospective or injunctive relief for its members). In sum, the IVI-IPO has established associational standing. Indeed, that standing has been undisputed by the various defendants since 1994. Only the Clerk's Office, when caught violating the County Clerk Decrees, has attempted to defend by raising the standing issue.

There is another basis for IVI-IPO's standing: Organizations have standing to challenge actions that cause them direct injury. *See Milwaukee Police Ass'n*, 708 F.3d at 926. Activity that frustrates an organization's mission and causes a drain on its resources constitutes an injury

sufficient to confer organizational standing. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)(fair housing organization had standing to challenge discriminatory housing practices that frustrated the organization's ability to "provide counseling and referral services for low- and moderate-income homeseekers" and drained the organization's resources); *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 263 (1977)(holding that an organization had standing to pursue injury to its "interest in making suitable low-cost housing available in areas where such housing is scarce").

In *Crawford*, the court held that the Democratic Party had standing to challenge the constitutionality of an Indiana law requiring voters to present a photo ID. 472 F.3d at 951. Because the Party alleged that it would be forced "to devote resources to getting to the polls those of its supporters who would otherwise be discouraged by the new law from bothering to vote," the Party had suffered an Article III injury. *Id*. The court stated that organizational plaintiffs are not required to estimate the added costs caused by the challenged action. *Id*. (the "fact that the added cost has not been estimated and may be slight does not affect standing, which requires only a minimal showing of injury"); *accord Family & Children's Ctr. Inc. v. Sch. City of Mishawka*, 13 F.3d 1052, 1058 (7th Cir. 1994)("[T]he Article III standing requirements are rather undemanding.").

Plaintiff IVI-IPO meets these standards. It has alleged that the Clerk's Office's employment practices frustrate its mission to promote ethical government by eliminating patronage, by making it more difficult to attract members, by reducing the amount of financial contributions and other political support it can attract, and by reducing its political effectiveness. (Ex. A at ¶ 18; Ex. B Declaration of Stephen Stern at ¶¶ 9-11.) These facts show an impairment of the IVI-IPO's mission and activities. *See Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1526

(7th Cir. 1990)("*Havens* makes clear [ ] that the only injury which need be shown to confer standing … is deflection of the agency's time and money from counseling to legal efforts directed against discrimination."); *see also Fair Housing Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1225 (9th Cir. 2012 (Ikuta, J., concurring)("An action that invades an organization's interest in recruiting members, obtaining funding, or collecting dues clearly hinders that organization's ability to function, and is an injury for purposes of standing.").

The IVI-IPO's alleged injuries are fairly traceable to the Clerk's Office's conduct. In addition to the impact discussed in the preceding paragraph, IVI-IPO has no patronage jobs to dispense to its supporters and, therefore, is competitively disadvantaged by politicians and political parties that offer unlawful political patronage jobs to supporters. *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 500 (7th Cir. 2005)(a plaintiff hampered from competing on an equal footing "does not lack standing merely because the defendant is one of several persons who caused the harm.").

The relief requested by the Plaintiffs will address and seek to remedy the IVI-IPO's harm. An order requiring the Clerk's Office to comply with its obligation under the County Clerk Decrees by not making employment decisions on the basis of politics would address the harm to the IVI-IPO's interest and would remove a barrier to the IVI-IPO's ability to pursue its mission, recruit new members, and raise money. *See Larson v. Valente,* 456 U.S. 228, 243 n.15 (1982)("[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his every injury.")(quoted in *Massachusetts v. E.P.A.,* 549 U.S. 497, 525 (2007)).

### III. The Plaintiff Candidate Class Has Standing.

The original Plaintiff class of candidates has standing to challenge the unlawful political patronage practices of the Clerk's Office. The Plaintiffs alleged that the patronage system put

independent candidates and their supporters at an illegal and unconstitutional disadvantage. Patronage employees were forced to support the dominant political parties by donating to campaign funds and performing campaign work. The patronage system harmed independent candidates by forcing them to expend significant funds to counter these tactics. (*See, e.g.,* Dkt. No. 376 at ¶¶19-39.) The Seventh Circuit held that these claims were justiciable, and that Mr. Shakman had standing to bring them:

> The interests of candidates in official treatment free from intentional or purposeful discrimination are entitled to constitutional protection. 'Where discrimination is sufficiently shown, the right to relief under the equal protection clause is not diminished by the fact that the discrimination relates to political rights.'

*Shakman I*, 435 F.2d at 270 (citation omitted).

