IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHAEL L. SHAKMAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 69 C 2145 |
| | ) | |
| v. | ) | |
| | ) | |
| COOK COUNTY CLERK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO MOTION TO QUASH SUBPOENA**

Plaintiffs Michael L. Shakman *et al.* ("Plaintiffs"), by their counsel, submit this Response to the Memorandum of Law in Support of Motion to Quash Subpoena Issued to Citizens to Elect Karen Yarbrough ("CEKY") (Docket No. 6731) ("Motion"). CEKY accuses Plaintiffs of trying to get around the Court's decision to post-pone a determination of whether Clerk Yarbrough's deposition was necessary by issuing a subpoena to non-party CEKY. That simply is not accurate. At the December 10, 2019 hearing in chambers when the Court put-off allowing Clerk Yarbrough's deposition, Plaintiffs discussed the need to serve a Rule 30(b)(6) deposition on CEKY. The Court granted Plaintiffs' request for a Rule 30(b)(6) deposition from CEKY.

CEKY can designate whomever it wants to serve as its representative – Karen Yarbrough (CEKY's Treasurer), Henderson Yarbrough (CEKY's President), or one of the individuals who acted on behalf of CEKY. In response to Plaintiffs' document subpoena, CEKY produced contacts from CEKY's Constant Contact database and a number of solicitations and announcements about political fundraisers and campaign events that were sent to the contacts in that database. Some of these solicitations and announcements stated that they were paid for by

CEKY. These materials reflected that the attendees were to RSVP to CEKY, and all donations were to be paid to CEKY.

CEKY denies that it has any members or volunteers. CEKY would have this Court believe that CEKY can act on its own without human agents. This is nonsense. Individuals acting on behalf of CEKY as its agents created the CEKY database of contacts. These individuals created invitations and announcements to promote fundraisers and campaign events for the direct benefit of CEKY. They sent the invitations and announcements to the contacts in the CEKY database. They received RSVPs from attendees, paid the bills associated with CEKY's activities, and cashed the checks or deposited cash donations into CEKY's account. One of those people can testify on CEKY's behalf.

CEKY's testimony is also relevant to the issues that will be presented at the evidentiary hearing. Although CEKY argues that the documents it produced speak for themselves, documents cannot actually speak for themselves. For example, a witness is needed to explain how the Constant Contact database was created and maintained, who sent the various invitations to political events, to whom the invitations were sent. The Court should deny CEKY's Motion and order CEKY to produce a witnesses before March 6, 2020.

### INTRODUCTION

The pertinent facts and procedural history associated with Plaintiffs' 30(b)(6) deposition subpoena to CEKY (the "Subpoena") have been extensively chronicled in the Plaintiffs' Motion to Compel Rule 30(b)(6) Testimony (Docket No. 6726) ("Plaintiffs Motion to Compel"). For the sake of brevity, the Plaintiffs incorporate by reference as if fully set forth herein the Background section (pages 1 through 4) contained in Plaintiffs' Motion to Compel.

Like it did in its prior motion to quash (Dkt. No. 6529)[1], CEKY has adopted a "kitchen sink" approach to its efforts quash the Subpoena. CEKY argues that the Subpoena should be quashed because: (1) the method of service was improper; (2) compliance would be unduly burdensome; (3) the Subpoena seeks information that can be obtained from other sources; (4) the Subpoena fails to describe the topics for deposition with particularity; and (5) the Court lacks subject matter jurisdiction. CEKY's arguments lack merit and the Motion should be denied.

## ARGUMENT

### I. CEKY failed to comply with Local Rule 7.1.

Local Rule 7.1 provides, in pertinent part, that briefs submitted to the court may not exceed 15 pages in length without prior approval of the court, and that any brief in excess of 15 pages must contain a table of contents and a table of cases. *See* N.D. Ill. L.R. 7.1. Here, without seeking leave of court, CEKY filed an oversized brief and failed to include a table of contents and a table of cases. (Dkt. No. 6731.) Compliance with the Local Rules is not discretionary. *Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995). The Court can, and should, strike or deny CEKY's motion to quash on this basis alone. *See* N.D. Ill. L.R. 7.1 (noting that courts can strike oversized briefs).

### II. The Subpoena was properly served.

The U.S. Post Office hand delivered the Subpoena to CEKY on January 31, 2020. Henderson Yarbrough, CEKY's President, signed the return receipt and accepted the delivery. (Ex. A.) CEKY nevertheless urges the Court to quash the Subpoena because it was not hand-delivered to CEKY by a formal process server. (Motion at 4-5.) CEKY's argument lack merit.

