IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL L. SHAKMAN, ET AL., ) | |
| ) | Case No. 69-cv-2145 |
| PLAINTIFFS, ) | |
| ) | Magistrate Judge: Sidney I. Schenkier |
| v. ) | |
| ) | |
| CLERK OF COOK COUNTY, ET AL., ) | |
| ) | |
| DEFENDANTS. ) | |

**DEFENDANT'S POST-HEARING SUBMISSION**

Defendant Clerk of Cook County ("Clerk"), by and through her attorneys, respectfully submits the Clerk's post-hearing submission.

**Introduction**

In December 2018, Karen Yarbrough became Clerk of Cook County, replacing David Orr who held office since 1990. Despite having never challenged any of Clerk Orr's practices in his long tenure, shortly after Clerk Yarbrough won the nomination for Clerk (she was unopposed in the primary and would go on to be unopposed in the general election), Plaintiffs sought to have the Clerk's office enter into a Supplemental Relief Order. Def. Resp. Ex. F, Dkt. #6588-7. No SRO was entered into. After Clerk Yarbrough took office, Plaintiffs almost immediately began investigating the Clerk's office. Def. Resp. Ex. E, Dkt. #6588-6. On September 6, 2019, not even a year after Clerk Yarbrough took office, Plaintiffs filed the Motion for Supplemental Relief. Dkt. #6486.

Plaintiffs' Motion for Supplemental Relief alleges the Clerk's office violated the 1972 and 1991 consent decrees by (1) implementing a policy of rotating supervisors in the Clerk's municipal offices; (2) making oral modifications to written employment policies; (3) placing "political allies" in non-exempt positions; and (4) sending text messages to employees regarding fundraising events. Dkt #6486.

Plaintiffs are seeking to enforce a decree that was entered without standing, and a decree that is not justiciable. But even if Plaintiffs did not have these subject matter deficits, they have no evidence that either decree was violated. Instead, Plaintiffs are asking this Court to grant them the power to run the Clerk's office as they would see fit, without any consideration for who the voters selected, based on nothing more than speculation and inuendo. For reasons that follow, this Court should find (1) it lacks subject matter jurisdiction to enforce the decrees; or (2) Plaintiffs failed to establish any violation and that the Decrees should be vacated.

## I. Plaintiffs bear the burden of proof, by clear and convincing evidence, that the Clerk's office violated the 1972 or 1991 Decree.

"*Shakman* is a judicial decree; a violation of that decree is contempt of court." *Smith v. Chicago*, 769 F.2d 408, 411 (7th Cir. 1985). Two decrees are at issue for the Clerk's office in Plaintiffs' motion: 1) the 1991 "Hiring" Decree, and 2) the 1972 "Firing" Decree. The 1991 Decree prohibits the Clerk's office from making hiring decisions based on any political condition or factor. Exh. A, 1991 Decree. The 1972 Decree prohibits the Clerk's office from conditioning an existing employment relationship on an employee's political activity, and prohibits the Clerk's office from coercing employees to make financial political contributions. Exh. B, 1972 Decree.

A court's "civil contempt power rests in its inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001). To be held in civil contempt, a person must have violated an order or decree that sets forth in specific detail an unequivocal command. *Id.* at 699. It is not necessary to a finding of contempt that a violation was "willful." *Id.* Rather, it is sufficient that a party "has not been reasonably diligent and energetic in attempting to accomplish what was ordered." *Id.* The party asserting a violation of a judicial order has the burden of proof by clear and convincing evidence. *Shakman v. Democratic Org. of Cook County*, 2009 U.S. Dist. LEXIS 25792, *8 (N.D. Ill. 2009).

2

As a threshold matter, "Plaintiffs must prove that a political reason or factor was the cause of the complained of decision" to prove a violation of either the 1972 or 1991 Decree. *Shanahan v. City of Chicago*, 82 F.3d 776, 780 (7th Cir. 1996). That is, Plaintiffs must prove that Clerk's office decisionmakers were aware of the applicants' or employees' political affiliations. *Chi. Police Sergeants Ass'n v. City of Chicago*, 2010 U.S. Dist. LEXIS 91747, *16 (N.D. Ill. 2010); *see also Kozlowski v. Fry*, 238 F. Supp. 2d 996, 1022 (N.D. Ill. 2002) (granting summary judgment on a *Shakman* claim because "Plaintiffs do not present the Court with any evidence that Defendants made employment decisions based on the political affiliations"). Furthermore, speculation is insufficient to carry Plaintiffs' burden. *SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 601 (7th Cir. 2019). Speculation cannot create a question of fact, much less provide clear and convincing evidence. *Id.*

## II. The Clerk's office has not violated the 1991 Decree.

In 1991, the Clerk's office entered into a Consent Decree with "Michael L. Shakman and Paul M. Laurie, individually and on behalf of the classes they represent under Counts I-VI of the First Amended Complaint." Dkt. #6486-1.[1] The 1991 Decree permanently enjoined the Clerk from directly or indirectly:

> conditioning, basing, or knowingly prejudicing or affecting the hiring of any person as a Governmental Employee (other than for Exempt Positions) upon or because of any political reason or factor including, without limitation, any Employee or prospective Employee's political affiliation, political support or activity, political financial contributions, promises of such political support, activity or financial contributions or such Employee or prospective Employee's political sponsorship or recommendation.

