**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL SHAKMAN, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | No. 1:69-CV-02145 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| CLERK OF COOK COUNTY, | ) | Magistrate Judge Gabriel Fuentes |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this decades-old case, the Clerk of Cook County (along with various other Illinois governmental entities) has been subject to consent decrees enjoining her from making employment decisions based on political discrimination, as forbidden by the First Amendment. But certain job positions are exempt from the ban on political discrimination. Way back in 1991, an initial list of exempt job positions was approved by the Court. The parties and the court-appointed Compliance Administrator have been working together to update the list, but 10 positions remain in dispute. The Clerk has moved to add the disputed positions to the exempt list. For the reasons explained below, the motion is granted in part and denied in part.

## I. Background

In 1972, the Clerk of Cook County, along with other units of Illinois government, entered into a consent decree barring the Clerk from "conditioning, basing or knowingly prejudicing or affecting any term or aspect of government employment, with respect to one who is at the time already a governmental employee, upon or

1

because of any political reason or factor." R. 6946-1, 1972 Consent Decree ¶ (E)(1).[1] In 1991 the Clerk separately entered into a supplemental decree that barred the Clerk from "conditioning, basing or knowingly prejudicing or affecting the hiring of any person as a Governmental Employee (other than Exempt Positions), upon or because of any political reason or factor …." R. 6803-1, 1991 Consent Decree ¶ (D). That same year, a list of exempt positions (the 1991 Exempt List) was approved and, up until now, had remained unchanged.

Then, in April 2020, the Court found that the Clerk had violated the consent decrees by unilaterally amending the Exempt List. R. 6829, Appointment Order. The Court appointed a Compliance Administrator, and directed that the Administrator "[w]ork with the County Clerk to develop (with the input of plaintiffs' counsel) a list of exempt positions to be approved by the Court." *Id.* at 41. With this directive came a moratorium on off-list exempt hiring: "[p]ending approval of any new list, the County Clerk may not hire persons as []exempt employees for positions which are not on the 1991 List of Exempt Positions without prior court approval." *Id.*

Since then, the Clerk has proposed 41 exempt positions. R. 7378, Def.'s Br at 2. The Administrator and the Plaintiffs agree that 30 of those qualify as exempt. *Id.* at 2–3. Of those positions, eight are pending finalized job descriptions. *Id.* at 3. The Clerk has withdrawn its proposed exemption of one position. *Id.* That leaves 10 positions in dispute: (1) Director for the Clerk of the Board; (2) Director of Cybersecurity; (3) Director of IT; (4) Director of Recording Operations; (5) Director of Training and

---

[1] Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

Professional Development; (6) Director of Vital Records; (7) Manager—Tax Extensions/GIS; (8) Director of Real Estate and Tax Services; (9) Director of Elections Operations Center; and (10) Director of Human Resources. *Id.* The County Clerk, the Administrator, and the Plaintiffs have conferred several times on these positions, but are at an impasse. The Clerk now moves to approve the addition of these positions to the Exempt List. R. 7378.[2] All of the disputed positions are Director-level positions, with the exception of Manager—Tax Extensions/GIS.[3] To evaluate the propriety of exempt status, explaining the governing substantive and evidentiary standards is the first step in the analysis.

## II. Analysis

### A. *Branti*

Generally speaking, the First Amendment prohibits governments from making decisions about the employment fate of public employees based on their political beliefs. *Branti v. Finkel*, 445 U.S. 507, 515 (1980). That said, there are instances in which political considerations are permitted, because confidentiality and policymaking are necessities in some job positions, rendering political considerations relevant to effective performance. *Id.* at 517. A job position satisfies this exception if "the hiring

---

[2]As an initial matter, the Clerk preserves its argument that the Plaintiffs lack standing to bring First Amendment challenges to hiring practices. *See* Def.'s Br. at 6 n.3. This was recently addressed by the Seventh Circuit, which held that developments in standing doctrine did not warrant vacating the consent decree. *Shakman v. Clerk of Cook Cty.*, 994 F.3d 832, 840 (7th Cir. 2021).

[3]The County Clerk's office comprises several departments headed by their respective Deputy Clerks. Def.'s Br. at 5. Directors occupy the next rung in the hierarchy, followed by other budgeted staff, including managers and supervisors. *Id.*

3

authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.* at 518.

