UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL L. SHAKMAN, et al., ) | |
| ) | |
| Plaintiff, ) | No. 1:69-cv-02145 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| COOK COUNTY CLERK, et al., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

In April 2020, the previously assigned judge appointed a Compliance Administrator[1] to help bring the Clerk of Cook County into substantial compliance with the decades-old consent decrees in this case. The Plaintiffs have filed a bill of costs, Fed. R. Civ. P. 54(d), and a motion for attorneys' fees, 42 U.S.C. § 1988(b).[2] R. 7025, Am. Pls.' Fee Pet.[3] As explained in this Opinion, the requests for attorneys' fees and costs are granted because the Plaintiffs qualify as prevailing parties and the amount of fees and costs is reasonable.

**I. Background**

Only a relatively narrow recitation of the facts and procedural background is necessary for purposes of this Opinion. In September 2019, the Plaintiffs filed a

---

[1]This Opinion departs from using the title "Special Master," referenced in previous motions and order on this issue, for "Compliance Administrator." The two titles are otherwise substantively equivalent.
[2]This Court has subject matter jurisdiction over the case under 28 U.S.C. § 1331.
[3]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

motion for supplemental relief, claiming that the County Clerk had violated both the 1972 Consent Decree and the 1991 Consent Judgment. R. 6486, Pls.' Mot. Suppl. Relief. The Plaintiffs requested the appointment of a Compliance Administrator to assist the County Clerk with reaching substantial compliance with the consent orders. *Id.*

The previously assigned judge held evidentiary hearings on March 3, March 10, and March 16, 2020, to resolve factual disputes between the parties. R. 6829, Order at 2. On April 17, 2020, the Court found that the County Clerk failed to comply with the decrees in the following instances:

    1. *Unapproved Expansion of Exempt Positions.* The County Clerk failed to comply with the 1991 Consent Judgment by making at least 17 unilateral revisions—without the required court pre-approval—to the list of exempt positions that are permitted to be hired based on political affiliation. Order at 24.

    2. *Failure to Publicly Post Job Openings.* The County Clerk failed to comply with the "unequivocal mandate" of the 1991 Consent Judgment to publicly advertise job openings for all non-exempt (that is, non-political) positions within its office before filling the positions. *Id.* at 25–26.

    3. *Rotation-Policy Exception.* The County Clerk implemented a policy of rotating employees between offices that the evidence strongly suggested was "instituted for the purpose of making life miserable" for certain long-time supervisors, but the policy inexplicably exempted two employees with "political pedigree[s]" in violation of the 1992 Decree. *Id.* at 26–34.

2

Based on these failures, the Court appointed a Compliance Administrator to carry out certain duties, all in an effort to assist the County Clerk in reaching substantial compliance with the decrees. Order at 41. The Plaintiffs have filed a bill of costs and a motion for attorneys' fees under Federal Rule of Civil Procedure 54(d) and 42 U.S.C. § 1988. The Plaintiffs seek to recover a combined total of $593,507.60 in fees and $11,733.39 in costs.[4] R. 7024, Joint Statement at 1. The County Clerk has objected to the attorneys' fees that Plaintiffs seek. R. 7081, Def's. Br.

## II. Legal Standard

Under 42 U.S.C. § 1988, "the court, in its discretion, may allow the prevailing party [in a § 1983 action] ... a reasonable attorney's fee as part of the costs." Federal Rule of Civil Procedure 54(d)(1) allows a prevailing party to recover costs (other than attorneys' fees) unless a federal statute, federal rule, or court order says otherwise.

## III. Analysis

In this case, the Plaintiffs seek to recover a total of $593,507.60 in fees and $11,733.39 in costs. Joint Statement at 1. The County Clerk objects to (1) the Plaintiffs' status as "prevailing parties" under Rule 54(d)(1) and (2) the reasonableness of their requested fee awards. The Court addresses each objection in turn.

---

[4]This amount is split between $571,218.60 in fees and $11,045.41 in costs to Locke Lord LLP, and $22,289.00 in fees and $687.98 in costs to Miller Shakman Levine & Feldman LLP. Pls.' Fee Pet. at 12.

