UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL SHAKMAN, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | No. 1:69-CV-02145 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| COOK COUNTY TREASURER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

ORDER

Long, long ago—in 1972 and then again in 1984—the Cook County Treasurer entered into *Shakman* consent decrees prohibiting the Treasurer from making certain employment decisions based on political considerations. R. 7921, Exh. 1 (1972 Decree), Exh. 2 (1984 Decree).[1] After various periods of activity—and inactivity—in the case as it relates to the Treasurer, the Treasurer now argues that the parties actually agreed many years ago that the office is no longer bound by the Consent Decrees. R. 7921, Joint Status Rep. at 5. Alternatively, the Treasurer seeks to vacate the Consent Decrees under Civil Rule 60(b)(5). *Id.* at 9. In response, the Plaintiffs assert that the Consent Decrees continue to be enforceable against the Treasurer and seek certain stipulations before the Decrees may be terminated. *Id.* at 4–5, 7. For the reasons explained in this Order, the Court concludes that the parties did not in fact agree that the Consent Decrees have already ended as applied to the Treasurer, but

---

[1] Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

directs the Treasurer to file a Rule 60(b)(5) motion without the need—at least for now—for any further stipulations or discovery before doing so.

## I. Background

In 1969, Michael Shakman, a candidate in an Illinois election, as well as one of his supporters, alleged that State and local government employment practices stood in the way of the Plaintiffs' right to participate fairly in the electoral process. *Shakman v. Democratic Org. of Cook Cty.*, 481 F. Supp. 1315, 1320 (N.D. Ill. 1979), *vacated and remanded sub nom. Shakman v. Dunne*, 829 F.2d 1387 (7th Cir. 1987). The Plaintiffs' theory was that political patronage in State and local government agencies coerced political support from government employees, and thereby violated the rights of voters and candidates. *Id.* at 1320–21. The patronage system required some government employees, as a condition for obtaining and keeping their jobs, to secure political sponsorship of an individual with a party connection. R. 277-2, First Am. Compl. ¶¶ 24–26. And obtaining a sponsorship required, not surprisingly, political contributions or performing political work for the party or a candidate. *Id.* ¶ 29.

In 1972, the parties entered into a Consent Decree, which set forth injunctive-relief provisions. Under the provisions for injunctive relief, various government entities, including the Treasurer, were permanently enjoined from:

> (1) conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time already a governmental employee, upon or because of any political reason or factor.

2

> (2) knowingly causing or permitting any employee to do any partisan political work during the regular working hours of his or her governmental employment, or during time paid for by public funds […]
>
> (3) knowingly inducing, aiding, abetting, participating in, cooperating with or encouraging the commission of any act which is proscribed by this paragraph E, or threatening to commit any such act.

R. 7921-1, Exh. 1 ¶¶ E(1)–(3). In 1984, the parties entered into a second consent decree, which set forth similar injunctive-relief provisions as the 1972 Decree. The Treasurer was permanently enjoined from:

> (1) conditioning, basing or knowingly prejudicing or affecting the hiring of any person as a Governmental Employee (other than for Exempt Positions), upon or because of any political reason or factor […]; or
>
> (2) knowingly inducing, aiding, abetting, participating in, cooperating with the commission of any act which is proscribed by this Paragraph E, or threatening to commit any act proscribed by this Paragraph E.

R. 7921-2, Exh. 2 ¶¶ E(1)–(2). The 1984 Decree also permanently enjoined the Treasurer from hiring for any position (except exempt positions[2] and emergency hiring) "unless prior public notice of the opportunity to apply for and be hired for the job has been given." *Id.* ¶ G.

The 1984 Decree contained additional reporting obligations, including a Plan of Compliance that "set forth in detail a method or methods of hiring to be used for all Governmental Employment positions (other than Exempt Positions) with that

---

[2] Exempt positions are those for which political affiliation is an appropriate consideration because the positions involve policymaking or some other compelling interest. Non-exempt or "covered" positions are those for which political affiliation is not an appropriate consideration. *See Elrod v. Burns*, 427 U.S. 347, 367 (1976); *Branti v. Finkel*, 445 U.S. 507, 518 (1980).

