**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|                                        |     |                                        |
| -------------------------------------- | --- | -------------------------------------- |
| MICHAEL L. SHAKMAN, et al.,            | )   |                                        |
|                                        | )   |                                        |
| Plaintiff,                             | )   | Case No.:  No. 69 C 2145               |
|                                        | )   |                                        |
| vs.                                    | )   | Judge:  Edmund E. Chang                |
|                                        | )   |                                        |
| COOK COUNTY CLERK, et al.,             | )   | Magistrate:  Gabriel A. Fuentes        |
|                                        | )   |                                        |
| Defendant.                             | )   |                                        |
|                                        | )   |                                        |

**PLAINTIFFS' PETITION FOR FEES AND COSTS**
**WITH RESPECT TO THE COOK COUNTY CLERK**

Plaintiffs respectfully move for an award of their costs and attorneys' fees in this case with respect to Defendant the Cook County Clerk ("Clerk"). Plaintiffs are entitled to recover their reasonable attorneys' fees incurred in monitoring and enforcing the 1972 and 1991 Decrees and the April 17, 2020 Order appointing the Compliance Administrator ("Appointment Order") through termination of the Decrees. Plaintiffs are also entitled to their fees and costs monitoring and extending the appointment of the Compliance Administrator. Finally, Plaintiffs are entitled to recover the fees incurred bringing this motion.

In her objections, the Clerk re-hashes the same objections and arguments that this Court already rejected in its November 24, 2021 Memorandum Opinion and Order ("2021 Fee Order") granting Plaintiffs' prior contested fee petition. (R. 7657.)  The Clerk once again raises a single over-arching objection to Plaintiffs' claim for fees and costs arguing that Plaintiffs are not entitled to fees for monitoring and enforcing the Decrees after the entry of the Appointment Order. The Court need spend little time on this objection because the Court has already held in the 2021 Fee Order that Plaintiffs are entitled to recover fees and costs for monitoring and enforcing the Decrees.

(2021 Fee Order at 9.) As Judge Andersen explained in awarding fees for monitoring compliance

with the Decrees with respect to the City of Chicago:

> In this case, the 1972 and 1983 Consent Decrees envisioned an on-going process of monitoring and adjusting the Consent Decrees and Plan of Compliance. Plaintiffs' counsel performed general administrative and monitoring work including such actions as: reviewing and negotiating proposed amendments to the list of exempt positions; reviewing affidavits and reports filed by the City; and interviewing potential complainants about allegations of political discrimination. We find all of the monitoring activities by Plaintiffs' counsel to be compensable because they were fulfilling their obligations under the Decrees.

*Shakman v. City of Chicago*, No. 69 C 2145, 2008 WL 754124, *2 (N.D. Ill. Mar. 18, 2008) ("2008

Fee Order"). Because this Court has already held twice that Plaintiffs are entitled to fees and costs

for monitoring compliance, the Court should enter an order granting the current petition.

While the Clerk has raised a number of objections to specific time entries and costs arguing

the time was excessive, duplicative, or involved block-billing, none of these objections have any

merit. As explained in further detail below, the legal and factual issues raised in briefing on the

Motion to for Court Approval of Proposed Exempt List Pursuant to the 1991 Consent Decree (R.

7378) and on the cross-motions to terminate/extend the Compliance Administrator's appointment

were detailed and complex. (R. 7978, 7979.) The time spent and research costs incurred were

reasonable given the stakes involved. Plaintiffs' work monitoring and negotiating the durable

remedies was not duplicative of the Compliance Administrator. Plaintiffs' obligations under the

Decrees and Appointment Order and their duties to the classes they represent are independent of,

and in addition to, the duties of the Compliance Administrator. The time spent reading the

Compliance Administrator's reports and the Clerk's responses, meeting with the Compliance

Administrator and the Clerk's Office, and negotiating revisions to the Exempt List and Policy

Manual that constitute the durable remedies were all reasonable and necessary to achieve

compliance with the Decrees and to confirm that the Clerk had met her obligation under Rule 60(b)(5) to prove that the Clerk's Office had implement durable remedies.

The Court should grant this petition and award Plaintiffs' the requested fees and costs.

## BACKGROUND

In May 2019, evidence came to light that indicated the Clerk was violating the 1972 and 1991 Decrees entered in this case against the Clerk. Plaintiffs' counsel investigated the evidence and filed a Motion for Supplemental Relief. The Motion asked the Court to appoint a special master to investigate and oversee the Clerk's employment practices. The Court granted the request by appointing the Compliance Administrator on April 17, 2020. (R. 6829.) The Court ordered the Compliance Administrator to:

1. Work with the Clerk "to develop (***with the input of plaintiffs' counsel***) a list of exempt positions" with Plaintiffs' input.
2. Monitor the implementation of the Policy Manual to ensure the Clerk is complying with the policies; propose revisions to the Policy Manual.
3. Recommend policies to govern solicitations of political donations or support and the reporting of solicitations.
4. Review the incorporation of the Recorder's Office into the Clerk's Office to determine whether political considerations are improperly used.