This holding in *Shakman I* has never been disturbed. In *Shakman II*, finding voter class lacked standing to challenge hiring, the court stated: "Our holding does *not* address the substantially different question of whether the plaintiffs would have standing to attack the constitutionality of the coerced political work demanded of those already employed by the government as a condition of continued employment." *Shakman II*, 829 F.2d at 1398-99 (emphasis in the original). Neither *Shakman II* nor *Rutan* suggest that independent candidates lack standing to challenge governmental actions that provide a competitive advantage to the major political parties.[3]

Cases decided after *Shakman II* hold that a candidate whose competitor obtains an advantage through a government practice or regulation has standing to challenge that practice or regulation. In *Fulani v. Hogsett*, 917 F.2d 1028, 1030 (7th Cir. 1990), the court held that a third-

---

[3] The Plaintiffs are not required to show that Mr. Shakman intends to run for office in the future. Under *Sosna v. Iowa*, 419 U.S. 393, 399, 401-02 (1975), a class action may still proceed even if the named plaintiff's claims become moot after the class has been certified. Once a class is certified, "the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant." *Id*. So long as unnamed class members have a personal stake in the outcome of the case, the case is not moot. *See Franks v. Bowman Transp. Co.*, 424 U.S. 747, 755 (1976); *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 398 (1980); *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 51-52 (1991); *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002).

party presidential candidate had standing because the allegedly improper placement of the major-party candidates on the ballot resulted in "increased competition" that required "additional campaigning and outlays of funds" and resulted in lost opportunities to obtain "press exposure" and win the election. In that case, there was no discussion of whether the candidate intended to run again. It was enough that the party (also a plaintiff in the case) intended to field candidates in future elections. In *Buchanan v. Fed. Election Comm'n*, 112 F. Supp. 2d 58, 63-66 (D.D.C. 2000), the court held that a third-party candidate had standing to challenge FEC regulations that excluded him from participating in national debates.

The injuries to candidates from unlawful political patronage easily satisfy the "traceability" and "redressability" of the law of standing. When patronage practices are enjoined, independent candidates are not forced to spend time and effort raising and expending additional funds to compete against the major parties' army of patronage employees. *See Hogsett*, 917 F.2d at 1030; *see also Int'l Bhd. of Teamsters v. U.S. Dep't of Transp.*, 724 F.3d 206, 212 (D.C. Cir. 2013)(Kavanaugh, J.)(recognizing competitor standing theory). In sum, a court order enforcing the County Clerk Decrees would have real impact in protecting the interests of the candidate class.[4] That confers standing. *N.E. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993)(alleged inability to compete on an equal footing is sufficient to establish standing); *Norton*, 422 F.3d at 500 (same).

**IV.     The Plaintiffs' Claims Are Justiciable.**

The contention of the Clerk's Office that this case presents non-justiciable political questions is wrong. The Response picks a single sentence out of the complaint to argue that the

---

[4] *Accord Anderson v. Celebrezze*, 460 U.S. 780, 793-94 (1983)(holding Ohio's early filing deadline for independent presidential candidates unconstitutional, because "[a] burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment. It discriminates against those candidates and—of particular importance—against those voters whose political preferences lie outside the existing political parties.").

12

entirety of Plaintiffs' claims is that "patronage in Cook County 'deprived plaintiffs and other qualified voters who supported Mr. Shakman's candidacy, and others similarly situated, *of their right to an electoral process which is rudimentarily fair and free of substantial partisan governmental interference.*'" Response at 6 (emphasis in original). It argues that "claims by voters and candidates raising questions of fairness in elections due to patronage are not justiciable." *Id.* This argument, like the standing argument, completely ignores the claims brought by the IVI-IPO and the candidate-class seeking to redress competitive injuries.

The Supreme Court and the Seventh Circuit have consistently recognized that claims of unlawful patronage practices are justiciable. *Rutan*, 479 U.S. at 65, 76, & *id.* at 81 n.1 (Stevens, J., concurring)(promotions, transfers, and recalls after layoffs based on political affiliation or support); *Branti v. Finkel*, 445 U.S. 507, 519-20 (1980)(politically motivated firing); *Elrod*, 427 U.S. at 351-53, 372 (politically motivated firing); *Marshall v. Porter Cty. Plan Comm'n*, 32 F.3d 1215, 1221 (7th Cir. 1994)(politically motivated firing); *Rutan*, 848 F.2d at 1410 (politically motivated hiring); *Illinois State Employees Union v. Lewis*, 473 F.2d 561, 567 (7th Cir. 1972)(politically motivated firing); *Shakman I*, 435 F.2d at 271 (politically motivated hiring and retention). Yet the Clerk's Office incorrectly argues that Plaintiffs' claims are nonjusticiable political questions under the recent gerrymandering decision in *Rucho*. Response at 6-8.