---

[1] The Court rejected each of the five arguments advanced by CEKY to quash the Plaintiffs' document subpoena. The Court did, however, limit the prior subpoena to "the timeframe of 2017 to the present, and must focus on Clerk's Office employees and applicants." (Dkt. No. 6583.)

> Rule 45 of the Federal Rules of Civil Procedure provides:
>
> Any person who is at least 18 years old and not a party may serve a subpoena. Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law.

Fed. R. Civ. P. 45(b)(1). As with any other Federal Rule, Rule 45 "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Nothing in Rule 45 suggests that personal, in-hand service by a formal process server is required to effectuate "delivery" to the person or entity named in the subpoena. *Doe v. Hersemann*, 155 F.R.D. 630, 630 (N.D. Ind. 1994). Here, a mail carrier more than 18 years old that is not a party to this action "delivered" the Subpoena to CEKY's president, who signed and accepted the delivery. (Ex. A.) This is all Rule 45 requires. *Doe*, 155 F.R.D. at 630.

As the *Doe* court observed, when the drafters of the Federal Rules wanted to require more formal "personal service" of a pleading or paper, they knew how to do so unambiguously. *Id.* at at 631. Rule 4(e)(1) describes "personal service" as "delivering a copy of the summons and of the complaint to the individual *personally*." Fed. R. Civ. P. 4(e)(1) (emphasis added). To read the word "personally" into Rule 45 would render the use of "personally" in Rule 4(e)(1) "pure surplusage," a practice not advocated. *Doe*, 155 F.R.D. at 631 ("[T]he drafters knew how to indicate a personal service requirement and ... they chose not to do so when they created Rule 45."). Moreover, to conclude that Rule 45 requires personal service by a process server would drive up the expense of litigation, which would violate the requirement that the Rules be construed to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1; *see also Sec. & Exch. Comm'n v. Pence*, 322 F.R.D. 450, 454 (S.D.N.Y. 2017) (holding that Rule 45 permits service of subpoenas by means other than

4

personal service); *Ultradent Prods., Inc. v. Hayman*, No. M8-85 RPP, 2002 WL 31119425, at *3-4 (S.D.N.Y. Sep. 24, 2002) (holding that service by certified mail is appropriate); *Western Resources, Inc. v. Union Pac. Railroad Co.*, No. 00-2043-CM, 2002 WL 1822432, at *2-3 (D. Kan. Jul. 23, 2002) (holding that delivery of subpoena by Federal Express was sufficient); *King v. Crown Plastering*, 170 F.R.D. 355 (E.D.N.Y.1997) (in-hand delivery is not required so long as service is made in a manner that reasonably insures actual receipt of the subpoena).

CEKY exaggerates the holding in *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188-89 (N.D. Ill. 2013). That court held that service via certified mail *to an address more than 100 miles from the courthouse* is invalid. *Id*. While the court in *Parker* did state that service by certified mail was insufficient, the court did not engage in any analysis to support that conclusion. Thus, the opinion in *Parker* should not persuade.

CEKY also complains that the Subpoena should be quashed because it does not allow sufficient time for CEKY to comply. (Motion at 5.) Plaintiffs mailed the subpoena on January 22, 2020. CEKY admitted that the post office delivered the Subpoena on January 31, 2020 and that the Plaintiffs and CEKY agreed that the deposition would not go forward on the original return date of February 5, 2020. (Motion at 5.) CEKY has had the Subpoena for over three weeks now and should be required to comply with the Subpoena.

**III. The Subpoena is not overbroad nor unduly burdensome.**

The party seeking to quash a subpoena bears the burden of demonstrating that the subpoena is overbroad, duplicative, or unduly burdensome. *Wi-LAN, Inc. v. LG Elecs., Inc.*, No. 10 CV 7721, 2011 WL 148058, at *2 (N.D. Ill. Jan. 18, 2011); *In re Subpoena Upon Nejame Law, PA.*, No. 16-cv-4619, 2016 WL 3125055, at *4 (N.D. Ill. June 3, 2016). By affidavit or other evidence, a party asserting undue burden must show such burden through "a particular and

5

specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Papst Licensing GmbH & Co. KG v. Apple, Inc.*, No. 17 C 1853, 2017 WL 1233047, at *3 (N.D. Ill. Apr. 4, 2017) (citations omitted). The factors courts analyze to determine whether the subpoena imposes an undue burden are: "the person's status as a non-party, the relevance of the discovery sought, the subpoenaing party's need for the documents, the breadth of the requests and the burden imposed on the subpoenaed party." *Parker*, 291 F.R.D. at 188 (citations omitted). Using these factors as a guide, it becomes patently clear that CEKY has failed to establish an undue burden.