Dkt. #6486-2, p. 5.

The Clerk was also required to file a Plan of Compliance to implement the 1991 Decree. See, Exh. C, 1991 Plan of Compliance. This Plan was approved by the Court. *Id.* The Clerk's Plan of Compliance was amended on May 11, 1993. See, Exh. D, 1993 Amended Plan of Compliance. Both

---

[1] Plaintiff IVI-IPO was not a party to the 1991 decree. See, Clerk's Sur-Reply, Dkt. #6760, pg. 2.

3

the original and amended Plan of Compliance terminated on June 1, 2002. *Id.* Any requirement that the Clerk's office comport with the hiring procedures therein terminated at this time.

Plaintiffs allege the Clerk's office violated the 1991 Decree by placing "political allies" in non-exempt positions. Dkt. #6486. In their Motion, Plaintiffs referred to several employees who were hired into exempt positions.[2] *Id.* Now, based on the evidence introduced during the evidentiary hearing, it appears they have shifted their allegations to focus on employees not referenced in their motion. But there is still no evidence in the record to show the Clerk's office made any hiring decision based on a political factor or condition. In fact, there has been no evidence presented to prove that any decisionmaker at the Clerk's office even knew the political activity or support of any individual it hired or did not hire.

> a. **Clerk Yarbrough has established hiring practices for non-exempt employees that exceed the requirements of the 1991 Decree.**
>
> > i. **The 1991 Decree does not require that the Clerk's office use a "competitive process" when hiring non-exempt employees.**

The Clerk's hiring Plan terminated on June 1, 2002. Exh. D. All procedures for hiring required under the Plan terminated at that time. As of today, the 1991 Decree would only prohibit the Clerk's office from basing any hiring decision on a political condition or factor. Dkt. #6486-2, p. 5. Accordingly, to prove the Clerk's office violated the 1991 Decree Plaintiffs must prove, by clear and convincing evidence, that "a political reason or factor was the cause of the complained of decision." *Shanahan*, 82 F.3d at 780. It is not enough for Plaintiffs to speculate that the Clerk's office should have made a different hiring decision or assert that they do not believe that the Clerk's office utilized the correct hiring practices. *Lisle v. Welborn,* 933 F.3d 705, 720 (7th Cir. 2019).

---

[2] As the Clerk's office argued in its Response to Plaintiffs' Motion, Timothy Curry and Cynthia Soto were hired into Exempt Positions. Dkt. 6588, pg. 14-15. Although Plaintiffs have now shifted their argument by introducing various documents related to hiring of other employees into evidence, none of these documents prove that an individual was hired into a non-exempt position based on a political factor or condition.

4

### ii. Plaintiffs failed to prove that the Clerk's office hired any applicant based on the applicant's politics.

When Clerk Yarbrough took office in December 2019, the Clerk's office did not have a written policy for filling positions in the office. Testimony of Clerk's Office 30(b)(6) Witness, pg. 45. Since Clerk Yarbrough has taken office, the Clerk's office has developed an extensive written policy to govern hiring decisions going forward. Def. Exh. 1, CCC0034765-CCC0034785. Supervisors were also involved in the hiring process for the first time. 3/3/20 Testimony of George Tserotas, pg. 188. And, the human resources department ensured that interviewers were accurate in their notes. .3/3/20 Testimony of Dawn Nowak, pg. 68. These specific policies and procedures are not required by the 1991 Decree, yet the Clerk has sought to ensure hiring policies are formalized and followed since she took office in 2018.

Attempting to use those reforms against Clerk Yarbrough, Plaintiffs have introduced score sheets for several positions filled at the Clerk's office since she took office (Pltfs. Exhs. 41-49, 57-67), but have not introduced any evidence that any individual was hired based on a political factor. For example, Plaintiffs have presented score sheets of individuals who interviewed for the position of Director of Human Resources. Yolanda McDonald, who was ultimately hired, scored second highest to Sheree Jackson. Pltfs. Exh. 55, Director of Human Resources Scoring Chart. However, the Clerk's office discovered that Ms. Jackson had not completed her bachelor's degree, which is a minimum qualification for the Director of Human Resources position. Def. Exh. 18, Job Description – Director of Human Resources; Def. Exh. 19, Sheree J. Jackson, Resume. As a result, Ms. Jackson was disqualified and Ms. McDonald was offered the position. Pltfs. Exhs. 55, 56, Letter to Yolanda McDonald extending offer.