### B. Evidentiary Requirement

In evaluating whether a job position should be exempt under *Branti*, the parties dispute what evidentiary requirements apply to the evaluation. The Clerk contends that unless a job description bears "some systematic unreliability" or "has been manipulated in some manner by officials looking to expand their political power," the Court's examination "begins and ends" with the job description and the powers inherent to the role. Def.'s Br. at 9 (quoting *Riley v. Blagojevich*, 425 F.3d 357, 361 (7th Cir. 2005)). In contrast, the Plaintiffs argue that the Clerk prepared "made-for-litigation job descriptions" that are unaccompanied by evidence of reliability. R. 7408, Pls.' Resp. Br. at 5, 7. Alternatively, the Plaintiffs argue that, even if the Court finds the descriptions to be reliable, the Clerk must nonetheless provide additional evidence showing that the exempt duties are actually performed by the job-holder (or will actually be performed in the future, in the case of vacant positions). *Id.* at 6, 10.

The right approach is somewhere in the middle of those two extremes. Given the fact-laden nature of the *Branti*-exemption inquiry, *see Selch v. Letts*, 5 F.3d 1040, 1047 (7th Cir. 1993), the circumstances from case to case—and, indeed, from position to position—will dictate what evidence, if any, is needed beyond the job description. Although courts must rely on job descriptions whenever possible, no precedent "stand[s] for the proposition that every *Elrod/Branti* case can be resolved just by reading the job description." *Riley,* 425 F.3d at 365. "[A]dditional evidence would be

4

necessary" when the "description might leave the reader unclear whether the job confers any policymaking or confidential discretion …." *Id.* Indeed, at times the Seventh Circuit itself has looked beyond the job description to consider the duties actually performed. *See Allman v. Smith*, 790 F.3d 762, 765 (7th Cir. 2015); *Tomczak v. City of Chicago*, 765 F.2d 633, 642 (7th Cir. 1985). And additional evidence might be required especially when, as is the case for some positions here, job descriptions are intended to cover new or vacant positions.

So, in light of the case-specific and job-specific nature of the exemption inquiry, there is no blanket requirement (as the Plaintiffs suggest) that the Clerk must provide affidavits attesting to the conception, drafting, and updating of each job description in compliance with the Clerk's Policy Manual. Pls.' Br. at 7. It is true that the process leading up to the creation of the job descriptions was not created in the ordinary course of business. But it is also true that the County Clerk has engaged in some back-and-forth efforts to consider the Plaintiffs' and the Administrator's questions and objections on the descriptions. Although it might be appropriate in some instances to look beyond the job descriptions (as discussed in more detail below), there is no presumptive, across-the-board requirement in the first instance to furnish additional evidence of the duties performed. Practically speaking, this means that, in deciding the propriety of an exemption for each proposed position, the Court will exercise discretion to require further evidence only when specifically appropriate. It is time now to turn to each of the disputed positions.

5

### C. Proposed Exemptions

### 1. Director for the Clerk of the Board

According to its job description, this position is "responsible for supporting the Deputy Clerk of the Board & Procurement in fulfilling the Cook County Clerk's statutory duty." R. 7378-1, Def.'s Br., Exh. 1, Job Description for Director for the Clerk of the Board, at 1. The position is currently vacant. Def.'s Br. at 12. The Clerk contends that the position is similar to the Director of Procurement, which both parties agree is exempt. *Id*. But the similarity is explained by the bifurcation of responsibilities held by a single predecessor, the Director of Clerk of the Board and Procurement. Pls.' Resp. Br. at 13. As the Plaintiffs correctly point out, it was the Director of *Procurement* that retained political discretion in budgeting, contracting, and procurement, whereas the Director of the Clerk of Board inherited mostly clerical responsibilities. *Id*.

A review of the job description proves this point. The job duties include drafting, editing, and revising web content, and responding to internal and external communications. Job Description for Director for the Clerk of the Board at 2. The Clerk contends that the person holding this position would be involved in "policy" because the Director would play a role in developing the Clerk's Policy Manual. Def.'s Br. at 13. But there is no reason to believe that this pertains to *public* policy as opposed to internal-office policy. And the Clerk does not establish that this position's "involvement" in policy-making would entail any discretion requiring political alignment with the Clerk.

6

The Clerk also argues, as it does for many of the positions, that the Director would have access to confidential information. Def.'s Br. at 13. But mere participation in confidential meetings or access to confidential information does not automatically render the position as exempt. *See Meeks v. Grimes,* 779 F.2d 417, 420–21 (7th Cir. 1985). Instead, political considerations must be reasonably necessary for effective performance, and there is insufficient evidence that this Director will have access to the kind of confidential information that would require a particular political bent. So the Clerk's motion as to this position is denied. The denial is without prejudice: the Clerk may move again on this position if the Clerk can submit evidence (if it exists) that describes specifically how the position's role in developing the Clerk's Policy Manual warrants consideration of political affiliation.