3

## A. Prevailing Party

"Prevailing party" is a legal term of art, generally meaning a party who secures "a judicially sanctioned change in the legal relationship of the parties." *Fast v. Cash Depot, Ltd.*, 931 F.3d 636, 640 (7th Cir. 2019) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Vir. Dept. of Health and Human Res.*, 532 U.S. 598, 603 (2001)). As examples of the sort of "judicially sanctioned charge" required, "[e]ither an enforceable judgment on the merits or a settlement agreement enforced through a consent decree may qualify as the necessary court-ordered change." *Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 655 (7th Cir. 2007). The Seventh Circuit has explained that "Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his claims." *Dupuy v. Samuels*, 423 F.3d 714, 719 (7th Cir. 2005) (cleaned up).[5]

### 1. Consent Decrees

The County Clerk argues that Plaintiff Michael Shakman, and the class of candidates and voters, are not prevailing parties for the motion for supplemental relief because (1) they have no standing to enforce the 1991 Judgment and (2) the Court did not find any violations of the 1972 decree. R. 7141, Def's. Reply at 2. The first point has been rejected by the Seventh Circuit. *Shakman v. Clerk of Cook County*, 994 F.3d 832, 840–41 (7th Cir. 2021) ("Shakman IV," for clarity's sake). In upholding

---

[5]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

the appointment of the Compliance Administrator in this case, the Seventh Circuit reaffirmed the continued applicability (in this specific case) of the first *Shakman* decision, in which Michael Shakman and a proposed class of voters were deemed to have standing to challenge political hiring. *Id.* at 840. The Seventh Circuit also held that the Voters Organization has associational standing to enforce the 1991 Judgment on behalf of its members, one of whom is a current employee in the County Clerk's office. *Id.* at 840–41. Indeed, for purposes of the fees motion, only one of the Plaintiffs needs to qualify as a prevailing party, because *all* of the Plaintiffs shared the same counsel; challenged the *same* violations of the consent orders premised on the same facts; and ultimately obtained the *same* relief in the appointment of a Compliance Administrator. R. 7110, Pls.' Reply at 3.

The County Clerk's second point—that the Court did not find any violations of the 1972 Decree—is also rejected. The Court premised the Compliance Administrator's appointment, at least in part, on the rotation policy that was "calculated to maximize" the "adverse impact" on supervisors, Order at 31, and found that there were "significant indications to lead to the conclusion" that the political pedigree of two supervisors relieved them of the "onerous program that the other supervisors were forced to endure," *id.* at 34. The evidence thus "raised concerns about compliance with … the 1972 Consent Decree." Order at 39. As the Seventh Circuit aptly put it, "[t]he magistrate underscored its concern that the ill-fated rotation policy for supervisors likely violated the 1972 Decree."). *Shakman IV*, 994 F.3d at 842 (cleaned up).

5

The Court relied on (among other things) this likely violation as a reason to appoint the Compliance Administrator. *Id.* at 38–39.

Still, the County Clerk points out that the rotation policy was mooted when the Clerk rescinded the rotation policy a shortly before the evidentiary hearing. Here, the County Clerk invokes the right principle—but is wrong in its application. The principle is that voluntary recission of a government policy might render relief unnecessary and thus moot a claim. In *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001), the state law at issue was repealed by the state legislature after the plaintiffs filed the lawsuit but before the district court entered a final judgment, *id.* at 601. The plaintiffs sought attorneys' fees as the prevailing party, arguing that they were the "catalyst" for the repeal. *Id.* at 601–02. But the Supreme Court rejected that contention, holding instead that the State's voluntary repeal of the law "lack[ed] the necessary judicial *imprimatur*" needed for the plaintiff to qualify as a prevailing party. *Id.* at 605 (emphasis in original). What is needed is an "alteration of the legal relationship of the parties." *Id.* at 605.