3

employer." R. 7921-2, Exh. 2 ¶ F. The Treasurer was required to file quarterly and annual reports on its compliance efforts for 10 years. *Id.* ¶¶ L, M. The Treasurer also was subject to various notice provisions concerning available positions, current employees, and job applicants. *Id.* ¶¶ G, H, I, J, K.

From 1986 to 1992, the Treasurer failed to follow the notice-and-reporting provisions. R. 7921-3, Joint Exh. 3 ¶¶ 2–3. In light of this failure, the Court granted a Supplemental Remedial Action Petition in 1995. *Id.* ¶ 13; R. 7921-4, Joint Exh. 4. The Petition extended "the Shakman compliance obligations for the Treasurer through December 31, 2001." *Id.* ¶ 13. The Petition also required annual audits of compliance and a revised Plan of Compliance. *Id.* The Treasurer submitted its required reports through August 1, 2002. R. 193.

For the next eight years or so, it appears that nothing happened on the docket as to the Treasurer. In July 2010, the Treasurer filed a Consent to Exercise of Jurisdiction by a United States Magistrate Judge in this case. R. 1753. Fast forward another dozen years: in response to a request from the Court, in May 2022, the parties filed a joint status report describing its positions concerning the continued applicability of the Consent Decrees to the Treasurer. R. 7921, Joint Status Rep.

## II. Legal Standard

A consent decree, although contractual in nature, is enforceable as "a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Rufo v. Inmates of Suffolk Co. Jail*, 502 U.S. 367, 378 (1992). As a judgment, then, a consent decree is subject to modification or to vacatur via Federal Rule of Civil

4

Procedure 60(b). *United States v. Krilich*, 303 F.3d 784, 789 (7th Cir. 2002) ("parties wishing to modify or vacate a consent decree may do so by resorting to Rule 60(b)"). Under Civil Rule 60(b)(5), the "court may relieve a party … from a final judgment, order, or proceeding … [if] the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). "The party seeking relief bears the burden of establishing that changed circumstances warrant relief, but once a party carries this burden, a court abuses its discretion when it refuses to modify an injunction or consent decree in light of such changes." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (cleaned up).[3] The movant's burden is met by showing a significant change either in fact or in law. *Rufo*, 502 U.S. at 384. Having said that, federal courts take special care to approach vacatur motions with flexibility when an "institutional reform" injunction is under scrutiny. *Horne*, 557 U.S. at 450. This ensures that responsibility for discharging the State's obligations is returned promptly to the State and its officials when the circumstances warrant. *Id.*

### III. Analysis

#### A. Continued Applicability of the Decrees

The Treasurer contends that it is no longer bound by the Shakman Consent Decrees. R. 7921, Joint Status Rep. at 5. As the Treasurer sees it, the parties did not

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

extend the Treasurer's specific compliance obligations under the Decrees past the December 31, 2001 deadline, so that constituted an agreement to end the applicability of the Consent Decrees as to the Treasurer. *Id.* at 6. The Plaintiffs disagree, responding that the record does not bear out any agreement that the end of the particular compliance obligations was coextensive with an end to the Consent Decrees themselves. *Id.* at 2–3. On this point, the Plaintiffs have the better of the argument.

The Treasurer relies principally on the Supplemental Remedial Action Petition, which states in relevant part: "In light of the 1986–1992 deficiencies in compliance with the 1984 Judgment and the independent audit report, the parties have agreed to extend the *Shakman compliance obligations* for the Treasurer through December 31, 2001." R. 7921-3, Exh. 3 ¶ 13 (emphasis added). The Treasurer reads the term "Shakman compliance obligations" broadly to mean the 1972 and 1983 consent judgments in their entirety.