(*Id.* at 41-42;2021 Fee Order at 7) (emphasis added). The Court authorized the Compliance Administrator to have *ex parte* communications with Plaintiffs' counsel to aid in performing her duties. (R. 6829 at 42.) It is clear from the 2021 Fee Order that the Court anticipated and directed that Plaintiffs and Plaintiff's counsel would remain involved in monitoring the Clerk's efforts along with the Compliance Administrator.

Plaintiffs filed a Petition for Attorneys' Fees and Costs seeking to recover the amounts incurred by Plaintiffs in monitoring and enforcing the 1972 and 1991 Decrees through the entry of the Appointment Order. (R. 7024.) On November 4, 2021, the Court granted Plaintiffs' Motion for Attorneys' Fees and Costs. The Court held that Plaintiffs were entitled to recover their attorneys'

fees and costs for monitoring and enforcing the 1972 and 1991 Decrees. 2021 Fee Order at 9. The Court also found that Plaintiffs' counsels' hourly rates were reasonable because they were consistent with the rates counsel charged to fee paying clients for similar work and were consistent with fees charged in the community for similar work. *Id.* at 15.

After negotiations with the Clerk, on November 22, 2021, Plaintiffs filed their Unopposed Motion to Award Plaintiffs' Attorneys' Fees and Costs with Respect to the Cook County Clerk (R. 7687) for fees and costs through March 31, 2021. This Motion included not only the fees and costs incurred monitoring and enforcing compliance with the Decrees that led to the appointment of the Compliance Administrator on April 17, 2020, but also the fees and costs incurred monitoring compliance with the Decrees and performing the tasks included in the Appointment Order through March 31, 2021, along with the fees and costs of the Clerk's unsuccessful appeal of the Appointment Order. *Id.* at 1.

Plaintiffs' work in this case did not end on March 31, 2021. Since then, Plaintiffs have continued to monitor the Clerk's Office's efforts at complying with the Decrees and implementing the policies in the Policy Manual that are intended to serve as a durable remedy for unlawful political discrimination. The work performed in connection with the present Petition includes:

- Negotiating and briefing amendments to the List of Exempt Positions.
- Communicating with the Compliance Administrator and her counsel about actual and potential violations of the Decrees and Policy Manual, amendments to the Policy Manual, and problems and progress with reaching compliance with the Decrees and Appointment Order.
- Negotiating changes to and drafting the Policy Manual.
- Reviewing reports filed by the Compliance Administrator.
- Reviewing the Clerk's responses to those reports.
- Attending status hearings.
- Briefing cross-motions to terminate/extend the Compliance Administrator's appointment.
- Negotiating, drafting, and filing the Joint Motion to Terminate and attending the hearing.

-4-

*See* Exhibit A, Declaration of Brian I. Hays at ¶ 6; Exhibit B, Declaration of Edward W. Feldman at ¶ 3. During the various status hearings over the last three years, the Court set deadlines that included time for Plaintiffs to provide comments on the revisions to the Policy Manual. At no point during any of those status hearings did the Clerk object to Plaintiffs' work as being beyond the scope of the Decrees or Appointment Order.

Plaintiffs provided a copy of their invoices to the Clerk on January 19, 2022, September 9, 2022, and July 19, 2023. The Clerk provided responses on February 9, 2022, September 27, 2022, and August 8, 2023. *See* Exhibits C, D, and E.[1]

## ARGUMENT

This Court has already held that Plaintiffs are entitled to recover fees and costs for their ongoing efforts to monitor and enforce compliance with the Decrees so that federal court oversight could come to an end. Plaintiffs have achieved significant relief for the classes at every stage of this litigation, including the appointment of the Compliance Administrator to monitor compliance with the Decrees and the development and implementation of durable remedies designed to prevent unlawful political discrimination from recurring. Plaintiffs successfully extended the Compliance Administrator's appointment through July 6, 2023. Finally, Plaintiffs obtained relief for the classes through the development and implementation of new policies and procedures designed to bring transparency to employment actions such as hiring, promotions, transfers, and terminations. The policies also require employees to report potential political discrimination to the County Office of the Independent Inspector General ("OIIG") and potential violations of certain employment policies to the Chief Ethics Officer for investigation. The Compliance Administrator has monitored

---

[1] The Clerk identified three time entries in the Locke Lord invoice for work performed in the Governor matter that were mistakenly entered in the billing number for the Clerk matter. *See* Exhibit D at 5, 7, 8 ("U"). These entries have been removed from the invoice attached as Exhibit A-1.

implementation for a number of years. The implementation of these durable remedies will protect the First Amendment rights of employees, job applicants, and political candidates in the future. Plaintiffs are entitled to recover their fees and costs for this work to get the Clerk's Office to sunset.