That a case impacts politics does not make it non-justiciable. In *Elrod*, the Supreme Court recognized that public employees who allege adverse employment action based on political affiliation or belief could assert First Amendment claims. 427 U.S. at 351-53. The plurality discussed the potential cost to First Amendment freedoms posed by partisan dismissal: if the price of a job is political allegiance or affiliation, patronage could essentially compel such allegiance or affiliation. *Id.* at 355-56. *Rutan* adopted a similar view in the political hiring

13

context. *See Rutan*, 479 U.S. at 73-74.

The reasoning of *Elrod*—that patronage dismissals for reasons of political affiliation were justiciable—has never been overturned. A majority of the Supreme Court has repeatedly adopted the reasoning. *E.g., Rutan*, 497 U.S. at 65; *Branti*, 445 U.S. at 520. As recently as 2016, the Supreme Court held that a plaintiff stated a claim for violation of constitutional rights when he was demoted based on his employer's belief that he supported a particular mayoral candidate. *Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 1412, 1419 (2016).

*Rucho* is limited to partisan gerrymandering. It held that "partisan gerrymandering claims present political questions beyond the reach of the federal courts" because resolving such claims would require federal courts "to reallocate political power between the two major political parties, with no plausible grant of authority in the Constitution, and no legal standards to limit and direct their decisions." *Rucho*, 139 S.Ct. at 2506-07. The Court concluded that there are no manageable judicial standards to enable determining "when political gerrymandering has gone too far." *Id*. at 2497, 2498-2504. The Court also held that the Constitution's Elections Clause delegates to the States–not the federal judiciary–the right to prescribe the "Times, Places and Manner of holding Elections." *Id*. at 2492, 2496; 2506. Neither impediment to relief applies to patronage practice, as made clear in *Elrod*, *Branti*, *Rutan*, and *Heffernan*. Nothing in the Constitution requires patronage issues be decided by the states or another branch of government.

Plaintiffs are not asking this Court to "vindicate[e] generalized partisan preferences", as the Response argues at page 7, or to make a political judgment about how many patronage jobs political parties deserve based on the votes of their supporters. *Rucho*, 139 S.Ct. at 2499. Plaintiffs seek vindication of their (and in the case of IVI-IPO, its members') right to be free from forced political association or discrimination based on their political association.

The Clerk's Office argues that a federal court should abstain from enforcing its own order because violations can be addressed by the Inspector General, the Cook County Board of Ethics, a union, or the affected employees via litigation. Response at 8. Accepting this argument would put the federal courts out of business in cases involving important federal rights that clearly are part of the role of federal courts, not state agencies. *Komyatti v. Bayh*, 96 F.3d 955, 963-64 (7th Cir. 1996)("If a federal court can validly enter a consent decree, it can surely enforce that decree.") Nor does the fact that individual plaintiffs can file a separate lawsuit mean the Court must refrain enjoining the Clerk's Office from violating the Consent Decrees and the constitutional rights of the classes. Class litigation exists to avoid requiring class members to file individual suits generating duplicative litigation.

## CONCLUSION

Plaintiffs have alleged that the Clerk's Office violated court orders. If the Clerk's Office seeks to terminate those orders it must comply with Rule 60(b)(5). It has not even attempted to do so. Instead, it seeks to re-litigate jurisdiction as if the case were just filed. Applying the equitable standard mandated by Rule 60(b)(5), and *Shakman III* and *Shakman IV,* requires the Court to conduct an evidentiary hearing to evaluate the defendant's conduct and determine whether vacating the Clerk Decrees is equitable–or would instead perpetuate continuing constitutional violations. After such a hearing, the Court should find that the Clerk Decrees remain in effect and that the Plaintiffs have standing to ask the Court to enforce compliance

Dated: January 15, 2020            Respectfully submitted,

                                                 MICHAEL L. SHAKMAN, et al.,

                                                 By: /s/ Brian I. Hays
                                                        One of the Attorneys for Plaintiffs

Brian I. Hays                                     Michael L. Shakman
Ernesto R. Palomo                           Edward W. Feldman

| | |
|---|---|
| Locke Lord LLP<br>111 S. Wacker Drive<br>Chicago, IL 60606<br>312-443-1707<br>bhays@lockelord.com<br>epalomo@lockelord.com | Julia K. Schwartz<br>Miller Shakman Levine & Feldman LLP<br>180 N. LaSalle Street<br>Chicago, IL 60601<br>312-263-3700<br>mlshak@aol.com<br>efeldman@millershakman.com<br>jschwartz@millershakman.com |

## Certificate of Service

I, Brian I. Hays, an attorney, state that on January 15, 2020, I caused a true and correct copy of the foregoing to be served via e-filing upon all parties of record and by first-class mail, postage prepaid upon:

Adam R. Vaught
Hinshaw & Culbertson LLP
151 N. Franklin St., Suite 2500
Chicago, IL 60606

                                                                    /s/Brian I. Hays

81720311v.4