### A. Non-Party Status

CEKY argues that its mere status as a nonparty renders compliance with the Subpoena unduly burdensome. (Motion at 6.) CEKY's status as a non-party, without more, is not conclusive evidence of an undue burden, and courts in this district regularly enforce subpoenas against non-parties. *Thayer v. Chiczewski*. 257 F.R.D. 466, 470 (N.D. Ill. 2009) (rejecting undue burden argument and enforcing the subpoena in part); *In re: Subpoena Upon Nejame Law, PA.*, No. 16-CV-4619, 2016 WL 3125055, at *4 (N.D. Ill. June 3, 2016) (denying motion to quash merely because the subpoena was directed to a non-party).

CEKY's brief identifies one burden: a 30(b)(6) deposition would be based on CEKY's knowledge and would require additional preparation. (Motion at 7.) True, but irrelevant. Rule 30(b)(6) expressly provides that a Rule 30(b)(6) deposition could be compelled through a subpoena. Fed. R. Civ. P. 30(b)(6) ("In its notice or subpoena, a party may name as the deponent a public or private corporation . . .") The Advisory Committee notes further explain that: "a subpoena may name a non-party organization as the deponent and may indicate the matters about which discovery is desired. In that event, the non-party organization must respond by designating

6

natural persons, who are then obliged to testify as to matters known or reasonably available to the organization." Fed. R. Civ. P. 30, 1971 Advisory Committee Notes. Courts routinely enforce subpoenas for 30(b)(6) depositions. *Prouty v. Thippanna*, No. 4:17-CV-40126-TSH, 2019 WL 267465, at *2 (D. Mass. Jan. 18, 2019) (denying non-party's motion for protective order for 30(b)(6) testimony). Moreover, this Court already has held that the Plaintiffs could take a 30(b)(6) deposition of CEKY. Therefore, the mere fact that a Rule 30(b)(6) deposition requires additional preparation is not a valid basis to quash the Subpoena.

CEKY argues that deposition topics 8, 9, and 10 are improper topics for CEKY's 30(b)(6) witness(es). (Motion at 8.) Similarly, the Clerk moved for a protective order on these topics, arguing that testimony on these topics will be provided by the Clerk's Office's 30(b)(6) witness. (Dkt. No. 6734 at 2.) Both CEKY and the Clerk's Office misunderstand the focus of these topics. Plaintiffs are not seeking testimony from CEKY to establish the Clerk's Office hiring policies. Plaintiffs seek to uncover what CEKY knew about those practices and how to influence hiring decisions. The Clerk's Office has admitted that it filled a number of positions without posting the position to the public or going through a competitive process. Plaintiffs would like to explore whether CEKY knew about these non-public job openings, and if CEKY did anything to promote these openings to volunteers or contributors.

As the Court is aware, in 2017, the OIIG issued a report finding that a high-ranking *Shakman*-Exempt employee of the Recorder of Deeds routinely would announce job openings at events promoted by CEKY and encourage the volunteers to apply. (Ex. B at 9.) The OIIG concluded that the *Shakman*-Exempt employee's recruitment activities "establishes an association or nexus between the Recorder of Deeds' political organization and [Recorder of Deeds] employment." (*Id*.; Dkt. No. 4985 [4/21/17 RCA Report] at 13-15 and Dkt. No. 5220

7

[10/5/17 RCA Report] at 12-15 (discussing the OIIG's report and discussing Mrs. Yarbrough and her staff's failure to cooperate with the OIIG's investigation). The same *Shakman*-Exempt employee that recruited employees at political events is now a high-ranking member of the Clerk's Office, and this employee's name appears in CEKY's contact database. Plaintiffs are entitled to explore whether this practice has continued after the Recorder became the Clerk.