5

In addition, Plaintiffs suggest Valirie Bryant, hired as a clerk in the Maywood office, was hired based on a political factors.[3] There is no evidence that any decisionmaker at the Clerk's office knew who Ms. Bryant's mother was before she was hired. Instead, Mr. Steele testified that he did not know who her mother was. 3/10/20 Testimony of Byron Steele, pg. 365-366. Even if someone at the Clerk's office had known Ms. Bryant's mother was involved with the SEIU, that is irrelevant as SEIU is the union that represents most of the Clerk's office employees. The supervisors are SEIU members. Pltfs. Exh. 12, CCC01453. George Tserotas, the Maywood supervisor who was part of the interview panel for Ms. Bryant, is a SEIU member. 3/3/20 Testimony of George Tserotas, pg. 137. It is also important to note that the SEIU is not a political organization. Finally, the interview forms for Ms. Bryant were given to Tawanna Gill, the Deputy Clerk of Human Resources who had been hired into that position under Clerk Orr. 3/3/20 Testimony of George Tserotas, pg. 130. There is no evidence that anyone at the Clerk's office even knew Ms. Bryant's mother was involved in the SEIU, or that she was hired because of her mother, much less that her hiring was a political decision.

Plaintiffs further presented speculative evidence regarding Hernan Ramirez. Ms. Nowak testified that Mr. Ramirez, an employee at the Clerk's office, marched in the Chicago Pride Parade for Karen Yarbrough. 3/3/20 Testimony of Dawn Nowak, pg. 65. She said she believed Mr. Ramirez, hired initially to serve as a clerk in Bridgeview, was kept in the Chicago office because she saw a photo of Mr. Ramirez on Facebook with Mr. Ramirez marching for the Clerk's campaign in the Chicago Pride Parade. *Id.* But, Citizens to Elect Karen Yarbrough did not march in the Chicago Pride Parade in 2019. 3/6/20 Testimony of CEKY 30(b)(6), pg. 223. The Clerk's office in 2019, however, participated in the Pride Parade, as did other local government offices. 3/10/20 Testimony of Byron

---

[3] The Clerk's office has attempted to reach Ms. Bryant to reach a stipulation related to this issue. However, Ms. Bryant has taken sick days, as well as the Clerk's office administering the primary election and determining response to the COVID-19 pandemic.

Steele, pg. 367-68. Regardless, there is *no* evidence that anyone in the Clerk's office that hired Mr. Ramirez knew of his political activities, if any. And, there is no evidence at all that Mr. Ramirez was hired based on a political factor.

To violate the Decree, the Clerk's office must know of the political activity of each applicant to prove that the Clerk's office wanted to favor one applicant over another. *Shanahan*, 82 F.3d at 780. Throughout the evidentiary hearing, Plaintiffs presented *no* evidence to prove by any standard that the Clerk's office hired any applicant based on a political condition or factor. Plaintiffs' rely on layer upon layer of speculation in an attempt to piece together an argument that asks this Court to make unsupported inferences based on no clear evidence.

### b. Plaintiffs failed to prove that the Clerk's office hired any Executive Assistant based on the applicant's politics.

Plaintiffs' introduced evidence related to executive assistants. Pltfs. Exh. 65-67, 75, 76, 80, 81. The Executive Assistant positions that Plaintiffs have entered into evidence are direct reports to the Clerk's senior management team--all Exempt Employees. The Seventh Circuit has found that these positions may be hired through a process different than the typical non-exempt hiring process because such employees qualify as "confidential" employees. *Benedix v. Vill. of Hanover Park*, 677 F.3d 317, 319 (7th Cir. 2012); *Meeks v. Grimes*, 779 F.2d 417, 423 (7th Cir. 1985).

#### i. The Court has recognized that an Executive Assistant may be hired through the same process used by the Clerk's office.

The Seventh Circuit explained that "it is an important part of the new officeholder's own right of association to be able to choose who to work with, the better to promote his ideas and policies." *Benedix*, 677 F.3d at 319 (7th Cir. 2012). This reasoning extends to both policy making *and* confidential positions. *Id.* at 320. These "confidential" positions work in direct and constant contact with exempt employees. *Meeks*, 779 F.2d at 423 (7th Cir. 1985).