### 2. Director of Cybersecurity

The Director of Cybersecurity reports to the Deputy Clerk of Information Technology and is responsible for managing and maintaining multiple security technologies. R. 7378-3, Def.'s Br., Exh. 2, Job Description for Director of Cybersecurity, at 1. Most importantly for purposes of this motion (and probably for the job too), the holder of this position also plays a role in "develop[ing] the policy for election security and develop[ing] the strategy to respond to security breaches." *Id.*

Before recent times, one would have thought (or at least hoped) that election security is a non-partisan issue and that political affiliation should not matter to effectively performing a cybersecurity role of this kind. But the unfortunate reality is that, in contemporary government, election security indeed has become politicized.

7

Obviously, voting-rights protections are paramount in our system of government, whether those protections are expressed through the First Amendment, the Fifteenth Amendment, of federal and state statutes. So partisan-political policies and decisions cannot cross those lines. In today's climate, however, an elected official running the voting operation of a unit of government would have valid reasons for wanting a political ally to manage election cybersecurity. Consider, for example, if the Cybersecurity Director were to advance, on political grounds, a conspiracy theory that Venezuela had hacked into voting machines during what was actually a free and fair election. The Clerk ought to have free political rein in that scenario. Indeed, the job description for this position credibly delineates duties during politically sensitive situations, including identifying security risks and investigating cybersecurity attacks. Job Description for Director of Cybersecurity at 2. Were it not so that elections management is a partisan issue. But it is. So the Clerk's ability to carry out public policy through this directorship can be undermined if it is occupied by a political adversary. Although it is a close call, the Clerk's motion on this position is granted.

### 3. Director of IT

This position (which is currently vacant) reports directly to the Deputy Clerk of IT and oversees the technical infrastructure within the Clerk's Office. R. 7378-5, Exh. 3, Job Description for Director of IT, at 1. The Clerk contends that this position should be exempted given its access to confidential information and politically sensitive discussions. Def.'s Br. at 14. The Plaintiffs respond that this is true of every IT

8

technician. Pls.' Resp. Br. at 15. The Plaintiffs also argue—to which the Clerk provides no rebuttal—that "the Clerk puts her confidential and political communications on a public server subject to FOIA." *Id.* Given these facts, the job description, which largely delineates the need for technical expertise, is insufficient evidence to support political affiliation as relevant to this position's effective performance. The Clerk's motion as to this position is denied without prejudice. The Clerk may move again on this job if there is more evidence (should it exist) supporting the need for this position to be politically aligned with the Clerk for effective performance, or if there is evidence to refute the generally FOIA-able nature of the servers to which the IT Director would have access.

### 4. Director of Recording Operations

The Director of Recording Operations (a currently vacant position) reports to the Deputy Clerk of Recording Operations and is responsible for the day-to-day operations and supervision of the Recording Operations Division staff. R. 7378-7, Def.'s Br., Exh. 4, Job Description for Director of Recording Operations, at 1. Here, the job's duties—at least as set forth in the job description—do support the need for the Clerk to consider political affiliation in filling this position. First, the job description states that the occupant will represent the Clerk in meeting with other government officials by "[a]ttend[ing] conferences and meetings with various Cook County agencies *on behalf of the Clerk.*" *Id.* at 3 (emphasis added). Second, the role also involves "mak[ing] recommendations to the Clerk, Chief Deputy Clerk, and Deputy Clerk of Finance regarding operational staffing or equipment that may have a budgetary impact." *Id.*

9

Put another way, this Director makes direct recommendations to three top leaders of the Clerk's Office on the development of the budget. "Budgeting decisions often are to municipal government what matters of foreign policy are at the national level." *Bogart v. Vermilion Cty., Illinois*, 909 F.3d 210, 214 (7th Cir. 2018).

Having said that, because this position is new to the Clerk's Office and is currently vacant, the motion to deem this position as exempt is only provisionally granted. Every 45 days (starting with the entry of this Order), the Clerk must provide the Plaintiffs and the Compliance Administrator with relevant evidence that the role is being fulfilled in a way that warrants the exemption. For example, if the Director has met with other agencies on behalf of the Clerk, or if the Director has contributed to budgetary planning, then records reflective of those activities must be disclosed.