Applied here, however, *Buckhannon* is no obstacle to the Plaintiffs' qualification as prevailing parties. Rescission of the rotation policy was only one of several forms of requested relief. *See* Pls.' Mot. Suppl. Relief at 1–2 (seeking at least seven forms of relief). If Plaintiffs had just requested the recission of the rotation policy, then the question would be closer. But that was not all. The Plaintiffs requested— and were granted—their "[c]hief" form of relief, namely, the appointment of a

6

Compliance Administrator to guard against future violations of the consent orders and to assist the County Clerk into substantial compliance. Order at 38–41. At this point in the litigation, the ultimate goals are to achieve substantial compliance and to erect a durable remedy so that the consent orders can be terminated. So the appointment of a Compliance Administrator—who is assigned duties by the Court and is empowered by the Court to carry out those duties—is indeed a "judicially sanctioned change" because it changes the relationship between the Plaintiffs and the County Clerk. The Appointment Order alters the relationship in both specific and general ways. On specifics, the County Clerk was required to cooperate with the Compliance Administrator to develop the updated Exempt List, and the Plaintiffs were specifically authorized to provide input into that development. *Id.* at 41. So unilateral development of the Exempt List was taken off the table by the Order, and the Plaintiffs' input was a required consideration. More generally—and more importantly—the Appointment Order set forth new obligations on the County Clerk, including cooperating with the Compliance Administrator as she carries out her duties and providing "reasonable access to all relevant non-privileged documents and reasonable access to employees at all levels" in connection with the assigned duties. *Id.* at 42. The Compliance Administrator is also charged with writing periodic reports on her work, along with findings and recommendations. *Id.* at 43. All of these requirements on the County Clerk provide judicially dictated access to cooperation and information that the Plaintiffs did not have before the Appointment Order. The Plaintiffs prevailed by securing the appointment of the Compliance Administrator.

It is worth noting that, even had there been no violations of the 1972 Decree, the grant of fees would be justified because the Plaintiffs prevailed by—at the very least—pursuing the arguments premised on the failure to abide by the Exempt List and the disregard for the public posting of job openings. Order at 39. This is enough: "when claims are interrelated, as is often the case in civil rights litigation, time spent pursuing an unsuccessful claim may be compensable if it also contributed to the success of other claims." *Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998). Federal courts thus have allowed the recovery of fees for unsuccessful claims where those claims are premised on "a common core of facts or related legal theories" for successful claims. *Id.* at 414. By the same reasoning, "courts may award fees for time reasonably spent on an unsuccessful argument in support of a successful claim." *Id.* The "touchstone in such a case is not whether a particular argument was successful, but rather whether it was reasonable." *Id.*; *see also Montanez v. Simon*, 755 F.3d 547, 555 (7th Cir. 2014) ("It's not unexpected that some legal research will prove fruitless on an ultimately successful claim, and a prevailing party may in appropriate circumstances recover for time spent going down roads that seemed promising but turn out to be dead ends."). Here, the Plaintiffs sought appointment of a Compliance Administrator, and that is what they got. So even if a subset of the arguments (such as the solicitation of campaign funds) in support of the requested relief had not succeeded, it is reasonable to award fees for pursuing *all* the arguments advanced in support of that relief. This is especially true where the arguments, such as the rotation policy, actually ended up being one basis for the appointment. *See* Order at 38. This is quite

8

different from cases in which no fee shifting is awarded for work on segregable *claims* (as distinct from arguments in support of a claim for relief), such as winning on an excessive-force claim but losing on a related—but segregable—false-arrest claim. The Plaintiffs thus qualify as prevailing parties because they have won on the merits of at least some of the arguments in support of their claim for relief. *See Dupuy*, 423 F.3d at 719.