That interpretation does not hold up to scrutiny. First, the Supplemental Remedial Action Petition discusses only the *1983* Decree and omits any mention of the 1972 Decree. It would be odd to terminate the 1972 Decree without mentioning it. Remember that the 1972 Decree permanently enjoined the Treasurer from (1) knowingly prejudicing any aspect of current government employment upon or because of a political reason or factor; and (2) knowingly permitting its employees from performing partisan political work during work hours. R. 7921-1, Exh. 1 ¶ E. Those restrictions are in addition to the restrictions in the 1983 Decree, which targets the hiring of prospective employees. R. 7921-2, Exh. 2 ¶ E. So if the Treasurer's interpretation

were right, then the parties agreed to terminate the 1983 Decree through the Supplemental Remedial Action Petition but, for some unexplained reason, distinguished the 1972 Decree. That makes little sense.

Second, the plain-language meaning of the term "Shakman compliance obligations"—considered in the context of this case—more naturally applies to the notice-and-reporting provisions contained in the 1983 Decree, rather than to the Consent Decrees as a whole. After all, the Court's justification for granting the Petition was to ameliorate "deficiencies in *compliance*" with certain notice-and-reporting provisions contained in the 1983 Decree that the Treasurer had failed to follow. *See* R. 7921-3, Exh. 3 ¶¶ 2–3 (emphasis added), 13. Indeed, contrary to the Treasurer's own plain-language argument, Joint Status Rep. at 6, the sentences following the term "Shakman compliance obligations" actually reinforce a narrower interpretation of the term: the follow-on sentences impose annual audits of compliance and a Plan of Compliance based on the notice-and-reporting requirements. *Id.*; *see CFTC v. Worth Bullion Grp., Inc.*, 717 F.3d 545, 550 (7th Cir. 2013) ("Statutory interpretation is guided not just by a single sentence or sentence fragment, but by the language of the whole law, and its object and policy.") (cleaned up). Those specific compliance obligations do not necessarily spell the end of the Consent Decrees themselves.

Lastly, the record evidence also contains the Treasurer's filing of a consent to the exercise of jurisdiction by a federal magistrate judge in 2010. R. 1753. As the Plaintiffs rightly point out, *see* Joint Status Rep. at 4, the Treasurer would not have filed a consent and continued to be a party to this lawsuit if it truly believed it was

7

no longer bound by the Consent Decrees at the end of 2001. All in all, there was no agreement that the end of the specific compliance obligations in 2001 also ended the Consent Decrees.

### B. Schedule to Consider Termination

Although the Consent Decrees remain in place as to the Treasurer, rather than engage in a monitoring period, the proper next step is for the Treasurer to formally file a motion to terminate the Decrees under Civil Rule 60(b)(5). The Treasurer must present evidence to show that it has implemented a durable remedy that satisfies the objective of the Decrees. *Horne*, 557 U.S. at 450. If the Treasurer has implemented a durable remedy, then "continued enforcement of the [Decrees] is not only unnecessary, but improper." *Id.* The Treasurer argues that the record already shows that the office is entitled to relief under Rule 60(b)(5) because (1) there is no ongoing violation of federal law; and (2) laches renders the Decrees unenforceable at this point. Joint Status Rep. at 9–10. The Plaintiffs counter by proposing various steps the Treasurer must take before a motion to terminate may be granted. *Id.* at 8. The Court addresses each argument in turn.

To begin, the Treasurer bears the burden of proof to modify or vacate a consent decree under Rule 60(b). *Horne*, 557 U.S. at 447 (cleaned up). This requires the Treasurer to demonstrate a change in factual circumstance or law. *Rufo*, 502 U.S. at 384. It might very well be that a durable remedy is in place, especially given the inactivity of the past dozen years. But the record needs to be supplemented with evidence before deciding whether that is so. To the extent the Treasurer argues that, under

8

contemporary Article III standing doctrine, the Plaintiffs would not have standing to pursue this case, Joint Status Report at 9, that argument fails as a *standalone* reason to terminate the Decrees right now. It is true that the potential absence of standing in light of developments in the law of standing after the initial finding of standing long ago might very well be a persuasive equitable factor when considering the Rule 60(b)(5) motion. *O'Sullivan v. City of Chicago*, 396 F.3d 843, 868 (7th Cir. 2005). But it is not an independent reason to terminate the Decrees.