## I.    PLAINTIFFS ARE ENTITLED TO THEIR FEES AND COSTS FOR MONITORING COMPLIANCE

As noted above, this Court has already rejected the Clerk's argument that Plaintiffs are not entitled to recover fees and costs incurred monitoring compliance with the Decrees and carrying out their responsibilities under the Decrees and the Appointment Order. In the 2021 Fee Order, the Court held that Plaintiff's "continued efforts to monitor and enforce the 1972 and 1991 orders deserve compensation …." (2021 Fee Order at 9. *See also* 2008 Fee Order at *2 (citing *Alliance to End Repression v. Chicago*, 356 F.3d 767, 772-73 (7th Cir. 2004) ("When a consent decree includes provisions providing for on-going monitoring by the plaintiffs, plaintiffs are entitled to recover their attorneys' fees incurred in performing their obligations under the consent decree.").) The Decrees and the Appointment Order "envisioned an on-going process of monitoring and adjusting the Consent Decrees" that required Plaintiffs to continue incurring fees and costs to fulfil their obligations. (2008 Fee Order, at *3.) The Court has also held that Plaintiffs are entitled to recover their fees and costs for negotiating changes to the Exempt List. (*Id.* at 7 (""Plaintiffs were specifically authorized to provide input into that development. So unilateral development of the Exempt List was taken off the table by the Order, and the Plaintiffs' input was a required consideration."); 2008 Fee Order at *3 (awarding fees for "reviewing and negotiating proposed amendments to the list of exempt positions" under the Decrees). This Court should follow its prior rulings and grant Plaintiffs' fee petition in its entirety.

In her objections, the Clerk argues that *Shakman v. Pritzker*, 43 F.4th 723 (7th Cir. 2022), somehow overruled this Court's prior fee decisions. However, the two recent opinions from the

Seventh Circuit fully support awarding Plaintiffs their fees and costs.

On March 31, 2021, the Seventh Circuit affirmed the appointment of the Compliance Administrator based on the Clerk's violations of the Decrees. *Shakman v. Clerk of Cook County*, 994 F.3d 832 (7th Cir. 2021). The Seventh Circuit held that both Mr. Shakman as the representative of the class of political candidates and the IVI-IPO on behalf of its members and the class of employees and job applicants had standing to enforce the Decrees. *Id.* at 840-41. The Seventh Circuit directed the parties to "work together to ensure swift compliance" to bring the case to a close. *Id.* at 843. Plaintiffs did exactly as they were directed; they worked with the Clerk and the Compliance Administrator to ensure swift compliance.

In *Pritzker*, the Seventh Circuit provided additional guidance on the application of the Rule 60(b)(5) standards to the Decrees. The court concluded that the Governor had met his burden under Rule 60(b)(5) for two primary reasons. First, there had been no evidence of unlawful political discrimination in nearly a decade. *Pritzker*, 43 F.4th at 728. Second, the Governor had substantially implemented several remedial measures in recent years to minimize the risk of political patronage including implementing the Comprehensive Employment Plan, the creation and monitoring by the Hiring & Employment Monitoring Division within the Office of the Inspector General, and the creation of an exempt list. *Id.* at 729. The court noted that these measures had been in place "for several years" with no findings of constitutional violations. *Id.* The court also relied on the special master's findings that the Governor's efforts to comply with the Decree were "extraordinary," "notable," and "significant." *Id.* In reversing this Court's decision, the Seventh Circuit merely held that ***full*** implementation of the Comprehensive Employment Plan was not required. *Id.* ("Nor do we see how the full achievement of those specific measures is crucial to the conclusion that the Governor has sufficiently satisfied the aims of the 1972 decree and put in place adequate measures

to avoid future constitutional violations.").

The Seventh Circuit's findings in *Pritzker* stand in sharp contrast to the facts at the time the Clerk filed her Motion to Vacate the Decrees and show that Plaintiffs have done exactly what they were instructed to do in the Seventh Circuit's decision affirming the 2020 Appointment Order. At the time the June 2022 Motion to Terminate was filed, the Compliance Administrator found that the Clerk had violated the Decrees by unilaterally appointing individuals into positions that were not on the Exempt List and did not meet the standard for exemption in August 2020 and June 2021. (*See* R. 7941 at 1-2; R. 7298 at 8-9; R. 7562 at 12-13; R. 7709 at 17-18.) The Compliance Administrator also found that the Clerk's Office had not implemented the new employment policies in any meaningful way. The Compliance Administrator's findings were not picking around the edges of full implementation of the policies. Rather, the Fifth Report provided a dismal summary of the Clerk's lack of progress toward the essential goals of the Decrees. (*See* R. 7947 at 16-22, 24-41, 49-52.) In their Motion to Extend Compliance Administrator's Appointment, Plaintiffs asked this Court to extend the Compliance Administrator's appointment for 12 months through June 2023 to allow additional time for the Clerk to implement the agreed upon durable remedies in the Policy Manual. (R. 7978 at 19.) That is exactly what happened.

In their Joint Rule 60(B)(5) Motion to Vacate Consent Judgments Against Cook County Clerk, the parties agreed that since the filing of the cross-motions the Clerk's Office continued to implement and revise the Policy Manual. (R. 8298 at 3-4.) The negotiated Policy Manual requires Clerk employees to report potential political discrimination to the Office of the Independent Inspector General. Employees are also required to report potential violations of the Hiring, Discipline, Performance Management, and Temporary Assignment policies to the Chief Ethics Officer for investigation. (R. 8306 at ¶ 3.) The parties also agreed that termination was appropriate

-8-

because there had been no evidence of unlawful political discrimination in the last two years. (*Id.* at 4.) Following the directives of *Pritzker* – the lack of evidence of political patronage over a period of time (here 2 years instead of 10) and the Clerk's efforts at implementing the agreed upon durable remedies in the Policy Manual, Plaintiffs joined the Clerk in filing the Joint Motion to Vacate. Plaintiffs submit that the parties have fully comported with the Seventh Circuit's expectations in *Pritzker*:

> As we see the record, everyone involved in recent years—foremost [the Defendant], but also the special master, the district court, and Michael Shakman and Paul Lurie (and their talented counsel)—has been diligent in ensuring the state's substantial compliance with the 1972 decree. This is what is supposed to happen in institutional reform litigation, ….