CEKY also argues that "if a non-party corporation genuinely cannot provide an appropriate designee because it does not have that information, cannot reasonably obtain it from other sources and still lacks sufficient knowledge after reviewing all available information, then its obligations under the Rule cease." (Motion at 8.) The Plaintiffs have no quarrel with this proposition in general, but CEKY's argument is inapplicable here. In his affidavit submitted with the Motion, CEKY's President states:

> The only records and reports maintained by CEKY are those required by the [Illinois Campaign Disclosure] Act. CEKY does not maintain files of fundraisers, events or other activities sponsored by third parties on behalf of Karen Yarbrough nor does it maintain copies of Nominating Petitions circulated on the candidate's behalf.

(Dkt. No. 6731-2 [H. Yarbrough Aff.] ¶ 4.) This statement begs the question: who maintains the files for fundraisers and other events that are sponsored solely for the benefit of Mrs. Yarbrough's political campaign? CEKY can, and under the Rules it must, obtain information from its third-party agents in order to provide the requested 30(b)(6) testimony.

For example, CEKY produced numerous campaign announcements and fundraising materials. *See e.g.* Ex. C. These documents were sent by someone acting on CEKY's behalf as its agent and were sent to individuals in CEKY's database. In some cases, the documents direct individuals to RSVP to citizensforkarenyarbrough@gmail.com. (*Id.*) Someone had to process those RSVPs on CEKY's behalf. Donations were payable to CEKY for the benefit of CEKY. One solicitation states on its face that is was "PAID FOR BY CITIZENS FOR YARBROUGH."

8

(*Id*.) This particular solicitation was emailed to a number of Clerk's Office employees and was forwarded to at least one non-exempt employee.

Plaintiffs are entitled to ask CEKY to designate a witness who can testify about a solicitation paid for by CEKY, sent on behalf of CEKY, to individuals in CEKY's database, who then sent RSVP's to CEKY to raise money for CEKY. CEKY must designate an individual to testify on its behalf, even if the individual was also acting as an agent for the Proviso Township Democratic Organization or an employee of the Clerk's Office. *Great Amer. Ins. Co. of N.Y. v. Vegas Constr. Co.,* 251 F.R.D. 534, 541 (D. Nev. 2008) (responding party obligated "to educate an appropriate Rule 30(b)(6) designee to provide knowledgeable answers reasonably available to the corporation, which include information ascertainable from project files and documents in the repository, information from past employees, witness testimony and exhibits, or any other sources available to the corporation, including factual information learned through or from its counsel."); *Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 39 (D. Mass. 2001) ("I find that the Fabiano sons, in preparing to be deposed as 30(b)(6) representatives of the company, had the obligation to review all documents that were in their control, including the tax returns and related documents that were in the physical possession of Fabiano's accountant.").

Furthermore, political campaigns are the direct beneficiaries of political patronage and discrimination. While CEKY is not a party to the case, it would have benefitted from pressure being placed on Clerk employees to donate money to, or perform work for, CEKY. For this additional reason, CEKY's status as a non-party cannot shield CEKY from discovery.

B.  **Relevance of Discovery Sought**

Rule 26 provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."

9

Fed. R. Civ. P. 26(b)(1). The "scope of discovery through a subpoena is the same as that applicable to . . . the other discovery rules." Fed. R. Civ. P. 45, 1970 Advisory Committee Note; *Nejame*, 2016 WL 3125055, at *2. "The burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). CEKY is required to provide more than just conclusory statements that the requested testimony is irrelevant. "To meet this burden, the objecting party must 'specifically detail the reasons why each [request] is irrelevant.'" *Williams v. Blagojevich*, No. 05 C 4673, 2008 WL 68680, at *3 (N.D. Ill. Jan. 2, 2008) (citation omitted). This, CEKY did not do, and cannot do. CEKY does not even try to argue that the testimony requested in the Subpoena is irrelevant. Accordingly, the Court should conclude that the deposition topics are relevant to Plaintiffs' allegations that the Clerk and CEKY have engaged in prohibited solicitation of Clerk employees.

    **C.    Breadth**

CEKY argues that the Subpoena is overbroad because it fails to specify a timeframe for certain communications. (Motion at 12-13.) This argument is disingenuous. At the February 13, 2020 conference call, Plaintiffs made clear that the applicable timeframe for ***all*** deposition topics is January 1, 2017 to the present, the same time period found to be reasonable by the Court during the October 30, 2019 hearing on CEKY's motion to quash the document subpoena. (Dkt. No. 6583.) Plaintiffs reiterated this point in its motion to compel. (Dkt. No. 6726 at 5 n.1.)