This Court in the *Shakman* lawsuit has previously approved policies and procedures that permitted the City of Chicago to use the same process for hiring "private secretaries or assistants" as the Clerk's office has used to hire executive assistants. In 2014, the City of Chicago and the Plaintiffs filed their Joint Motion for Setting a Hearing Date and for a Finding of Substantial Compliance and Dismissal of the City of Chicago. Dkt. 3762. To support a finding of substantial compliance, the City was required to submit a "Hiring Plan" for court approval. Dkt. 3762-1. In the City's Hiring Plan, this Court approved the City's statement that "Some hires by their nature require greater management discretion in selection. These include Private Secretaries or Assistants assigned to Exempt Employees.." Dkt. 3762-1, pg. 28. As a result, the Hiring Plan permitted these positions to be filled without using any specific selection process. *Id.* Similarly, here, the executive assistants are assigned to exempt employees on the Clerk's senior management team. Def. Exh. 1, CCC0034778. Thus, the fact any executive assistant was hired without following the process used for other non-exempt positions is not evidence of a violation of the 1991 Decree.

      **ii. There is no evidence that any executive assistant was hired based on her political activity.**

Plaintiffs have also presented no evidence that any executive assistant was hired based on politics. Again, Plaintiffs' seem to rely on layers of speculation in an attempt to cobble together evidence that politics *could, possibly* have been a factor in the decision. This is not enough to prove a violation of the Decree by clear and convincing evidence.

While this is not an employment case, the political discrimination standard applied when an employee alleges a violation of the *Shakman* decrees is informative here. To make out a *prima facie* case of political discrimination, a plaintiff must show: 1) that the plaintiff's conduct was constitutionally protected, and 2) that the protected conduct was a substantial or motivating factor in the employment decision. *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004). "It is not enough to show only that the plaintiff was of a different political persuasion than the decisionmakers or the successful applicant." *Id.*

8

Plaintiffs are required to present specific evidence that the Clerk's office acted with knowledge of an employee's political affiliation and took action because of the political affiliation. *Sebastian v. City of Chicago*, 2008 U.S. Dist. LEXIS 60570, *110-111 (N.D. Ill. 2008). "In doing so, a plaintiff cannot rely on speculation or opinions of non-decision makers as proof that the defendants acted because of political affiliation." *Id.*

Four individuals were hired as executive assistants to the Clerk's senior management team: 1) Holly Figiuolo was hired as the Executive Assistant to the Deputy Clerk of Elections; 2) Belle McClandon and Wendy Johnson were hired successively as the Executive Assistant to the Clerk for Government Affairs; and 3) Monica Samuels was hired as the Executive Assistant to the Chief Deputy Clerk and Chief Legal Counsel. Plaintiffs suggest that Ms. Figiuolo's "connections are very clearly set forth" in interviews with individuals from the Cook County Assessor's[4] office. (Brian Hays, 3/16/20, pg 296) But, Plaintiffs again fail to introduce any evidence that Ms. Figiuolo was hired based on any "connections" she may or may not have. Plaintiffs seem to rely on the fact that Ms. Figiuolo was hired without a competitive process. But, as the Seventh Circuit and this Court recognizes, executive assistants do not need to be hired through a competitive process due to the nature of their work. Instead, Ms. Figiuolo has years of experience as an assistant, making her qualified for the position. Plfs. Exh. 80, Holly Figliuolo Resume.

Each of the individuals hired as executive assistants were hired into a position that interacts closely and regularly with exempt employees. The fact they were hired without a specific "competitive" process is not a violation of the 1991 Decree. There is no evidence anyone in the Clerk's office knew if any of these individuals engaged in political activity, or what those activities may have been. Thus, there is no evidence these individuals were hired based on a political reason.

---

[4] And whatever evidence there is about why she was hired in the Assessor's office is not evidence of the Clerk's office's hiring decision.

### iii. Plaintiffs Michael L. Shakman, Paul M. Lurie and the classes they represent lack standing to enforce the 1991 Decree, and the IVI-IPO is not party to the Decree.[5]

"Voters, taxpayers or residents voicing generalized complaints are not sufficient to justify the federal courts' intrusion into the workings of the States." *O'Sullivan v. City of Chicago*, 396 F.3d at 843, 857 (7th Cir. 2005). In *O'Sullivan*, the Seventh Circuit addressed the district court's decision to vacate the City of Chicago's consent decree. *Id.* That decree had been entered in 1983, following the Seventh Circuit's decision in *Shakman I* holding Plaintiffs had standing to bring their firing claims as candidates and voters. The City argued the plaintiffs lacked standing to enforce the decree, however, because of the Seventh Circuit's *Shakman II* ruling. The ruling held that Plaintiffs lacked standing to bring their hiring claims as candidates and voters. *Id.* The *O'Sullivan* court held that "[t]he problem with the City's present position is that it ignores the procedural posture of this case." *Id.* at 867. The problem for the City was "at the time that the district court issued its 1979 order (on which the 1983 Consent Decree was based) the voter-plaintiffs had standing, and the dispute was within the court's subject matter jurisdiction." *Id.* (internal quotation and citation omitted).