### 5. Director of Training and Professional Development

This position (which is currently occupied) is primarily tasked with leading internal and external training programs. R. 7378-8, Def.'s Br., Exh. 5, Job Description for Director of Training and Professional Development, at 1. The Clerk contends that the holder of this position has the ability to affect or to undermine elections because the Director develops and teaches the training curriculum for election judges and polling place technicians. Def.'s Br. at 16. But this alone does not explain how political considerations are relevant to effective performance. The Clerk offers an analogy to the administrative law judge in *Thompson v. Ill. Dep't of Prof'l Regulation,* 300 F.3d 750 (7th Cir. 2002), but the comparison is inapt. There, the "ALJ perform[ed] a variety of functions overseeing activities of subordinates, implementing policy and broad

goals, and providing legal advice to numerous professional discipline boards." *Id.* at 757. Unlike the position described here, the ALJ in that case exercised substantial discretion in *setting* goals and policies. Here, the Director oversees training of policies set by *others*. Without more, the Clerk's motion as to this position is denied. The Clerk may move again for the exemption if it can submit affidavits or other evidence (if it exists) demonstrating how the Director's role in developing training curriculum would warrant political alignment with the Clerk for effective performance.

### 6. Director of Real Estate and Tax Services

This position, which is currently occupied, reports to the Deputy Clerk of Real Estate and Tax Services. R. 7378-10, Def.'s Br., Exh. 6, Job Description for Director of Real Estate & Tax Services, at 1. Here, the duties as set forth in the job description do weigh in favor of exemption. This Director "[a]ssists the Chief Legal Counsel with legal issues that may arise" related to the department, "[e]xercises discretion in implementation and execution of policies related to property tax and records to carry out the Clerk's vision" for the department, "[w]orks with the Communications Division to respond to press inquiries," and "[c]ontributes to long range plans for the department." *Id.* at 1–2. So those duties come with discretionary, advisory, strategic, and representative responsibilities that warrant political consideration in who fills it.

Having said that, there is a paucity of evidence that the incumbent is carrying out these exemption-justifying duties. The Clerk's motion on this position is provisionally granted. Every 45 days (starting with the entry of this Order), the Clerk must

11

provide the Plaintiffs and the Compliance Administrator with relevant evidence that the role is being fulfilled in a way that warrants the exemption.

### 7. Director of Vital Records

This position (which is currently occupied) reports to the Deputy Clerk of Vital Records. The Vital Records Department receives and manages confidential documents, including birth, marriage, and death records. R. 7378-12, Def.'s Br., Exh. 7, Job Description for Director of Vital Records, at 1. The Clerk contends that the role has historically been involved in developing *public* policy, as opposed to merely *internal* policy pertaining to the management of documents. Def.'s Br. at 19. As evidence, the Clerk proffers that the Director of Vital Records reached out to other county clerk offices in Illinois to inquire how they handled registration of assumed business names. *Id.* This is explained in a letter from Deputy Chief of Staff and Labor Counsel James Gleffe. *See* R. 7378-18, Def.'s Br., Exh. 11, Gleffe Letter at 3. But as described in the letter, the Director's role was to merely collect information from other counties. There is no basis to conclude that the Director had any influence in shaping the resulting policy. Even assuming that the Director had significant influence, the Clerk does not explain how exercising that influence over this narrow issue warrants political consideration in determining effective performance.

The letter also asserts that the Director was involved in discussions around a policy issue pertaining to changes in gender designations on marriage certificates. Gleffe Letter at 3. But the letter merely declares—without specificity—that the Di-

12

rector has worked to "examine this issue." *Id*. Although the issue of gender designations on vital records might very well be part of a larger public-policy debate (and perhaps pending legislation), there is insufficient detail on what the Director's role was in this policy discussion. Nor is there any other reason to believe, based on the job description, that this position ought to be exempt. The Clerk's motion as to this position is denied.

### 8. Manager—Tax Extensions/GIS

This position (which is currently filled) reports directly to the Director of Real Estate and Tax Services. R. 7378-14, Def.'s Br., Exh. 8, Job Description for Manager—Tax Extensions/GIS,. This is the one position out of the disputed 10 which is *not* a Director-level position; instead the Manager reports to a Director. The Clerk contends that, as described in the letter authored by Gleffe, the Manager was involved in the implementation of a tax policy that allowed for electronic, rather than in-person, submission of tax levies. Def.'s Br. at 20; Gleffe Letter at 4. Again, however, the Clerk only represents in vague terms that the Manager was simply "involved" in this process and does not explain why tax-levy receipt methods warrant political considerations. Gleffe Letter at 4. Although the job description entails some duties that would ordinarily support exemption under *Branti* (for example, liaising with other agencies on behalf of the Clerk), Job Description for Manager—Tax Extensions/GIS at 1, the scope of those duties is limited to narrow technical grounds, namely, GIS and Tax Mapping. *Id*. The Clerk's motion as to this position is denied.