Indeed, even more broadly, the Plaintiffs' work on litigating the appointment of the Compliance Administrator warrants fee shifting because continued efforts to monitor and enforce the 1972 and 1991 orders deserve compensation when the Plaintiffs win. *See Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 662 (7th Cir. 2007). In *Gautreaux*, the Seventh Circuit approved fees for post-consent-decree enforcement proceedings in a public-housing discrimination case. *Id.* The Court rejected the government's argument that changed circumstances over the years had eliminated the plaintiffs' prevailing-party status, explaining that desegregation efforts did not yet "warrant dissolution or modification of the decree." *Id.* at 657. Just so here. In this case, the 1972 and 1991 consent orders have not achieved a durable remedy against political employment actions, and the Seventh Circuit affirmed the magistrate judge's refusal to terminate the decrees. *Shakman IV*, 994 F.3d at 842 ("[T]he magistrate determined that the Clerk's ongoing violations reflect the precise political patronage the Consent Decrees seek to end."). So the Plaintiffs' victory in enforcing the decrees through the appointment of a Compliance Administrator entitles the Plaintiffs to fees.

9

## B. Local Rule 54.3

With prevailing-party qualification secure, the next question is the reasonableness of the amount of fees and costs requested by the Plaintiffs. The County Clerk's objections must be rejected because the Clerk failed to timely advance and develop the objections during the process required by Local Rule 54.3, which governs the filing of fee petitions in this District. In litigating a fee dispute, the rule first requires that the movant provide the respondent with information on work performed, hours, and rates. Local R. 54.3(d)(1)–(4). If disclosure of that information does not result in an agreement, then the respondent (typically, the defendant) must in turn disclose the fees that it paid, as well as information on hours and rates. Local R. 54.3(d)(5). The key next step has a time limit and a specificity requirement:

> Within *14 days* after the above exchange of information is completed and before the motion is filed, the parties shall *specifically identify* all hours, billing rates, or related nontaxable expenses (if any) that will and will not be objected to, the *basis* of any objections, and the specific hours, billing rates, and related nontaxable expenses that in the parties' respective views are reasonable and should be compensated.

Local R. 54.3(d) (emphases added). If further conferral does not entirely (or at all) resolve the dispute, then the parties must file a Joint Statement listing, among other things, the fees and costs sought by the movant, the fees and costs (if any) that the respondent agrees should be awarded, and a brief description of the specific disputes that remain pending. Local R. 54.3(e)(1)–(3).

As displayed by the structure and requirements of the rule, Local Rule 54.3 serves two major functions. First, a settlement-enhancing goal: the rule encourages

10

the parties to resolve fee disputes without seeking court intervention, because a "request for attorneys' fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Second, a way to efficiently present remaining disputes: the rule "assists the court by helping to insure that, in the event a fee motion is filed, the parties have narrowed and crystalized their disputes, and have provided the court with the information it needs to make a reasoned ruling on the fee request." *Jones v. Ameriquest Mortgage Co.*, 2008 WL 4686152 at *3 (N.D. Ill. May 19, 2008).

Here, the County Clerk failed to specify its objections to the amount of hours or the hourly rates sought by the Plaintiffs as required by Local Rule 54.3(d). The two sole substantive communications from the County Clerk took the form of two emails. First, in a June 24, 2020 email, the County Clerk argued against prevailing-party status—an argument now rejected as explained above. R. 7025-3, Pls.' Exh. C at 4 (the page number is the PDF pagination on CM/ECF)On the actual amount of the fees and costs, the email concluded, in one sentence, that "it is the Clerk's position that the two technical violations identified by the court do not justify approximately $600,000 in fees and costs to Cook County taxpayers." *Id.*. That is not a *specific* challenge to the hours worked or the hourly rate, and is simply a threadbare conclusion. Indeed, it is difficult to understand how the conferral process is supposed to be enhanced (or even to start) by an objection of that high-level of generality. *See RK Co. v. See*, 622 F.3d 846, 854 (7th Cir. 2010) (holding that district court did not abuse its discretion in awarding the full amount of fees requested "[g]iven [the defendant's] failure to raise specific objections to [the plaintiff's] attorneys' fees").