On the Treasurer's laches argument, it is indeed true that motions to enforce consent decrees are subject to the defense of laches, that is, "an unreasonable delay in pressing one's rights that prejudices the defendant." *Cook v. City of Chicago*, 192 F.3d 693, 695 (7th Cir. 1999). As the Seventh Circuit explained in *Cook*: "From the standpoint of interpretation a consent decree is a contract, but from the standpoint of remedy it is an equitable decree." *Id.* (collecting cases). So a party seeking to enforce a consent decree against a violator "must ask the court for an equitable remedy[,]" which is then "subject to the usual equitable defenses." *Id.* The defense of laches bars an action when the plaintiff's delay in filing the claim: (1) is unreasonable and (2) prejudices the defendant. *Pruitt v. City of Chicago, Illinois*, 472 F.3d 925, 927 (7th Cir. 2006) (citing *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 110–15 (2002)).

Here, however, the defense of laches is inapplicable. *Cook* is distinguishable. In *Cook*, the Seventh Circuit affirmed a partial application of laches due to the plaintiff's failure to earlier seek a remedy for a violation of a consent decree. *Cook*, 192

9

F.3d at 698. There, the City was required to notify the plaintiff of future openings in Director-level positions and, several years later, failed to do so. *Id.* at 694. *Cook* noted that the lack of an expiration date for enforcement of the consent decree could have allowed (absence the application of laches) the plaintiff to seek damages until her death. *Id.* at 695. Unlike here, however, the government in *Cook* did not seek the *termination* of the decree—rather, the government sought to apply laches to bar the recovery of damages arising from the decree's violation. That is not an issue here: the Plaintiffs do not seek to advance a new claim to recover damages on which the Plaintiffs would bear the burden of proof. Instead, it is the Treasurer that bears the burden to show that the Consent Decrees should be terminated. Laches does not apply. The Treasurer must move forward with a motion to terminate the Consent Decrees.

    Having said all that, the circumstances do not support requiring the setting of specific benchmarks right now. *See* Joint Status Report at 8 (Plaintiffs' proposed benchmarks). The fact that *nothing* has happened in this case as to the Treasurer for *12 years* after the filing of the consent to the magistrate judge is an enormously significant fact. On top of that, before the 2010 consent to the magistrate judge, almost 8 more years passed with no particular activity as to the Treasurer. Yes, the Treasurer does bear the burden of proof under Rule 60(b)(5), but the absence of activity or apparent concern as to the Treasurer's Office for that stretch of time dictates an efficient next step that allows the Treasurer to file a Rule 60(b)(5) motion without any presumption of discovery to litigate the motion and without a monitoring period. Instead, the Treasurer shall file a Rule 60(b)(5) motion and attach its current office-

wide employment policy plan and its current Exempt position list. The motion also must attach an affidavit by an employment-decisionmaking official with knowledge, such as a the top Human Resources director or other high-level official, averring on (1) the number of known allegations of political discrimination made since January 1, 2017, by Treasurer employees and by applicants for employment with the Treasurer's office; and (2) the resolution of those allegations. The affidavit must also explain how the information in those two categories was gathered. Beyond the office's employment plan, Exempt list, and the affidavit, the Treasurer should provide whatever other affidavits and evidence it believes is relevant to the termination motion. The motion is due by October 17, 2022. The Plaintiffs' response is due by November 14, 2022. The Treasurer's reply is due by December 5, 2022. A status hearing on the motion is set for December 12, 2022, at 12:15 p.m. The setting of this schedule does not preclude the parties from further conferrals on whether there is a smoother (and faster) path to termination.

### IV. Conclusion

Although the Consent Decrees as to the Treasurer were not terminated by agreement, the Treasurer is authorized to file the motion to terminate as described above and without the need for any discovery.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 15, 2022