*Pritzker*, 43 F.4th at 730. In the present case, this Court, the Compliance Administrator, and Plaintiffs' counsel worked diligently with the Clerk over the last two years (after the Seventh Circuit affirmed the Appointment Order and the Clerk began to cooperate) to develop and implement the durable remedies of new policies that include internal reporting and investigation requirements and a new Exempt List, remedies comparable to the ones the Seventh Circuit relied on in vacating the 1972 Decree with respect to the Governor.

Plaintiffs are and have remained the prevailing parties in this litigation through the July 6, 2023 final order granting the Joint Rule 60(b)(5) Motion to Vacate. "'[W]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee,' and 'the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.'" *Riverside v. Rivera*, 477 U.S. 561, 569 (1986) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).

## II. THE WORK PERFORMED WAS REASONABLE IN LIGHT OF THE IMPORTANCE OF THE LITIGATION AND SUBSTANTIALLY SIMILAR TO PAST WORK MONITORING AND ENFORCING DECREES

Plaintiffs' counsel have efficiently managed and dispatched their services in this case. The case has been staffed with a core team of two Locke Lord, LLP attorneys. The core team has been augmented by additional lawyers and staff on an as needed basis or to handle aspects within the case. As a result, the case has been handled by a team deeply immersed in the relevant facts and legal issues, which minimized the time needed for lawyers to get up to speed. Mr. Hays and Mr. Palomo have been working on this case since 1999 and 2010, respectively. Hays Decl., Exh. A. at ¶ 7. Mr. Shakman has been working on this case since it was filed in 1969. Their institutional knowledge about the case and the experience Plaintiffs' counsel have had with all of the other defendants has been invaluable in enforcing the Clerk's Decrees and helping the Clerk meet her burden of proving that the Clerk's Office has implemented durable remedies.

Section 1988 was intended to encourage lawyers to accept cases to pursue civil rights violations even in the face of strong resistance by defendants. Plaintiffs are entitled to recover the full amount of their fees incurred as a result of the Clerk's litigation style. *Jonson v. Kakvand*, 192 F.3d 656, 662 (7th Cir. 1999) ("a party's uncooperativeness with pretrial proceedings will increase the amount of time that the opposing attorney must devote to the case, an increase that will then be reflected in the petition for attorneys' fees"); *Torres v. O'Neill Cancel*, 524 F.3d 331, 338 (1st Cir. 2008) (awarding fees and noting, "[Defendant], as was his right, mounted a Stalingrad-type defense, employing four lawyers and battling the plaintiffs at every turn"). To the extent the Clerk now objects to the amount of work her Office's failure to work cooperatively with the Compliance Administrator required from Plaintiffs and the Compliance Administrator, the Clerk has no one to blame but herself and her staff.

III.    **PLAINTIFFS' PETITION IS TIMELY**

Pursuant to this Court's July 6, 2023 order, Plaintiffs are filing this petition on August 31, 2023. (R. 8306 at ¶ 8.) In her objections, the Clerk alternatively argues that either LR 54.3 does not apply because Plaintiffs are not entitled to any fees because no order triggering LR 54.3 has been entered or Plaintiffs' petition is untimely under LR 54.3 because it should have been filed within 90 days of the entry of Appointment Order. The Clerk's objections are based on the erroneous assumption that Plaintiffs are not entitled to their on-going fees for work under the Decrees and the Appointment Order.  As noted above, this Court has repeatedly held that Plaintiffs are entitled to fees and costs for monitoring compliance with the Decrees and the development and implementation of the durable remedies.

Furthermore, the Plaintiffs' efforts provided benefits to the certified class up to the date the Court entered the order granting the Joint Rule 60(b)(5) Motion to Vacate. The minute orders entered after each status hearing show the benefits achieved by the Plaintiffs. The Clerk's policies were revised, expanded, and modified to add transparency and require documentation of different stages of employment actions to allow the OIIG and the Chief Ethics Officer to investigate potential violations. Plaintiffs negotiated repeated extensions of the Compliance Administrator's appointment to ensure continued monitoring while the Clerk developed and implemented the durable remedies. While Plaintiffs could have burdened the Court with repeated contested fee petitions after each status hearing, given the scorched-earth position of the Clerk, Plaintiffs were not required to do so. LR 54.3 was drafted with the typical litigation in mind. It was not designed to cover institutional reform litigation that required on-going monitoring of a consent judgment over an extended period of time after the consent judgment was entered. To the extent LR 54.3 requires an order to trigger the 90 day meet and confer period, Plaintiffs have filed this petition

-11-

within 90 days of the July 6, 2023 order granting the Joint Rule 60(b)(5) Motion to Vacate, which expressly contemplated that Plaintiffs would be filing a fee petition.