**IV.    Plaintiffs cannot obtain the relevant testimony from any other source.**

This Court expressly authorized discovery into Plaintiffs' allegations that the Clerk's Office violated the County Clerk Decrees by soliciting campaign contributions to Clerk employees. Plaintiffs have served interrogatories and document requests on the Clerk's Office

10

designed to elicit this information. However, the Clerk's Office has denied having records of who has been contributing to, and volunteering for, CEKY. It also denied that it has access to records of solicitations from CEKY or its agents. As a result, the Subpoena to CEKY is unavoidable. Mrs. Yarbrough in her capacity as Treasurer of CEKY cannot shield evidence relevant to determining whether Mrs. Yarbrough in her official capacity as the County Clerk violated the County Clerk Decrees.

## V. The deposition topics are described with sufficient particularity.

CEKY's brief identifies four deposition topics that, in CEKY's view, are not described with particularity:

> Topic 1: The allegations set forth in Plaintiffs' Motion for Supplemental Relief in this matter, Dkt. No. 6486.
>
> Topic 11: Communications among, by or between any CEKY officer, member, or volunteer, the Clerk's Office, and any Clerk employee, with respect to:
>
>> (a) Fundraising Activity
>>
>> (b) Fundraising Events * * *
>>
>> (c) Election Petitions
>>
>> (d) Phone banks/banking
>>
>> (e) Voter canvassing
>>
>> (f) Getting out the vote efforts
>>
>> (g) Political volunteering or similar political activity
>
> Topic 14: Communications from any CEKY officer, member or volunteer and Clerk employees on their personal electronic devices, including their personal social media and personal emails.
>
> Topic 21: The relationship between CEKY and the Proviso Township Democratic Organization (PTDO).

11

(Motion at 14.) However, in his affidavit, CEKY's President purports to respond substantively to each of these topics. (Dkt. No. 6731-2 [H. Yarbrough Aff.] ¶ 14.) Notably, Mr. Yarbrough did not say these topics were not described with sufficient particularity.

The four topics are described with sufficient particularity. As for the first topic, CEKY has admitted that it is aware of the allegations in the Motion for Supplemental Relief that the Clerk's Office has violated the County Clerk Decrees in four different ways. (Motion at 10 n.3.) The Plaintiffs are entitled to inquire about what CEKY knows about the facts alleged in the Plaintiffs' motion. For example, if CEKY has knowledge about political solicitations being sent to Clerk's Office employees, then Plaintiffs should be able to inquire about CEKY's knowledge.

Topics 11 and 14 are crystal clear. If CEKY is communicating with Clerk's Office employees about political activities and fundraising, whether by email, text message, or social media, then CEKY must testify about these communications. The testimony should include communications sent through CEKY's agents. (*See* discussion and cases cited *infra* at 8-9.)

Finally, as for topic 21, CEKY asserts that it has no function other than to accept money from donors, pay out expenses and submit financial reports to the appropriate authorities. (Dkt. No. 6731-2 [H. Yarbrough Aff.] ¶¶ 2-4.) However, Mr. Yarbrough has admitted that Proviso Township Democratic Organization ("PTDO") provides "volunteer, fundraising, and other assistance" to CEKY. (*Id.* at ¶ 14.n.) Plaintiffs seek further information about PTDO's activities on behalf of CEKY, particularly as it relates to Clerk's Office employees.

## VI. The Court does not lack subject matter jurisdiction over this dispute.

CEKY asks the Court to quash the Subpoena on standing and justiciability grounds. (Motion at 14-16.) Plaintiffs have already refuted these arguments. (Dkt. No. 6669.) Plaintiffs need not refute those arguments again here.

82480008v.1

## CONCLUSION

For all of the foregoing reasons, CEKY's Motion should be denied and CEKY should be ordered to produce a witness prior to March 6, 2020.

Dated: February 24, 2020

Respectfully submitted,

Michael L. Shakman, et al.

By:   /s/ Brian I. Hays
      One of Their Attorneys

Brian I. Hays
Ernesto R. Palomo
Locke Lord LLP
111 S. Wacker Drive
Chicago, Illinois 60606
(312) 443-1707

## **CERTIFICATE OF SERVICE**

      I, Brian I. Hays, an attorney, hereby certify that on the 24th day of February, 2020, I caused a true and correct copy of the foregoing PLAINTIFFS' RESPONSE TO MOTION TO QUASH SUBPOENA to be filed via the ECF System for the United States District Court for the Northern District of Illinois, which sent notice of such filing upon all ECF-registered participants.

      /s/ Brian I. Hays