Plaintiffs' Motion presents the opposite problem. When the 1991 Decree was entered, *Shakman II* had been the law for four years. *Shakman v. Dunne*, 829 F.2d 1387, 1393 (7th Cir. 1987). Under *Shakman II*, Plaintiff lacked standing to bring their hiring claims. *Id.* Nothing changed between *Shakman II* and when this Court approved the 1991 Decree. "Under such circumstances, when a federal court 'has decided the question of the jurisdiction over the parties as a contested issue, the

---

[5] Plaintiffs' questioning suggests they may argue that the Clerk's office did not maintain all documents because the supervisors were not asked for materials related to the rotation program, and exempt employees were not specifically asked to maintain any political documents on personal devices. This argument highlights the standing concerns presented by the *Shakman* litigation. Plaintiffs attempt to argue they have standing to enforce the Decrees based on the interests of employees at the Clerk's office, while also arguing that the Clerk's office should have exerted control over those same employees to retain documents for this litigation. All while Plaintiffs claimed a common-interest privilege with the supervisors. To be clear, there is no evidence in the record that any relevant documents were destroyed after the Plaintiffs' motion was filed.

court in which the plea of *res judicata* is made has not the power to inquire again into that jurisdictional fact.'" *O'Sullivan*, 396 F.3d at 866, quoting *Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938). As a result, the 1991 Decree cannot be enforced because the 1987 *Shakman II* decision held the claims "settled" in the 1991 Decree lacked the necessary standing. Accordingly, this Court should find the 1991 Decree is void. *O'Rourke Bros., Inc. v. Nesbitt Burns, Inc.*, 201 F.3d 948, 951 (7th Cir. 2000) ("A judgment is void only if the court which rendered it lacked jurisdiction of the subject matter or of the parties, or if it acted in a manner inconsistent with due process of law.") Clerk Orr could not waive standing in 1991, because constitutional standing requirements cannot be waived. *Korte v. Sebelius*, 735 F.3d 654, 668 (7th Cir. 2013).

Plaintiffs now attempt to rely on the addition of the IVI-IPO as a Plaintiff to remedy their standing issues. See, 3/13/20 Testimony of David Igasaki, pg. 21. But, IVI-IPO was not added as a party to the case until April 24, 1992. Exh. E, Order granting leave to file supplement to first amended complaint. The IVI-IPO does not cure Plaintiffs standing problem. See Clerk's Sur Reply, Dkt. #6760, pg. 9-10.

### III. The Clerk's office has not violated the 1972 Decree.

Under the 1972 Decree, the Clerk is "permanently enjoined from conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time already a governmental employee, upon or because of any political reason or factor." Dkt. #6486-1, p. 4. Additionally, the 1972 Decree prohibits compulsory or coerced political financial contributions by any governmental employee to any individual or organization. *Id.* Still, "governmental employees may engage on a voluntary basis, on their own time, in any lawful political activity (including the making of political financial contributions)." *Id.*

Plaintiffs allege three actions by the Clerk's office violated the 1972 Decree: (1)The rotation of supervisors throughout satellite offices; (2) Oral modification of employment policies; and (3)Two

11

text messages sent by exempt employees to non-exempt employees that included a flyer for a Summer Solstice Fundraiser in support of Karen Yarbrough. Plaintiffs have presented no evidence to support their claims.

### a. The supervisor rotation was not implemented for a political purpose.

To make out a *prima facie* case of political discrimination, a plaintiff must show: 1) that the plaintiff's conduct was constitutionally protected, and 2) that the protected conduct was a substantial or motivating factor in the employment decision. *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004). "It is not enough to show only that the plaintiff was of a different political persuasion than the decisionmakers..." *Id.* If a plaintiff can make the *prima facie* showing, the burden shifts to the defendant to demonstrate a legitimate, nonpolitical reason for the employment decision. *Id.*

### i. There is no evidence in the record that the Clerk's office knew of the supervisors' political activities.

"The threshold question [in proving political discrimination] is whether the defendants even knew about the political activities." *Hall*, 389 F.3d at 762. That is, the Clerk's office must have wanted the supervisors to quit based on their political activity, or inactivity. Dawn Nowak, George Tserotas, Lana Yacilla, and Carolyn Harris all testified at length during the evidentiary hearing. Yet, not one of them testified that any decisionmaker at the Clerk's office was aware of their political activity. In fact, the supervisors provide no testimony to demonstrate what their own political beliefs are.

There is no evidence in the record that the anyone at the Clerk's office knew *anything* about the supervisors' political beliefs or association, or lack thereof.[6] Instead, Plaintiffs suggest that the supervisor rotation must be political because two supervisors (Angela Wright Madison and Morris Torres) were excluded. But Plaintiffs also did not introduce any evidence to show any political reason

---

[6] Dawn Nowak testified she is an alderman in Palos Heights (3/3/20 Testimony of Dawn Nowak, pg. 82) and Erica Sanchez testified she was aware of this fact, but there was no evidence regarding the political beliefs or associations affiliated with Ms. Nowak's position as alderman.