13

### 9. Director of Elections Operations Center

This position (which is unoccupied right now) reports to the Deputy Clerk of Elections and exercises autonomy and discretion over the day-to-day operations of elections. R. 7378-15, Def.'s Br., Exh. 9, Job Description for Director of Elections Operations Center, at 1. Much like the reasons supporting the exemption of the Director of Cybersecurity, the Clerk would have legitimate reasons for wanting a political ally to fill this position. The job description bears this out. The position entails crisis management duties, including "[s]ecur[ing] the Elections Operations Center and respond[ing] to threats or security breaches." *Id*. The duties also require representing the Clerk in a public-facing, visible capacity by "[c]ommunicat[ing] the Clerk's policies, including but not limited to the conduct of an orderly election, to vendors and the public," and "[a]ct[ing] as a proxy for the clerk, as necessary in the day-to-day implementation of election related … policies." *Id*. at 2. The Clerk's motion on this position is granted.

### 10. Director of Human Resources

And finally, the Clerk proposes that the Director of HR be deemed an exempt position. Def.'s Br. at 22. The Clerk hints that the recent termination of the prior Director's employment demonstrates the need for an exemption, but the brief does not elaborate on the reason for the termination. *Id*. at 23. Without more, the Court cannot assume that the circumstances surrounding the termination demonstrate the need for the position to be politically aligned with the Clerk.

The Clerk also argues that a virtually identical position—The Assistant Chief Deputy Clerk of Personnel Services—has been Court approved as exempt. Def.'s Br. at 23. In fact, however, there are important differences in the job descriptions for those positions. For example, the Assistant Chief Deputy Clerk of Personnel Services "[a]ssists the Chief Deputy Clerk of Personnel Services with making departmental budgetary recommendations." R. 7378-20, Def.'s Br., Exh. 13, Job Description for Assistant Chief Deputy Clerk of Personnel Services, at 1. No such duties are listed in the Director of HR's job description.

Despite the Clerk's contention that the position "participates in policy decisions," Def.'s Br. at 24, the current record shows that the Director participates only through *implementing* existing policy directives (for example, "[r]ecommend, prepare, interpret and explain all Cook County Clerk Human Resources Divisional policies to all staff members."). R. 7378-16, Def.'s Br., Exh. 10, Job Description for Director of Human Resources, at 2. In *Milazzo v. O'Connell*, the Seventh Circuit held that an HR Administrator who primarily implemented existing policies could not, as a matter of law, be considered exempt under *Branti*. 108 F.3d 129, 132 (7th Cir. 1997). There, the fired employee's duties included "implementing … hiring policies, administering the summer job programs, providing … information regarding job applicants, and working on budget and payroll issues." *Id.* The Seventh Circuit affirmed denial of the defendant's motion to dismiss, concluding that "it is not clear as a matter of law that plaintiff held a confidential or policy-making position or that party affiliation was an appropriate requirement for the effective performance of her duties." *Id.* at 132–33.

15

Similarly, review of the duties ascribed to the Director of HR reveals them to be largely executory of directives or policies established somewhere higher-up in the hierarchy.[4] So the Clerk's motion as to this position is denied, though without prejudice. The Clerk may move again for the exemption if it can offer evidence that demonstrates how the Director's role in implementing HR policy warrants political affiliation.

### IV. Conclusion

The Clerk's motion to amend the exempt list, R. 7378, is granted in part and denied in part:

1. Director for the Clerk of the Board: denied without prejudice.

2. Director of Cybersecurity: granted.

3. Director of IT: denied without prejudice.

4. Director of Recording Operations: provisionally granted with 45-day updates.

5. Director of Training & Professional Development: denied without prejudice.

6. Director of Real Estate and Tax Services: provisionally granted with 45-day updates.

7. Director of Vital Records: denied.

8. Manager—Tax Extensions/GIS: denied.

9. Director of Elections Operations Center: granted.

10. Director of Human Resources: denied without prejudice.

---

[4]It is worth noting too that exempting an HR Director could undermine First Amendment protections: employees might very well be reluctant to report certain types of workplace harassment or to report politically connected coworkers (or both) to the human resources department if the HR Director was hired based on political loyalty.

16

ENTERED:

     s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 11, 2021