11

The only other substantive communication that expresses an objection is a July 23, 2020 email from the County Clerk. R. 7025-4, Pls.' Exh. D at 2 (again using the CM/ECF pagination). The first problem with this email is that it came too late in explaining the objection. At this point, the parties were preparing the Joint Statement required by Local Rule 54.3(e). The County Clerk was supposed to *already* have specified the objections to hours and rates so that the conferral would happen, as required by Local Rule 54.3(d). The point of the Joint Statement is to *memorialize* the supposedly already-specified objections and disputes. It was too late.

What's more, even if the July 23 objection was timely, the County Clerk still did not develop a sufficiently specific objection to the hours worked and to the rates. On the hours worked, the County Clerk objected to "time entries related to any claims that the court did not find violated the decrees. For example, but not limited to, anything to do with the rotation policy or the solicitation charge." Pls.' Exh. D at 2. The two-sentence objection was not accompanied by any specific billing entry. It will not do for a respondent to leave the movant guessing at what entries are actually targeted by the objection. On the proposed hourly rates, the July 23 email cited the hourly rates of the Compliance Administrator and the defense counsel and said, "The rates you quote are way above that." *Id.* That is not much more than simply stating the hourly rates of the case participants, and is insufficient to developing an argument for Local Rule 54.3 purposes. *See Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006) (explaining the relevance of the comparative specificity of each side's objections and responses). There is no analysis of any relevant

12

considerations, such as the relative experience of the lawyers, actual billing rates paid by similar clients in similar cases, and so on. Put another way, the County Clerk did not set forth "specific objections to specific aspects of the movant's claims for fees," but have instead "joust[ed] in generalities." *Sears, Roebuck & Co. v. Menard. Inc.*, 2004 WL 2423964, \*1 (N.D. Ill. Sept. 23, 2004). So the objection is forfeited.

Even if the objection to the hours worked and hourly rates were not forfeited during the Local Rule 54.3 process, the Court would conclude that the fees and expenses are reasonable. In evaluating a fees petition, district courts typically use the lodestar method, "multiplying the number of hours reasonably expended on the litigation ... by a reasonable hourly rate." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (cleaned up). The district court may then adjust that figure based on the factors set forth in *Hensley v. Eckerhart*, such as the time and labor required, the novelty or difficulty of the case, the degree of the success achieved, the experience and ability of the attorneys, the adequacy of the documentation of the hours, and whether appropriate billing judgment was used. 461 U.S. at 429–30 and n.3.

Here, even in the Joint Statement, the County Clerk does not object to the time billed nor expenses requested[6] by the Plaintiffs' attorneys, Joint Statement ¶ 4, so the only remaining issue is the reasonableness of the hourly rates. "A reasonable

---

[6]The Plaintiffs seek $11,733.39 in costs, and the defense did not object. In any event, the costs sought all appear to be "allowable, reasonable, and necessary," *Bellamy v. City of Chicago*, 2017 WL 3675729, \*18 (N.D. Ill. Aug. 25, 2017), given the litigation over the appointment of the Compliance Administrator.

hourly rate is based on the local market rate for the attorney's services." *Montanez*, 755 F.3d at 553. To figure out the market rate, there is ideal evidence and (absent the ideal evidence) next-best evidence:

> The best evidence of the market rate is the amount the attorney actually bills for similar work, but if that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases.

*Id*. As between the two "next-best" alternatives, the Seventh Circuit has "indicated a preference for third party affidavits that attest to the billing rates of comparable attorneys." *Pickett*, 664 F.3d at 640.

The party seeking the fee award bears the burden of establishing the market rate for their attorneys' services. *Montanez*, 755 F.3d at 553. Once the party seeking the award has met their burden, however, the opposing party has the burden of demonstrating why a lower rate should be awarded. *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1313 (7th Cir. 1996). That said, if the Court "decides that [a] proffered rate overstates the value of an attorney's services, it may lower [the rate] accordingly." *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003).