## IV.    THE CLERK ADMITS THAT THE COURT HAS ALREADY HELD THAT THE RATES SOUGHT ARE REASONABLE

Plaintiffs are entitled to recover attorneys' fees at the rates their attorneys charge paying clients. *Mathur v. Bd. Of Trustees of S. Ill. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003); *People Who Care v. Rockford Bd. Of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996) ("The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate."). Courts recognize the opportunity cost inherent in representing clients in civil rights litigation who cannot pay their attorneys' standard fees. *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993) ("If he were not representing this plaintiff in this case, the lawyer could sell the same time to someone else."). It is this opportunity cost which "establishes the market's valuation of the attorney's services." *Id.*; *Philos Techs., Inc. v. Philos & D, Inc.*, 15 F. Supp. 3d 833, 841 (N.D. Ill. 2014) (quoting the same); *Oshana v. Coca-Cola Co.*, 487 F. Supp. 2d 961, 975 (N.D. Ill. 2007) ("A fundamental purpose of fee-shifting statutes is to encourage lawyers to take on cases . . . in which the recoveries generally are not large enough to attract legal representation in the private market.").

In renewing her objection to the reasonableness of Plaintiffs' counsels' hourly rates, the Clerk admits that the Court has already decided this issue in Plaintiffs' favor. Exhibit C at p.6 ("Additionally, although we understand that Judge Chang has already ruled on the issue of the reasonableness of the hourly rate[s], we are preserving our objection to the hourly rates as being too high …."). Plaintiffs submit that should be the end of the question and the objections should be overruled.

The Clerk's objections should also be overruled because, the Clerk once again failed to provide any "analysis of any relevant considerations, such as the relative experience of the lawyers, actual billing rates paid by similar clients in similar cases, and so on. Put another way, the County Clerk did not set forth specific objections to specific aspects of the movant's claims for fees, but have instead joust[ed] in generalities." (2021 Fee Order at 12-13 (citation and quotation omitted).) Simply saying that the rates are too high, without more, does not meet the Clerk's burden under LR 54.3. The Court should once again overrule the Clerk's objections to the hourly rates.

This Court has repeatedly held that the rates sought by Plaintiffs' counsel are reasonable. (2021 Fee Order at 14-16.) "A reasonable hourly rate is determined by looking to prevailing market rates within the relevant community, and thus a lodestar calculation aims to approximate what a prevailing attorney would expect to receive from a paying client." *Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010); *see also Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 649 (7th Cir. 2011). Fee awards under § 1988 should be equivalent to fees "in other types of equally complex Federal litigation, such as antitrust cases." *Hensley*, 461 U.S. at 447 (1983) (citing Senate Report 6, U.S. Code Cong. & Admin. News 1976, p. 5913).

Plaintiffs have provided declarations from their attorneys setting forth the rates those timekeepers receive from their paying clients. Hays Decl. ¶ 11, Feldman Decl., ¶ 6.

The rates sought are consistent with fees awarded by courts in this District to attorneys with comparable experience as Plaintiffs' counsel, if one were to adjust the rates for 2022-2023. *See, e.g., In re Sears, Roebuck and Co. Front-Loading Washer Products Liability Litigation*, 2016 WL 4765679 (N.D. Ill. Sep. 13, 2016) (in class action, $800 per hour awarded to attorney with 23 years' experience, $595-$630 to attorneys with 17 years' experience, $510 to an attorney with 12 years' experience, and $425 to an attorney with 10 years' experience); *Reid v. Unilever United*

-13-

*States, Inc.*, 2015 WL 3653318 (N.D. Ill. June 10, 2015) ($558 per hour to class action attorney with 10 years' experience); *National Rifle Ass'n v. Village of Oak Park*, 871 F. Supp. 2d 781, 788 (N.D. Ill. 2012) (section 1983 Second and Fourteenth Amendment case approving hourly rates of $1,020 and $880 for senior attorneys); *Harris N.A. v. Acadia Investments*, 2012 WL 1681985, at *2-3 (N.D. Ill. May 14, 2012) ($560-650 in a case involving default on note); *Young v. Verizon's Bell Atlantic Cash Balance Plan*, 783 F. Supp. 2d 1031, 1037 (N.D. Ill. 2011) ($500-750 to multiple lawyers in ERISA case); *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 594 F. Supp. 2d 931, 934 (N.D. Ill. 2009) ($500+ in copyright action); *Entertainment Software Ass'n v. Blagojevich*, 2006 WL 3694851, at *2-5 (N.D. Ill. Aug. 9, 2006) (First Amendment case approving hourly rates, now 14 years old, of $585 for 27 years' experience, $425 for 10 years, $275-$340 for 4-6 years, and $215 for three years).