12

determined why those two supervisors were not required to rotate. The only evidence in the record related to Angela Wright-Madison is Ms. Nowak's testimony that Ms. Wright-Madison previously worked for the Cook County President. (3/3/20 Testimony of Dawn Nowak, pg. 43) Obviously, working for a county official is not inherently a political activity, otherwise all former County employees would be barred from being hired in any other County office. Instead, it makes sense that a county government office would want to hire an individual that has previous experience in county government. Additionally, the only evidence in the record related to Morris Torres is Ms. Harris' and Ms. Nowak's testimony that his sister is married to an Alderman. 3/3/20 Testimony of Dawn Nowak, pg. 42; 3/3/20 Testimony of Carolyn Harris, pg. 277. But, there is no evidence at all that Morris Torres, himself, was political, or that anyone at the Clerk's office knew of his political activity, if any.

### ii. Morris Torres and Angela Wright-Madison were excluded from the supervisor rotation because they perform different jobs than the supervisors who rotated, not for "political reasons."

More importantly, there is substantial evidence that provides a valid reason why Ms. Wright-Madison and Mr. Torres were excluded. Although the supervisors' grievance stated that the two supervisors were excluded for "political reasons," these supervisors were not included because they performed the "back office" duties of accounting (Mr. Torres) and genealogy (Ms. Wright Madison), exclusively. Pltfs. Exh. 10, Grievance submitted by attorney. Despite claiming "the only rational" reason for Mr. Torres and Ms. Wright Madison being excluded was political purposes, Ms. Nowak testified that she did not know how the accounting department Mr. Torres supervised worked. 3/3/20 Testimony of Dawn Nowak, pg. 73-74. She testified that she only knew how the genealogy room downtown worked from her time working there. 3/3/20 Testimony of Dawn Nowak, pg. 76. She did not know if other supervisors would know how the downtown genealogy room worked. *Id.* Similarly, Mr. Tserotas testified that Ms. Wright-Madison's job was handling genealogical records. 3/3/20 Testimony of George Tserotas, pg. 146.

Finally, Markham supervisor Carolyn Harris[7] testified that she understood why Mr. Torres and Ms. Wright-Madison were not included in the rotation. 3/3/20 Testimony of Carolyn Harris, pg. 266. Ms. Harris stated simply that Mr. Torres and Ms. Wright-Madison "do different jobs that we do." *Id.* at pg. 267.

### iii. The OIIG investigated the rotation policy and found it was not implemented for political purposes.

Ms. Nowak testified she contacted the Office of the Independent Inspector General ("OIIG") in relation to the rotation. *Id.* at 88. The OIIG initiated a review of the rotation. Def. Exh. 3, CCC00141. Ms. Nowak was interviewed by an OIIG investigator in the course of the investigation. 3/3/20 Testimony of Dawn Nowak, pg. 56; Def. Exhs. 9, CCC00644; 14, CCC01264. After the investigation, the OIIG found that the Clerk's office offered a good faith rationale upon which to implement the rotation and that the rotation was designed to further a legitimate goal of the office. Def. Exh. 3, CCC00143. The OIIG "identified no evidence to support the conclusion that the [rotation] is being implemented pretextually for political purposes or that two supervisors were inappropriately and for political reasons excluded from participation." *Id.* Plaintiffs have provided no additional evidence to contradict this finding.

### b. Plaintiffs have presented no evidence that employment policies were orally modified, or that any employee was adversely impacted by such modification.

The only evidence Plaintiffs introduced related to the modification of employment policies came from George Tserotas. Mr. Tserotas testified that Erica Sanchez told him not to put a state file number on the application for death records. 3/3/20 Testimony of George Tserotas, pg. 114-115. But there is no evidence that Mr . Tserotas was impacted by this alleged modification in any way. Instead,

---

[7] Carolyn Harris is one of the supervisors Plaintiffs claim the Clerk's office discriminated against through the rotation. Yet, Plaintiffs treated her as an adverse witness. (See 3/3/20 Testimony of Carolyn Harris, pg. 239) The fact Plaintiffs treated one of the supervisors as an adverse witness in and of itself should demonstrate Plaintiffs' argument is meritless. How can a supervisor be adverse to Plaintiffs position unless the supervisor contradicts Plaintiffs position?

14

he simply stated that Ms. Sanchez asked him to use a different system to improve efficiency. There is no other evidence that any employment policies were orally modified.