In its briefing, the Clerk contends that a reasonable hourly rate of pay is $250. Def's. Br. at 6. The Clerk asserts that (1) the records provided by the Plaintiffs do not show their requested rates were actually paid; and (2) the compensation provided to the court-appointed monitor and to the Clerk's counsel warrant a lower rate. Def's. Br. at 5–6. On the first point, however, the Plaintiffs' counsel rely on their actual

billable rates from 2019 and 2020 to establish their market rates. Locke Lord and Miller Shakman present credible evidence of their firm's billable rates via attorney affidavit. *See* R. 7025-1, Pls.' Exh. A, Brian Hays Decl. ¶¶ 4–6; R. 7025-2, Pls.' Exh. B, Edward Feldman Decl. ¶¶ 4–8. Both firms further offer previous fee-approval orders and invoices from 2019 and 2020 in this matter. *See generally* R. 7025-1 at 96, Pls.' Exh. A-4, Shakman Fee Orders. These previous orders and invoices are consistent with the Plaintiffs' requested rates in this case.[7] Contrary to the Clerk's assertion, the Plaintiffs have established that their market rates are in fact based on the actual billable rates charged to and paid by clients during the same time frame.[8] *See also* R. 7025-1 at 57, Pls.' Exh.. A-3, and R. 7025-2 at 13, Pls'. Exh. B-2. So the Plaintiffs' attorneys have adequately established their rates are reasonable.

The burden then shifts to the County Clerk to explain why a lower hourly rate is appropriate. The only reason that the County Clerk advances is that their attorney's and the Compliance Administrator's respective rates are lower than what is requested. That is unpersuasive. The County Clerk provides neither an affidavit nor

---

[7] Specifically, in April 2020, the Court approved the following rates for Locke Lord attorneys as to the Cook County Recorder of Deeds: Hays ($640), Palomo ($640), Oswald ($368), and Dashevsky ($519). *See Shakman Fee Orders* at 4–7. Also, in April 2020, the Court approved the following rates for Miller Shakman attorneys: Feldman ($575), Shakman ($750), Schwartz ($350), and Wells ($410). *Id.* at 15–27. These numbers are comparable to the Plaintiffs' requested rates in this motion: Hays ($654), Palomo ($614), Oswald ($363), Dashevsky ($444), Feldman ($575/$625), Schwartz ($340/$350), Shakman ($725/$750), and Wells ($410). Joint Statement at 1–2.

[8] The Court notes that a Locke Lord paralegal billed at $398 per hour, surpassing the requested rates of associates. Again, however, the County Clerk did not timely contest the requested rates during the Local Rule 54.3 process and never specifically objected to the paralegal's rate.

15

any other evidence to compare the qualifications and experience of the Clerk's attorneys or the Compliance Administrator to the Plaintiffs' counsel. And it is quite obvious that the Compliance Administrator is charging a rate below what would be charged to private clients. What remains is that the County Clerk is "merely opining on the reasonableness of another attorney's fee," which has little probative value. *Montanez*, 755 F.3d at 554 (cleaned up). The County Clerk needed to offer evidence against the proposed rates, and the Clerk's "failure to do so is essentially a concession that the attorney's billing rate is reasonable and should be awarded." *People Who Care*, 90 F.3d at 1313. It is true that the approval of the fees and costs petition will result in a substantial award from the public fisc. But the governing law justifies it and the result of the effort—the appointment of the Compliance Administrator—will aid in achieving a durable remedy against political employment actions in the County Clerk's Office and, ultimately and finally, an end to the consent orders.

## IV. Conclusion

The Plaintiffs' fees and costs petition, R. 7025, is granted in full. The Plaintiffs are awarded $11,733.39 in costs. They are also awarded attorneys' fees at the following per-hour rates: $654 for Hays; $614 for Palomo; $363 for Oswald; $444 for Dashevsky; $575 in 2019 and $625 in 2020 for Feldman; $340 in 2019 and $350 in 2020 for Schwartz; $725 in 2019 and $750 in 2020 for Shakman; and $410 in 2020 for Wells. The Plaintiffs are also awarded $398 per hour for paralegal work; $281 per hour for research-assistant work; and $225 per hour for litigation-support work. This amounts

to a total award of $593,507.60 in fees. Cook County shall pay the fees and costs award with reasonable promptness.

ENTERED:

       s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 4, 2021