The rates are also in line with the Laffey Matrix. *See* http://www.laffeymatrix.com/see.html The Seventh Circuit has advised the lower courts that they may take judicial notice of documents in the public domain, such as the Laffey Matrix, when evaluating the reasonableness of attorneys' hourly rates and fees. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011); *Montanez*, 755 F.3d at 554. Courts in this District have considered the Laffey Matrix when considering the reasonableness of hourly rates for fee awards. *See, e.g., Hadnott v. City of Chicago*, No. 07 C 6754, 2010 WL 1499473, at *6 (N.D. Ill. Apr. 12, 2010) (noting that "numerous judges in this district" have considered the Laffey Matrix as one factor); *Berg v. Culhane*, No. 9 C 5803, 2011 WL 589631, at *3 (N.D. Ill. Feb. 10, 2011) (finding the Matrix to constitute "satisfactory evidence"). Plaintiff's counsel offers the Laffey Matrix in this case as further evidence of the reasonableness of their hourly rates.

-14-

Plaintiffs' counsel have represented the Plaintiff classes in enforcing the *Shakman* Decrees for many years now. Their experience on this matter is invaluable and has enabled Plaintiffs to succeed in enforcing the Decrees and seeking supplemental relief many times over. The ongoing litigation involved in monitoring and enforcing compliance with the Decrees often presents complex constitutional and procedural issues, among others, which must be handled by skilled and experienced counsel. It is because of the fee-shifting provisions of § 1988 that these attorneys, along with other competent counsel from their respective law firms, are able to continue to represent Plaintiffs in this lawsuit and ensure that the protections afforded by the Decrees over the electoral process are upheld.

The work performed and results achieved by the Plaintiffs' attorneys fully support the award at counsels' customary rates. The Court should compensate Plaintiffs' counsel using their actual market rates.

## V. THE CLERK'S MISCELLANEOUS OBJECTIONS HAVE NO MERIT

### A. Duplicating Compliance Administrator's Work

The Clerk objects to some of the work performed as duplicative of work performed by other attorneys or by the Compliance Administrator. *See* Exhibit D at 4-10.[2] This is really just another version of the objection to awarding any fees based on monitoring compliance with the Decrees and Appointment Order. The Decrees and the Appointment Order Decrees envisioned an on-going process of monitoring and adjusting the Exempt List and the Policy Manual by Plaintiffs. (2008 Fee Order at *2.) As the Court knows from the status hearings, Plaintiffs' counsel has been very careful to not step on the toes of the Compliance Administrator by duplicating her work.

---

[2] The Clerk also objected to two entries of 0.1 for emails between counsel on August 18, 2021 as duplicative. *See* Exhibit D at 6 ("D"). Mr. Hays and Mr. Vaught exchanged two emails at different times that day resulting in two separate time entries. The Clerk also objected to time entries on January 3 and 4, 2022 spent analyzing the Clerk's response to the motion to compel deposition. *See Id.* at 8 ("D"). Time spent on separate days is not duplicative.

Plaintiffs' counsel merely commented on various versions of the policies drafted by the Compliance Administrator and the Clerk's Office. This is reflected in the fact that most of the time entries are between 0.1 and 0.3 hours. *See* Exhibit D at 4-10. All of the "CA" objections should be overruled.

B.     **"Block Billing"**

The Clerk objects to a number of time entries as block-billing. *See* Exhibit C at p.6-8. First, many of the time entries do not actually contain block-billing. Drafting a memorandum or a response brief is a single activity that takes multiple hours and is often spread out over several days. Similarly, researching and analyzing case law for inclusion in a brief is a single activity. Counsel are not required to separately record the amount of time spent on each case that appears in a Westlaw search. The following objections should be overruled.

- 04/20/21 ID 7.30 Draft response brief to motion to add positions to exempt list.
  Objection: This time is block-billed and vague; therefore impossible to know if time spent was reasonable

- 04/22/21 BIH 2.50 Revise response to motion for approval of exempt list
  Objection: This time is block-billed and vague; therefore impossible to know if time spent was reasonable

- 04/23/21 BIH 2.50 Revise response to motion for approval of exempt list BIH 5.20
  Objection: This time is block-billed and vague; therefore impossible to know if time spent was reasonable

- 04/26/21 BIH 5.10 Analysis of 7th Circuit and other federal cases addressing Branti standard for response to motion to approve exempt list
  Objection: This time is block-billed and vague; therefore impossible to know if time spent was reasonable

- 04/28/21 BIH 5.50 Continue revising legal argument in response to motion to approve exempt list
  Objection: This time is block-billed and vague; therefore impossible to know if time spent was reasonable

- 04/29/21 BIH 5.00 Revise section of response to motion to amend exempt list addressing 10 Disputed Positions

Objection: This time is block-billed and vague; therefore impossible to know if time spent was reasonable

- 05/03/21 BIH 3.20 Revise response to motion to approve exempt list with Miller Shakman comments
  Objection: This time is block-billed and vague; therefore impossible to know if time spent was reasonable

- 12/30/21 BIH 4.80 Analysis of Manual and prior CA Reports to develop list of focus areas to achieve sunset
  Objection: This time is block-billed and vague; also cannot tell how much time was spent on each discrete task; therefore impossible to know if time spent was reasonable

- 06/02/21 BIH 4.50 Revise Temporary Assignment, Performance Evaluation and Hiring Policies
  Objection: This time is block-billed and vague; therefore impossible to know if time spent was reasonable

*See* Exhibit C at 6-10.