### c. Dawn Nowak and Sonia Kahlil were not compelled or coerced to make a political contribution.

In their Motion, Plaintiffs alleged "the Clerk has been soliciting non-exempt Clerk employees for political donations. On information and belief, the Clerk solicited these political contributions through text messages sent to the Clerk employees' private cell phone numbers the Clerk obtained from employment records. (Ex. F.)" Dkt. 6486. Pg. 9. That turned out to be false. Instead, Plaintiffs provided evidence of two text messages. The first Erica Sanchez sent to Dawn Nowak that included a flyer for the Summer Solstice fundraiser for Karen Yarbrough. Pltfs. Exhs. 94; 95. Ms. Nowak testified that Ms. Sanchez told her it would be beneficial for her to attend the Summer Solstice. 3/3/20 Testimony of Dawn Nowak, pg. 64. But, Ms. Sanchez never told Ms. Nowak that attending the event would be beneficial to her job in the Clerk's office (as opposed to Ms. Nowak's position as an alderman). 3/3/20 Testimony of Dawn Nowak, pg. 82. Ms. Nowak said she did not ask Ms. Sanchez to send her flyers about political fundraisers. 3/3/20 Testimony of Dawn Nowak, pg. 63. But Ms. Sanchez testified that Ms. Nowak requested the flyer. 3/16/20 Testimony of Erica Sanchez, pg. 421. Regardless, Ms. Nowak did not attend the event, she did not donate to Karen Yarbrough, Ms. Sanchez did not ever follow up with her about the event, and no one else in the Clerk's office said anything to her about the event. (3/3/20 Testimony of Dawn Nowak, pg. 82).

The 1972 Decree only prohibits *compulsory or coerced* political financial contributions by any governmental employee to any individual or organization. *Id.* "[G]overnmental employees may engage on a voluntary basis, on their own time, in any lawful political activity (including the making of political financial contributions)." Dkt. #6486-1, p. 4. Ms. Nowak never contributed to Clerk Yarbrough's campaign. 3/3/20 Testimony of Dawn Nowak, pg. 83. Indeed, Ms. Nowak did not even react to the

15

message she received related to the fundraiser. 3/3/20 Testimony of Dawn Nowak, pg. 83. Instead, she just "ignored it." 3/3/20 Testimony of Dawn Nowak, pg. 83.

Plaintiffs have also introduced a text message from Jamica Davis to Sonia Kahlil, without any additional information related to this text message. Pltfs. Exh. 109. From the face of the text message, it is clear that Ms. Kahlil asked Ms. Davis to send her the flyer. There is no evidence in the record that Ms. Kahlil was coerced in any way to contribute to Karen Yarbrough. Solicitation of a political contribution, itself, is not a violation of the 1972 Decree. Instead, Plaintiffs' must prove that the contribution was compulsory or coerced. No such evidence was presented at the evidentiary hearing. Thus, Plaintiffs have failed to prove that the text messages violate the decree.

### d. The 1972 Decree lacks subject matter jurisdiction because it was premised on a complaint that raised non-justiciable political questions.

As the Clerk's office argued in detail in its sur-reply to Plaintiffs' Motion, the 1972 Decree is based upon a complaint that presented non-justiciable political questions. Dkt. #6760, pg. 10-13. Even if the Court were to find a violation, it should hold it lacks subject matter jurisdiction over the issues raised in Plaintiffs' Motion.

### IV. If this Court finds that Plaintiffs' have standing and the 1972 was justiciable, the changes in fact and law justify vacating the Decrees.

A federal court may only "enforce the terms of a consent decree as long as they are tailored to rectify the federal constitutional violation." *Komyatti v. Bayh*, 96 F.3d 955, 961 (7th Cir. 1996). Modification of a consent decree is, therefore, appropriate "to relieve . . . officials from a provision that no longer serves any valid federal purpose." *Id.* at 964. Modification of a consent decree is appropriate when there has been "a significant change either in factual conditions or in law." *O'Sullivan v. City of Chicago*, 396 F. 3d 843, 861 (7th Cir. 2005).

The Seventh Circuit has explained that "a party seeking modification of a consent decree does not have to prove a grievous wrong . . . the party only 'bears the burden of establishing that a significant

change in circumstances warrants revision of the decree.'" *Shakman v. City of Chicago*, 426 F.3d 925, 931 (7th Cir. 2005) ("*Shakman III*"), citing, *Rufo*, 502 U.S. at 383. "The public interest is a particularly significant reason for applying a flexible modification standard in institutional reform litigation because such decrees 'reach beyond the parties involved directly in the suit and impact on the public's right to the sound and efficient operation of its institutions.'" *Id.* If the moving party meets its burden, the court should consider whether the proposed change is "suitably tailored to the circumstances." *Id.*Rule 60(b)(5) provides that the Court may relieve a party a final judgment or order if "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5).

    **a. There has been a substantial change in the facts of the case since the Decrees were entered in 1972 and 1991.**

Since the last Decree was entered in 1991, voters of Cook County and employees at the Clerk's office now have avenues to ensure employment decisions are not based on any political reason or factor. These avenues include the Office of the Independent Inspector General and the Ethics Ordinance.