Second, blocked time entries are permitted. *See American Sec. Mortg. v. Mercedes Benz of North America, Inc.*, No. 97 C 5996, 1998 WL 70609, *3 (N.D. Ill. Feb. 11, 1998); *Farfaras*, 433 F.3d at 569. In *Farfaras*, the court held that "[a]lthough 'block billing' does not provide the best possible description of attorney's fees, it is not a prohibited practice." *Id.* Plaintiffs' blocked entries are not unreasonable and fees in blocked entries are routinely awarded. *American Sec. Mortg. v. Mercedes Benz of North America, Inc.*, No. 97 C 5996, 1998 WL 70609, *3 (N.D. Ill. Feb. 11, 1998). The following objections should be overruled.

- 04/13/21 ID 1.40 Prepare for and attend status hearing.
  04/13/21 BIH 1.70 Prepare for and attend status hearing
  Objection: These two entries are inconsistent with each other for the same task; we also cannot tell how much time was spent preparing and how much time was spent at the status; therefore impossible to know if time spent was reasonable

- 04/16/21 ID 1.60  Read and analyze 7th Cir. opinion and correspondence and follow-up regarding same.
  Objection: Cannot tell how much time was spent reading and analyzing, and how much time was spent corresponding and following up; therefore impossible to know if time spent was reasonable

-17-

- 04/16/21 ERP 0.70 Review and analyze 7th Circuit opinion and exchange emails regarding same.
  Objection: Cannot tell how much time was spent reading and analyzing, and how much time was spent corresponding; therefore impossible to know if time spent was reasonable

- 04/19/21 ID 3.60 Research and draft response brief to Clerk's motion to add names to the exempt list. Correspondence and analysis regarding other exempt positions.
  Objection: Cannot tell how much time was spent researching, how much time was spent drafting response, and how much time was spent corresponding regarding other exempt positions; therefore impossible to know if time spent was reasonable

- 04/22/21 ID 1.90 Draft, revise and finalize draft response. Correspondence to opposing counsel regarding org. char.
  Objection: Cannot tell how much time was spent on each discrete task; therefore impossible to know if time spent was reasonable

- 05/27/21 ID 1.80  Attend hearing.
  05/27/21 BIH 1.00 Status Hearing
  Objection: This time billed for the same task is different between two timekeepers; therefore impossible to know which entry is correct and if the time spent was reasonable

- 06/02/21 ID 1.90 Prepare for and have call regarding policy revisions.
  Objection: Cannot tell how much time was spent on each discrete task; it is also vague as to who the call was with; therefore impossible to know if time spent was reasonable

- 06/08/21 ID 3.80 Prepare for and attend multiple conference calls with Clerk, CCCA, and opposing counsel regarding policy revisions.
  Objection: This time is block-billed and vague; also cannot tell how much time was spent on each discrete task; therefore impossible to know if time spent was reasonable

*See* Exhibit C at 6-10.

The blocked entries in the Fee Petition are minimal, and the Clerk makes no objection that any of the combined entries are somehow unreasonable. None of these entries should be stricken.

### C.     Vague Time Entries

As shown above, in addition to objecting to certain time entries as block-billing, the Clerk also objected to those entries as vague. *See* Exhibit C at 6-10. The time entries are not vague when viewed within the larger context of the work performed around the entries. The law establishes a

-18-

relaxed standard for judging a time entry as "vague." *See Berberena v. Coler*, 753 F. 2d 629, 630 (7th Cir. 1985). In *Berberena*, the court overturned a "vagueness" finding on the ground that time is "compensable" even if represented by entries that are "vague when read in isolation" so long as "when viewed in the context of the surrounding documentation, . . . . [the entries are] sufficient to identify the substance of the work done." *Id.* at 633, 634. For example, one entry in *Berberena* said only "notes of meeting." 753 F.2d at 634. But since that entry "follow[ed] an entry for the same date identifying a three-hour meeting to discuss settlement with opposing counsel," it upheld an award of fees for that time. *Id.* The time entries in Plaintiffs' invoices, taken as a whole and read in context, provide sufficient detail of the subject matter of the work performed.

### D. Researching Potential Arguments for Briefs Is Compensable

The Clerk objects to 7.6 hours spent researching and drafting a memorandum evaluating whether Plaintiffs should object to the Clerk's inclusion of settlement discussions as part of her Motion for Court Approval of Proposed Exempt List. Rule 408 of the Federal Rules of Evidence prohibits a party from introducing into evidence statements made during settlement negotiations. *See* F.R.E. 408. The Clerk attached a chain of emails among Plaintiffs' counsel, defense counsel, and the Compliance Administrator reflecting the parties' negotiations over the proposed Exempt positions. (R. 7378-19, Ex. 12.) After reviewing the case law and the statements in the emails, Plaintiffs ultimately decided not to object to the Clerk's use of settlement materials in violation of Rule 408. However, even though Plaintiffs decided not to raise this objection, Plaintiffs are still entitled to recover the fees incurred researching potential and even unsuccessful arguments. (*See* 2021 Fee Order at 8 (quoting cases).)

The following objections based on researching potential arguments should be overruled:

04/17/21 BZ 2.00 Conduct research regarding whether opposing counsel's attachment of "settlement" communications to its motion for court approval of exempt positions was inappropriate.