    **i. The Office of the Independent Inspector General ("OIIG")**

"The purpose of the Office of Independent Inspector General is to detect, deter and prevent corruption, fraud, waste, mismanagement, unlawful political discrimination or misconduct in the operation of County government." Municipal Code of Cook County § 2-283. The OIIG's enabling ordinance essentially codifies the terms of the Decrees into county law. The OIIG has the authority to investigate any claim of unlawful political discrimination. Municipal Code of Cook County § 2-224. If the OIIG finds an employee or office is guilty of unlawful political discrimination, the employee is subject to discharge and the office holder is subject to removal. Municipal Code of Cook County § 2-291(b). The OIIG is also responsible for reporting the detail of its work to the Cook County President

and Board on a quarterly basis. Municipal Code of Cook County § 2-287. The Clerk's office, as an office of county government, is subject to this detailed oversight by the OIIG.

### ii. Cook County Ethics Ordinance

Under the Cook County Ethics Ordinance, every county official and employee of the county is required to adhere to al applicable laws and regulations under the Ordinance. Every employee and official also has the duty to report any violations, suspected violations, or other misconduct to the Board of Ethics or the OIIG. Municipal Code of Cook County § 2-561. The Ordinance specifically prohibits the coercion of political contributions from employees. Municipal Code of Cook County § 2-583. The Ordinance also prohibits any county official from making employment decisions based on political activity. *Id.*

### b. There has been a substantial change in the law since the Decrees were entered in 1972 and 1991.

Additionally, since the 1972 Decree was entered, the law regarding standing and justiciability has changed considerable, as explained in detail in § I.B of Defendant's Response to Plaintiffs' Motion. Dkt. 6588, pg. 4-8. In *Evans v. City of Chicago*, 10 F.3d 474, 482 (7th Cir. 1993), the Seventh Circuit held "[u]nless there is a substantial claim under federal law, the district judge should not enter or continue to enforce a consent decree affecting the operation of a governmental body." The *Evans* court said many things are more important that enforcing consent decrees, including "preserving democratic governance, separating the judicial and political spheres, [and] respecting state autonomy in the absence of a federal rule." Evans, 10 F.3d at 482. The Clerk's sur reply explains the changes in law in length. Dkt. #6760.

### c. Plaintiffs' claims offend the notions of federalism by intruding on the governmental processes of the Clerk's office.

Plaintiffs' claims against the Clerk fly directly into the federalism concerns the Seventh Circuit has raised. *See O'Sullivan,* 396 F. 3d at 854 ("In short, before permitting a plaintiff to challenge state

18

governmental activity, the federal court has a duty to ensure, with careful attention, that the parties before it have the requisite concrete adverseness that will ensure full presentation of the issues and avoid unnecessary intrusion into state governmental processes."). As evidenced by the nature of the testimony given by Ms. Nowak, Mr. Tsertoes, Ms. Yacilla, and Ms. Harris, Plaintiffs seek to enjoin the Clerk's office from making changes to the policies at the Clerk's office when a new person is elected by the people. The supervisors were upset that the process was changed after Clerk Orr's procedures were in place for 30 years. But this Court should not intervene simply because Plaintiffs disagree with the Clerk on whether it was necessary, or the best course of action, for the supervisors to rotate offices. Such interference would unnecessarily constrain the Clerk's office, making it impossible to effectively administer the duties the citizens of Cook County elected her to perform.

### d. The costs associated with ongoing litigation heighten federalism concerns in this case.

Consent decrees that impose wide-ranging and long-term obligations on, or require ongoing judicial supervision of, state or local governments are extraordinary remedies that "raise sensitive federalism concerns." *Horne v. Flores*, 557 U.S. 433, 448 (2009). This is especially true when the impact of the decree impacts the government's budget priorities. *Id.* The *Shakman* litigation continues to require a substantial amount of government funds to administer, while numerous other remedies exist for an employee to seek redress for political discrimination claims.

As a result, this Court should use its equitable power to vacate the Consent Decrees.

### Conclusion

WHEREFORE, Defendant Cook County Clerk, respectfully requests this Court deny Plaintiffs' Motion because the 1991 Decree lacked standing and is unenforceable, and find the Court lacks subject matter jurisdiction over the 1972 Decree because the complaint presented non-justiciable political questions.. In the alternative, the Clerk requests this Court find Plaintiffs failed to prove a violation of the 1972 or 1991 decree and vacate the 1991 and 1972 Decrees.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

/s/ Adam R. Vaught
Adam R. Vaught

Adam R. Vaught
Lari A. Dierks
Hinshaw & Culbertson LLP
151 North Franklin Street
Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
Facsimile: 312-704-3001
avaught@hinshawlaw.com
ldierks@hinshawlaw.com