Objection: This was an unreasonable potential argument and therefore the billed time associated with it is unreasonable and excessive

04/17/21 BZ 1.20   Draft memo regarding whether opposing counsel's attachment of "settlement" communications to its motion for court approval of exempt positions was inappropriate.
Objection: This was an unreasonable potential argument and therefore the billed time associated with it is unreasonable and excessive

04/18/21 BZ 3.00 Conduct research regarding the scope of communication during settlement negotiations and the potential consequences for attaching confidential settlement correspondence to a motion.
Objection: This was an unreasonable potential argument and therefore the billed time associated with it is unreasonable and excessive

04/18/21 BZ 1.40 Draft memo regarding the scope of communication during settlement negotiations and the potential consequences for attaching confidential settlement correspondence to a motion.
Objection: This was an unreasonable potential argument and therefore the billed time associated with it is unreasonable and excessive

*See* Ex. C at 2-6.

### E.   Excessive

The Clerk objects to all of the time spent by Plaintiffs' counsel negotiating, researching, analyzing, and briefing the Motion for Approval of Exempt List. *See* Exhibit D at 1-3. The motion involved 10 positions spread out over multiple departments performing different tasks. The response required Plaintiffs to separately research and evaluate the specific policymaking functions of each position to see if there was case law addressing similar positions and job duties. (*See* R. 7408.) As this Court found, a number of the proposed positions were close calls, justifying a careful review. The Court provisionally approved two positions and ordered the Clerk to provide additional information demonstrating that certain of the positions were in fact performing policymaking roles. (*See* R. 7541 at 10, 11.) Because adding positions to the Exempt List strips those employees of their First Amendment rights, Plaintiffs' careful review of the motion was justified.

-20-

F.      **Plaintiffs Are Entitled to Recover Westlaw Charges**

The Clerk has objected to all of the Westlaw charges as vague because Westlaw does not

provide the details of the searches or results. However, when the Westlaw charges are matched

with the time entries from those days, the basis for the research becomes clear:

| 04/02/21 | $104.99 | Westlaw Research | Analysis of cases addressing Branti standard and qualifications for position | BIH |
|---|---|---|---|---|
| 04/17/21 | $104.99 | Westlaw Research | Conduct research regarding the scope of communication during settlement negotiations and the potential consequences for attaching confidential settlement correspondence to a motion. | BZ |
| 04/18/21 | $314.97 | Westlaw Research | Draft memo regarding the scope of communication during settlement negotiations and the potential consequences for attaching confidential settlement correspondence to a motion. | BZ |
| 04/22/21 | $104.99 | Westlaw Research | Analysis of cases addressing burden of proof and need for defendant to submit evidence supporting Branti factors | BIH |
| 04/26/21 | $136.73 | Westlaw Research | Analysis of 7th Circuit and other federal cases addressing Branti standard for response to motion to approve exempt list. | BIH |
| 04/28/21 | $419.96 | Westlaw Research | Additional research for response brief and draft memorandum regarding same. | ID |
| 05/07/21 | $104.99 | Westlaw Research | Analysis of [Clerk's] Supplemental Brief [in Opposition to Fee Petition] and begin drafting response | BIH |

Because the legal research was part of the briefing on the prior fee petition and the motion

to approve an amended and updated exempt list, Plaintiffs are entitled to recover these costs.

## VI.     **PLAINTIFFS ARE ENTITLED TO RECOVER FEES AND COSTS INCURRED BRINGING FEE PETITIONS**

It is well-established that a prevailing plaintiff in a civil rights case may recover fees-on-

fees. *Ozinga v. US Dept. of Health & Human Serv.*, No. 13 C 3292, 2018 WL 2320933, at *8 (N.D.

Ill. May 22, 2018). Because the Clerk has elected to raise arguments already rejected by this Court

in the 2021 Fee Order, Plaintiffs were compelled to file this petition. Plaintiffs are entitled to

134166968v.1

recover the fees and costs for time spent by Mr. Hays meeting and conferring with defense counsel, updating research, and drafting this petition and supporting declarations.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that the Court enter an order granting Plaintiffs' Petition and award fees and costs as follows:

1.      $292,259.30 in fees and $2,523.40 in costs to Locke Lord LLP

2.      $22,570.00 in fees to Miller Shakman Levine & Feldman LLP.

Dated: August 31, 2023                  Respectfully submitted,

MICHAEL L. SHAKMAN, PAUL M. LURIE, and the INDEPENDENT VOTERS OF ILLINOIS-INDEPENDENT PRECINCT ORGANIZATION

By: /s/ Brian I. Hays
    One of the Attorneys for Plaintiffs

Brian I. Hays
Ernesto R. Palomo
Locke Lord LLP
111 S. Wacker Drive
Chicago, IL 60606
312-443-1707
bhays@lockelord.com
epalomo@lockelord.com

-22-

**<u>Certificate of Service</u>**

I, Brian I. Hays, an attorney, state that on August 31, 2023, I caused a true and correct copy of the foregoing to be served via e-filing upon all parties of record.


<u>         /s/Brian I. Hays         </u>